**KAHN SWICK & FOTI, LLC**
Kim E. Miller (NY-6996)
250 Park Avenue, Suite 2040
New York, NY 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
kim.miller@ksfcounsel.com

-and-

Lewis S. Kahn
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com

*Counsel for Lead Plaintiff Movant Tranquil Bay, LLC*
*and Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEAN LEE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> IQIYI, INC., YU GONG, and XIAODONG WANG, <br><br> Defendants. | Case No. 20-CV-01830 (LAH)(JO) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF TRANQUIL BAY, LLC TO BE APPOINTED LEAD PLAINTIFF AND TO APPROVE PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL

**TABLE OF CONTENTS**

**Page:**

PRELIMINARY STATEMENT ...........................................................................................................1

PROCEDURAL BACKGROUND ......................................................................................................2

FACTUAL BACKGROUND .............................................................................................................3

ARGUMENT ......................................................................................................................................5

    I.   Tranquil Bay Is the Presumptive "Most Adequate Plaintiff" and
the Court Should Appoint It Lead Plaintiff .........................................................................5

        A.  Tranquil Bay Filed a Timely and Procedurally Complete
Motion for Lead Plaintiff ........................................................................................9

        B.  Tranquil Bay Has the Largest Known Financial Interest
in the Relief Sought ...............................................................................................10

        C.  Tranquil Bay "Otherwise Satisfies" the *Prima Facie*
Requirements of Rule 23 ........................................................................................11

            1.  Tranquil Bay's Claims Are Typical of the Claims of
All the Class Members ...............................................................................11

            2.  Tranquil Bay Will Adequately Represent the Class .................................12

    II.  The Court Should Approve Tranquil Bay's Choice of Lead Counsel ...............................13

CONCLUSION ................................................................................................................................14

## TABLE OF AUTHORITIES

**Page(s):**

**Cases**

*Bensley v. FalconStor Software, Inc.*,
   277 F.R.D. 231 (E.D.N.Y. 2011) ........................................................................6

*Brady v. Top Ships Inc.*,
   324 F. Supp. 3d 335 (E.D.N.Y. 2018) ...........................................................5, 6, 8

*Daniels v. City of N.Y.*,
   198 F.R.D. 409 (S.D.N.Y. 2001).......................................................................11

*Ferrari v. Impath*,
   No. 03-cv-5667, 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July 15, 2004)........................11

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
   No. 17-CV-4846, 2017 U.S. Dist. LEXIS 207531 (E.D.N.Y. Dec. 15, 2017)....................7

*In re Braskem S.A. Sec. Litig.*,
   No. 03-cv-00409, 2015 U.S. Dist. LEXIS 119183 (S.D.N.Y. Sep. 8, 2015) ......................9

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002)........................................................... 6, 7, 8, 9

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001) ........................................................... 6, 7, 8, 9

*In re Comverse Tech., Inc.*,
   No. 06-CV-1825, 2008 U.S. Dist. LEXIS 121650 (E.D.N.Y. Mar. 24, 2008) ...................6

*In re Facebook, Inc.*,
   288 F.R.D. 26 (S.D.N.Y. 2012).......................................................................10

*In re Heritage Bond Litig.*,
   No. 02-CV-1475, 2004 U.S. Dist. LEXIS 15386 (C.D. Cal. July 12, 2004) ...................11

*In re Lucent Techs. Sec. Litig.*,
   194 F.R.D. 137 (D.N.J. 2000) ........................................................................13

*In re Nortel Networks Corp.*,
   No. 01-CV-1855, 2002 U.S. Dist. LEXIS 1633 (S.D.N.Y. Feb. 4, 2002)........................13

*In re Party City Sec. Litig.*,
   189 F.R.D. 91 (D.N.J. 1999) ..........................................................................8

*In re Star Gas Sec. Litig.*,
   No. 04-CV-1766, 2005 U.S. Dist. LEXIS 5827 (D. Conn. Apr. 8, 2005)..........................6

ii

*Khunt v. Alibaba Grp. Holding Ltd.*,
 102 F. Supp. 3d 523 (S.D.N.Y. 2015).................................................................6, 7, 9

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
 No. 08-CV-7281, 2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008) ......................6

