**KAHN SWICK & FOTI, LLC**
Kim E. Miller (NY-6996)
250 Park Avenue, Suite 2040
New York, NY 10177
Telephone: (212) 696-3730
Facsimile: (504) 455-1498
kim.miller@ksfcounsel.com

-and-

Lewis S. Kahn
1100 Poydras Street, Suite 3200
New Orleans, LA 70163
Telephone: (504) 455-1400
Facsimile: (504) 455-1498
lewis.kahn@ksfcounsel.com

*Counsel for Lead Plaintiff Movant Tranquil Bay, LLC
and Proposed Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEAN LEE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> IQIYI, INC., YU GONG, and XIAODONG WANG, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) <br> Case No. 20-CV-01830-LAH-JO |

(related case caption continued below)

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF
TRANQUIL BAY, LLC TO BE APPOINTED LEAD PLAINTIFF TO APPROVE
PROPOSED LEAD PLAINTIFF'S CHOICE OF COUNSEL AND IN
OPPOSITION TO THE COMPETING MOTIONS**

LE RIVAGE LLC, Individually and On Behalf of
All Others Similarly Situated,

                    Plaintiff,

     v.

IQIYI, INC., YU GONG, and XIAODONG
WANG,

                  Defendants.

Case No. 20-CV-02653-ENV-VMS

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 3

   I.   No Presumption Attaches to Le Rivage ............................................................... 3

      A.  Le Rivage's Eleventh-Hour Gamesmanship Demonstrates its Inadequacy .................... 5

      B.  Le Rivage Does Not Allege a Plausible Partial Corrective Disclosure ........................... 6

   II.   Any Presumption In Favor of the Hershberger/Gereige Group is Rebutted ....................... 7

      A.  The Hershberger/Gereige Group is Lawyer-Driven and Not Cohesive ........................... 8

      B.  Hershberger Sustained No Losses Under *Dura* and Profited from
         the Alleged Fraud ..................................................................................... 9

      C.  Gereige's Misrepresentations to Maryland State Board Resulted
         in the 2019 Surrender of His Medical License and Call into Doubt
         His Credibility and Integrity .......................................................................... 9

   III.   Tranquil Bay Should Be Appointed Lead Plaintiff ........................................................ 10

      A.  Tranquil Bay Satisfies the Typicality Requirement ....................................................... 10

      B.  Tranquil Bay Satisfies the Adequacy Requirement ....................................................... 11

      C.  Tranquil Bay's Selection of Counsel Should Be Approved ............................................ 11

CONCLUSION ..................................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Bensley v. FalconStor Software, Inc.*,
277 F.R.D. 231 (E.D.N.Y. 2011) ........................................................................................ 6

*Christian v. BT Grp. PLC*,
No. 17-CV-0497, 2017 U.S. Dist. LEXIS 138063 (D.N.J. Aug. 28, 2017) .............................. 9

*Dura Pharm., Inc. v. Broudo*,
544 U.S. 336, 125 S. Ct. 1627 (2005) ............................................................................. 1, 9

*Gutman v. Sillerman*,
No. 15-CV-7192, 2015 U.S. Dist. LEXIS 179553 (S.D.N.Y. Dec. 8, 2015) ............................ 6

*In re Comverse Tech., Inc. Sec. Litig.*,
No. 06-CV-1825, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ........................ 5, 6

*In re SolarCity Corp. Sec. Litig.*,
No. 16-CV-04686, 2017 U.S. Dist. LEXIS 11553 (N.D. Cal. Jan. 25, 2017) .......................... 1

*Khunt v. Alibaba Grp. Holding Ltd.*,
102 F. Supp. 3d 523 (S.D.N.Y. 2015) ................................................................................. 1

*Maliarov v. Eros Int'l PLC*,
No. 15-CV-8956, 2016 U.S. Dist. LEXIS 46082 (S.D.N.Y. Apr. 5, 2016) ......................... 5, 6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*,
229 F.R.D. 395 (S.D.N.Y. 2004) ...................................................................................... 10

