**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEAN LEE, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:20-cv-01830-LDH-JO |
| Plaintiff, | Judge LaShann DeArcy Hall |
| v. | Magistrate Judge James Orenstein |
| IQIYI, INC., YU GONG, and XIAODONG WANG, | <u>CLASS ACTION</u> |
| Defendants. | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF RONALD L. HERSHBERGER AND ROBERT J. GEREIGE, MD FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF <u>CO-LEAD COUNSEL; AND IN OPPOSITION TO ALL COMPETING MOTIONS</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................................ 1

ARGUMENT ...................................................................................................................................... 3

I.    RIVAGE IS NOT ENTITLED TO THE MOST ADEQUATE PLAINTIFF
      PRESUMPTION ......................................................................................................................... 3

      A.    Rivage's Gamesmanship Is Contrary to the Purpose of the PSLRA and
            Should be Rejected ....................................................................................................... 3

      B.    Rivage Has Manufactured an Implausible Partial Disclosure ............................... 5

      C.    Rivage Possesses No Recoverable Losses Under the Operative Complaint .......... 9

II.   H&G ARE THE PRESUMPTIVE LEAD PLAINTIFF .................................................... 11

      A.    H&G Have the Largest Financial Interest ............................................................. 11

      B.    H&G Otherwise Satisfy Rule 23 .............................................................................. 12

III.  ALL COMPETING MOTIONS SHOULD BE DENIED ................................................. 13

CONCLUSION ................................................................................................................................. 13

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Bensley v. FalconStor Software, Inc.*,
   277 F.R.D. 231 (E.D.N.Y. 2011) ...............................................................................8, 10, 11

*In re BP, PLC Sec. Litig.*,
   758 F. Supp. 2d 428 (S.D. Tex. 2010) .................................................................................8

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) .............................................................................................13

*In re Cendant*,
   264 F.3d 201 (3d Cir. 2001).................................................................................................12

*In re Centerline Holding Co. Sec. Litig.*,
   No. 08 Civ. 505 (SAS), 2008 WL 1959799 (S.D.N.Y. May 5, 2008).................................7, 8

*City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't Inc.*,
   No. 20-cv-2031 (JSR), 2020 WL 2614703 (S.D.N.Y. May 22, 2020) .................................12

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG)(RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) .......................2, 9

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005).................................................................................................2, 9, 10

*Glavan v. Revolution Lighting Techs., Inc.*,
   No. 19-CV-980 JPO, 2019 WL 3406582 (S.D.N.Y. July 29, 2019) .........................................9

*Maliarov v. Eros Int'l PLC*,
   No. 15-CV-8956 (AJN), 2016 WL 1367246 (S.D.N.Y Apr. 5, 2016) .................................5, 8

*Nicolow v. Hewlett Packard Co.*,
   No. 12-05980 CRB, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) .............................................8

*In re Pfizer Inc. Sec. Litig.*,
   233 F.R.D. 334 (S.D.N.Y. 2005) ...........................................................................................4

*Plaut v. Goldman Sachs Grp., Inc.*,
   No. 18-CV-12084 (VSB), 2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) ..............................5

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
   256 F.R.D. 620 (E.D. Wis. 2009) ..........................................................................................8

*Porzio v. Overseas Shipholding Grp.*,
    No. 12 Civ. 7948, 2013 WL 407678 (S.D.N.Y. Feb. 1, 2013) .................................................10

*Sallustro v. CannaVest Corp.*,
    93 F. Supp. 3d 265 (S.D.N.Y. 2015)...................................................................................9, 10

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
    95 F. Supp. 3d 607 (S.D.N.Y. 2015)...............................................................................6, 8, 10

*Waldman v. Wachovia Corp.*,
    No. 08 Civ. 2913, 2009 WL 2950362 (S.D.N.Y. Sept. 14, 2009) ............................................4

**Rules & Statutes**

Fed. R. Civ. P. 23 ............................................................................................................. *passim*

15 U.S.C. § 78u-4, *et seq.* ................................................................................................. *passim*

**Other Authorities**

H.R. Conf. Rep. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ........................................3

