UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————— x

JEAN LEE, Individually and on Behalf of All   :   Civil Action No. 1:20-cv-01830-LDH-JO
Others Similarly Situated,                     :
                                               :   CLASS ACTION
                         Plaintiff,            :
                                               :   OPPOSITION TO COMPETING MOTIONS
        vs.                                    :   FOR APPOINTMENT AS LEAD
                                               :   PLAINTIFF
IQIYI, INC., YU GONG and XIAODONG              :
WANG,                                          :
                                               :
                         Defendants.           :
                                               :
———————————————————— x

4831-4032-8129.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION .............................................................................................................1

II.     ARGUMENT...................................................................................................................3

    A.      Le Rivage Is Not Eligible for Appointment as Lead Plaintiff ................................4

    B.      The "Groups" Are Lawyer-Driven Amalgamations Formed Solely to Achieve the Largest Financial Interest Designation ...............................................10

    C.      The Remaining Movants Do Not Possess the Largest Financial Interest..............16

    D.      Ms. Dominguez Moreno Is the Presumptive Lead Plaintiff ..................................17

III.    CONCLUSION................................................................................................................18

4831-4032-8129.v1

**TABLE OF AUTHORITIES**

**Page**

**CASES**

*Bensley v. FalconStor Software, Inc.*,
    277 F.R.D. 231 (E.D.N.Y. 2011) ...................................................................................7, 8

*Camp v. Qualcomm Inc.*,
    2019 WL 277360 (S.D. Cal. Jan. 22, 2019)........................................................................9

*Cohen v. Luckin Coffee Inc.*,
    2020 WL 3127808 (S.D.N.Y. June 12, 2020) ............................................................13, 14

*Commc'ns, Inc., Sec. Litig.*,
    231 F.R.D. 207 (D. Md. 2000)...........................................................................................12

*Crihfield v. CytRx Corp.*,
    2016 WL 10587938 (C.D. Cal. Oct. 26, 2016)..................................................................12

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005).............................................................................................................2

*Galmi v. Teva Pharm. Indus. Ltd.*,
    302 F. Supp. 3d 485 (D. Conn. 2017)....................................................................10, 11, 15

*Garbowski v. Tokai Pharm., Inc.*,
    302 F. Supp. 3d 441 (D. Mass. 2018) .................................................................................9

*Glauser v. EVCI Career Colleges Holding Corp.*,
    236 F.R.D. 184 (S.D.N.Y. 2006) .......................................................................................16

*In re Boeing Co. Aircraft Sec. Litig.*,
    2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) .....................................................................9

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).......................................................................................2, 3, 4

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
    209 F.R.D. 447 (C.D. Cal. 2002) ........................................................................................9

*In re Gentiva Sec. Litig.*,
    281 F.R.D. 108 (E.D.N.Y. 2012) .......................................................................................10

*In re Petrobras Sec. Litig.*,
    104 F. Supp. 3d 618 (S.D.N.Y. 2015).......................................................................10, 11, 15

4831-4032-8129.v1

**Page**

*In re Pfizer Inc. Sec. Litig.*,
   233 F.R.D. 334 (S.D.N.Y. 2005) ..................................................................................12

*In re Razorfish, Inc. Sec. Litig.*,
   143 F. Supp. 2d 304 (S.D.N.Y. 2001)...........................................................................11

*In re Silicon Storage Tech., Inc.*,
   2005 U.S. Dist. LEXIS 45246 (N.D. Cal. May 3, 2005) ...............................................14

*Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*,
   2015 WL 7018024 (S.D.N.Y. Nov. 12, 2015)...............................................................15

*Kniffin v. Micron Tech., Inc.*,
   379 F. Supp. 3d 259 (S.D.N.Y. 2019)...........................................................................12

*Maliarov v. Eros Int'l PLC*,
   2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016).............................................................2, 5, 6

*McDermid v. Inovio Pharm., Inc.*,
   2020 WL 3288189 (E.D. Pa. June 18, 2020)................................................................15

*Micholle v. Ophthotech Corp.*,
   2018 WL 1307285 (S.D.N.Y. Mar. 13, 2018) ...............................................................12

*Nakamura v. BRF S.A.*,
   2018 WL 3217412 (S.D.N.Y. July 2, 2018) ..............................................................10, 15

*Perez v. HEXO Corp.*,
   2020 WL 905753 (S.D.N.Y. Feb. 25, 2020)................................................................8, 9

*Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*,
   275 F.R.D. 187 (S.D.N.Y. 2011) ..................................................................................13

*Plaut v. Goldman Sachs Grp., Inc.*,
   2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019)................................................................6

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
   95 F. Supp. 3d 607 (S.D.N.Y. 2015).........................................................................4, 6

*Tsirekidze v. Syntax-Brillian Corp.*,
   2008 WL 942273 (D. Ariz. Apr. 7, 2008) ..............................................................15, 17

- iii -

4831-4032-8129.v1

**Page**

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
    589 F. Supp. 2d 388 (S.D.N.Y. 2008) ................................................................................10, 11

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78u–4(a)(3)(B)(iii)(I) ...........................................................................................................10
    §78u-4(a)(3)(B)(iii)(I) .............................................................................................................3

Federal Rules of Civil Procedure
    Rule 23 .........................................................................................................................3, 4, 8, 10

4831-4032-8129.v1

## I.    INTRODUCTION

Ten lead plaintiff motions were filed by investors seeking appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]  While it appears at first glance that some of the competing movants claim to have suffered larger losses than Ms. Dominguez Moreno, the circumstances surrounding their motions evoke the same type of lawyer-driven machinations that led to the enactment of the PSLRA and preclude the Court from considering their motions here.

