**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| | x | |
| | : | |
| JEAN LEE, Individually and On Behalf of All Others Similarly Situated, | : | Case No. 1:20-cv-01830-LDH-JO |
| | : | |
| | : | Judge LaShann DeArcy Hall |
| Plaintiff, | : | |
| | : | Magistrate Judge James Orenstein |
| v. | : | |
| | : | CLASS ACTION |
| IQIYI, INC., YU GONG, and XIAODONG WANG, | : | |
| | : | |
| | : | |
| Defendants. | : | |
| | : | |
| | x | |

**REPLY IN FURTHER SUPPORT OF THE MOTION OF RONALD L. HERSHBERGER AND ROBERT J. GEREIGE, MD FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF CO-LEAD COUNSEL**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ............................................................................................................................... 2

I.      H&G Is the Presumptive Lead Plaintiff ............................................................................ 2

          A.      H&G Has Proven its Cohesiveness and Ability to Act Cooperatively to Oversee its Lawyers and this Litigation .................................................................. 3

          B.      Mr. Hershberger's Losses Are Recognizable ......................................................... 7

          C.      The Attacks on Dr. Gereige Are Baseless .............................................................. 9

CONCLUSION ........................................................................................................................... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bhojwani v. Pistiolis*,
   No. 06 Civ. 13761 (CM), 2007 WL 9228588 (S.D.N.Y. July 31, 2007)...................................7

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
   No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513 (E.D.N.Y. Dec. 15, 2017)................4, 6, 7

*Brady v. Top Ships Inc.*,
   324 F. Supp. 3d 335 (E.D.N.Y. 2018) (Bianco, J.)................................................................3, 6

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ...................................................................................................8

*China Agritech, Inc. v. Resh*,
   138 S. Ct. 1800 (2018)..............................................................................................................5

*In re China Educ. Alliance, Inc. Sec. Litig.*,
   No. CV 10–9239 CAS, 2011 WL 4978483 (C.D. Cal. Oct. 11, 2011)....................................6

*Dean v. China Agritech, Inc.*,
   No. CV 11–01331–RGK, 2011 WL 5148598 (C.D. Cal. Oct. 27, 2011)..................................6

*Desta v. WINS Fin. Holdings, Inc.*,
   No. 2:17-cv-02983-CAS-AGR, 2018 WL 7458639 (C.D. Cal. Nov. 9, 2018) .........................6

*Dolan v. Axis Capital Holdings Ltd.*,
   No. 04 Civ. 8564 (RJH), 2005 WL 883008 (S.D.N.Y. Apr. 13, 2005) ....................................5

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005).................................................................................................................3

*Foley v. Transocean, Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) .............................................................................................2

*In re Fuwei Films Sec. Litig.*,
   634 F. Supp. 2d 419 (S.D.N.Y. 2009)......................................................................................6

*Goldstein v. Puda Coal, Inc.*,
   827 F. Supp. 2d 348 (S.D.N.Y. 2011)...............................................................................4, 6, 7

*Henning v. Orient Paper, Inc.*,
   No. CV 10–5887–VBF, 2011 WL 2909322 (C.D. Cal. July 20, 2011)....................................6

ii

*Ho v. Duoyuan Global Water, Inc.*,
    887 F. Supp. 2d 547 (S.D.N.Y. 2012)...................................................................................6

*Hufnagle v. RINO Int'l Corp.*,
    No. CV 10–08695 DDP, 2013 WL 3976833 (C.D. Cal. Aug. 1, 2013) ...................................6

*Khunt v. Alibaba Grp. Holding Ltd.*,
    No. 15-cv-00759 (S.D.N.Y.)...................................................................................................7

*Khunt v. Alibaba Grp. Holding Ltd.*,
    102 F. Supp. 3d 523 (S.D.N.Y. 2015)....................................................................................7

*Kniffin v. Micron Tech., Inc.*,
    379 F. Supp. 3d 259 (S.D.N.Y. 2019)....................................................................................2

*Lang v. Tower Grp. Int'l, Ltd.*,
    No. 13 Civ. 5852(AT), 2014 WL 12779212 (S.D.N.Y. June 17, 2014)...................................5

*Lewy v. SkyPeople Fruit Juice, Inc.*,
    No. 11 Civ. 2700(PKC), 2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012)..................................6

