**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEAN LEE, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:20-cv-01830-LDH-JO |
| Plaintiff, | |
| v. | |
| iQIYI, INC., YU GONG, and XIAODONG WANG, | |
| Defendants. | Date of Service: July 6, 2020 |
| LE RIVAGE LLC, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:20-cv-02653-LDH-JO |
| Plaintiff, | |
| v. | |
| IQIYI, INC., YU GONG, and XIAODONG WANG, | |
| Defendants. | |

**MOVANT LE RIVAGE LLC'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF ITS MOTION FOR APPOINTMENT AS LEAD**
**PLAINTIFF AND APPROVAL OF LEAD COUNSEL**

**TABLE OF CONTENTS**

I.     INTRODUCTION ................................................................................................. 1

II.    ARGUMENT ....................................................................................................... 2

       A.    Le Rivage's Motion And Complaint Were Timely, And All Class Members Were
             Provided Notice ...................................................................................... 2

       B.    Le Rivage Alleges A Legitimate Partial Disclosure ................................................ 5

       C.    The Competing Movants Fail To Rebut The Presumption That Le Rivage Is The
             Most Adequate Plaintiff........................................................................... 8

III.   CONCLUSION................................................................................................. 10

i

# TABLE OF AUTHORITIES

<u>CASES</u>

*Acticon AG v. China North East Petroleum Holdings, Ltd.*,
  692 F.3d 34 (2d Cir. 2012)........................................................................................2, 6

*Bensley v. FalconStor Software, Inc.*,
  277 F.R.D. 231 (E.D.N.Y. 2011) ....................................................................................7

*Camp v. Qualcomm Inc.*,
  2019 WL 277360 (S.D. Cal. Jan. 22, 2019) ................................................................ 10

*Christian v. BT Grp. PLC*,
  2017 WL 3705804 (D.N.J. Aug. 28, 2017)....................................................................9

*Dube v. Signet Jewelers Ltd.*,
  2017 WL 1379385 (S.D.N.Y. Apr. 14, 2017) ................................................................5

*Galmi v. Teva Pharm. Indus. Ltd.*,
  302 F. Supp. 3d 485 (D. Conn. 2017) ............................................................................6

*Garbowski v. Tokai Pharm., Inc.*,
  302 F. Supp. 3d 441 (D. Mass. 2018) .......................................................................... 10

*Hachem v. Gen. Elec. Inc.*,
  2018 WL 1779345 (S.D.N.Y. Apr. 12, 2018)................................................................5

*In re Boeing Co. Aircraft Sec. Litig.*,
  2019 WL 6052399 (N.D. Ill. Nov. 15, 2019)............................................................... 10

*In re Comverse Tech., Inc. Sec. Litig.*,
  2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ...................................................................4

*In re Gen. Elec. Sec. Litig.*,
  2009 WL 2259502 (S.D.N.Y. July 29, 2009) ................................................................9

*In re Gentiva Sec. Litig.*,
  281 F.R.D. 108 (E.D.N.Y. 2012) ................................................................................6, 9

*In re Pfizer Inc. Sec. Litig.*,
  233 F.R.D. 334 (S.D.N.Y. 2005)....................................................................................4

*In re Tronox, Inc. Sec. Litig.*,
  262 F.R.D. 338 (S.D.N.Y. 2009).................................................................................. 10

*In re VimpelCom, Ltd.*,
  2016 WL 5390902 (S.D.N.Y. Sept. 26, 2016) ............................................................................. 4

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) ............................................................................................. 10

*Juliar v. Sunopta Inc.*,
  2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ......................................................................... 4, 9

*Maliarov v. Eros Int'l PLC*,
  2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016) ...........................................................................7-8

*Montoya v. Mamma.com Inc.*,
  2005 WL 1278097 (S.D.N.Y. May 31, 2005) ............................................................................ 9

*Perez v. HEXO Corp.*,
  2020 WL 905753 (S.D.N.Y. Feb. 25, 2020) ........................................................................... 10

*Plaut v. Goldman Sachs Grp., Inc.*,
  2019 WL 4512774 (S.D.N.Y. Sept. 19, 2019) .......................................................................... 7

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
  95 F. Supp. 3d 607 (S.D.N.Y. 2015) ......................................................................................... 7