*Murphy v. JBS S.A.*,
 No. 17-CV-3084, 2017 U.S. Dist. LEXIS 166262 (E.D.N.Y. Oct. 6, 2017) ......................6

*Rossini v. Ogilvy & Mather, Inc.*,
 798 F.2d 590 (2d Cir. 1986) .............................................................................11

*Stoopler v. Direxion Shares ETF Tr.*,
 2010 U.S. Dist. LEXIS 82296 (S.D.N.Y. Aug. 12, 2010)....................................................10

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
 216 F.R.D. 248 (S.D.N.Y. 2003)........................................................................8

*Wilder v. Bernstein*,
 499 F. Supp. 980 (S.D.N.Y. 1980)......................................................................11

**Rules and Statutes**

15 U.S.C. § 78u-4 ....................................................................................... *passim*

15 U.S.C. § 77z-1 ......................................................................................... passim

Fed.R. Civ. Proc. 6..........................................................................................10

Fed.R. Civ. Proc 23 .................................................................................. 1, 11, 12

**Other Authorities**

Conference Report on Securities Litigation Reform, H.R. Rep. No. 369, 104th Congress, 1st
Sess. 31 ....................................................................................................... 12

**PRELIMINARY STATEMENT**

Jason Tzung Lee, as Manager of Tranquil Bay, LLC ("Tranquil Bay" or "Movant") respectfully submits this Memorandum of Law in support of its motion to appoint Movant as Lead Plaintiff in this securities class action filed against iQIYI, Inc. ("iQIYI" or the "Company"), Yu Gong ("Gong"), and Xiaodong Wang ("Wang") (Gong and Wang are collectively referred to herein as the "Individual Defendants"), pursuant to Section 27(a)(3)(B) of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. § 77z-1(a)(3)(B), and Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") to approve Movant's selection of the law firm of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel for the Class.

As described in the Certification and Loss Chart attached to the Declaration of Kim E. Miller in Support of Tranquil Bay's Motion to Be Appointed Lead Plaintiff and to Approve Proposed Lead Plaintiff's Selection of Counsel ("Miller Decl."), Movant has suffered substantial losses as a result of its purchases of iQIYI securities between March 29, 2018 and April 7, 2020, inclusive (the "Class Period"). *See* Miller Decl. at Exhibit A (Tranquil Bay Certification) and Exhibit B (Tranquil Bay Loss Chart). To the best of its knowledge, Movant has sustained the largest losses of any investor(s) seeking to be appointed Lead Plaintiff.

Additionally, Tranquil Bay fully understands its duties and responsibilities to the Class. As affirmed in the Declaration of Jason Tzung Lee, Tranquil Bay is willing and able to oversee the vigorous prosecution of this Action. *See* Miller Decl. at Exhibit C (Lee Declaration). Tranquil Bay's Certification demonstrates its intent to serve as Lead Plaintiff in this matter, including its cognizance of the duties of serving in that role. *See* Miller Decl. at Ex. A. Moreover, Tranquil Bay satisfies both the applicable requirements of the PSLRA and Rule 23 of the Federal Rules of Civil

1

Procedure. Accordingly, Tranquil Bay respectfully submits this memorandum of law in support of its motion for an Order appointing it as Lead Plaintiff in this action and approving its selection of the law firm of Kahn Swick & Foti, LLC ("KSF") as Lead Counsel for the Class.

## **PROCEDURAL BACKGROUND**

The first lawsuit against iQIYI was filed in the Eastern District of New York on April 16, 2020. *See Jean Lee, et al, v. iQIYI, Inc., et al*, No. 20-CV-01830 (E.D.N.Y. Apr. 16, 2020) (the "*Lee* Complaint").[1] Pursuant to 15 U.S.C. § 77z-1(a)(3)(A)(i) and 15 U.S.C. § 78u-4(a)(3)(A)(i), on April 16, 2020, notice that a class action had been initiated against Defendants was published on *BusinessWire*, a widely-circulated national business-oriented wire service, advising members of the proposed Class of their right to move the Court to serve as Lead Plaintiff no later than June 15, 2020. *See* Miller Decl. at Exhibit D (Statutory Notice). Tranquil Bay is a Class member that has timely filed this motion within the 60-day period following publication of the April 16, 2020 notice. *See* Miller Decl. at Ex. A, Ex. D.