*Plaut v. The Goldman Sachs Grp., Inc.*,
No. 18-CV-12084, 2019 U.S. Dist. LEXIS 160255 (S.D.N.Y. Sep. 19, 2019) ....................... 6

*Rossini v. Ogilvy & Mather, Inc.*,
798 F.2d 590 (2d Cir. 1986) ............................................................................................ 10

*Tan v. NIO Inc.*,
No. 19-CV-1424, 2020 U.S. Dist. LEXIS 36623  (E.D.N.Y. Mar. 3, 2020) ........................... 8

*Tellabs, Inc. v. Makor Issues & Rights*,
551 U.S. 308 (2007) ......................................................................................................... 8

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015) ........................................................................... 6, 7, 9

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008) ................................................................................. 8

**Statutes**

15 U.S.C. § 77z-1 .................................................................................................... passim

15 U.S.C. § 78u-4 .................................................................................................... passim

**INTRODUCTION**

Lead Plaintiff Movant Tranquil Bay, LLC ("Tranquil Bay") respectfully submits that its motion for appointment as Lead Plaintiff and approval of its selection of Lead Counsel, Kahn Swick & Foti, LLC ("KSF") should be granted. After an 'apples-to-apples' comparison of losses on a 'Last-In, First-Out' basis excluding 'in-and-outs', as required under *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-43 (2005), Tranquil Bay has the second largest financial interest in the litigation after the Hershberger/Gereige Group (consisting of Ronald Hershberger ("Hershberger") and Robert J. Gereige, MD ("Gereige")).[1]

While Le Rivage LLC ("Le Rivage") appears on its face to be the presumptive lead plaintiff by asserting a loss of $5,026,299.86, the entirety of that loss is predicated on an implausible partial corrective disclosure alleged for the first time in a complaint it filed mere hours before expiration of the deadline to file motions for appointment. In truth, Le Rivage did not sustain any *Dura* losses attributable to Defendants' alleged fraud, but instead *gained* $250,000.00 by selling 50,000 ADSs while they were artificially inflated from the alleged fraud. *See* Suppl. Miller Decl., Exhibit C (Conformed Loss Charts) at 1. Any presumption in favor of Le Rivage is rebutted because its eleventh-hour complaint frustrates the fundamental purpose of the PSLRA and impugns its adequacy. The Court should not countenance such gamesmanship.

---

[1] While preparing this opposition, counsel discovered two clerical errors in Tranquil Bay's Certification and Loss Chart. These immaterial errors resulted in incorrect prices for two sales on 12/31/18, but had no impact on Tranquil Bay's LIFO/*Dura* loss. Jason Tzung Lee, Manager for Tranquil Bay, submits herewith an Amended Certification and Updated Loss Chart to reflect Tranquil Bay's correction of the errors. *See* Supplemental Declaration of Kim E. Miller in Further Support of Tranquil Bay's Motion and in Opposition to the Competing Motions ("Suppl. Miller Decl."), Exhibit A (Amended Certification) and Exhibit B (Updated Loss Chart); *see also In re SolarCity Corp. Sec. Litig.*, No. 16-CV-04686, 2017 U.S. Dist. LEXIS 11553, at *18-19 (N.D. Cal. Jan. 25, 2017) ("[T]he error made when transferring stock prices from Plaintiff's brokerage account to Fish's motion was clearly an inadvertent error that will not "infect the claims of the class as a whole.") (quoting *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 538-39 (S.D.N.Y. 2015)).

1

Next, any presumption in favor of the only movant with greater losses than Tranquil Bay, the Hershberger/Gereige Group, is rebutted due to the facts that: (1) it is in an improper, lawyer-driven group of unrelated investors with no pre-existing relationship that lacks cohesion; (2) Hershberger incurred no *Dura* losses under any of the complaints filed before the June 15, 2020 deadline for lead plaintiff motions; and (3) the circumstances surrounding Gereige's recent surrender of his license to practice medicine in the State of Maryland undermine his credibility and integrity and raise unique defenses. *See* Suppl. Miller Decl., Exhibit D (3/1/19 Gereige Letter of Surrender). As discussed herein, Gereige's misrepresentation to the Maryland State Board of Physicians that he had completed the Criminal History Records Check ("CHRC") when submitting his 2018 license renewal application is proof of his inadequacy. Because Tranquil Bay rebuts the presumption that the Hershberger/Gereige Group is the "most adequate plaintiff" to represent the interests of the putative Class herein, that presumption shifts to Tranquil Bay. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). Finally, because the presumption in favor of Tranquil Bay cannot be rebutted, it should be appointed Lead Plaintiff.