Proposed Lead Plaintiff Ronald L. Hershberger and Robert J. Gereige, MD ("H&G")[1] respectfully submit this memorandum of law in further support of their motion for appointment as Lead Plaintiff and approval of Labaton Sucharow and Rosen Law as Co-Lead Counsel for the Class (ECF No. 25); and in opposition to all competing movants.[2]

## PRELIMINARY STATEMENT

H&G, two likeminded investors with substantial investing experience, have the largest cognizable financial interest in this litigation and readily satisfy the adequacy and typicality requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See generally*, Joint Declaration, ECF No. 25-6; 15 U.S.C. § 78u-4(a)(3)(B).  Indeed, out of all movants claiming a recoverable loss in this Action, H&G have claimed the largest financial interest under any objective metric.  Because H&G have also made the requisite *prima facie* showing of typicality and adequacy, H&G are entitled to the strong presumption as the "most adequate plaintiff"—a presumption that can only be rebutted upon "***proof***" that H&G will not fairly and adequately represent the Class.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii).  There are no facts, let alone "***proof***," suggesting that H&G are somehow unfit to represent investors in this case.

---

[1]  Unless otherwise noted, all defined terms and abbreviations remain unchanged from Hershberger & Gereige's previous submissions before this Court.  *See* ECF Nos. 25, 25-1. Unless otherwise noted, emphasis has been added throughout.

[2]  In addition to H&G, the following movants filed motions for appointment as Lead Plaintiff on June 15, 2020: (i) Le Rivage LLC ("Rivage") (ECF No. 33); (ii) Tranquil Bay, LLC ("Tranquil Bay") (ECF No. 10); (iii) Glenn Wenger, Safari Enterprises, Inc., and Young K. Han ("Wenger Group") (ECF No. 19); (iv) Coliving Costa Blanca, Sociedad Limitad ("Cost Blanca") (ECF No. 26); (v) Antoine Chiha,  Dharti Shah, Hetal Shah, and Vinod and Pareesha Shah Irrevocable Trust ("Chiha Group") (ECF No. 13); (vi) Dae Kim ("Kim") (ECF No. 16); (vii) Wing Yiu Chan ("Chan") (ECF No. 32); (viii) Hung Truong ("Truong") (ECF No. 29); and (ix) Sugumar Ariathurai, Thomas Jenkins ("Ariathurai Group") (ECF No. 37).  Thereafter, Truong, the Chiha Group, Kim, and the Wegner Group filed notices of non-opposition to the competing motions.  *See* ECF Nos. 43-46.

While one other competing lead plaintiff movant, Rivage, claims to have a larger financial interest in this litigation, its recognizable losses under the federal securities laws are in fact *zero*. Specifically, because Rivage liquidated its *entire* position in iQIYI securities in December 2018, *sixteen months* before the April 7, 2020 disclosure of fraud in the operative complaint, it lacks a cognizable financial interest. *See* Certification of Rivage, ECF No. 39-2. To remedy this fatal issue, on June 15, 2020—less than two hours before the lead plaintiff deadline—Rivage filed its own complaint alleging a partial disclosure of fraud in October 2018. *See Le Rivage LLC  v. iQIYI, Inc*, No. 20-cv-02653 (S.D.N.Y.), ECF No. 1 (hereinafter, "*Rivage* Complaint"). This partial disclosure, which is implausibly pled, is a transparent attempt to transform Rivage's unrelated trading losses into a cognizable financial interest. Notably, Rivage's Certification submitted in this Action is also dated June 15, 2020. Therefore, the *Rivage* Complaint was filed on the cusp of the deadline in a hasty and obvious attempt to manufacture loss causation.

This self-interested conduct, as well as Rivage's unresolvable trading issues, mandates the denial of its motion. *First*, Rivage's gamesmanship, standing alone, evinces its lack of adequacy to represent the Class and mandates denial of its motion. *Second*, and more troubling still, the token partial disclosure alleged in the *Rivage* Complaint is implausibly pled, and in fact contrary to the theory of fraud in the operative complaint. *Finally*, by eliminating all trading losses suffered prior to the first alleged disclosure of fraud, Rivage has failed to establish *cognizable losses* under the Supreme Court's decision in *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005), and subsequent PSLRA lead plaintiff jurisprudence. *See In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG)(RER), 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007).