Despite the magnitude of its claimed loss, Le Rivage cannot trigger the PSLRA's most adequate plaintiff presumption.  Even a cursory review of the allegations in each of the related complaints filed against iQIYI, Inc. prior to the day the lead plaintiff motion deadline expired, confirms that *Le Rivage suffered no harm whatsoever*.  Recognizing this inconvenient reality, a mere hours before the lead plaintiff motion deadline, Le Rivage's counsel filed a complaint with one key distinction: it added a partial disclosure of the fraud on October 30, 2018, *nearly a year and a half* before the lone disclosure alleged in all of the other complaints.  *See Le Rivage LLC v. iQIYI, Inc.*, No. 1:20-cv-02653 (E.D.N.Y. June 15, 2020), ECF No. 1 ("*Le Rivage* Complaint") at ¶¶3, 4; ECF No. 35 at 4.  The filing of the *Le Rivage* Complaint at the eleventh hour with an unspecified leakage theory was a necessary precursor to Le Rivage's lead plaintiff motion because Le Rivage had sold *all* of its iQIYI American Depository Shares ("ADSs") on December 18, 2018, *more than*

---

[1]    The movants are: (1) Laura Maria Dominguez Moreno, individually and on behalf of Coliving Costa Blanca, Sociedad Limitada ("Ms. Dominguez Moreno"); (2) Le Rivage LLC ("Le Rivage"); (3) Ronald L. Hershberger and Dr. Robert J. Gereige (together, the "Hershberger Group"); (4) Jason Tzung Lee, as Manager of Tranquil Bay, LLC ("Tranquil Bay"); (5) Young K. Han, Michael Safari, on behalf of Safari Enterprises, Inc. ("Safari Enterprises"), and Glenn Wenger (together, the "Han Group"); (6) Dae Kim; (7) Antoine Chiha, Vinod and Pareesha Shah Irrevocable Trust, Hetal Shah, and Dharti Shah (together, the "Chiha Group"); (8) Wing Yiu Chan; (9) Hung Truong; and (10) Sugumar Ariathurai and Thomas Jenkins (together, the "Ariathurai Group").  ECF Nos. 10, 13, 16, 19, 25, 26, 29, 32, 33, 37.

- 1 -

*fifteen months before* the single disclosure alleged in the other complaints.  *See* ECF No. 39-3.  In other words, had Le Rivage's counsel not filed a complaint uniquely designed to allow Le Rivage to claim an iQIYI trading loss, Le Rivage would not have been able to claim any financial interest in the relief sought – rendering Le Rivage ineligible for appointment as lead plaintiff.  *See, e.g., Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 344 (2005) (holding that only losses "sustain[ed] 'when the facts . . . become generally known' and 'as a result' share value 'depreciate[s]'" are recoverable under the federal securities laws). [2]  To guard against such gamesmanship, courts refuse to appoint movants, like Le Rivage here, who attempt to manufacture their loss.  *See Maliarov v. Eros Int'l PLC*, 2016 WL 1367246, at *4 (S.D.N.Y. Apr. 5, 2016) (recognizing that courts are "hesitant to encourage lead plaintiff movants to file complaints with additional disclosure allegations in the eleventh hour").

The movant asserting the next largest combined loss, the Hershberger Group, cannot be appointed lead plaintiff because its submission confirms that the group – two individuals living on two distinct continents represented by two separate law firms – was cobbled together "by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel," and, "based on this history, that the members of that 'group' could not be counted on to monitor counsel in a sufficient manner." *In re Cendant Corp. Litig.*, 264 F.3d 201, 267 (3d Cir. 2001).  In fact, and as further detailed below, in conducting her due diligence before retaining Robbins Geller Rudman & Dowd LLP as her proposed lead counsel, Ms. Dominguez Moreno provided one of the Hershberger Group's law firms with what she believed at the time to be her complete iQIYI ADS transaction history, which indicated a loss of approximately $1.2 million (her properly calculated loss is $399,497).  After being informed by Ms. Dominguez Moreno that she had chosen to retain Robbins Geller, the

---

[2]   Citations are omitted and emphasis is added, unless otherwise noted.

- 2 -

Hershberger Group's counsel aggregated a group of investors in an effort to overcome Ms. Dominguez Moreno's supposed $1.2 million loss. Indeed, neither group member alone suffered a loss larger than the loss one of the Hershberger Group's law firms believed Ms. Dominguez Moreno suffered. That same law firm also tried to persuade Ms. Dominguez Moreno that joining forces would better serve her interests. With plainly lawyer-driven origins, the Hershberger Group simply cannot be appointed as lead plaintiff. The Han Group, the Chiha Group, and the Ariathurai Group are similar artificial amalgamations and their motions should be denied for this reason as well.