*Maliarov v. Eros Int'l PLC*,
    No. 15-CV-8956 (AJN), 2016 WL 1367246 (S.D.N.Y Apr. 5, 2016) .....................................3

*Miller Inv. Trust v. Morgan Stanley & Co., Inc.*,
    879 F. Supp. 2d 158 (D. Mass. 2012) .....................................................................................7

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
    78 F. Supp. 3d 1215 (N.D. Cal. 2015) .....................................................................................6

*In re Montage Tech. Grp. Ltd. Sec. Litig.*,
    No. 14-cv-00722-SI, 2016 WL 1598666 (N.D. Cal. Apr. 21, 2016)........................................6

*Munoz v. China Expert Tech., Inc.*,
    No. 07 Civ. 10531 (AKH), 2011 WL 5346323 (S.D.N.Y. Nov. 7, 2011)................................6

*Omanoff v. Patrizio & Zhao LLC*,
    No. 14-723, 2015 WL 1472566 (D.N.J. Mar. 31, 2015) ..........................................................6

*Perry v. Duoyuan Printing, Inc.*,
    No. 10 Civ. 7235(GBD), 2013 WL 4505199 (S.D.N.Y. Aug. 22, 2013) ................................6

*Peters v. Jinkosolar Holding Co.*,
    No. 11 Civ. 7133 (JPO), 2012 WL 946875 (S.D.N.Y. Mar. 19, 2012) ...................................4

*Reimer v. Ambac Fin. Grp., Inc.*,
    No. 08 CIV. 411(NRB), 2008 WL 2073931 (S.D.N.Y. May 9, 2008).....................................4

iii

*Rose v. Deer Consumer Prods., Inc.*,
No. CV 11–03701 DMG, 2011 WL 6951969 (C.D. Cal. Dec. 29, 2011) ................................6

*In re Sequans Commc'ns S.A. Sec. Litig.*,
289 F. Supp. 3d 416 (E.D.N.Y. 2018) ..............................................................................4, 6, 7

*Snellink v. Gulf Resources, Inc.*,
870 F. Supp. 2d 930 (C.D. Cal. 2012) ..................................................................................6

*In re Surebeam Corp. Sec. Litig.*,
No. 03 CV 1721JM(POR), 2004 WL 5159061 (S.D. Cal. Jan. 5, 2004)..................................1

*Tan v. NIO Inc.*,
No. 19-CV-1424 (NGG) (VMS), 2020 WL 1031489 (E.D.N.Y. Mar. 3, 2020) ......................5

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
95 F. Supp. 3d 607 (S.D.N.Y. 2015).....................................................................................3

*Vanleeuwen v. Keyuan Petrochemicals, Inc.*,
No. CV 11–9495 PSG, 2013 WL 2247394 (C.D. Cal May 9, 2013) ......................................6

*Xianglin Shi v. Sina Corp.*,
No. 05 Civ. 2154 (NRB), 2005 WL 1561438 (S.D.N.Y. July 1, 2005)..................................10

*Yang v. Tibet Pharm., Inc.*,
No. 14–3538 (FSH), 2015 WL 730036 (D.N.J. Feb. 20, 2015) ................................................6

## Rules & Statutes

Md. Code Ann., Health Occ. § 14-316, *et seq.*...........................................................................9

15 U.S.C. §78u-4, *et seq.* ................................................................................. *passim*

Proposed Lead Plaintiff Ronald L. Hershberger and Robert J. Gereige, MD ("H&G") respectfully submit this reply in further support of their motion for appointment as Lead Plaintiff and approval of Labaton Sucharow and Rosen Law as Co-Lead Counsel for the Class (ECF No. 25).

## PRELIMINARY STATEMENT

Four motions remain before the Court for appointment as Lead Plaintiff and approval of selection of counsel. All movants have had the opportunity to respond to the other motions.