*Waldman v. Wachovia Corp.*,
  2009 WL 2950362 (S.D.N.Y. Sept. 14, 2009) ...................................................................... 4, 5

STATUTES

15 U.S.C. § 78u-4(a)(2)(A) ........................................................................................................... 10

15 U.S.C. § 78u-4(a)(3)(A)(i)(II) ..................................................................................................... 3

15 U.S.C. § 78u-4(a)(3)(B)(iii) ........................................................................................................ 2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) ................................................................................................... 9

Lead Plaintiff Movant Le Rivage LLC ("Movant" or "Le Rivage") respectfully submits this reply memorandum of law in further support of its motion for appointment as lead plaintiff and approval of lead counsel (Dkt. No. 33) and in response to the oppositions of Tranquil Bay, LLC ("Tranquil Bay," Dkt. No. 48), Ronald L. Hershberger and J. Gereige, MD ("Hershberger and Gereige," Dkt. No. 50) and Laura Maria Dominguez Moreno ("Moreno," Dkt. No. 52).

## I.    INTRODUCTION

The Private Securities Litigation Reform Act of 1995 (the "PSLRA") was adopted to curb abuses of the securities laws and prevent lawyer-driven litigation. Specifically, the PSLRA attempted to prevent the "race to the courthouse" to be a factor in appointing lead plaintiff by ensuring that the person or entity with the largest financial stake in the case is appointed lead plaintiff. Shockingly, the competing motions ignore this mandate, claiming that Le Rivage—the movant with undisputedly the largest financial interest in the case—should not be appointed lead plaintiff because the lead plaintiff process must be governed by an earlier, bare-bones complaint that did not fully capture the conduct at issue in this action. Specifically, the competing movants claim that Le Rivage's filing of a complaint that maximized the Class's losses and added an additional corrective disclosure that is clearly relevant and appropriate *before the filing deadline* runs afoul of spirit of the PSLRA and that as such, the motion of Le Rivage, the movant with the greatest financial interest, should just be ignored. This is legal nonsense.

If these movants actually thought the filing of Le Rivage's complaint did not provide appropriate notice to the class, they (and their counsel) would be arguing that a new PSLRA notice should be issued to ensure that the class member with the largest financial interest could come forward and be appointed lead plaintiff in accordance with both the spirit and text of the PSLRA. But this is not what these movants seek. They want to be appointed lead plaintiff even

1

though they clearly do not have the largest financial interest; they ignore that republication is an available remedy.  Unlike these movants, Le Rivage (and its counsel) wants the PSLRA to be followed and would accept reopening the notice process to ensure the most appropriate lead plaintiff is appointed – although Le Rivage believes that a new notice is not necessary here.

The competing movants also make a series of specious arguments regarding Le Rivage's adequacy that likewise put their own interests above the interest of the class they seek to represent.  For example, one of the movants claims that the additional corrective disclosure alleged by Le Rivage is implausible because "iQIYI's stock price *completely recovered* the following day."  Dkt No. 50 at 6 & n.4.  Following the corrective disclosure, the stock actually decreased.  That the stock later recovered is simply not indicative of a lack of loss causation.[1]  If it was, under the competing movants' logic, there would be no loss causation *at all* because the stock price actually increased following the only corrective disclosure that the competing movants claim should be considered.  Thus, the competing movants are willing to put the entire class's claims and recovery at risk just to attack Le Rivage.  Such gamesmanship is dangerous and should be rejected.  The other attacks against Le Rivage fare no better, and Movant should be appointed lead plaintiff.

## II.   ARGUMENT

### A.   Le Rivage's Motion And Complaint Were Timely, And All Class Members Were Provided Notice

The PSLRA requires that a court "adopt a presumption that the most adequate plaintiff … is the person or group of persons that – [] has either filed the complaint or made a motion…" 15 U.S.C. § 78u-4(a)(3)(B)(iii).  The deadline for a class member to file a motion or a complaint to be considered a potential lead plaintiff candidate is sixty days after the publication of the PSLRA

---

[1] *See, e.g.*, *Acticon AG v. China North East Petroleum Holdings, Ltd.*, 692 F.3d 34, 41 (2d Cir. 2012) (price rebound could represent market reaction to disclosure or unrelated gains).

notice.  15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  Here, there is no dispute that Le Rivage filed both its complaint and motion before the expiration of the deadline and that it has the largest financial interest in the case.  *See* Dkt. No. 47 at 4-6.  In fact, Le Rivage has three times the financial losses of any other individual movant.  *Id.*  As such, Le Rivage is the presumptive most adequate plaintiff.