---

[1] A second complaint was filed in the Southern District of New York on April 17, 2020. *See Sintayehu Shiferaw, et al., v. iQIYI, Inc., et al.,* No. 20-CV-03115 (S.D.N.Y. Apr. 17, 2020) (the "*Shiferaw* Complaint"). The allegations of the *Shiferaw* Complaint are substantially similar to those of the *Lee* Complaint. A third complaint was filed in the Northern District of California on April 27, 2020. *See Thomas Jenkins, et al., v. iQIYI, Inc., et al.*, No. 20-CV-02882 (N.D. Cal. Apr. 27, 2020) (the "*Jenkins* Complaint"). While the *Jenkins* Complaint set forth substantially similar facts to both the *Lee* Complaint and the *Shiferaw* Complaint, unlike those complaints, it also alleged violations of Sections 11 and 15 of the Securities Act and named several additional defendants: Defendant Robin Yanhong Li ("Li"), who served as iQIYI's Chairman of the Board of Directors at the time of the initial public offering ("IPO"); Defendant Qi Lu ("Lu"), who served as a Director of iQIYI at the time of the IPO; Defendant Herman Yu ("Yu"), who served as a Director of iQIYI at the time of the IPO; Defendant Xuyang Ren ("Ren"), who served as a Director of iQIYI at the time of the IPO; Defendant Victor Zhixiang Liang ("Liang"), who served as a Director of iQIYI at the time of the IPO; and Defendant Chuan Wang ("C. Wang"), who served as a Director of iQIYI at the time of the IPO.

**FACTUAL BACKGROUND**[2]

Defendant iQIYI, "the Netflix of China," purports to be an innovative, market-leading online entertainment service in China. ¶ 8. Defendant iQIYI is incorporated in the Cayman Islands, and maintains its principal executive offices in Beijing, China. ¶ 8. Defendant Yu Gong ("Gong") is and was at all pertinent times the Company's Chief Executive Officer ("CEO"), Principal Executive Officer, and a Director. ¶ 9. Defendant Xiaodong Wang ("Wang") is and was at all pertinent the Company's Chief Financial Officer ("CFO"), and Principal Financial and Accounting Officer. ¶ 10.

On March 29, 2018, the first day of the Class Period, iQIYI filed with the SEC its final prospectus, which formed a part of the Registration Statement for its initial public offering ("IPO"). ¶ 16. From the time of this Registration Statement throughout the Class Period, iQIYI continually made false and misleading statements in SEC filings about the success and growth of its advertising revenue and the broad reach of its subscriber base. *See* ¶ 17 ("Our online advertising services revenue grew by 44.4% from RMB5,650.4 million in 2016 to RMB8,158.9 million (US$1,254.0million)….We appeal to advertisers through broad and efficient user reach."); ¶ 19 ("The number of total subscribing members was 80.7 million as of September 30, 2018, over 98% of whom were paying subscribing members. This compares to 42.7 million of total subscribing members as of September 30, 2017, up 89% year over year."); ¶ 21 ("The number of total subscribing members was 87.4 million as of December 31, 2018…up 72% year over year."); ¶ 24 ("Our online advertising services revenue grew by 44.4% from RMB5,650.4 million in 2016 to RMB8,158.9 million in 2017….Average brand advertising revenue per brand advertiser increased

---

[2] Unless otherwise noted, these facts were derived from the *Lee* Complaint, and all "¶__" and "¶¶__" references herein are to the *Lee* Complaint.

by 16.3% from RMB4.9 million in 2016 to RMB5.7 million in 2017."); ¶ 28 ("The number of total subscribing members was 96.8 million as of March 31, 2019…up 58% year over year."). The 2018 Annual report also discussed iQIYI's acquisition of Skymoons Inc.: "Other revenues increased by 104.1% from RMB1,409.2 million (net of VAT) in 2017 to RMB2,875.6 million (US$418.2 million) in 2018, primarily as a result of…revenue contribution from Skymoons, a mobile game company we acquired in July 2018." ¶ 27.