Tranquil Bay's analysis of the relevant competing movants' losses is set forth in the chart below[2]:

---

[2] Lead Plaintiff Movants Wing Yiu Chan, Hung Truong, The Chiha and Shah Family Group, and The IQ Investor Group have filed notices of non-opposition in this matter. *See* Dkt. Nos. 42, 43, 44, 45. The claimed losses of all remaining lead plaintiff movants are smaller than the losses of Tranquil Bay, LLC. *See Opponent Loss Charts at* Dkt. Nos. 18-2, 28-3, and 40-1.

| MOVANT: | ASSERTED LOSS: | LIFO/*DURA* LOSS BASED ON ALL COMPLAINTS FILED PRIOR TO 6/15/20: | LIFO/*DURA* LOSS BASED ON *LE RIVAGE* COMPLAINT WITH IMPLAUSIBLE PARTIAL DISCLOSURE: |
|---|---|---|---|
| Le Rivage LLC (Dkt. No. 33) | $5,026,299.86 | $0.00 ($250,000.00 *gain*) | $4,926,300.16 |
| Ronald Hershberger & Robert J. Gereige, MD (Dkt. No. 25) | $989,139.68 (Hershberger); $970,497.51 (Gereige) | $0.00 ($1,864.12 g*ain*) (Hershberger); $970,497.51 (Gereige) | $850,735.88 (Hershberger); $970,497.51 (Gereige) |
| Tranquil Bay, LLC (Dkt. No. 10) | $556,130.48 | $556,130.48 | $845,699.58 |

*See* generally Suppl. Miller Decl., Ex. C.

## **ARGUMENT**

### I.    NO PRESUMPTION ATTACHES TO LE RIVAGE

Three complaints against iQIYI, Inc. ("iQIYI" or the "Company") and related Defendants were filed between April 16 and April 27, 2020, all alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder, on behalf of purchasers of iQIYI's securities for the period of March 29, 2018 through April 7, 2020, inclusive (the "Class Period"). *See Jean Lee, et al, v. iQIYI, Inc., et al.*, No. 20-CV-01830 (E.D.N.Y. Apr. 16, 2020) (the "*Lee* Complaint"); *Sintayehu Shiferaw, et al., v. iQIYI, Inc., et al.,* No. 20-CV-03115 (S.D.N.Y. Apr. 17, 2020) (the "*Shiferaw* Complaint");[3] *Thomas Jenkins, et al., v. iQIYI, Inc., et al.*, No. 20-CV-02882 (N.D. Cal. Apr. 27, 2020) (the "*Jenkins* Complaint")[4]. The *Lee* Complaint alleges that, throughout the Class Period, Defendants made materially false

---

[3] On June 15, 2020, plaintiff Sintayehu Shiferaw filed a notice voluntarily dismissing the *Shiferaw* Complaint. *See Shiferaw*, Dkt. No. 17. The Honorable Denise Cote, United States District Judge for the Southern District of New York, entered a corresponding order of dismissal the same day. *See Shiferaw*, Dkt. No. 18.