2

The remaining lead plaintiff applications fail because each movant has significantly smaller losses than H&G and cannot show that H&G would not otherwise be qualified under Rule 23.  Pursuant to the standards established by the PSLRA, H&G should therefore be appointed Lead Plaintiff, and their selected counsel, Labaton Sucharow and Rosen Law, chosen as Co-Lead Counsel.

## ARGUMENT

### I. RIVAGE IS NOT ENTITLED TO THE MOST ADEQUATE PLAINTIFF PRESUMPTION

While Rivage may seem well-positioned to argue that it has the largest financial interest in the outcome of the Action, and therefore entitled to the presumption of "most adequate plaintiff," this is not the case.  For several, equally compelling reasons, Rivage's motion should be denied.

#### A. Rivage's Gamesmanship Is Contrary to the Purpose of the PSLRA and Should be Rejected

The *Rivage* Complaint, filed mere hours before the lead plaintiff deadline, is pure attorney-driven gamesmanship, and should be rejected as contrary to the PSLRA.  In enacting the PSLRA, Congress sought to eliminate "lawyer-driven" litigation.  H.R. Conf. Rep. 104-369, at 32–35 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730.  This included the requirement that following the filing of a complaint, "the plaintiff . . . shall cause to be published . . . a notice advising members of the purported plaintiff class" as to: (i) "of the pendency of the action, the claims asserted therein, and the purported class period;" and (ii) "that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class."  15 U.S.C. § 78u-4(a)(3)(A)(i).  Prior to the PSLRA, class leadership had instead been decided on a "first-come-first-serve" basis, thus encouraging a "race to the courthouse."  H.R. Conf. Rep. 104-369, at 32–35 (1995), *reprinted in*

3

1995 U.S.C.C.A.N. 730.  In passing the PSLRA, Congress determined that "the selection of the lead plaintiff and lead counsel should rest on considerations other than how quickly a plaintiff has filed its complaint," instead requiring the district courts to appoint the "most adequate plaintiff," out of all timely movants.  *Id.*

Here, by hastily filing a complaint on the eve of the deadline in hope of increasing its chance of appointment, Rivage has invoked the same "lawyer-driven" gamesmanship that the PSLRA was enacted to prevent.[3]  Indeed, because the Certification submitted in connection with Rivage's motion is also dated June 15, 2020, it appears that Rivage retained its counsel the day of the deadline, who promptly rushed to file a complaint to manufacture Rivage's then non-existent loss causation.  Tellingly, out of all ten lead plaintiff applicants, Rivage was the ***only*** movant to request consolidation of its case filed abruptly on the eve of the deadline.  No other motion so much as referenced Rivage's complaint, let alone its manufactured partial disclosure.  Such manipulative filing practices have been sternly rejected in the past, and H&G respectfully request the Court likewise decline to condone such gamesmanship here.  Consequently, Rivage's conduct should bar consideration of its complaint at this stage in the litigation, as well as its lead plaintiff candidacy.

---

[3]  As a threshold matter, Rivage's eleventh-hour filing improperly precluded other members of the Class with shares held over the new alleged corrective disclosure "reasonable opportunity to identify themselves and present themselves for the Court's consideration." *Waldman v. Wachovia Corp.*, No. 08 Civ. 2913, 2009 WL 2950362, at *1 (S.D.N.Y. Sept. 14, 2009); *see also Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 620 (S.D.N.Y. 2015) (rejecting amended complaint with additional partial disclosure where "other class members besides [movant] . . . would be precluded from filing [lead plaintiff] motions given the expiration of the PSLRA's time limit for doing so"); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (rejecting alternative class period where "many—perhaps thousands—more potential class members who were not apprised of their right to move to be appointed lead plaintiff").