In contrast, Ms. Dominguez Moreno respectfully submits that she is the only movant who meets all statutory requirements that govern the Court's choice of the presumptive lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). The remaining movants suffered smaller losses and their motions should thus be denied.

## II. ARGUMENT

"In appointing a lead plaintiff, the court's first duty is to identify the movant that is presumptively entitled to that status." *Cendant*, 264 F.3d at 262. "The process begins with the identification of the movant with 'the largest financial interest in the relief sought by the class.'" *Id.* "Once the court has identified the movant with 'the largest financial interest in the relief sought by the class,' it should then turn to the question whether that movant 'otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure,' and is thus the presumptively most adequate plaintiff." *Id.*

Importantly, in "inquiring whether the movant has preliminarily satisfied the typicality requirement, [courts] should consider whether the circumstances of the movant with the largest losses 'are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based.'" *Id.* at 265.

4831-4032-8129.v1

In addition, the presumptive lead plaintiff cannot be "subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* at 222.

"If (for any reason) the court determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should . . . disqualify that movant from serving as lead plaintiff" and "then identify the movant with the next largest loss, consider whether that movant satisfies Rule 23's requirements, and repeat this process until a presumptive lead plaintiff is identified." *Id.* at 267.

### A.  Le Rivage Is Not Eligible for Appointment as Lead Plaintiff

Until June 15, 2020, the day of the lead plaintiff motion deadline, all of the related complaints filed against iQIYI alleged that the wrongdoing at issue in this case had been revealed on a single day: April 7, 2020.[3]  The single disclosure of the fraud on April 7 rendered Le Rivage ineligible for appointment as lead plaintiff as it "was a complete 'in-and-out trader' – 'buying and selling into and out of the securities at issue during the class period' – and sold all its share[s] before the [April 7, 2020] disclosure." *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 617 (S.D.N.Y. 2015).  Eager to remedy this fatal defect, Le Rivage's counsel filed a new complaint a mere hours before the lead plaintiff motion deadline expired, adding an allegation that the truth regarding iQIYI's alleged fraud was first partially disclosed on October 30, 2018 – ***nearly a year and a half*** before the single disclosure alleged in all of the prior complaints.  *Le Rivage* Complaint at ¶¶3, 4.  Beyond the troubling timing of its complaint, Le Rivage's counsel's own website – which describes the allegations of fraud and subsequent stock decline on April 8, 2020 –

---

[3]  The following related complaints against iQIYI were on file for at least 7 weeks prior to the *Le Rivage* complaint's filing: (1) *Lee v. iQIYI, Inc.*, No. 1:20-cv-01830 (E.D.N.Y.), filed on April 16, 2020; (2) *Shiferaw v. iQIYI, Inc.*, No. 1:20-cv-03115 (S.D.N.Y.), filed on April 17, 2020 (voluntarily dismissed on June 15, 2020); and (3) *Jenkins v. iQIYI, Inc.*, No. 3:20-cv-02882 (N.D. Cal.), filed on April 27, 2020.

- 4 -

4831-4032-8129.v1

contains no mention of the purported partial disclosure in October 2018.[4] Le Rivage's counsel also issued numerous press releases announcing the opportunity to seek lead plaintiff appointment in this case – from as early as April 21, 2020 to just ***four days*** before the filing of the *Le Rivage* Complaint – none of which make any mention of this novel leakage theory.  Declaration of David A. Rosenfeld in Support of Opposition to Competing Motions for Appointment as Lead Plaintiff, Exs. A-G.  It is thus evident that – but for the eleventh-hour filing of the *Le Rivage* Complaint – Le Rivage would have no financial interest in the relief sought by the class.

To guard against such gamesmanship, courts refuse to appoint movants, like Le Rivage here, who attempt to manipulate the size of their loss.  For example, in *Maliarov*, 2016 WL 1367246, the court faced the exact predicament as here: a lead plaintiff filing a self-serving complaint the day of a lead plaintiff motion deadline alleging a partial disclosure not pleaded in the previously-filed complaints.  *Id.* at *4.  In rejecting such eleventh-hour maneuvering, the court first recognized that "the other lead plaintiff movants 'filed their motions to serve as lead plaintiff in reliance on the [c]omplaint[s]' that had been filed up to that date."  *Id.*  Based on this concern, the court held that it was "hesitant to encourage lead plaintiff movants to file complaints with additional disclosure allegations in the eleventh hour, thereby precluding similarly-situated potential movants from identifying themselves to the Court."  *Id.*  The court thus questioned the movant's ability to "'fairly and adequately protect the interest of the class'" given the "specter of gamesmanship."  *Id.*  Consequently, and given the court's concern that the movant, "unlike other movants, would be completely barred from recovery if no earlier disclosure date is established," the court declined to appoint the movant as lead plaintiff despite alleging a larger loss.  *Id.* ("If there is a serious question

---

[4]    https://www.glancylaw.com/cases/iqiyi-inc/ (last visited June 25, 2020).

as to whether a movant's losses are the proximate result of a company's misconduct, courts frequently decline to appoint that person as lead plaintiff.").