H&G has the largest financial interest. While Le Rivage LLC ("Le Rivage") claims larger losses, none are compensable, and thus it has no financial interest in this case. In contrast, Mr. Hershberger and Dr. Gereige, both individually and in the aggregate, have claimed larger losses than any of the remaining movants—a factor that courts have found dispositive in determining whether to aggregate the losses of a proposed lead plaintiff group. *See In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721JM(POR), 2004 WL 5159061, *5 (S.D. Cal. Jan. 5, 2004) (rejecting arguments against aggregation and finding proposed lead plaintiff group to be presumptively most adequate where individual within that group had greatest financial loss). None of the oppositions submitted rebut the presumption requiring appointment of H&G as Lead Plaintiff.

H&G is a small, cohesive group of sophisticated investors who demonstrated their adequacy by: (1) having the largest financial interest at stake, indicating they will litigate vigorously to recover their significant losses; (2) retaining experienced counsel and timely filing a motion seeking to represent the Class; and (3) executing and submitting their Joint Declaration. H&G has demonstrated that they have communicated and can easily communicate with each other, have a plan to resolve any disputes that may arise, understand the responsibilities of and

are willing to serve as a lead plaintiff pursuant to the PSLRA, and are prepared to prosecute this action diligently on behalf of the Class.

The attacks on Mr. Hershberger's loss are incorrect and inconsistent in that they falsely state he is an in/out trader who lacks a cognizable financial interest.  Likewise, the attacks on Dr. Gereige's credibility are based on false and improper speculation, as evidenced by the Declaration of Dr. Gereige, submitted herewith as Exhibit A to the Supplemental Declaration of Francis P. McConville ("Supp. McConville Decl.").   Accordingly, there is no ***proof*** of inadequacy to rebut the presumption in favor of appointing H&G as Lead Plaintiff.

## ARGUMENT

### I.       H&G Is the Presumptive Lead Plaintiff

Under the PSLRA there is a strong presumption that the "person or ***group of persons*** that . . . has the largest financial interest in the relief sought by the class" is the "most adequate plaintiff." 15 U.S.C. §78u-4(a)(3)(B)(iii) (emphasis added). H&G, individually and collectively possess the largest financial interest of any movant:[1]

| Movant | Net Loss (stated as filed) |
|---|---|
| ~~Le Rivage LLC~~ | ~~$5,026,299.86~~ |
| Ronald Hershberger<br>Robert J. Gereige | $924,159.68<br>$970,497.51<br>$1,894,657.19 |
| Tranquil Bay, LLC | $556,130.48 |
| Dominguez Moreno | $399,497 |

---

[1]  Contrary to Ms. Moreno, loss is by far the most significant metric in computing financial interest. *See Kniffin v. Micron Tech., Inc.*, 379 F. Supp. 3d 259, 265 (S.D.N.Y. 2019) (difference in net shares was outweighed by disparity in losses when asserted loss was "double"); *Foley v. Transocean, Ltd.*, 272 F.R.D. 126, 131 (S.D.N.Y. 2011) (finding a movant's smaller amount of net shares purchased not "significant enough to outweigh the fact that it sustained appreciably greater losses").

As explained in H&G's opposition, and as echoed by the oppositions of Tranquil Bay and Ms. Moreno, Le Rivage's compensable loss is *zero*.  Le Rivage should also be disqualified because of its gamesmanship and filing of an improper complaint.  Indeed, Le Rivage's eleventh-hour, token partial disclosure is contradictory to the entire theory of the case and was added simply to manufacture a loss where there was none.  *See Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 WL 1367246 (S.D.N.Y Apr. 5, 2016); *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 621 (S.D.N.Y. 2015).  When all losses that occurred prior to the false partial "corrective disclosure" are eliminated, Le Rivage fails to recognize any cognizable losses under *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005).  Accordingly, H&G is the presumptive Lead Plaintiff.

The PSLRA presumption can be rebutted only with *proof* that the movant with the largest financial interest is atypical or inadequate.  15 U.S.C. §78u-4(a)(3)(B)(iii)(II).  Other movants attempt to rebut the presumption attached to H&G through three arguments.  First, that H&G is an improperly formed group.  Second, that Hershberger suffered no loss under *Dura* and profited from the fraud.  And finally, resort to meritless, false personal attacks on Dr. Gereige.  For the reasons below, these arguments all fail.