The competing movants all argue that Le Rivage is disqualified because it filed a complaint on the last day of the notice period.  *See, e.g.*, Dkt. No. 48 at 5; Dkt No. 50 at 4; Dkt. No. 52 at 5.  First of all, the statute only requires that a movant file a complaint or motion *within* the 60-day period, which Le Rivage has done.  Thus, the competing movants are attempting to create a new PSLRA requirement, without any support, that potential movants must file complaints at some *unspecified earlier time* to be considered.

Second, the competing movants claim that Le Rivage's filing of its complaint on the last day of the notice period was "gamesmanship" to "increase [its] chances of appointment."  *See, e.g.*, Dkt. No. 48 at 5; Dkt. No. 50 at 5; Dkt. No. 52 at 6.  This argument is simply nonsensical. Le Rivage has the largest financial interest under the Class Period that has been in place since the filing of the instant action.  If Movant had filed its complaint a week earlier, it would still have had losses that were more than three million dollars more than any other movant.  Thus, the competing movants appear to be complaining that they did not have time to cobble together larger groups of investors in the hope of aggregating a larger loss than Le Rivage.  This conduct is exactly what the PSLRA was put in place to prevent, and it is certainly not a reason to disqualify Le Rivage.

Third, the competing movants argue that the filing of the complaint "precluded other members of the Class with shares over the new alleged corrective disclosure" reasonable

3

opportunity to come forward to be appointed lead plaintiff. *See, e.g.*, Dkt. No. 50 at 4 n.4. This argument would potentially be applicable if the *Le Rivage* complaint altered the class period, but it did not. Here, all investors were informed about the case and class period.[2] Certainly, if any larger investors existed, they could have easily hired counsel to look into the facts and filed their own complaint. There is simply no reason to believe that any class member was precluded from moving by the filing of the *Le Rivage* complaint that had the ***same class period as the first-filed complaint***. Thus, it is unsurprising that all of the cases cited by the competing movants regarding insufficient notice involved situations where the class period was altered after the PSLRA deadline had run.[3]

Moreover, this "preclusion" argument is nonsensical as courts have appointed lead plaintiffs based on evidence of partial disclosures that were contained in motion papers and not in the complaints on file. *See, e.g.*, *Juliar v. Sunopta Inc.*, 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (crediting movant's "evidence" in reply brief of "substantial leakage" of misconduct before the first alleged disclosure and finding movant was not subject to loss causation or in-and-out challenge); *In re VimpelCom, Ltd.*, 2016 WL 5390902, at *3 (S.D.N.Y. Sept. 26, 2016) (denying motion for reconsideration of order appointing movant that sold shares after an early alleged partial disclosure where movant provided evidence of loss causation in response to the motion to reconsideration). However, if Le Rivage had not filed its complaint, the competing movants most certainly would have argued that it is improper to rely on a partial disclosure that was not alleged in a complaint, in spite of the relevant law. *Cf. In re Comverse*

---

[2] This distinguishes this case from those cited by the competing movants where courts have refused to use a different, longer class period for calculating financial interest than the shorter one for which notice was provided. *See, e.g.*, Dkt. No. 50 at 8 (citing cases where courts have declined to use the longest class period when calculating financial interest).

[3] *See, e.g.*, *Waldman v. Wachovia Corp.*,  2009 WL 2950362, at *1 (S.D.N.Y. Sept. 14, 2009) (requiring republication of notice where "new proposed class and claims extend far beyond the class and claims proposed by the original Complaint."); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005) (similar).

*Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *6 (E.D.N.Y. Mar. 2, 2007) (refusing to consider movant's asserted losses from sales prior to any corrective disclosure alleged in the complaint).