On April 7, 2020, the truth emerged when Wolfpack Research released a report (the "Report") detailing how iQIYI had misled investors by failing to disclose pertinent information, including that: (i) iQIYI overstated its user numbers by approximately 42%-60%; (ii) iQIYI inflated its revenues by approximately RMB 8-13 billion, or 27%-44%; (iii) iQIYI inflated expenses and prices of assets to conceal its revenue inflation from its auditors; and (iv) iQIYI misled financial reporting creating the appearance of a cash generative company. ¶¶ 35, 36. Additionally, the Report revealed that the Skymoons acquisition "was a sham intended to burn off fake revenues and siphon off cash from IQ's recent Nasdaq listing." ¶ 40. Wolfpack noted that Skymoons was not the true originator of any of its games and, in fact, a game which Defendant Gong had highlighted in iQIYI's 1Q19 earnings call as an example of Skymoons' capabilities was merely an adaption of a game that had been produced by another company two years previously. ¶ 40. Wolfpack believed these facts called into question why iQIYI management had valued Skymoons at RMB 2.4 billion how the acquisition was accounted for. ¶ 40.

On this news, iQIYI ADSs fell $0.99 per share over the rest of the trading day and the next full trading day, or 5.6%, to close at $16.51 per share on April 8, 2020, damaging investors. ¶ 42.[3]

---

[3] On this point, the three complaints differ - the *Shiferaw* Complaint at ¶ 5 states "iQIYI's American Depositary Shares ("ADSs") fell $1.01 per share, or 5.8 percent," while the *Jenkins* Complaint at ¶ 8 states "iQIYI's ADS price fell $0.79 per share, or 4.57%."

## ARGUMENT

**I.     TRANQUIL BAY IS THE PRESUMPTIVE "MOST ADEQUATE PLAINTIFF" AND THE COURT SHOULD APPOINT IT LEAD PLAINTIFF**

The PSLRA governs the appointment of a lead plaintiff for "each private action arising under [the Securities Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 77z-1(a)(3)(B); *see also* 5 U.S.C. § 78u-4(a)(3)(B) (setting forth identical provisions with respect to claims brought under the Exchange Act). It provides that, within 20 days of the filing of the action, the plaintiff is required to publish notice in a widely circulated business- oriented publication or wire service, informing class members of their right to move the Court, within sixty (60) days of the publication, for appointment as lead plaintiff. *See* 15 U.S.C. § 77z-1(a)(3)(A)(i); 15 U.S.C. § 78u-4(a)(3)(A)(i); s*ee generally Brady v. Top Ships Inc.*, 324 F. Supp. 3d 335, 345 (E.D.N.Y. 2018).

Under both 15 U.S.C. § 77z-1(a)(3)(B)(i) and 15 U.S.C. § 78u-4(a)(3)(B)(i), the Court must then consider any motion made by class members and appoint as lead plaintiff that movant the Court determines to be most capable of adequately representing the interests of class members. *See generally Top Ships*, 324 F.Supp 3d at 344. Further, the PSLRA establishes a rebuttable presumption that the "most adequate plaintiff" is the person that:

(aa)   has either filed the complaint or made a motion in response to a notice [published by a complainant];

(bb)   in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc)   otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Once it is determined who among the movants seeking appointment as lead plaintiff is the

5

presumptive lead plaintiff, the presumption can be rebutted only upon proof by a class member that the presumptive lead plaintiff: "(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Two leading Circuit Courts have directly addressed the procedural standards applicable to the PSLRA lead plaintiff process – the Ninth Circuit, in *Herrgott v. U.S. Dist. Court for the N. Dist. of Cal. (In re Cavanaugh)*, 306 F.3d 726, 729-31 (9th Cir. 2002), and the Third Circuit, in *In re Cendant Corp. Litig.*, 264 F.3d 201, 262-68 (3d Cir. 2001). District courts within this Circuit routinely rely on both cases for guidance.[4] After extensive analyses, both courts concluded the PSLRA's statutory framework sets out a mandatory, strict, and sequential three-step process:

First, the court must confirm that proper notice has been disseminated pursuant to the PSLRA. *See Cavanaugh*, 306 F.3d 726, 729-31; *accord* 15 U.S.C. §§ 78u-4(a)(3)(A)(i); *Top Ships*, 324 F.Supp 3d at 348.