[4] An unopposed motion to transfer the *Jenkins* Action to this District is currently pending in the Northern District of California. *See Thomas Jenkins, et al., v. iQIYI, Inc., et al.*, No. 20-CV-02882, Dkt. Nos. 13, 54.

and/or misleading statements and/or failed to disclose that: "(1) iQIYI inflated its revenue figures; (2) iQIYI inflated its user numbers; (3) iQIYI inflated its expenses to cover up other fraud; and (4) as a result, Defendants' public statements were materially false and misleading at all relevant times." *Lee* Complaint at ¶ 34; *see also Shiferaw* Complaint at ¶ 34; *Jenkins* Complaint at ¶ 59. Each of the three complaints alleges, moreover, that the truth regarding Defendants' fraud was first revealed to the market on April 7, 2020 when third party Wolfpack Research published a report detailing, *inter alia*, how Defendants grossly overstated iQIYI's revenues. *See Lee* Complaint at ¶ 35-43; *Shiferaw* Complaint at ¶ 37-41; *Jenkins* Complaint at ¶ 60-63.

Thereafter, mere hours before expiration of the June 15, 2020 deadline to file motions for appointment, plaintiff Le Rivage LLC ("Le Rivage") filed a new complaint in this District. *See Le Rivage, LLC, et al., v. iQIYI, Inc., et al.*, No. 20-CV-02653 (E.D.N.Y. June 15, 2020) (the "*Le Rivage* Complaint"). Unlike the earlier-filed complaints, the *Le Rivage* Complaint alleges a new, partial corrective disclosure on October 30, 2018, "when iQIYI stated it had "cleaned up some not so healthy advertisements on the in-feed side."" *Le Rivage* Complaint at ¶¶ 3, 25. Despite the fact that none of the three previously filed complaints alleged the foregoing statement as a partial corrective disclosure, Le Rivage sought fit to file a new complaint alleging as much just hours before the deadline to file motions for appointment expired.

An analysis of Le Rivage's purported "losses" suggests a reason for having done so. While Le Rivage purchased 325,000 ADSs during the Class Period, it sold *all* those ADSs by December 18, 2018, more than fourteen months before the truth regarding Defendants' alleged fraud was first revealed to the market. *See* Dkt. No. 39-3. Thus, under the earlier-filed complaints, Le Rivage has no loss under the Supreme Court's controlling precedent in *Dura*. Faced with these circumstances, Le Rivage filed its complaint alleging an implausible additional partial disclosure more than a year

before the truth was actually revealed to the market. Without the new pleading and its implausible and illusory new alleged disclosure, none of Le Rivage's losses would even arguably be recoverable under *Dura. See, e.g.*, *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825, 2007 U.S. Dist. LEXIS 14878, at *16-20 (E.D.N.Y. Mar. 2, 2007) (observing that "the court would be abdicating its responsibility under the PSLRA if it were to ignore…[loss causation] at this [lead plaintiff] stage," and that "[t]he exclusion of in-and-out shares follows directly from the underlying holding in *Dura*").

### A.    Le Rivage's Eleventh-Hour Gamesmanship Demonstrates its Inadequacy

Le Rivage's gamesmanship is not without precedent. Courts in this Circuit have consistently expressed their disinclination "to encourage lead plaintiff movants to file complaints with additional disclosure allegations in the eleventh hour, thereby precluding similarly-situated potential movants from identifying themselves to the Court." *Maliarov v. Eros Int'l PLC*, No. 15-CV-8956, 2016 U.S. Dist. LEXIS 46082, at *12 (S.D.N.Y. Apr. 5, 2016). In *Eros*, as here, the movant in question "filed his lawsuit alleging [a partial disclosure]…on the last day for potential class members to file a lead plaintiff motion." *Id.* at *11. "Until that time, the various suits against Eros alleged an initial disclosure date of October 30, 2015. As a result, the other lead plaintiff movants "filed their motions to serve as lead plaintiff in reliance on the [c]omplaint[s]" that had been filed up to that date." *Id.* at *11-12 (internal citations omitted).[5] The court in *Eros* concluded "[t]he specter of gamesmanship on these facts causes the Court to question whether Popi will

---

[5] Because the *Le Rivage* Complaint was filed (at 9:58 p.m. EST) just hours before the lead plaintiff motion deadline, neither Tranquil Bay nor any other competing movants had any opportunity to address it in their opening motions. Indeed, Le Rivage Manager Marc Loven did not certify the *Le Rivage* Complaint until June 15, 2020, further suggesting it was hastily prepared to be filed in the eleventh-hour in order to manufacture a *Dura* loss and undermine the statutory process set forth in the PSLRA. *See Le Rivage*, Dkt. No. 1-1.