4

Indeed, under *identical* circumstances, Judge Nathan denied a lead plaintiff applicant in *Maliarov v. Eros International PLC*, No. 15-CV-8956 (AJN), 2016 WL 1367246 (S.D.N.Y Apr. 5, 2016). There, the movant purporting to have the largest financial interest "filed [a] lawsuit alleging [an additional partial disclosure] on the *last day* for potential class members to file a lead plaintiff motion." *Id.* at *4. Had the movant not pled this earlier disclosure, it would have lacked actionable damages, as it had liquidated its holdings in the defendant company prior to any disclosures in the operative complaint. *Id.* at *3. In her opinion, Judge Nathan was "*hesitant to encourage lead plaintiff movants to file complaints with additional disclosure allegations in the eleventh hour, thereby precluding similarly-situated potential movants from identifying themselves to the Court*." *Id.* at *4. Therefore, this "*specter of gamesmanship* . . . cause[d] [Judge Nathan] to question whether [the movant would] 'fairly and adequately protect the interests of the class.'" *Id.* (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)). Because the movant in question was, unlike all other movants, solely reliant on this questionable disclosure to establish cognizable losses, Judge Nathan "decline[d] to appoint him as lead plaintiff." *Id.*

A "principal purpose of the PSLRA was to prevent just the kind of gamesmanship in which [Rivage] and its counsel have engaged here." *Plaut v. Goldman Sachs Grp., Inc.*, No. 18-CV-12084 (VSB), 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (citation omitted). To this end, rewarding such lawyerly tactics would only erode longstanding PSLRA notice principles by providing a roadmap for counsel to increase their chances of appointment through unnoticed, final-day filings. Rivage's complaint should not be credited, and its motion denied.

### B.    Rivage Has Manufactured an Implausible Partial Disclosure

Given the timing, it is not surprising that there are *no facts* to support the conclusory October 30, 2018 disclosure, evidencing what was *at best* a questionable investigation leading to

5

the filing of the *Rivage* Complaint.  With no plausible factual basis, Rivage alleges in its complaint that "that the Company's advertising growth rate was overstated" from May 29, 2018 through October 29, 2018.  *Rivage* Complaint ¶¶ 21-24.  This fraud was revealed, according to the *Rivage* Complaint, when Defendants disclosed on October 30, 2018, that they had "cleaned up some not so healthy advertisements on the in-feed side" on concerns that certain customers lacked "accelerated licenses to put their ads on the internet." *Id.* ¶ 25.  This disclosure purportedly caused the price of iQIYI ADSs to fall by approximately 12 percent on October 31, 2018.[4] *See id.* ¶ 26.  For the reasons discussed herein, as pled, this disclosure is terminally implausible.

The *Rivage* Complaint pleads no meaningful false and misleading statements, let alone a coherent theory, to establish the October 31, 2018, decline in the price of iQIYI ADSs as the revelation of overstated advertising growth.  Instead, Rivage relies solely upon historical financial results contained in the Company's Registration Statement and Prospectus to establish its token disclosure of fraud.  While these results include iQIYI's advertising growth in the years leading up to the Company's IPO, including the growth of its in-feed advertising, Rivage makes *no effort* to explain how the cautionary removal of certain in-feed advertising customers on licensing concerns, seven months after the IPO, was a disclosure of fraudulently overstated growth.  *See Topping*, 95 F. Supp. 3d at 621 (rejecting partial disclosure at lead plaintiff stage as it failed to "reveal[] to the market that [the] defendant's prior statements were not entirely true or accurate").  Instead, Rivage requests that the Court and the Class take a blind leap of faith in believing that simply because the Company had previously referred to historical advertising

---

[4] iQIYI's stock price *completely recovered* the following trading day.

growth figures, that the subsequent and voluntary removal of certain in-feed customers was a revelation of fraud.

Moreover, this implausibly pled disclosure goes so far as to contradict the broader theory of fraud advanced in the operative complaint, and copied verbatim in the *Rivage* Complaint:

> On April 7, 2020, during market hours, Wolfpack Research released a report (the "Report") detailing, among other things, how iQIYI had misled investors and failed to disclose pertinent information generally and in its Registration Statement, including: (i) iQIYI overstating its user numbers; (ii) iQIYI inflating its revenues; (iii) iQIYI inflating expenses and prices of assets to conceal its revenue inflation; and (iv) iQIYI misleading financial reporting creating the appearance of a cash generative company.