Similarly, in *Topping*, "the ostensible partial disclosure was ***not*** included in the original complaint and was added only when [the movant's counsel] filed its 'Notice of Errata and Corrected Complaint'" which included the necessary allegation.  95 F. Supp. 3d at 618-19 (emphasis in original).  The practical effect of the *Le Rivage* Complaint's "ostensible partial disclosure" here is as decisive as in *Topping*: "[t]hey provide [Le Rivage] with a basis, otherwise absent, for attributing its losses to the [iQIYI] fraud."  *Id.* at 615; *see also Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (refusing to appoint movant whose counsel filed a complaint after the deadline for motions to serve as lead plaintiff alleging two additional corrective disclosures because, *inter alia*, "a 'principal purpose of the PSLRA was to prevent just the kind of gamesmanship in which [the movant] and its counsel have engaged here'").

By waiting until June 15, 2020 to assert its novel leakage theory, Le Rivage's counsel all but assured that no other putative class member would timely file a motion to serve as lead plaintiff who purchased within the alleged Class Period but who sold out of its iQIYI position before the original class period ending April 7, 2020 single disclosure.  As such, Le Rivage and its counsel have demonstrated their ***in***adequacy through their willingness to subordinate the interests of the putative class in an effort to ensure their own control of the litigation.  Accordingly, and consistent with *Maliarov*, *Topping*, and *Plaut*, the Court should refuse to reward such gamesmanship here as well and disqualify Le Rivage from serving as lead plaintiff.

While the contours of the consolidated complaint, including the appropriate disclosure and loss causation events, will be determined by the Court-appointed lead plaintiff on behalf of the class, there can be no doubt that Le Rivage is already subject to unique defenses that will consume this

- 6 -

4831-4032-8129.v1

case if the Court were to ultimately find that April 7, 2020 is the only actionable disclosure given that Le Rivage liquidated its entire iQIYI position fifteen months before that date. *See* ECF No. 39-3. This precise issue arose in *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231 (E.D.N.Y. 2011), where Judge Pollak declined to appoint a movant alleging a loss nearly three times larger than its competing movant because, like here, that movant "was a total in-and-out trader and may be unable to demonstrate loss causation." *Id.* at 241. In response, the movant argued that it sold its shares after a partial disclosure purportedly "revealing that the Company's preliminary fourth quarter and full year 2009 results would be far lower than previously forecasted." *Id.* at 238. Judge Pollak, however, held that the movant failed to "allege[] sufficient facts from which this Court can confidently infer that the January disclosure actually revealed fraud or misconduct sufficient to qualify as a partial disclosure," noting that "'[t]here was no disclosure in that January announcement that the reason [the company wasn't] making [its] projections was because [it] had engaged in fraud as opposed to the later announcement which was clearly an exposure of the fraud.'" *Id.* at 240.

Here, the *Le Rivage* Complaint's partial disclosure is based on iQIYI's October 30, 2018 statement that it had "'cleaned up some not so healthy advertisements'" and had "'let[] go'" of "'some customers'" which purportedly became "'a major reason why [iQIYI saw] something like a decline on [its] customers numbers in this sort of quarter.'" *Le Rivage* Complaint at ¶25. The partial disclosure also includes iQIYI's announcement that its "'total subscribing members was 80.7 million as of September 30, 2018, over 98% of whom were paying subscribing members,'" which "'compare[d] to 42.7 million of total subscribing members as of September 30, 2017, up 89% year over year'" and that iQIYI's "customer advances and deferred revenue was RMB2,356,275,000." *Id.* at ¶¶25, 27. By contrast, the April 7, 2020 disclosure was based on a report "detailing, among other things, how iQIYI had ***misled*** investors and failed to disclose pertinent information generally

- 7 -

and in its Registration Statement, including: (i) iQIYI *overstating* its user numbers; (ii) iQIYI *inflating* its revenues; (iii) iQIYI *inflating* expenses and prices of assets to *conceal* its revenue inflation; and (iv) iQIYI *misleading* financial reporting creating the appearance of a cash generative company." *Id.* at ¶40. Thus, and as in *Bensley*, the fact that the purported October 30, 2018 partial disclosure as pled lacked any "'announcement [that iQIYI] had engaged in fraud as opposed to the later announcement,'" renders Le Rivage an inadequate lead plaintiff because "if the district court later finds that the [October 30, 2018] announcement relating to projected revenues does not constitute a disclosure of fraud, none of [Le Rivage's] losses would qualify as proximately linked to the alleged fraud in this case." *Bensley*, 277 F.R.D. at 240.

Moreover, given the serious consequences of selecting an inadequate or atypical lead plaintiff, courts in this Circuit and throughout the country require unknown individual investors with no prior PSLRA lead plaintiff experience to provide more than the skeletal information contained in a PSLRA certification to evidence satisfaction of the Rule 23 requirements. For example, in *Perez v. HEXO Corp.*, 2020 WL 905753 (S.D.N.Y. Feb. 25, 2020), Judge Buchwald recently held that an individual with the largest alleged financial interest did not meet the Rule 23 requirements because his initial motion provided no information about himself whatsoever. *Id.* at *3. In reaching this holding, Judge Buchwald recognized that "an investor seeking to be appointed lead plaintiff – though he need only make a preliminary showing that he satisfies the requirements of Rule 23 . . . 'nonetheless need[s] to provide enough information to make [that] preliminary showing.'" *Id.* at *2. The movant attempted to remedy his deficient motion by filing a belated declaration identifying where he lived, his level of education, occupation, and investing experience – to no avail. *Id.* at *3. As Judge Buchwald held, given the movant's "failure to provide *any* information regarding his

experience in his preliminary motion, the Court questions whether [he] will meaningfully oversee and control the prosecution of this consolidated class action." *Id.* (emphasis in original).