### A.  H&G Has Proven its Cohesiveness and Ability to Act Cooperatively to Oversee its Lawyers and this Litigation

H&G is a small, cohesive partnership of two sophisticated individual investors, who each incurred significant losses in connection with their purchases of iQIYI securities.  H&G, through their Joint Declaration (Dkt. 25-6, "Joint Decl.") and their motion papers, evinced an ability to work together and manage the litigation. *See Brady v. Top Ships Inc.,* 324 F. Supp. 3d 335, 346 (E.D.N.Y. 2018) (Bianco, J.) (relying on joint declaration detailing "plans for cooperation and coordination" to find proposed group "is not the type of lawyer-driven group that other courts

have cautioned against approving"); *Reimer v. Ambac Fin. Grp., Inc.*, No. 08 CIV. 411(NRB), 2008 WL 2073931, at *3 (S.D.N.Y. May 9, 2008).[2]

That each member of H&G individually has the largest loss out of the remaining, competing movants weighs heavily in favor of appointment.  When a member of a proposed group has the largest individual loss, "potential lead plaintiffs are not being deprived of the PSLRA presumption by the aggregation of parties." *In re Sequans Commc'ns S.A. Sec. Litig.*, 289 F. Supp. 3d 416, 425 (E.D.N.Y. 2018); *see In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-4846 (WFK) (PK), 2017 WL 6403513, at *4 (E.D.N.Y. Dec. 15, 2017) (appointing group where individual member of group had largest loss of all competing movants); *Goldstein v. Puda Coal, Inc.,* 827 F. Supp. 2d 348, 356 (S.D.N.Y. 2011) (same).  In that case, "the adequacy concern should be focused on whether the aggregation is otherwise problematic—if for example, the joinder is of members with competing or diverting interests."  *Sequans*, 289 F. Supp. 3d at 425; *see Peters v. Jinkosolar Holding Co.*, No. 11 Civ. 7133 (JPO), 2012 WL 946875, at *8 (S.D.N.Y. Mar. 19, 2012) ("where the group comprises the class members with, far and away, the largest financial interest of any individual or group (that has otherwise come forward), then the policy [behind the PSLRA] is not disserved by allowing those individuals to join together"); *Reimer*, 2008 WL 2073931, at *4 ("Accordingly, their wish to combine their efforts in the litigation—as opposed to making separate lead plaintiff motions—does not diminish the fact that they have a greater financial interest than Inter–Local").  H&G plainly does not have competing or diverging interests. They are like-minded investors who incurred significant losses in

---

[2]  As a cursory matter, the argument set forth by counsel for Ms. Moreno, insinuating that the cohesive partnership of H&G was only formed upon Labaton Sucharow's purported knowledge of Ms. Moreno's (incorrect) loss figure is nothing more than unsworn, attorney argument. *See* ECF No. 52, at 14.  This baseless attack on counsel should be dismissed as mere antagonistic conjecture.

connection with their purchases of iQIYI securities and are motivated to prosecute this action efficiently.[3]

Courts routinely find that the appointment of co-lead plaintiffs confers numerous benefits to the class, including, *inter alia*, shared resources, experience and expertise, as well as continuity and stability if a single lead plaintiff subsequently needs to withdraw as a class representative. *See China Agritech, Inc. v. Resh*, 138 S. Ct. 1800, 1807 n.3 (2018) (finding that "[d]istrict courts often permit aggregation of plaintiffs into plaintiff groups"); *Lang v. Tower Group Int'l, Ltd.*, No. 13 Civ. 5852(AT), 2014 WL 12779212, at *3 (S.D.N.Y. June 17, 2014); *Dolan v. Axis Capital Holdings Ltd.*, No. 04 Civ. 8564 (RJH), 2005 WL 883008, at *5 (S.D.N.Y. Apr. 13, 2005).

Furthermore, courts routinely accept groups that demonstrate their cohesiveness through a Joint Declaration, like H&G submitted in this action. The Joint Declaration details H&G's plan for managing the litigation and future communication. H&G will resolve disagreements by majority vote, with votes equal to the loss incurred during the Class Period.[4] Joint Decl. ¶5. H&G conducted a conference call prior to filing the motion, and intend to convene future conference calls, both with and without counsel, as necessary as the case moves forward.[5] *Id.*

---

[3] That each member of H&G individually has the largest loss of the remaining movants serves to distinguish various cases opposing movants cite in support of disaggregation. *See, e.g.*, *Tan v. NIO Inc.*, No. 19-CV-1424 (NGG) (VMS), 2020 WL 1031489, at *3 (E.D.N.Y. Mar. 3, 2020) (appointing individual investor over group where group members each individually had smaller losses).