Clearly, if the competing movants actually believed that shareholders were precluded from consideration, they would argue in favor of republication of notice, a common remedy imposed by courts when complaints expand the class definition or add claims beyond those in the original complaint. *See, e.g.*, *Waldman*, 2009 WL 2950362, at *1.[4] Competing movants claim that shareholders are precluded from consideration, but fail to argue in favor of republication of notice, demonstrating that their purported concern is just hollow gamesmanship.[5]

### B.    Le Rivage Alleges A Legitimate Partial Disclosure

As an initial matter, in seeking to advance their proposed counsel's interests, the competing movants recklessly disregard the class's interests with attempts to discredit the plausible partial disclosure alleged in the *Le Rivage* complaint.  They assert that the partial disclosure is somehow less genuine because the stock recovers the next day. *E.g.* Dkt. No. 50 at 6 n.4.  But even a cursory review shows that the same argument could potentially be used to dispute the disclosure on April 7, 2020 common to all complaints.[6]  As such, movants recklessly raise doubts that jeopardize the entire class's interest and likelihood of recovery based on the Wolfpack report.[7]

---

[4] *See also Hachem v. Gen. Elec. Inc.*, 2018 WL 1779345, at *1 (S.D.N.Y. Apr. 12, 2018) (finding "that republication is warranted and that the lead plaintiff process must be reopened"); *Dube v. Signet Jewelers Ltd.*, 2017 WL 1379385, at *1 (S.D.N.Y. Apr. 14, 2017) ("Lead Plaintiffs are ordered to republish notice pursuant to the PSLRA to reflect the asserted class and class periods in the Second Amended Complaint").

[5] That these movants and their counsel are willing "to subordinate the interests of the putative class in an effort to ensure their own control of the litigation" "demonstrate their inadequacy." Dkt. No. 52 at 6.

[6] Following the release of the Wolfpack report, the price of iQIYI shares fell $0.99 to close at $16.51 per share on April 8, 2020. Dkt. No. 1 at ¶ 42. On April 9, 2020, iQIYI shares closed at $17.37 per share. *See* Declaration of Gregory Linkh ("Linkh Decl."), Ex. A.

[7] Moreover, loss causation is not negated as a matter of law because the stock recovered. *See, e.g.*, *Acticon AG*, 692 F.3d at 41 (price rebound could represent market reaction to disclosure or unrelated gains).

5

Moreover, the *Le Rivage* complaint alleges a plausible partial disclosure, and movants' arguments to the contrary show how little investigation they and their counsel conducted into the allegations. The first related action was filed on April 16, 2020, merely ten days after the Wolfpack report was released on April 7, 2020. Nearly eight pages of the complaint are page-long quotes of the Wolfpack report, and the remaining substantive allegations are block quotes from the Company's SEC filings. *See* Dkt. No. 1 at 11-18. Using this threadbare complaint, the competing movants attack the plausibility of the partial disclosure, apparently without conducting any further investigation and seeking only to discredit Movant as the presumptive most adequate plaintiff.

Though it is premature to contest the merits at this preliminary stage, Le Rivage submits that the October 30, 2018 disclosure is well-supported and thus Movant may rely on it for the determining its financial interest. *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 502 (D. Conn. 2017) ("So long as a partial disclosure can be plausibly alleged, a proposed lead plaintiff should not be precluded from relying on that disclosure to establish recoverable losses."); *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 115-16, 118 (E.D.N.Y. 2012) (considering financial interests of movants that adequately alleged partial disclosures). On that day, the Company stated that it had "cleaned up some not so healthy advertisements on the in-feed side" by letting go of customers who lacked "related documents to prove they are qualified advertisers." *Le Rivage* complaint at ¶ 25. This partially disclosed that iQIYI's advertising growth had been overstated because it included customers whose content should not have been permitted, including from "certain high-risk profile sectors," thus conflicting with prior statements.[8] *See id.*, Ex. C at 3.

---

[8] For example, the Registration Statement claimed that iQIYI is "obligated to monitor the advertising content shown on [its] platform" and that "to fulfill these monitoring functions, we include clauses in all of our advertising

However, this disclosure only partially revealed the fraud.  It suggested that the purported "clean up" fixed the issue and that future advertising numbers would accurately depict iQIYI's growth based on advertisers who adhered to relevant regulations.  As the Wolfpack report later revealed, iQIYI's advertising revenue reported to the SEC was still overstated, as evidenced by the much lower metrics that the Company reported to the SAIC.  Dkt. No. 1 at ¶ 37.