Second, to identify the "most adequate plaintiff," the PSLRA provides that "the court shall adopt a presumption that the most adequate plaintiff…is the person or group of persons that…has the largest financial interest in the relief sought by the class…and otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). During this step, the court must "compare the financial stakes of the various plaintiffs and

---

[4] *See, e.g.*, *In re Comverse Tech., Inc.*, No. 06-CV-1825, 2008 U.S. Dist. LEXIS 121650, at \*6 n.1 (E.D.N.Y. Mar. 24, 2008) (citing *Cavanaugh*); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 234 (E.D.N.Y. 2011) (citing *Cendant*); *Murphy v. JBS S.A.*, No. 17-CV-3084, 2017 U.S. Dist. LEXIS 166262, at \*13-14 (E.D.N.Y. Oct. 6, 2017)(citing *Cendant*); *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 536 (S.D.N.Y. 2015) (citing *Cavanaugh* and *Cendant*); *Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 08-CV-7281, 2008 U.S. Dist. LEXIS 95506 (S.D.N.Y. Nov. 24, 2008) (citing *Cavanaugh* and *Cendant*); *In re Star Gas Sec. Litig.*, No. 04-CV-1766, 2005 U.S. Dist. LEXIS 5827 (D. Conn. Apr. 8, 2005) (citing *Cavanaugh* and *Cendant*).

determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d at 729-30. The court "must then focus its attention on *that* plaintiff and determine, *based on the information he has provided in its pleadings and declarations*, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'" *Id.* at 730.[5]

Third, the court may then "give other plaintiffs an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements." *Id.* at 730; *accord Cendant*, 264 F.3d at 262 ("[T]he court first identifies the presumptive lead plaintiff, and then determines whether any member of the putative class has rebutted the presumption."). Importantly, the PSLRA's presumption may be rebutted "only upon *proof*" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class; or…is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II); 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

Only if, as a result of this three-step process, the presumptive lead plaintiff does not meet the typicality or adequacy requirements of Rule 23, can the court then proceed to analyze the plaintiff with the next lower stake. *See Cavanaugh*, 306 F.3d at 729-730. Importantly, though, in coming to this conclusion, the *Cavanaugh* and *Cendant* courts outlined three critical guidelines:

First, to be afforded the presumption in step two, a movant need only make a *prima facie* showing that it is otherwise typical and adequate – a lower showing than the *proof* required of competing movants in the adversarial step three. *See Cendant*, 264 F.3d at 264 ("[T]he court's initial inquiry as to whether the movant with the largest losses satisfies the typicality and

---

[5] In connection with lead plaintiff appointments, courts have consistently held that the Rule 23 considerations are limited to an evaluation of typicality and adequacy. *See In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846, 2017 U.S. Dist. LEXIS 207531, at *9 (E.D.N.Y. Dec. 15, 2017) ("With regard to Rule 23, the movants need only make a preliminary showing that they would meet its typicality and adequacy requirements.")(*citing Khunt*, 102 F. Supp. 3d at 536.).

7

adequacy requirements *need not be extensive*." Rather, "the court's initial inquiry should be confined to determining whether such movants have stated a *prima facie case* of typicality and adequacy.").[6]

Second, the court's *prima facie* determinations of typicality and adequacy must be "based on the information [the movant] has provided *in its pleadings and declarations*," and rebuttal evidence introduced by competing movants should specifically not be considered  during this second step presumption analysis. *Cavanaugh*, 306 F.3d at 730.[7] "At step two of the process, when the district court makes its initial determination, it must rely on the presumptive lead plaintiff's *complaint and sworn certification; there is no adversary process to test the substance of those claims.*" *Id.* Rather, it is "[a]t the third stage [that] the process turns adversarial and other plaintiffs may present evidence that disputes the lead plaintiff's prima facie showing of typicality and adequacy." *Id.*[8]

Finally, the lead plaintiff determination does not depend on the court's judgment of which party will be the best lead plaintiff for the class, but rather which movant fulfills the statutory requirements. "[T]he statutory scheme…provides no occasion for comparing plaintiffs with each

---

[6] *Accord Top Ships*, 324 F.Supp. 3d at 350 ("movants seeking appointment as lead plaintiff need only make a preliminary, prima facie showing that the typicality and adequacy requirements would be met."); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003) ("In fact, a 'wide ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification.'") (quoting *In re Party City Sec. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999)).

[7] *Accord Cendant,* 264 F.3d at 264 ("In conducting the initial [presumption] inquiry…the court may and should consider the pleadings that have been filed, the movant's application, and any other information that the court requires to be submitted.").