"fairly and adequately protect the interests of the class."" *Id.* at \*12 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)). Similarly, in *Plaut v. The Goldman Sachs Grp., Inc.*, No. 18-CV-12084, 2019 U.S. Dist. LEXIS 160255, at \*14 (S.D.N.Y. Sep. 19, 2019), the court found lead plaintiff movant Meitav's "amended complaint appears to be an attempt by Meitav's counsel to include in its loss calculation certain in-and-out transactions that occurred before the first corrective disclosure alleged in the original complaint." Because a "principal purpose of the PSLRA was to prevent just the kind of gamesmanship in which [Meitav] and its counsel have engaged here," the court found "it would be inappropriate to select Meitav as lead plaintiff." *Id.* at \*15 (quoting *Gutman v. Sillerman*, No. 15-CV-7192, 2015 U.S. Dist. LEXIS 179553, at \*9 (S.D.N.Y. Dec. 8, 2015)). The result should be the same here.

**B.      Le Rivage Does Not Allege a Plausible Partial Corrective Disclosure**

Le Rivage's purported partial corrective disclosure "did not necessarily shed light on prior misstatements by [Defendants] or reveal the prior occurrence of fraud." *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 621 (S.D.N.Y. 2015). Le Rivage makes no attempt to explain how the October 30, 2018 statement partially revealed anything about the alleged misrepresentations. In sharp contrast, the *Le Rivage* Complaint details how the April 7, 2020 corrective disclosure alleged consistently in all the previously filed complaints revealed the falsity of Defendants' prior misrepresentations. *See Le Rivage* Complaint at ¶¶ 40-47.

In *Topping*, the court considered a lead plaintiff movant's subsequently filed "Corrected Complaint" alleging a novel, partial corrective disclosure. 95 F. Supp. 3d at 681. There, the court determined the supposed disclosure "included no details that would have informed shareholders about fraudulent activities at the Company," and therefore did "not constitute a partial disclosure. *Id.* at 621-22 (citing *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 239-40 (E.D.N.Y. 2011)); *see also In re Comverse*, 2007 U.S. Dist. LEXIS 14878, at \*19 ("[I]t would be unfair to

speculate that [a movant] will ultimately be able to demonstrate loss causation for its in-and-out transactions, despite its patent failure to allege facts in support thereof."). Thus, because the lead plaintiff movant there, like Le Rivage here, "sold all its [] shares prior to any corrective disclosure," the court determined it did not have the greatest financial interest. *Id.* at 622. Moreover, the court noted that while the movant "fail[ed] in its ability to demonstrate the greatest financial interest, the Court also observe[d] that [its] status as an in-and-out trader would render it an inappropriate lead plaintiff under the third prong of the PSLRA's evaluation of a potential lead plaintiff: that it otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* at 622 n.16. (citations omitted).

## II. ANY PRESUMPTION IN FAVOR OF THE HERSHBERGER/GEREIGE GROUP IS REBUTTED

As demonstrated in the Conformed Loss Charts submitted herewith, *see* Suppl. Miller Decl., Ex. C, the only movant with a greater financial interest in the litigation than Tranquil Bay is the Hershberger/Gereige Group. Pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) and 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II), however, the "presumption that the most adequate plaintiff…is the person or group of persons that…has the largest financial interest in the relief sought by the class" can rebutted upon a showing "that the presumptively most adequate plaintiff…will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." Here, any presumption in favor of the Hershberger/Gereige Group is rebutted because: (1) it is in an improper, lawyer-driven group of unrelated investors; (2) Hershberger did not sustain any recoverable losses under *Dura* because he sold all his shares prior to the revelation of the true facts; and (3) Gereige's credibility and integrity have been called into serious question very recently in connection with a material misrepresentation that resulted in the surrender of his medical license.