ECF No. 1 ¶ 35; *Rivage* Complaint ¶ 40. According to both complaints, the Report revealed that iQIYI had been committing accounting fraud, including the inflation of advertising revenue, "***since well before its IPO in 2018 and has continued to do so ever since***." ECF No. 1 ¶ 36; *Rivage* Complaint ¶ 41. Yet if iQIYI had been fraudulently inflating its advertising revenues— directly attributable to advertising growth—throughout the entirety of the Class Period, how could the Company have revealed fraudulently inflated growth rates in 2018? Rivage has not even made a nominal effort to reconcile these two theories. Based on the foregoing, the alleged October 30, 2018, disclosure is not only implausible as pled, but irreconcilable notice pleading at its finest.

Drawing a parallel to the situation at hand, while some courts deem it appropriate to adopt the most expansive complaint at the lead plaintiff stage, they refuse to do so where, as here, the complaint fails to allege any facts that would support a plausible inference that the alleged partial disclosure revealed defendant's fraud. *See In re Centerline Holding Co. Sec. Litig.*, No. 08 Civ. 505 (SAS), 2008 WL 1959799, at *3 n.25 (S.D.N.Y. May 5, 2008) (rejecting class period wholly unsupported by any facts alleged in the complaints) (citing *Twombly*, 550

7

U.S. 544)); *see also Topping*, 95 F. Supp. 3d at 621 (declining to credit a corrective disclosure at the lead plaintiff stage where the alleged "announcement included no details that would have informed shareholders about fraudulent activities at the Company"); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 240 (E.D.N.Y. 2011) (same); *Eros Int'l PLC*, 2016 WL 1367246, at *3 (rejecting more expansive complaint because it did "not identify any particular communication partially disclosing allegations of fraud prior to October 30, 2015, but instead relies on unsupported allegations.").

The more reasoned approach adopts the most plausible class period in light of the complaint's allegations in order to safeguard against speculative arguments manufactured by counsel to gerrymander the financial interest analysis. *See, e.g.*, *Nicolow v. Hewlett Packard Co.*, No. 12-05980 CRB, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (refusing to engage in the "nonsensical exercise of calculating 'losses' occurring . . . before the fraud allegedly began."); *In re BP, PLC Sec. Litig.*, 758 F. Supp. 2d 428, 434 (S.D. Tex. 2010) ("there is a risk . . . to blindly accepting the longest class period without further inquiry, as potential lead plaintiffs would be encouraged to manipulate the class period so they had the largest financial interest."); *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009) (noting that courts should not "simply adopt[] the most inclusive class period [as it] might encourage unscrupulous movants to allege longer class periods in an effort to manipulate the lead plaintiff determination").

In this case, the Court should only utilize the April 7, 2020, corrective disclosure as alleged in above-captioned, operative complaint. While there may very well be some as-of-yet unalleged facts which justify alleging corrective disclosures prior to such date, Rivage simply pleads ***no facts*** that make its allegations plausible at this time. At bottom, Rivage's attempt to

8

manufacture a partial disclosure merely reflects its transparent effort to game the lead plaintiff appointment process and must be rejected.

### C.        Rivage Possesses No Recoverable Losses Under the Operative Complaint

Having established that the manufactured partial disclosure in the *Rivage* Complaint should not be considered, Rivage possesses no ***actionable*** losses under the operative complaint. While Rivage may have incurred approximately $5 million in trading losses, because it ***completely sold out*** of its position in iQIYI securities on December 18, 2018 (*See* Rivage Certification, ECF No. 39-2), ***none*** of these losses were caused by the April 7, 2020, stock drop—the only disclosure in the operative complaint.  Therefore, Rivage possesses ***no cognizable financial interest*** in the outcome of this litigation, warranting denial of its motion.