Similarly, in *In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399 (N.D. Ill. Nov. 15, 2019), Judge Tharp recently denied a family trust's motion for lead plaintiff despite alleging a loss that was nearly twice as large as any other movant because the motion "provide[d] virtually no information about the family . . . beyond that required by their certifications" and the fact that they lived in Las Vegas. *Id.* at *5. In reaching his holding, Judge Tharp recognized that it was "incumbent on the Wangs to make a preliminary showing of their adequacy" and, to that end, "a movant must supply *some* information about its ability to perform the role of lead plaintiff diligently and effectively." *Id.* at *5 & n.10 (emphasis in original). However, names and city of purported residence alone provided the court with "virtually no basis" to make the necessary adequacy determination. *Id.* at *5. Consequently, Judge Tharp appointed the movant with the second largest alleged loss and in doing so emphasized that "a viable candidate for Lead Plaintiff would understand the need to make a more fulsome preliminary showing of adequacy from the outset of the lead plaintiff process." *Id.* *5 n.10.[5]

Here, it is impossible for the Court to even begin to attempt to make the PSLRA-mandated determination if Le Rivage – including its purported manager Marc Loven (ECF No. 39-2 at 2) – is qualified or has the necessary capacity to serve as lead plaintiff. Indeed, the Court cannot ascertain

---

[5]   *See also Camp v. Qualcomm Inc.*, 2019 WL 277360, at *3 (S.D. Cal. Jan. 22, 2019) (denying individual movant's motion for lead plaintiff despite alleging a *loss 4.5 times larger* than any other movant because he "failed to include any basic details about himself, including where he lives or who he is specifically in his motion"); *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 452 (C.D. Cal. 2002) (finding that "record contains no evidence that [individual movants] are competent to serve as lead plaintiffs" or "to supervise the . . . attorneys representing them"); *Garbowski v. Tokai Pharm., Inc.*, 302 F. Supp. 3d 441, 449 (D. Mass. 2018) (finding movant's submissions "did not provide sufficient information for the court to decide whether [the movant] satisfied all of the PSLRA requirements for serving as lead plaintiff").

4831-4032-8129.v1

whether Le Rivage or Mr. Loven have any prior experience overseeing lawyers in complex litigation. Nor does the Court know Le Rivage or Mr. Loven's background or investing experience. These are critical questions that the Court must – but given the dearth of information here cannot – address in determining whether Le Rivage is a typical and adequate lead plaintiff.

The Court should not be swayed by Le Rivage's eleventh-hour attempt to usurp control of this case. Le Rivage has also failed to provide the Court with the information necessary to demonstrate its satisfaction of the Rule 23 adequacy requirement and is thus precluded from triggering the PSLRA presumption. Accordingly, Le Rivage's motion should be denied.

**B.      The "Groups" Are Lawyer-Driven Amalgamations Formed Solely to Achieve the Largest Financial Interest Designation**

While the PSLRA allows a "group of persons" to be appointed as lead plaintiff in certain circumstances, 15 U.S.C. §78u–4(a)(3)(B)(iii)(I), "courts look skeptically at whether the grouping operates to circumvent the purposes of the PSLRA." *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 493 (D. Conn. 2017). Specifically, courts do not permit aggregation of several individuals' financial interests if it is apparent that the group "has been assembled as a makeshift by attorneys for the purpose of [obtaining lead plaintiff status]." *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). Indeed, the PSLRA was enacted to "'transfer primary control of private securities litigation from lawyers to investors.'" *In re Petrobras Sec. Litig.*, 104 F. Supp. 3d 618, 621 (S.D.N.Y. 2015); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 120 (E.D.N.Y. 2012) ("[o]ne of the primary concerns in adopting the PSLRA was preventing 'the manipulation by class action lawyers of the clients whom they purportedly represent'"). As such, a "proposed plaintiff group has the burden of showing that aggregation is appropriate." *Nakamura v. BRF S.A.*, 2018 WL 3217412, at *3 (S.D.N.Y. July 2, 2018). Here, it is self-evident that the competing groups are "artifice[s] cobbled together by cooperating counsel for the obvious purpose of

- 10 -

creating a large enough grouping of investors to qualify as 'lead plaintiff,' which can then select the equally artificial grouping of counsel as 'lead counsel.'" *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 307-08 (S.D.N.Y. 2001).