[4] H&G decided on this protocol for decision-making to demonstrate its ability to act cohesively as a group, should there be a disagreement of such magnitude that H&G is unable to come to a resolution. This methodology provides a concrete way of proceeding if the need arises.

[5] Switzerland and North Carolina have a time difference of only six hours. This time difference will be no impediment to their communication, indeed, they have already conducted a joint conference call and declared that they will communicate as necessary as the case progresses. That there are only two members in the group further attenuates any coordination concerns.

¶6. H&G also made commitments concerning their individual plans for participation, including "reviewing pleadings, instructing counsel, and/or attending hearings, as necessary." *Id.* ¶8; *see Brady*, 324 F. Supp. 3d at 346 (group "sufficiently demonstrated its members' plans for cooperation and involvement in the litigation for the Court to find this group will best serve the class"); *see also Puda Coal*, 827 F. Supp. 2d at 356; *Blue Apron*, 2017 WL 6403513, at *4; *Sequans*, 289 F. Supp. 3d at 425.

Finally, the Joint Declaration explains H&G's reasoning in selecting two firms to serve as Co-Lead Counsel: each group member believes the Class would be best served by the collective resources and experience of both firms in this complex litigation. Joint Decl. ¶7. Indeed, Rosen Law is a preeminent firm in the Plaintiffs' bar litigating against Chinese-based issuers like iQIYI. Rosen Law is at the forefront of litigating against Chinese companies with Chinese speaking and trained lawyers on staff and litigating novel issues in federal court.[6] Rosen Law

---

[6] *E.g., Munoz v. China Expert Tech., Inc.*, No. 07 Civ. 10531 (AKH), 2011 WL 5346323 (S.D.N.Y. Nov. 7, 2011) (issues concerning Chinese State Secrecy laws and discovery in China); *Rose v. Deer Consumer Prods., Inc.*, No. CV 11–03701 DMG (MRWx), 2011 WL 6951969 (C.D. Cal. Dec. 29, 2011) (service of process issues relating to PRC defendants). Reported cases include: *Ho v. Duoyuan Global Water, Inc.*, 887 F. Supp. 2d 547 (S.D.N.Y. 2012); *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419 (S.D.N.Y. 2009); *Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11 Civ. 2700(PKC), 2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012); *Perry v. Duoyuan Printing, Inc.*, No. 10 Civ. 7235(GBD), 2013 WL 4505199 (S.D.N.Y. Aug. 22, 2013); *Yang v. Tibet Pharm., Inc.*, No. 14–3538 (FSH), 2015 WL 730036 (D.N.J. Feb. 20, 2015); *Omanoff v. Patrizio & Zhao LLC*, No. 14-723, 2015 WL 1472566 (D.N.J. Mar. 31, 2015); *Hufnagle v. RINO Int'l Corp.*, No. CV 10–08695 DDP (VBKx), 2013 WL 3976833 (C.D. Cal. Aug. 1, 2013); *In re Montage Tech. Grp. Ltd. Sec. Litig.*, 78 F. Supp. 3d 1215 (N.D. Cal. 2015); *In re Montage Tech. Grp. Ltd. Sec. Litig.*, No. 14-cv-00722-SI, 2016 WL 1598666 (N.D. Cal. Apr. 21, 2016); *Desta v. WINS Fin. Holdings, Inc.*, No. 2:17-cv-02983-CAS-AGR, 2018 WL 7458639 (C.D. Cal. Nov. 9, 2018); *In re China Educ. Alliance, Inc. Sec. Litig.*,No. CV 10–9239 CAS (JCx), 2011 WL 4978483 (C.D. Cal. Oct. 11, 2011); *Henning v. Orient Paper, Inc.*, No. CV 10–5887–VBF (AJWx), 2011 WL 2909322 (C.D. Cal. July 20, 2011); *Snellink v. Gulf Resources, Inc.,* 870 F. Supp. 2d 930 (C.D. Cal. 2012); *Vanleeuwen v. Keyuan Petrochemicals, Inc.*, No. CV 11–9495 PSG (JCGx), 2013 WL 2247394 (C.D. Cal May 9, 2013); *Dean v. China Agritech, Inc.*, No. CV 11–01331–RGK (PJWx), 2011 WL 5148598