These factual allegations plausibly demonstrate that the October 30, 2018 is a partial disclosure, unlike in the cases cited by the other movants in which the purported disclosures were too attenuated to plausibly reveal the fraud.[9]  *Cf. Topping*, 95 F. Supp. 3d at 619-22 (announcement that auditor would review cash balances did not reveal that CEO was siphoning cash); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 239 (E.D.N.Y. 2011) (earnings miss, without more, did not disclose potentially illegal payments).

The competing movants primarily rely on the decision in *Maliarov* for their argument that Le Rivage's motion should be ignored.  *See* Dkt. No. 50 at 5; Dkt. No. 48 at 5-6; Dkt. No. 52 at 5-6.  But while the competing movants claim that that case involved "identical circumstances," this is simply not true; the defects found in *Maliarov* are not present here.  First, the corrective disclosure alleged in *Maliarov* was based on a purported leakage theory for which the complaint lacked any support.  *Maliarov v. Eros Int'l PLC*, 2016 WL 1367246, at *3 (S.D.N.Y. Apr. 5, 2016) (new complaint made "unsupported allegations that those with 'early access to the Alpha Exposure Report' leaked such information in an unspecified manner").  As discussed above, the partial disclosure here has nothing to do with an "unspecified leakage theory" as certain movants

---

contracts requiring that all advertising content . . . must comply with relevant laws and regulations."  Linkh Decl., Ex. B at 25-26. However, the October 2018 disclosure demonstrates that, in fact, the Company knowingly permitted advertisers to post content without having the required documentation.

[9] The competing movants also cite to other inapposite cases where the purported disclosure was alleged in a complaint filed *after* lead plaintiff motions were filed.  *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 619 (S.D.N.Y. 2015) (two weeks after deadline had lapsed); *see also Plaut v. Goldman Sachs Grp., Inc.*, 2019 WL 4512774, at *5 (S.D.N.Y. Sept. 19, 2019) (twenty days after deadline had lapsed).

7

claim.  Also, the complaint clearly identifies a specific means of disclosure – the October 30, 2018 corporate announcement.  *See id.* (citing cases favorably where the form of corrective disclosures was identified – a particular letter, press release, statements from the director and an analyst report).  Second, the *Maliarov* court was concerned by a "specter of gamesmanship" that is not at issue here.  In that case, the movant had authorized the filing of the complaint alleging a purported disclosure, but it was not filed until *two weeks later* (*i.e.*, on the last day for potential class members to file a lead plaintiff motion).  *Id.* at *4.  Here, Le Rivage and its proposed counsel investigated the claims and alleged additional disclosures as soon as practicable: Movant's complaint and certification were signed and filed on the same day.

> **C.      The Competing Movants Fail To Rebut The Presumption That Le Rivage Is The Most Adequate Plaintiff**

While most of the competing movants simply argue that the presumption does not attach to Le Rivage, Moreno, the movant with the fifth largest loss, claims that Movant is subject to a unique defense arguing that, if the Court ultimately determined that the earlier corrective disclosure was deemed nonactionable, Le Rivage would be an in-and-out trader that could not demonstrate loss causation.  *See* Dkt. No. 52 at 6-8.   This purely speculative argument ignores that the lead plaintiff presumption may be rebutted only upon "proof" of a unique defense.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As counsel for Moreno recently explained in a substantially similar situation,[10] "courts routinely appoint investors as lead plaintiff when they sell their shares of stock after a partial disclosure and are not holding any shares at the time of a later disclosure."  *See* Linkh Decl., Ex. D at 6 (citing cases).  This is because "where a putative lead plaintiff sold all its shares after a partial disclosure of misconduct by the defendant but before the final disclosure that led to the

---

[10] *Christian v. BT Grp. PLC*, No. 2:17-CV-00497-KM-JBC (D.N.J.).

lawsuit, that putative lead plaintiff does not face the unique defense of having to show loss causation to the extent that it cannot serve as lead plaintiff." *Juliar*, 2009 WL 1955237, at *2 (appointing investor who sold shares after partial disclosure); *see also In re Gen. Elec. Sec. Litig.*, 2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009) (no unique loss causation defense where a putative lead plaintiff sold all its shares after a partial disclosure).