[8] *Accord Cendant,* 264 F.3d at 263-64 (The "threshold determination" of typicality and adequacy "should be a product of the court's independent judgment, and [] arguments by members of the purported plaintiff class as to why it does not should be considered only in the context of assessing whether the presumption has been rebutted.").

other on any basis other than their financial stake in the case….That the district court believes another plaintiff may be 'more typical' or 'more adequate' is of no consequence….[H]e is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Cavanaugh*, 306 F.3d at 732. [9]

Applying these governing standards, Tranquil Bay is the presumptive "most adequate plaintiff" – and thus its motion should be granted and all other competing motions denied – because it: (i) filed a timely and procedurally complete motion for appointment as lead plaintiff in response to a notice that satisfies the PSLRA's statutory requirements; (ii) has the largest known financial interest in the relief sought; and (iii) "otherwise satisfies" the minimal, *prima facie* requirements of Rule 23.

### A.   Tranquil Bay Filed a Timely and Procedurally Complete Motion for Lead Plaintiff

Under the PSLRA, the first plaintiff to file an action must publish notice advising members of the putative plaintiff class of the pending action in a widely circulated national business-oriented publication or wire service and members of the putative class have sixty days from the date of publication to move the court to serve as lead plaintiff. *See* 15 U.S.C. § 77z-1(a)(3)(A)-(B); 15 U.S.C. § 78u- 4(a)(3)(A)-(B). Here, Notice was first published in *BusinessWire*[10] on April 16,

---

[9] *Accord Cendant*, 264 F.3d at 268 ("[T]he question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff….[T]he inquiry is not a relative one."); *Khunt*, 102 F.Supp. 3d at 535-36 ("[A] district court's belief that 'another plaintiff may be more typical or more adequate is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job.'") (citing *Cavanaugh*, 306 F.3d at 732).

[10] Publication by a national press release firm like *BusinessWire* is an adequate means for meeting the PSLRA statutory requirement that notice be published in a widely circulated national business-oriented wire service. *See, e.g.*, *Peters v. Braskem S.A. (In re Braskem S.A. Sec. Litig.)*, No. 03-CV-00409, 2015 U.S. Dist. LEXIS 119183, at *7 (S.D.N.Y. Sep. 8, 2015) (calling *BusinessWire* a "widely circulated national business-oriented wire service"); *In re Facebook, Inc.*, 288 F.R.D.

2020, so the deadline for submission of applications to be appointed Lead Plaintiff is June 15, 2020. *See* Miller Decl. at Ex. D; Fed. R. Civ. P. 6. Tranquil Bay has therefore timely filed its motion.

Moreover, with that motion, Tranquil Bay has submitted the required Certification in which it certifies its trading history during the Class Period and confirms its willingness and ability to serve as Lead Plaintiff, thereby satisfying the certification requirement set forth in 15 U.S.C. § 77z-1(a)(2)(A) and 15 U.S.C. § 78u-4(a)(2)(A). *See* Miller Decl. at Ex. A, Ex. B. Accordingly, Tranquil Bay has filed a timely and procedurally complete motion for appointment as Lead Plaintiff in response to a notice that satisfies the statutory requirements.

### B.    Tranquil Bay Has the Largest Known Financial Interest in the Relief Sought

During the Class Period, as evidenced by the accompanying signed Certification, Tranquil Bay purchased iQIYI securities in reliance upon the materially false and misleading statements and omissions issued by Defendants and were injured thereby. *See* Miller Decl. at Ex. A. In addition, Tranquil Bay incurred a substantial loss on its transactions in iQIYI securities. *See* Miller Decl. at Ex. B. To the best of its knowledge, Tranquil Bay thus possesses the largest financial interest in the relief sought. Therefore, Tranquil Bay satisfies all of the PSLRA's prerequisites for appointment as Lead Plaintiff in this action and should be appointed Lead Plaintiffs pursuant to 15 U.S.C. § 77z-1(a)(3)(B) and 15 U.S.C. § 78u-4(a)(3)(B).