### A.      The Hershberger/Gereige Group is Lawyer-Driven and Not Cohesive

Here, the Hershberger/Gereige Group is a lawyer-driven group that is not cohesive. Such groups contravene the PSLRA's fundamental purpose, which is to place control of securities litigation in the hands of investors that will competently oversee counsel. In enacting the PSLRA, Congress's stated intent was to curb "lawyer-driven litigation." *Tellabs, Inc. v. Makor Issues & Rights*, 551 U.S. 308, 322 (2007). While Gereige and Hershberger submit a perfunctory 'Joint Declaration' attesting "to make all efforts…to reach consensus with respect to all litigation decisions," *see* Dkt. No. 25-6, that Joint Declaration "does not describe how or why the group was formed, how its members will work together to manage the litigation, whether a pre-litigation relationship existed between its members, or any other information about how such aggregation would benefit the class." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 394 (S.D.N.Y. 2008). "Such a meager evidentiary showing cannot satisfy the Court that [a group] has adequately demonstrated that its members will act collectively and separately from their lawyers." *Id.* The fact that Gereige and Hershberger participated in a single conference call on June 13, 2020 (just two days prior to the deadline for filing motions for appointment), furthermore, is insufficient evidence of their cooperation. *See* Dkt. No. 25-6 at ¶ 6; *see, e.g.*, *Tan v. NIO Inc.*, No. 19-CV-1424, 2020 U.S. Dist. LEXIS 36623, at *13-14 (E.D.N.Y. Mar. 3, 2020) (finding a joint declaration that was "entirely silent as to any pre-litigation relationship" and only "refer[red] to a group conference call" with "no indication that any of the group's members…had communicated with one another prior to that," insufficient).

If the Court determines the Hershberger/Gereige Group may not aggregate loses for the purposes of seeking appointment as a group, it may nevertheless consider "the largest shareholder of the [] [g]roup, individually, as if he had moved to be appointed as lead plaintiff alone." *Varghese*, 589 F. Supp. 2d at 394. When considered individually, however, Hershberger has no

8

*Dura* loss at all and Gereige has credibility problems that undermine his adequacy and typicality and subject him to unique defenses.

**B.     Hershberger Sustained No Losses Under *Dura* and Profited from the Alleged Fraud**

As evidenced in the Conformed Loss Charts submitted herewith, while Hershberger asserts losses of $989,139.68, in reality, the vast majority of his losses are attributable 'in-and-out' transactions which are not recoverable under *Dura*. After accounting for the significant profits Hershberger made selling ADSs and call options during the Class Period, moreover, he actually netted approximately $1,864.12. *See* Suppl. Miller Decl., Ex. C. Losses on "in-and-out" transactions should be excluded from calculations of financial interest under *Dura*, 544 U.S. at 342-43. *See, e.g.*, *Christian v. BT Grp. PLC*, No. 17-CV-0497, 2017 U.S. Dist. LEXIS 138063, at *18 (D.N.J. Aug. 28, 2017) ("[W]hen calculating movants' financial interests on a lead plaintiff motion, courts should not include losses resulting from 'in-and-out' transactions, which took place during the class period, but before the misconduct identified in the complaint was ever revealed to the public."). As discussed *supra*, Hershberger's "status as an in-and-out trader would render it an inappropriate lead plaintiff…." *Topping*, 95 F. Supp. 3d at 622 n.6.[6]

**C.     Gereige's Misrepresentations to Maryland State Board Resulted in the 2019 Surrender of His Medical License and Call into Doubt His Credibility and Integrity**

Even more troubling are the circumstances surrounding Gereige's March 1, 2019 surrender of his license to practice medicine in the State of Maryland. *See* Suppl. Miller Decl., Ex. D. As addressed in the letter of surrender, Gereige misrepresented to the Maryland State Board of Physicians that he had completed the Criminal History Records Check ("CHRC") when

---

[6] The only circumstance in which Hershberger could arguably have any *Dura* loss would be if the Le Rivage Complaint's implausible and illusory disclosure is counted as a partial disclosure. For the reasons described herein *infra* at Section I, it should not be.

completing his 2018 license renewal application. In order to avoid "the issuance of charges and prosecution of the aforementioned allegations," Gereige instead opted to surrender his medical license. *Id.* "[H]onesty and trustworthiness are relevant factors in assessing a candidate's ability to serve as an adequate fiduciary for a class." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. LaBranche & Co.*, 229 F.R.D. 395, 416 (S.D.N.Y. 2004). Gereige's material misrepresentations to a state licensing board render him inadequate and raise a unique defense.