In securities class actions, plaintiffs cannot prevail merely by alleging economic loss; rather, they must demonstrate "loss causation" through a causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff.  *Dura Pharm.*, 544 U.S. 336.  The Supreme Court explained in *Dura*, "if, say, the purchaser sells the shares quickly before the relevant truth begins to leak out, the misrepresentation will not have led to any loss." *Id.* at 342.  Moreover, while "the *Dura* Court decided a motion to dismiss, and not a lead plaintiff motion, the logical outgrowth of that holding is that any such losses must not be considered in the recoverable losses calculation that courts engage in when selecting a lead plaintiff."  *In re Comverse Tech.*, 2007 WL 680779, at *4; *see also Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 273 (S.D.N.Y. 2015) (collecting cases for proposition that courts will factor in recoverable losses under *Dura* at the lead plaintiff stage); *Glavan v. Revolution Lighting Techs., Inc.*, No. 19-CV-980 JPO, 2019 WL 3406582, at *3 (S.D.N.Y. July 29, 2019) (noting that courts in this Circuit consider a plaintiff's recoverable losses at the lead plaintiff stage).

Accordingly, in calculating financial interest, lead plaintiff candidates must be able to demonstrate that their loss was caused by the revelations of misconduct identified in the relevant pleading. *See Topping*, 95 F. Supp. 3d at 617–18 ; *accord Bensley,* 277 F.R.D. at 237–38 (concluding that losses suffered prior to corrective disclosures "must not be considered in the recoverable losses calculation that the courts engage in when selecting a lead plaintiff") (citation omitted). Where, as here, an investor liquidates ***all*** of their shares before the fraud was revealed to the market, they have no cognizable losses under the PSLRA financial interest analysis. *See Topping*, 95 F. Supp. 3d at 618 (citing *In re Comverse Tech.*, 2007 WL 680779, at \*4).

Consistent with loss causation principles articulated in *Dura*, numerous courts across the country have agreed that in-and-out losses suffered by lead plaintiff movants should not be included in the calculation of the "largest financial interest" under the PSLRA. In *Topping*, the court declined to appoint the movant with the purported largest financial interest as lead plaintiff because the movant, in fact, sold its shares prior to the initial corrective disclosure alleged in the original complaint. *Topping*, 95 F. Supp. 3d at 617–18 ("[F]or the purposes of the 'greatest financial interest' calculation, [movant] suffered no losses attributable to the [defendants'] fraud."). Similarly, in *Porzio v. Overseas Shipholding Group*, No. 12 Civ. 7948, 2013 WL 407678 (S.D.N.Y. Feb. 1, 2013), the court determined that because a group of in-and-out traders had "purchased the stock at the allegedly fraudulently inflated price and sold it before the corrective disclosure, there [was] a strong likelihood that their entire claimed losses [would] be unrecoverable." *Id.* at \*3.[5]

---

[5] *See also CannaVest Corp.*, 93 F. Supp. 3d at 275 (concluding that transactions completed prior to the first corrective disclosure would "not be considered in calculating recoverable loss or in determining lead plaintiff status."); *Bensley*, 277 F.R.D. at 240 (appointing individual investor

Because Rivage liquidated its iQIYI holdings *sixteen months* prior to the April 7, 2020, disclosure of fraud, it has no actionable losses.  As such, its motion should be denied.

## II.    H&G ARE THE PRESUMPTIVE LEAD PLAINTIFF

H&G have the largest cognizable financial interest in this litigation and have made the *prima facie* typicality and adequacy showing under Rule 23.  Because no record evidence can be offered to rebut the presumption that H&G are the most adequate representative for the Class, they should be appointed Lead Plaintiff.  Accordingly, H&G are entitled to Lead Plaintiff appointment under the PSLRA, and said appointment is in the best interests of the Class.

### A.    H&G Have the Largest Financial Interest

H&G's cognizable financial interest of *$1,894,657.19* is multiples larger than the losses claimed by the other remaining movants.  Notably these losses are greater than the *combined* financial interest of all remaining movants:



over institutional asserting a larger loss, where institution sold all of its shares in response to a report that the company was doing poorly, but prior to any reports of actual fraud).

Therefore, H&G indisputably have the largest cognizable financial interest out of all competing movants, and as the movant most incentivized to vigorously pursue recovery on behalf of the Class, are the "most adequate plaintiff." 15 U.S.C. § (a)(3)(B)(iii)(I)(bb).