As an initial matter, "the [two] members of the [Hershberger] Group have submitted ***no evidence*** of how they came to be introduced to each other." *Galmi*, 302 F. Supp. 3d at 495; *see also Varghese*, 589 F. Supp. 2d at 392-94 (rejecting proposed lead plaintiff group that failed to describe "how or why the group was formed, how its members will work together to manage the litigation, whether a pre-litigation relationship existed between its members . . . [or] whether its members have ever communicated"). Indeed, the only evidence submitted by the Hershberger Group, its Joint Declaration, confirms that its members are strangers lacking a pre-existing relationship. *See* ECF No. 25-6. For instance, the Joint Declaration establishes that the Hershberger Group members reside not just in different countries, but across the Atlantic Ocean from one another. *See id.* at ¶¶2-3. The Joint Declaration fails to address how two iQIYI investors from separate continents even found one another, let alone how they will effectively work together to direct their lawyers as opposed to vice versa. *Id.* The Joint Declaration is also notably silent as to ***how*** the class would benefit from the added expense and logistical challenges of having two individuals serve as lead plaintiff, including expenses related to multiple depositions, additional discovery, and duplicative travel. Instead, the Joint Declaration offers a single, hollow platitude that the Hershberger Group members believe that this action "should be led by investors who are committed to maximizing the recovery on behalf of the Class." ECF No. 25-6 at ¶4. Such dearth of information further evidences that the Hershberger Group's "lawyers, who are invariably the matchmakers behind [this] marriage[] of convenience, are the true drivers of the litigation." *Petrobras*, 104 F. Supp. 3d at 621-22.

- 11 -

Additional evidence of their lack of cohesion is that the Hershberger Group members have also shown they are "either 'unable or unwilling to agree on a single counsel to act on its behalf and serve as its voice.'" *In re E.spire Commc'ns, Inc., Sec. Litig.*, 231 F.R.D. 207, 213-14 (D. Md. 2000). Thus, not only does the record not "'contain any credible explanation for the group's creation,'" the group "'does not explain why it must be represented by two firms, each of which appears independently capable of prosecuting this action.'" *Crihfield v. CytRx Corp.*, 2016 WL 10587938, at *4 (C.D. Cal. Oct. 26, 2016). Simply put, nothing before the Court indicates that the Hershberger Group is "anything other than an attempt to create the highest possible 'financial interest' figure under the PSLRA." *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005).

Moreover, the Hershberger Group's purported mechanism to oversee the litigation further demonstrates that its sole purpose is to achieve the largest financial interest designation. According to the Hershberger Group's Joint Declaration, once the inevitable disagreement arises, Mr. Hershberger and Dr. Gereige "agree to resolve such disagreement by a majority vote, in which each of us possesses a number of votes equal to our losses incurred in connection with our class period purchase of IQ securities." ECF No. 25-6 at ¶5. In other words, by electing to resolve all disagreements by a majority vote based on "losses incurred," the Hershberger Group has effectively relinquished all control to Dr. Gereige (the group member with the largest individual alleged loss), thus significantly, if not entirely, subverting Mr. Hershberger's role while conveniently taking full advantage of his claimed losses.[6]

---

[6]   *See also Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 263 (S.D.N.Y. 2019) (denying group's motion because "[v]ague discussions of general communication protocols and status reports hashed out over preliminary conference calls do little to show the groups' involvement in the litigation"); *Micholle v. Ophthotech Corp.*, 2018 WL 1307285, at *9 (S.D.N.Y. Mar. 13, 2018) (denying group's motion where declaration provided only "'conclusory assurances' that call into

- 12 -

This challenge should come as no surprise since Judge Lewis Liman earlier this month in *Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808 (S.D.N.Y. June 12, 2020), refused to appoint a similar artificial amalgamation of individual investors as lead plaintiff represented by the Hershberger Group's counsel, The Rosen Law Firm, P.A. *Id*. at \*1. In *Luckin*, the court held that the group was "a random assemblage of unlike individuals and a company that (with one limited exception) not only had no pre-existing relationship but apparently did not even know of one another before counsel introduced them." *Id.* at \*4. Nor was Judge Liman persuaded by the "rote recitation[s]" within the group's joint declaration, including the nearly identical recitation found in the Hershberger Group's Joint Declaration here that the members would "'make all efforts, in good faith, to reach consensus with respect to all litigation decisions, and to that end will consult with each other and our counsel as we deem necessary to fulfill our fiduciary obligations to the Class.'" *Compare id. with* ECF No. 25-6 at ¶5. Judge Liman further criticized the group for not providing a plan for communicating with one another across time zones and for failing to provide "evidence that they chose outside counsel, as opposed to counsel choosing them" – deficiencies that the Hershberger Group's Joint Declaration here likewise fails to remedy. *Luckin*, 2020 WL 3127808 at \*4.

Indeed, not only is there no evidence to dispel the inference that counsel handpicked the individuals and formed the Hershberger Group, there is evidence ***supporting*** this inference. Ms. Dominguez Moreno, in conducting her due diligence before selecting a law firm to represent her in

---

question whether it can manage this litigation effectively"); *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.*, 275 F.R.D. 187, 191-92 (S.D.N.Y. 2011) ("[A]lthough they have submitted a joint declaration stating that they have discussed 'protocols for managing the litigation' and 'have implemented communication procedures to enable [them] to confer via phone and/or email,' these conclusory assurances do not satisfy this Court that the Funds Group will be able to effectively manage this litigation.").