achieved the largest ever settlement involving a Chinese company -- $250 million in the Alibaba securities litigation. *See Khunt v. Alibaba Grp. Holding Ltd.,* No. 15-cv-00759 (S.D.N.Y.). As Judge McMahon correctly observed, Rosen Law "has extensive experience navigating the particular complexities of litigation with Chinese companies" and "employs fluent Chinese speakers." *Khunt v. Alibaba Grp. Holding Ltd.*, 102 F. Supp. 3d 523, 540 (S.D.N.Y. 2015).

In sum, H&G have proffered plenty of evidence that they will act collectively and separately from their lawyers. *See Puda Coal*, 827 F. Supp. 2d at 356 (appointing group that submitted similar joint declaration); *Blue Apron*, 2017 WL 6403513, at *4 (same); *Sequans*, 289 F. Supp. 3d at 425 (same).

### B.    Mr. Hershberger's Losses Are Recognizable

Tranquil Bay has made the incorrect and inconsistent assertion that Mr. Hershberger is an improper in/out trader who lacks a cognizable financial interest.[7]  *See* ECF No. 48, at 9.  First, Tranquil Bay ignores the salient point that, Mr. Hershberger, having held 19,883 ADSs at the end of the Class Period, and never having sold out of his position during the Class Period, is unquestionably ***not an in/out trader***.  *See* Loss Analysis, ECF No. 25-4.  Indeed, Tranquil Bay has conceded as much by providing in its own loss analysis, submitted in connection with its opposition brief, that Mr. Hershberger "HELD" ***precisely*** this amount of ADSs when netting out his Class Period purchases and sales.  *See* ECF No. 49-3.

---

(C.D. Cal. Oct. 27, 2011); *Miller Inv. Trust v. Morgan Stanley & Co., Inc.*, 879 F. Supp. 2d 158 (D. Mass. 2012).

[7] This attack is especially ironic considering that counsel for Tranquil Bay, in connection with its opposition brief, submitted an amended certification for its client for previously reporting incorrect transaction prices. *See Bhojwani v. Pistiolis*, No. 06 Civ. 13761 (CM) (KNF), 2007 WL 9228588, at *3 & n.1 (S.D.N.Y. July 31, 2007) (rejecting movant for careless errors in trading data submitted in initial motion).

Tranquil Bay further argues that Hershberger lacks a cognizable loss under the operative complaint.  *See* ECF No. 48, at 9 & n.6.  Specifically, Tranquil Bay states that "[a]fter accounting for the significant profits Hershberger made selling ADSs and call options during the Class Period, moreover, [sic] he actually netted approximately $1,864.12."[8]  Again, however, Tranquil Bay has conceded that Mr. Hershberger held nearly 20,000 shares at the end of the Class Period.  On this point, Tranquil Bay—again through its own supplemental loss analysis— has stated that on these "HELD" shares, Mr. Hershberger has suffered *cognizable losses* (which amount still places H&G's losses well above those of the remaining movants).  *See* ECF No. 49-3.  Adding yet another layer of confusion, Tranquil Bay further contradicts itself in its supplemental analysis by stating that Mr. Hershberger has suffered both "$915,715.88" and "$63,115.88" in "LIFO/*Dura* Losses Net Gains" (while referring to Mr. Hershberger as "Le Rivage").  *Id.*  All told, it appears that counsel for Tranquil Bay has unsuccessfully attempted to reduce and/or eliminate Mr. Hershberger's actionable damages by cherry picking gains and applying them to held shares.

Simply put, Tranquil Bay's attack on Mr. Hershberger's loss should be disregarded as a mere byproduct of hasty and careless analysis.  *See In re Cavanaugh*, 306 F.3d 726, 730 & n.4 (9th Cir. 2002) (concluding that the court must select "accounting methods that are both *rational and consistently applied*" in order to "compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit") (emphasis added).  Tellingly, even the data set forth in Tranquil Bay's analysis of Mr. Hershberger's losses *contradict its very*

---

[8]  Mr. Hershberger has never purported to have suffered losses on account of his options transactions, and any gains on such transactions were subtracted from his total loss figure.