Regardless, where, as here, there is a plausible partial disclosure prior to the movant's sales, courts often appoint in-and-out traders. *Gentiva*, 281 F.R.D. at 115 (rejecting argument that in-and-out trader is ineligible, where there was a plausible partial disclosure); *see also Christian v. BT Grp. PLC*, 2017 WL 3705804, at *8 (D.N.J. Aug. 28, 2017) (appointing in-and-out trader where the "allegations present a fairly straightforward (and not atypical) case of progressive revelation of a problem that turned out to be more serious than first believed" and refusing to speculate on other causes of the first alleged drop).[11]

If the Court deems it necessary, Movant will endeavor to add an additional representative that held shares through the final disclosure in an amended complaint to aid Le Rivage in representing the Class, just as Moreno's counsel offered in the *BT Group* case. *See* Linkh Decl., Ex. D at 9 n.4 (noting that this would "address[] all of the concerns raised by the Competing Movants."); *Christian*, 2017 WL 3705804, at *8 ("I take some comfort in the Pension Fund's offer to 'include an additional class representative who held shares of BT Group through the final disclosure' in an amended complaint.") (*citing In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 286 (S.D.N.Y. 2003) (PSLRA permits the addition of named plaintiffs)).

Finally, Moreno also argues that Le Rivage has not provided enough information to

---

[11] *See also Montoya v. Mamma.com Inc.*, 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005) ("[P]laintiffs need only allege that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security, and loss causation does not require *full* disclosure and can be established by *partial* disclosure during the class period which causes the price of shares to decline") (internal quotation marks omitted).

satisfy the Rule 23 requirements since it has not provided Mr. Loven's (the manager of Le Rivage) "background or investing experience."[12] Dkt. No. 52 at 10. This is simply false. In its opening papers, Le Rivage explained that Mr. Loven "is a professional investor with a Bachelor's in Marketing, and [that] he has been managing his own investments since 2013." Dkt. No. 35 at 9. Thus, while almost no courts require movants to provide more information than the PSLRA mandates, Le Rivage has provided enough information to satisfy the outlier standards set by the two courts' decisions discussed by Moreno. *Cf. Perez v. HEXO Corp.*, 2020 WL 905753, at *3 (S.D.N.Y. Feb. 25, 2020) (declining to appoint movant who "fail[ed] to provide *any* information regarding his experience in his preliminary motion"); *In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *5 (N.D. Ill. Nov. 15, 2019) (disqualifying movant that "provided no such information").[13] Nor are there any allegations that Le Rivage has made false statements to the Court as per the other inapposite cases cited by Moreno.[14] However, if the Court requests any additional information beyond that required by the PSLRA, Movant would of course provide it.

## III.    CONCLUSION

Since no movant is able to rebut to the presumption that Le Rivage is the most adequate plaintiff, Le Rivage should be appointed as lead plaintiff, and no other movant is entitled to consideration. *See In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009).

---

[12] Le Rivage's certification complies with the PSLRA. *Compare* 15 U.S.C. § 78u-4(a)(2)(A) (setting requirements for the certification to be filed by putative representatives), with Dkt. No. 39, Ex. B (Le Rivage certification). The PSLRA does not require that representatives describe their background or investing experience.

[13] Le Rivage notes that a motion for reconsideration of the *HEXO* lead plaintiff decision is pending. *In re HEXO Corp. Sec. Litig.*, Case No. 1:19-cv-10965-NRB (S.D.N.Y.), Dkt. No. 91.

[14] *See Camp v. Qualcomm Inc.*, 2019 WL 277360, at *3-4 (S.D. Cal. Jan. 22, 2019) (highlighting "doubts . . . because of ... errors in the transaction records and loss calculations accompanying [his] motion"); *Garbowski v. Tokai Pharm., Inc.*, 302 F. Supp. 3d 441, 455 (D. Mass. 2018) ("[Plaintiff's] willingness to make false statements under oath contributes to the court's conclusion that he would not have been an adequate lead plaintiff.").

Respectfully submitted,

DATED: July 6, 2020                    **GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

-and-

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Le Rivage LLC and Proposed Lead Counsel for the Class*

11

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On July 6, 2020, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Eastern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on July 6, 2020, at New York, New York.

*/s/ Gregory B. Linkh*
Gregory B. Linkh