---

26, 32 (S.D.N.Y. 2012)(noting that publication of notice in *BusinessWire*, "a widely-circulated, national, business-orientated news reporting wire service," was sufficient to trigger the lead plaintiff motion deadline); *Stoopler v. Direxion Shares ETF Tr.*, 09-CV-08011-RJH, 2010 U.S. Dist. LEXIS 82296, at *9 (S.D.N.Y. Aug. 12, 2010)(publication of notice on *BusinessWire* "satisfied the requirements of the PSLRA").

**C.**      **Tranquil Bay "Otherwise Satisfies" the *Prima Facie* Requirements of Rule 23**

In addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I); 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). As outlined above, to be afforded the presumption in step two, a movant need only make a *prima facie* showing that it is otherwise typical and adequate. That *prima facie* determination should be based on the information the movant has provided in its pleadings and declarations only, and rebuttal evidence introduced by competing movants should specifically not be considered during this second step analysis. *Supra* §II. Here, Tranquil Bay easily satisfies these minimal, *prima facie* requirements.

**1.**      **Tranquil Bay's Claims Are Typical of the Claims of All the Class Members**

Under Rule 23(a)(3), typicality exists where "the claims…of the representative parties" are "typical of the claims…of the class." The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiffs' claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). The requirement that the proposed class representatives' claims be typical of the claims of the class does not mean, however, that the claims must be identical. *See Daniels v. City of N.Y.*, 198 F.R.D. 409, 418 (S.D.N.Y. 2001) (citing *Wilder v. Bernstein*, 499 F. Supp. 980, 922 (S.D.N.Y. 1980)); *see also Ferrari v. Impath*, No. 03-cv-5667, 2004 U.S. Dist. LEXIS 13898, at *18 (S.D.N.Y. July 15, 2004) (same); *In re Heritage Bond Litig.*, MDL No. 02-1475, 2004 U.S. Dist. LEXIS 15386, at *25 (C.D. Cal. July 12, 2004) ("Courts have held that if the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of the factual differences.").

In this case, the typicality requirement is met because Tranquil Bay's claims are identical, non-competing, and non-conflicting with the claims of the other Class members. Tranquil Bay and all the other Class Members: (1) purchased iQIYI securities during the Class Period; (2) relied upon the allegedly materially false and misleading statements issued by Defendants when purchasing said iQIYI securities; and (3) suffered damages by purchasing artificially inflated securities and then suffered harm when the truth was revealed and the inflation was removed from the unit price. Thus, Tranquil Bay's claims are typical of those of other Class members since its claims and the claims of other Class members resulted from the same illegal practices.

### 2.    Tranquil Bay Will Adequately Represent the Class

Under Rule 23(a)(4), the representative parties must also "fairly and adequately protect the interests of the class." The PSLRA directs this Court to limit its inquiry regarding the adequacy of the movants to the existence of any conflicts between the interests of the movants, on the one hand, and the members of the Class, on the other hand. The standard for adequacy of representation under Rule 23(a)(4) is met by: (1) the absence of potential conflicts between the named plaintiff and the other class members; and (2) if the proposed class representative's choice of counsel can prosecute vigorously on behalf of the class. *See* 15 U.S.C. § 77z-1(a)(3)(B); 15 U.S.C. § 78u-4(a)(3)(B).

Tranquil Bay will adequately represent the class. Tranquil Bay's sole member and Manager, Jason Tzung Lee, is a licensed chiropractor and acupuncturist who has a Bachelor's degree from UCLA in biology and both chiropractic and acupuncture degrees from Southern California University of Health Sciences. *See* Miller Decl. at Ex. C. As evidenced by the injuries suffered by Tranquil Bay, which purchased iQIYI securities at prices that were artificially inflated by Defendants' materially false and misleading statements and was harmed when the truth was revealed and the artificial inflation was removed from the price of those securities, its interests are

clearly aligned with the members of the Class, and there is no evidence of any antagonism between Tranquil Bay's interests and those of the other members of the Class. Furthermore, Tranquil Bay has retained competent and experienced counsel to prosecute these claims. Tranquil Bay's proposed Lead Counsel is highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Thus, Tranquil Bay *prima facie* satisfies the commonality, typicality, and adequacy requirements of Rule 23 for the purposes of this motion.