### III.    TRANQUIL BAY SHOULD BE APPOINTED LEAD PLAINTIFF

Having rebutted any presumption in favor of the Hershberger/Gereige Group, Tranquil Bay is the movant with the greatest financial interest who otherwise satisfies the Requirements of Rule 23, and thus is the presumptively most adequate plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). Because the presumption in favor of Tranquil Bay cannot be rebutted, furthermore, Tranquil Bay should be appointed Lead Plaintiff.

#### A.    Tranquil Bay Satisfies the Typicality Requirement

The typicality requirement of Rule 23(a)(3) is satisfied when the representative plaintiffs' claims arise from the same event or course of conduct that gives rise to claims of other class members, and when the claims are based on the same legal theory. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Here, Tranquil Bay's claims are identical, non-competing, and non-conflicting with the claims of the other Class members. Tranquil Bay and all the other Class Members: (1) purchased iQIYI securities during the Class Period; (2) relied upon the allegedly materially false and misleading statements issued by Defendants when purchasing said iQIYI securities; and (3) suffered damages by purchasing artificially inflated securities and then suffered harm when the truth was revealed and the inflation was removed from the unit price.

## B.    Tranquil Bay Satisfies the Adequacy Requirement

The adequacy requirement of Rule 23(a)(4) is met if no conflicts exist between the representative's interests and those of the class and the representative's attorneys are qualified, experienced, and generally able to conduct the litigation. As evidenced by the injuries suffered by Tranquil Bay, which purchased iQIYI securities at prices that were artificially inflated by Defendants' materially false and misleading statements and was harmed when the truth was revealed and the artificial inflation was removed from the price of those securities, its interests are clearly aligned with the members of the Class, and there is no evidence of any antagonism between Tranquil Bay's interests and those of the other members of the Class. Furthermore, Tranquil Bay has retained competent and experienced counsel to prosecute these claims. Tranquil Bay's proposed Lead Counsel is highly qualified, experienced, and able to conduct this complex litigation in a professional manner.

## C.    Tranquil Bay's Selection of Counsel Should Be Approved

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); 15 U.S.C. § 77z-1(a)(3)(B)(v). Here, Tranquil Bay has selected KSF to be Lead Counsel for the Class. As reflected in its firm resume, *see* Dkt. No. 12-5, KSF is more than qualified to work as Lead Counsel to prosecute the claims of the Class.

## CONCLUSION

For the foregoing reasons, Tranquil Bay respectfully requests the Court appoint it Lead Plaintiff, approve its selection of KSF as Lead Counsel for the Class, and deny all competing motions for appointment. Tranquil Bay does not oppose Le Rivage's motion for consolidation of related actions.

11

DATED: June 29, 2020                    Respectfully submitted,


                                        **KAHN SWICK & FOTI, LLC**

                                        */s/ Kim E. Miller*
                                        Kim E. Miller (NY-6996)
                                        250 Park Avenue, Suite 2040
                                        New York, NY 10177
                                        Telephone: (212) 696-3730
                                        Facsimile: (504) 455-1498


                                        -and-

                                        Lewis S. Kahn
                                        1100 Poydras Street, Suite 3200
                                        New Orleans, LA 70163
                                        Telephone: (504) 455-1400
                                        Facsimile: (504) 455-1498

                                        *Counsel for Lead Plaintiff Movant Tranquil Bay,*
                                        *LLC and Proposed Lead Counsel for the Class*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on June 29, 2020 I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all

CM/ECF participants. I further certify that I mailed the foregoing document and the notice of

electronic filing via U.S. first-class mail to any non-CM/ECF participants.


                                        */s/ Kim E. Miller*
                                        Kim E. Miller


12