**B.       H&G Otherwise Satisfy Rule 23**

In addition to claiming the largest cognizable financial interest out of all remaining movants, H&G have also satisfied the typicality and adequacy requirements of Rule 23. H&G are typical because their claims are premised on the same facts and legal theories as the Class. *See* Memorandum in Support of Motion at 7-8, ECF No. 25-1. Further, H&G are adequate because they are highly incentivized to vigorously prosecute this litigation and oversee their qualified choice of counsel, and because they lack any antagonism towards the Class. *See id.* at 8-10.

To delve deeper into this adequacy inquiry, H&G have already executed a Joint Declaration attesting to their understanding of the responsibilities of the PSLRA lead plaintiff, and their commitment to shouldering these duties through their diligent oversight of counsel. *See* Joint Declaration, ECF No. 25-6. Moreover, H&G have entered into a competitive retainer agreement with their choice of counsel in order to best protect the interests of the Class. *See In re Cendant*, 264 F.3d 201, 265–66 (3d Cir. 2001) ("one of the best ways for a court to ensure that [the proposed lead plaintiff] will fairly and adequately represent the interests of the class is to inquire whether the movant has demonstrated a willingness and ability to . . . negotiate a reasonable retainer agreement with . . . counsel"); *see also City of Warren Police & Fire Ret. Sys. v. World Wrestling Entm't Inc.*, No. 20-cv-2031 (JSR), 2020 WL 2614703, at *3 (S.D.N.Y. May 22, 2020) (rejecting lead plaintiff applicant upon evidence he failed to negotiate a retainer agreement).

12

Based on the foregoing, H&G have also satisfied their showing of typicality and adequacy at this stage in the litigation, and are therefore entitled to the strong presumption that they are the "most adequate plaintiff" to represent the Class.

## III.    ALL COMPETING MOTIONS SHOULD BE DENIED

Having established that Rivage's motion should be denied for myriad reasons, the Court's inquiry begins and ends with H&G. As no acceptable movant has asserted a cognizable financial interest in this litigation larger than H&G, and because H&G also satisfy the typicality and adequacy requirements of Rule 23, they are entitled to statutory status as the presumptively most adequate plaintiff. *See In re Cavanaugh*, 306 F.3d 726, 731-32 (9th Cir. 2002) ("So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job"). Under these circumstances, no further consideration of any competing motions is necessary or appropriate under the PSLRA. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii); *Cavanaugh*, 306 F.3d at 732. Accordingly, H&G should be appointed and all competing motions rejected.

## CONCLUSION

For the foregoing reasons, H&G respectfully request that the Court grant their motion and enter an Order: (i) appointing H&G as Lead Plaintiff; (ii) approving H&G's selection of Labaton Sucharow and Rosen Law as Co-Lead Counsel for the Class; and (iii) granting such other and further relief as the Court may deem just and proper.

13

DATED:  June 29, 2020                    Respectfully submitted,

                                         */s/ Francis P. McConville*

                                         **LABATON SUCHAROW LLP**
                                         Christopher J. Keller
                                         Eric J. Belfi
                                         Francis P. McConville
                                         David J. Schwartz
                                         140 Broadway
                                         New York, New York 10005
                                         Telephone: (212) 907-0700
                                         Facsimile:  (212) 818-0477
                                         ckeller@labaton.com
                                         ebelfi@labaton.com
                                         fmcconville@labaton.com
                                         dschwartz@labaton.com

                                         **THE ROSEN LAW FIRM, P.A.**
                                         Phillip Kim, Esq.
                                         Laurence M. Rosen, Esq.
                                         275 Madison Avenue, 40th Floor
                                         New York, New York 10016
                                         Telephone: (212) 686-1060
                                         Fax: (212) 202-3827
                                         Email: pkim@rosenlegal.com
                                         Email: lrosen@rosenlegal.com

                                         *Attorneys for Proposed Lead Plaintiff Ronald L.*
                                         *Hershberger and Robert J. Gereige, MD and*
                                         *Proposed Co-Lead Counsel for the Class*

14

## CERTIFICATE OF SERVICE

I hereby certify that on June 29, 2020, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ *Francis P. McConville*