- 13 -

this matter, provided the Hershberger Group's counsel, Labaton Sucharow LLP, what she believed at the time to be her complete iQIYI ADS transaction history, which indicated a loss of approximately $1.2 million. As a result, Labaton Sucharow was aware that Ms. Dominguez Moreno planned to file a motion to serve as lead plaintiff with an apparent $1.2 million loss with Robbins Geller as her counsel, and that alleging a lesser loss would be insufficient to achieve the largest financial interest designation. But unbeknownst to Labaton Sucharow, in confirming Ms. Dominguez Moreno's iQIYI trading before filing her motion, a single iQIYI ADS sale was discovered, which reduced her loss to just shy of $400,000. *See* ECF No. 28-3. Unaware of this development, Labaton Sucharow and Rosen decided to cobble together two strangers from opposite sides of the Atlantic with the obvious purpose of leapfrogging Ms. Dominguez Moreno's supposed $1.2 million loss. *See also* ECF No. 25-3 (Mr. Hershberger's Certification, executed nearly two months before the Joint Declaration's execution, identifies Rosen as his only counsel of choice). With that additional backdrop, it is plain that, as Judge Liman found in *Luckin*, "the [Hershberger Group] members agreed to be assembled by counsel and to ratify counsel's representation of them – rather than that they gathered together and engaged in a truly independent selection of counsel." 2020 WL 3127808 at *4.

The Han Group, the Chiha Group, and the Ariathurai Group fair no better. The Han Group, another group of individuals hailing from three different states, ***admits*** that its members were introduced to each other through its counsel. ECF No. 21-5 at ¶15; *In re Silicon Storage Tech., Inc.*, 2005 U.S. Dist. LEXIS 45246, at *6-*8, *33 (N.D. Cal. May 3, 2005) ("[a]ny subsequent relationship that the members of these groups may have developed, after being introduced to each other by their lawyers, is insufficient in the court's view to qualify them as 'most adequate' lead plaintiff"). The Han Group's joint declaration is also replete with conclusory statements such as

- 14 -

"[w]e are committed to maximizing recovery for the class" and that the members aspirationally intend to "exercise joint decision-making." ECF No. 21-5 at ¶¶11, 15. Such *ipse dixit* assertions are clearly insufficient. *See Int'l Union of Operating Eng'rs Local No. 478 Pension Fund v. FXCM Inc.*, 2015 WL 7018024, at *4 (S.D.N.Y. Nov. 12, 2015) ("conclusory assurances are precisely the types of statements that courts in this District have rejected as insufficient proof that a group of unrelated investors will be able to effectively manage the litigation"); *Galmi*, 302 F. Supp. 3d at 494-95 ("Conclusory statements such as 'each group member shares a common purpose or goal in obtaining a recovery in the lawsuit' are not evidence of a group's cohesiveness."). And much like the Hershberger Group's Joint Declaration, the Han Group's Joint Declaration is entirely silent on how, for example, the class would benefit from the added expense and logistical challenges of having three individuals serve as lead plaintiff. *See generally* ECF No. 21-5.[7] And by not submitting a joint declaration, the Chiha Group and the Ariathurai Group have failed to carry their "burden of showing that [the group's] aggregation is appropriate." *Nakamura*, 2018 WL 3217412, at *2.

In sum, because none of the groups have met their burden to demonstrate their formation was designed to accomplish something other than attaining the largest financial interest, their motions should be denied.[8]

---

[7]   Further undermining the Han Group's adequacy is the fact that, according to public records, Mr. Safari, Safari Enterprises' owner and president, has a lengthy litigation history, including numerous six-figure tax liens dating back to at least 1994 that defendants will no doubt exploit at the class certification stage.

[8]   The Court should also deny any group members' request to reformulate their motion and appoint them lead plaintiff separately, particularly since none of the members moved for appointment individually. *See Petrobras*, 104 F. Supp. 3d at 624 n.4 (refusing to appoint group member with the largest individual alleged loss because it "at no time sought to serve as individual lead plaintiff"); *McDermid v. Inovio Pharm., Inc.*, 2020 WL 3288189, at *5 (E.D. Pa. June 18, 2020) ("Congress instructs courts to consider timely motions and select a lead plaintiff from among those movants. . . . The Inovio Group 'decided to move together as a group . . . .' That group motion is the one before the Court, and the Court will not retroactively amend it . . . ."); *Tsirekidze v. Syntax-Brillian Corp.*,

- 15 -

4831-4032-8129.v1

## C.      The Remaining Movants Do Not Possess the Largest Financial Interest

Because the PSLRA expresses little guidance in prescribing a uniform method for assessing a party's financial loss, courts in this Circuit have routinely examined the following four factors in calculating that interest: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period (defined as the number of shares retained at the end of the class period); (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period." *Glauser v. EVCI Career Colleges Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006).

Here, although certain competing movants allege larger approximate losses, applying the four-factor criteria, it is clear that Ms. Dominguez Moreno has the greatest financial interest in the relief sought by the class:

| *Movant*[9] | *Shares Purchased* | *Net Shares Purchased* | *Net Funds Expended* |
|---|---|---|---|
| **Ms. Dominguez Moreno** | **183,010** | **123,010** | **$2.54 million** |
| Hershberger Group | | | |
| Ronald Hershberger | 119,483 | 19,883 | $1.27 million |
| Dr. Robert J. Gereige | 50,000 | 50,000 | $1.84 million |
| Tranquil Bay | 41,100 | 17,500 | $1.15 million |
| Han Group | | | |
| Young K. Han | 16,000 | 10,999 | $364,405 |
| Glenn Wenger | 10,000 | 10,000 | $381,495 |
| Safari Enterprises | 15,000 | 15,000 | $404,290 |

---

2008 WL 942273, at *4 (D. Ariz. Apr. 7, 2008) ("The Farrukh Group moved for lead plaintiff as a group and will be evaluated as such.").