*arguments*.  Mr. Hershberger's trading data speaks for itself, and Tranquil Bay's facially incorrect attempt to shoehorn him in with Le Rivage should be ignored.

### C.    The Attacks on Dr. Gereige Are Baseless

Tranquil Bay's additional contention that Dr. Gereige is somehow ill-equipped to serve as a fiduciary to the Class on concerns of credibility is premised on improper speculation—a far cry from the requisite ***proof*** required to rebut the strong presumption in favor of H&G's appointment.  In its opposition brief, Tranquil Bay has woefully misrepresented the circumstances surrounding the ***voluntary*** surrender of Dr. Gereige's license to practice medicine in Maryland.  *See* ECF No. 48. at 9-10.  Specifically, Tranquil Bay argues that Dr. Gereige was forced to surrender his physician's license after "troubling[ly]" making the misrepresentation to the Maryland State Board of Physicians that he had completed the required Criminal History Records Check ("CHRC").  *See id.*  Thus, according to Tranquil Bay, Dr. Gereige surrendered his license to avoid "the issuance of charges and prosecution of the aforementioned allegations." *See id.* (selectively quoting surrender letter).

Dr. Gereige's Declaration, submitted herewith in the interests of candor, establishes that the surrender of his license was entirely voluntary, as opposed to a lack of credibility or prior bad acts.  *See generally*, Supp. McConville Decl., Ex. A.  Under Maryland law governing the renewal of licenses for physicians, the term of a license "may not exceed 3 years."  Md. Code Ann., Health Occ. § 14-316(a)(1).  As part of this renewal process, "[b]eginning October 1, 2016," renewal applicants are required to provide a CHRC.  *Id.* § 14-316(g)(1).  Under this new CHRC requirement, all physicians must provide "[t]wo complete sets of legible fingerprints taken on forms approved by the Director of the Central Repository and the Director of the Federal Bureau of Investigation."  *Id.* § 14.308.1(c)(1).  Therefore, this fingerprinting

9

requirement had only recently come into effect when Dr. Gereige submitted his 2018 renewal application.

At the time, Dr. Gereige was 78 and had been living in Switzerland without practicing medicine for over 20 years. *See* Supp. McConville Decl., Ex. A, ¶¶ 3, 6. When the relevant licensing authority informed Dr. Gereige that he had not submitted a valid set of fingerprints (due to clerical error on his part based on the circumstances above), he was given the opportunity to remedy this infirmity by traveling to the U.S. for fingerprinting. *Id.* ¶ 4. Because Dr. Gereige had not lived in the U.S. or practiced medicine for some time, he instead elected to surrender his license as opposed to traveling to the U.S. *Id.* ¶¶ 6, 7. As such, the circumstances surrounding the voluntary surrender of Dr. Gereige's license to practice medicine in Maryland are not even remotely analogous to such past criminal convictions of fraud which have weighed against the appointment of lead plaintiff applicants in the past. *Cf. Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154 (NRB), 2005 WL 1561438, at *4–5 (S.D.N.Y. July 1, 2005) (rejecting lead plaintiff movant, in part, based on past ***criminal conviction for fraud***). Tranquil Bay's argument should be rejected.

**CONCLUSION**

For the foregoing reasons, the Court should grant H&G's motion and deny the competing motions.

DATED:  July 6, 2020                               Respectfully submitted,

                                                   */s/ Francis P. McConville*

                                                   **LABATON SUCHAROW LLP**
                                                   Christopher J. Keller
                                                   Eric J. Belfi
                                                   Francis P. McConville
                                                   David J. Schwartz
                                                   140 Broadway
                                                   New York, New York 10005

10

Telephone: (212) 907-0700
Facsimile:  (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com
dschwartz@labaton.com

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Facsimile: (212) 202-3827
pkim@rosenlegal.com
lrosen@rosenlegal.com

*Attorneys for Proposed Lead Plaintiff Ronald L.
Hershberger and Robert J. Gereige, MD and
Proposed Co-Lead Counsel for the Class*

11

## CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2020, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/ *Francis P. McConville*