## II. THE COURT SHOULD APPROVE TRANQUIL BAY'S CHOICE OF LEAD COUNSEL

Pursuant to 15 U.S.C. § 77z-1(a)(3)(B)(v) and 15 U.S.C. § 78u-4(a)(3)(B)(v), proposed lead plaintiffs shall, subject to court approval, select and retain counsel to represent the class. Courts have refrained from disturbing lead plaintiffs' choice of counsel unless it is necessary to "protect the interests of the class." *In re Lucent Techs. Sec. Litig.*, 194 F.R.D. 137, 155 (D.N.J. 2000) (citing Conference Report on Securities Litigation Reform, H.R. Rep. No. 369, 104th Congress, 1st Sess. 31, *reprinted in* 1995 U.S.C.C.A.N. 679, 685); *see also In re Nortel Networks Corp.*, No. 01-CV-1855, 2002 U.S. Dist. LEXIS 1633, at *2 (S.D.N.Y. Feb. 4, 2002) (same).

Here, Tranquil Bay has selected KSF to be Lead Counsel for the Class. As reflected in its firm resume, KSF is more than qualified to work as Lead Counsel to prosecute the claims of the Class. With lawyers in Louisiana, New York, and California dedicated to the practice of class action and individual investor securities and corporate governance litigation, KSF is one of the nation's premier boutique securities litigation law firms. KSF has represented stockholders as lead or co-lead counsel in numerous class and derivative litigations, many of which have resulted in substantial recoveries on behalf of stockholders, amounting to hundreds of millions of dollars. *See* Miller Decl. at Exhibit E (KSF Firm Resume).

Notably, KSF has achieved numerous litigation successes serving as lead, co-lead, or

executive committee counsel in other securities class actions. *See Id.* (citing *Kanefsky v. Honeywell International Inc. et al.*, No. 18-CV-15536-WJM (D.N.J.) (denying defendant's motion to dismiss on May 18, 2020); *In re Chicago Bridge & Iron Co. N.V. Secs. Litig.*, 17-CV-1580-LGS (S.D.N.Y) (granting plaintiffs' motion for class certification on March 23, 2020); *In Re Health Ins. Innovations*, No. 17-CV-2186 (M.D. Fla.) (denying in part defendants' motion to dismiss securities class action on June 28, 2019); *Dougherty v. Esperion Therapeutics, Inc., et al.*, No. 17-CV-1701 (6th Cir.) (reversing and remanding lower court's dismissal of securities class action on September 27, 2018)).

KSF also served as special counsel and court-appointed Co-Counsel to the lead plaintiff in *The Erica P. John Fund, Inc. v. Halliburton Company, et al.*, No. 02-CV-1152 (N.D. Tex.), which settled for $100 million. Prior to settlement, the *Halliburton* case itself had twice been to the Unites States Supreme Court. In the first instance, plaintiffs won 9-0. In the second instance, the Halliburton defendants challenged the "fraud on the market theory," the fundamental theory on which all class action securities litigation rests. Despite the Halliburton defendants' protestations, the Supreme Court sided with the plaintiffs and upheld that theory. As the aforementioned cases demonstrate, KSF possesses the requisite experience and knowledge litigating complex securities cases.

Thus, the Court may be assured that, in granting this motion, the Class will receive legal representation of the highest caliber.

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court appoint Tranquil Bay to serve as Lead Plaintiff in this action and approve Tranquil Bay's selection of KSF as Lead Counsel for the Class.

DATED: June 15, 2020                    Respectfully submitted,


                                        **KAHN SWICK & FOTI, LLC**

                                        */s/ Kim E. Miller*
                                        Kim E. Miller (NY-6996)
                                        250 Park Avenue, Suite 2040
                                        New York, NY 10177
                                        Telephone: (212) 696-3730
                                        Facsimile: (504) 455-1498


                                        -and-

                                        Lewis S. Kahn
                                        1100 Poydras Street, Suite 3200
                                        New Orleans, LA 70163
                                        Telephone: (504) 455-1400
                                        Facsimile: (504) 455-1498

                                        *Counsel for Lead Plaintiff Movant Tranquil Bay,*
                                        *LLC and Proposed Lead Counsel for the Class*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 15, 2020 I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all

CM/ECF participants. I further certify that I mailed the foregoing document and the notice of

electronic filing via U.S. first-class mail to any non-CM/ECF participants.


                                        */s/ Kim E. Miller*
                                        Kim E. Miller


15