[9]    This table excludes Le Rivage because, as detailed *supra* §II.A., it cannot trigger the PSLRA's presumption.

4831-4032-8129.v1

Accordingly, by purchasing more shares and net shares as well as expending more net funds on her iQIYI investment during the Class Period than any of the above-referenced movants, Ms. Dominguez Moreno has the greatest financial interest in the outcome of this litigation. Nor do the remaining movants allege to have suffered a larger loss than Ms. Dominguez Moreno – individually or collectively. The remaining movants' motions should thus be denied.

**D.    Ms. Dominguez Moreno Is the Presumptive Lead Plaintiff**

Having suffered nearly $400,000 in losses, evidenced her adequacy with a substantive Declaration, and by selecting a single, qualified law firm to serve as lead counsel, Ms. Dominguez Moreno is the only movant that satisfies all of the PSLRA's requirements to trigger the most adequate plaintiff presumption. Ms. Dominguez Moreno's Declaration sets forth her ability and willingness to serve as a lead plaintiff, describing her experience as a businesswoman, her many years investing in the stock market, and her familiarity overseeing lawyers. *See* ECF No. 28-4. As such, Ms. Dominguez Moreno is the exact type of diligent investor the PSLRA envisioned would serve as lead plaintiff. "[O]ther than pointing out [her] relatively low[er] financial stake in the litigation," the other movants cannot make any legitimate argument against Ms. Dominguez Moreno's appointment as lead plaintiff in this case. *Tsirekidze*, 2008 WL 942273, at *5.

Ms. Dominguez Moreno's motion should be granted.

- 17 -

## III.     CONCLUSION

None of the competing movants satisfy the PSLRA's lead plaintiff requirements. As such,

their motions should all be denied.

DATED: June 29, 2020                    Respectfully submitted,

                                        ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                        SAMUEL H. RUDMAN
                                        DAVID A. ROSENFELD


                                                s/ David A. Rosenfeld
                                        _____
                                            DAVID A. ROSENFELD

                                        58 South Service Road, Suite 200
                                        Melville, NY  11747
                                        Telephone:  631/367-7100
                                        631/367-1173 (fax)
                                        srudman@rgrdlaw.com
                                        drosenfeld@rgrdlaw.com

                                        ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                        DANIELLE S. MYERS
                                        JUAN CARLOS SANCHEZ
                                        655 West Broadway, Suite 1900
                                        San Diego, CA  92101
                                        Telephone:  619/231-1058
                                        619/231-7423 (fax)
                                        dmyers@rgrdlaw.com
                                        jsanchez@rgrdlaw.com

                                        [Proposed] Lead Counsel for [Proposed] Lead
                                        Plaintiff

- 18 -

4831-4032-8129.v1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on June 29, 2020, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

s/ David A. Rosenfeld
DAVID A. ROSENFELD

ROBBINS GELLER RUDMAN
    & DOWD LLP
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

E-mail:  drosenfeld@rgrdlaw.com

4831-4032-8129.v1

## Mailing Information for a Case 1:20-cv-01830-LDH-JO Lee v. iQIYI, Inc. et al

### Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Regina Marie Calcaterra**
  rcalcaterra@calcaterra.law

- **Robert Alexander Fumerton**
  robert.fumerton@skadden.com

- **Richard W. Gonnello**
  rgonnello@faruqilaw.com,msullivan@faruqilaw.com,ecf@faruqilaw.com,klenahan@faruqilaw.com,dbehnke@faruqilaw.com

- **Michael Charles Griffin**
  michael.griffin@skadden.com

- **Matthew M Guiney**
  guiney@whafh.com

- **Shannon Lee Hopkins**
  shopkins@zlk.com,shalliday@zlk.com

- **Phillip Kim**
  pkim@rosenlegal.com,pkrosenlaw@ecf.courtdrive.com

- **Jeremy Alan Lieberman**
  jalieberman@pomlaw.com,tcrockett@pomlaw.com,disaacson@pomlaw.com,abarbosa@pomlaw.com

- **Gregory B. Linkh**
  glinkh@glancylaw.com,greglinkh@gmail.com

- **Francis P. McConville**
  fmcconville@labaton.com,lpina@labaton.com,9849246420@filings.docketbird.com,electroniccasefiling@labaton.com

- **Kim Elaine Miller**
  kim.miller@ksfcounsel.com,kimmiller225@yahoo.com

- **Scott D. Musoff**
  smusoff@skadden.com

- **David Avi Rosenfeld**
  drosenfeld@rgrdlaw.com,e_file_ny@rgrdlaw.com,2879289420@filings.docketbird.com,e_file_sd@rgrdlaw.com,drosenfeld@ecf.courtdrive.com

- **Jason A. Zweig**
  jasonz@hbsslaw.com,megano@hbsslaw.com,chi_filings@hbsslaw.com,sf_filings@hbsslaw.com,josephs@hbsslaw.com

### Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)