# EXHIBIT D

CARELLA, BYRNE, CECCHI, OLSTEIN,
  BRODY & AGNELLO, P.C.
JAMES E. CECCHI
5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)

Local Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DOUGLAS WILENS
SABRINA E. TIRABASSI
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
dwilens@rgrdlaw.com
stirabassi@rgrdlw.com

[Proposed] Lead Counsel for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

JAMES CHRISTIAN, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

vs.

BT GROUP PLC, et al.,

Defendants.

No. 2:17-cv-00497-KM-JBC

**PAMCAH-UA LOCAL 675 PENSION FUND'S MEMORANDUM OF LAW
IN FURTHER SUPPORT OF ITS MOTION FOR
APPOINTMENT AS LEAD PLAINTIFF**

Case 1:20-cv-01830-PGG-TAM   Document 55-5   Filed 07/06/20   Page 3 of 18 PageID #:
Case 2:17-cv-00497-KM-JBC   Document 20-5   Filed 04/17/17   Page 2 of 17 PageID: 450
1482

## TABLE OF CONTENTS

**Page**

I. PRELIMINARY STATEMENT ................................................................1

II. ARGUMENT................................................................................2

    A.    The Pension Fund Should Be Appointed Lead Plaintiff........................2

    B.    The Competing Movants Have Failed to Provide Proof that the
             Pension Fund is Atypical or Inadequate................................................4

III. CONCLUSION............................................................................11

Case 1:20-cv-01830-DG-TAM   Document 55-5   Filed 07/06/20   Page 4 of 18 PageID #:
1483
Case 2:17-cv-00497-RM-JBC   Document 20-5   Filed 04/17/17   Page 3 of 17 PageID: 451

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Bensley v. FalconStor Software, Inc.*,
277 F.R.D. 231 (E.D.N.Y. 2011)..................................................................................7

*Elstein v. Net 1 UEPS Techs., Inc.*,
No. 13 Civ 9100 (ER), 2014 U.S. Dist. LEXIS 100574 (S.D.N.Y.
July 23, 2014)..............................................................................................................4

*Ferrari v. Impath, Inc.*,
No. 03 Civ. 5667, 2004 U.S. Dist. LEXIS 13898 (S.D.N.Y. July
20, 2004) ......................................................................................................................4

*Fishbury, Ltd. v. Connetics Corp.*,
No 06 Civ. 11496 (SWK), 2006 U.S. Dist. LEXIS 90696
(S.D.N.Y. Dec. 14, 2006) ............................................................................................9

*Foley v. Transocean Ltd.*,
272 F.R.D. 126 (S.D.N.Y. 2011) ................................................................................8

*Hevesi v. Citigroup, Inc.*,
366 F.3d 70 (2d Cir. 2004) ..........................................................................................9

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001) ........................................................................................4

*In re Cendant Corp. Litigation*,
182 F.R.D. 144 (D.N.J. 1998)....................................................................................10

*In re Gen. Elec. Sec. Litig.*,
No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133 (S.D.N.Y.
July 29, 2009)..............................................................................................................6

*In re Global Crossing, Ltd. Sec. Litig.*,
313 F. Supp. 2d 189 (S.D.N.Y. 2003) ........................................................................9

*In re Smith Barney Transfer Agent Litig.*,
No. 05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728 (S.D.N.Y.
Apr. 17, 2006) ...........................................................................................................10

Case 1:20-cv-01830-PG-TAM   Document 55-5   Filed 07/06/20   Page 5 of 18 PageID #:
1484
Case 2:17-cv-00497-RM-JBC   Document 20-5   Filed 04/17/17   Page 4 of 17 PageID 452

# TABLE OF AUTHORITIES

**Page**

*In re WorldCom, Inc. Sec. Litig.*,
219 F.R.D. 267 (S.D.N.Y. 2003) ........................................................................9

*Juliar v. SunOpta, Inc.*,
No. 08 Civ. 933 (PAC), 2009 U.S. Dist. LEXIS 58118 (S.D.N.Y.
Jan. 30, 2009) ....................................................................................................6

*Montoya v. Mamma.com Inc.*,
No. 05 Civ. 2313 (HB), 2005 U.S. Dist. LEXIS 10224 (S.D.N.Y.
May 31, 2005) ................................................................................................6, 8

*Varghese v. China Shenghuo Pharm. Holdings, Inc.*,
589 F. Supp. 2d 388 (S.D.N.Y. 2008) ...............................................................3

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
216 F.R.D. 248 (S.D.N.Y. 2003) .....................................................................10

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
No. 05-cv-04617 (RJH), 2006 U.S. Dist. LEXIS 3028 (S.D.N.Y. Jan. 25,
2006) ..................................................................................................................6

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
§78u-4(a)(3)(B)(iii) ............................................................................................10
§78u-4(a)(3)(B)(iii)(I) ..........................................................................................3
§78u-4(a)(3)(B)(iii)(II) .........................................................................................4

Proposed lead plaintiff PAMCAH-UA Local 675 Pension Fund (the "Pension Fund") respectfully submits this reply memorandum in further support of its motion for appointment as lead plaintiff.

## I.   PRELIMINARY STATEMENT

Of the two remaining lead plaintiff movants,[1] only the Pension Fund qualifies as the "most adequate plaintiff" under the PSLRA to lead this action.  The Pension Fund has the largest financial interest among the competing movants and otherwise satisfies the requirements of Rule 23.  The Pension Fund thus should be appointed lead plaintiff.

In opposing the Pension Fund's motion, the Competing Movants concede that the Pension Fund possesses the largest financial interest and concede that is the presumptively most adequate plaintiff.  Dkt. No. 18 at 4.  In spite of this acknowledgment, and without a scintilla of proof to the contrary, the Competing Movants present a string of hypotheticals to argue that the Pension Fund is "*potentially* subject" to unique defenses that "*could* become the focus of the litigation" and render it atypical of the class.  Dkt. No. 18, at 5.  Specifically, the Competing Movants argue that the Pension Fund sold all of its shares after the October 27, 2016 partial loss-causing disclosure, but before the end of the Class

---

[1]   James Christian filed a notice of withdrawal of his lead plaintiff motion on April 11, 2017, recognizing that he did not "have the largest financial interest" in the action. Dkt. No. 19.

- 1 -

Period on January 23, 2017.  Dkt. No. 18 at 5 (acknowledging that the Pension Fund had sold out of BT Group by November 17, 2016).  Because the October 27, 2016 partial disclosure caused a smaller decline in share price than the final revelation on January 24, 2017, "it's *possible* that this Court will find that there is no loss causation with respect to the October 2016 price decline."  *Id*. at 5-6.  Therefore, according to the Competing Movants, "*[i]f* the Pension Fund fail[s] to establish the purported October 2016 disclosure as a loss causation event," the Pension Fund would be deemed an "in-and-out" trader.  *Id*. at 6.  And *if* the Pension Fund is deemed "in-and-out," that fact alone would render the Pension Fund atypical, as it "*might* lack standing."  *Id*. at 6-7.  The Competing Movants do not present any proof of these claims as required by the PSLRA in order to rebut the presumption in favor of the Pension Fund.  Therefore, the Competing Movants' conjecture must be disregarded, and the Court should grant the Pension Fund's motion for appointment as lead plaintiff.

## II.    ARGUMENT

### A.    The Pension Fund Should Be Appointed Lead Plaintiff

Pursuant to the PSLRA, movants seeking to be appointed lead plaintiff are required to demonstrate they have the "largest financial interest in the relief sought by the class" and "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of

Case 1:20-cv-01830-PGC-TAM    Document 55-5    Filed 07/06/20    Page 8 of 18 PageID #:
1487
Case 2:17-cv-00497-RM-JBC    Document 20-5    Filed 04/17/17    Page 7 of 17 PageID 455

Civil Procedure."  15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  The Pension Fund is the only movant who qualifies under both prongs of the PSLRA's lead plaintiff requirements.

As the Competing Movants concede, with a loss of over $78,515, the Pension Fund has the largest financial interest between the two lead plaintiff movants, and greatly exceeds the loss of any individual in the group.  In addition to this substantial financial interest, the Pension Fund readily satisfies the typicality and adequacy requirements of Rule 23, thereby justifying its appointment as lead plaintiff in this action.  *See*, *e.g.*, *Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 397 (S.D.N.Y. 2008) ("Bennett therefore satisfies all three requirements of 15 U.S.C. §78u-4(a)(3)(B)(iii)(I):  He made a motion in response to a notice; he has the largest financial interest; and he made a preliminary showing that he otherwise satisfies the requirements of Rule 23. Accordingly, Bennett is entitled to a rebuttable presumption that he should be appointed lead plaintiff in this action.").

Since the Pension Fund is the "most adequate plaintiff" under the PSLRA, it must be appointed lead plaintiff unless the Competing Movants present proof that the Pension Fund is atypical or unable to adequately represent the class.  *Id*. at 397-98.

- 3 -

**B.      The Competing Movants Have Failed to Provide Proof that the Pension Fund is Atypical or Inadequate**

In order to overcome the strong presumption in favor of appointing the Pension Fund as Lead Plaintiff,[2] the PSLRA requires "proof" that the Pension Fund is either inadequate or atypical to serve as lead plaintiff.    *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(II); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) ("once the presumption is triggered, the question is not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job."); *Elstein v. Net 1 UEPS Techs., Inc.*, No. 13 Civ 9100 (ER), 2014 U.S. Dist. LEXIS 100574, at *27 (S.D.N.Y. July 23, 2014) (the presumptive lead plaintiff "may be rebutted only upon proof by a member of the purported plaintiff class").  Here, the Competing Movants have not offered any proof that the Pension Fund fails to satisfy the typicality or adequacy requirements of Rule 23, nor can they.  The only argument the Competing Movants lodge against the Pension Fund is easily debunked.

---

[2]    The Pension Fund is precisely the type of institutional investor that Congress sought to summon and empower when it enacted the PSLRA. *See Ferrari v. Impath, Inc.*, No. 03 Civ. 5667, 2004 U.S. Dist. LEXIS 13898, at * 10 (S.D.N.Y. July 20, 2004) (holding that the purpose behind the PSLRA is best achieved by encouraging institutional investors to serve as lead plaintiffs).

Case 1:20-cv-01830-DG-TAM   Document 55-5   Filed 07/06/20   Page 10 of 18 PageID
Case 2:17-cv-00497-KM-JBC   Document 26-5   Filed 04/17/17   Page 9 of 17 PageID: 457
#: 1489

Specifically, the Competing Movants argue – without providing any proof in support – that the Pension Fund is "potentially subject to unique defenses" because it sold all of its shares after a loss-causing event but before the end of the Class Period, thus "could be deemed an 'in-and-out' purchaser" and therefore "vulnerable" to an attack that it lacks standing to assert claims against BT Group because "it was not damaged by the fraud." Dkt. No. 18 at 2, 5-8.

The Court should not entertain the Competing Movants' conjecture. As each of the complaints filed in this Action allege, ***including the Complaint filed by the Competing Movants' counsel*** in the Southern District of New York, the Company's disclosure on October 27, 2016 "announced that the Company had uncovered 'inappropriate management behavior' at its Italian division," and that revelation caused the price of BT Group securities to decline. *See Sarraf v. BT Group plc*, No. 17-cv-00558 (S.D.N.Y.) ("*Sarraf*"), Dkt. No. 1, ¶¶5-6 ("On this news, BT Group's ADR price fell $0.57, or 2.39%, to close at $23.25 on October 27, 2016."); ¶¶44-45 (quoting the October 27, 2016 announcement as the first "truth" that emerged, and attributing a stock decline to that disclosure); *see also Christian v. BT Group plc* ("*Christian*"), Dkt. No. 1, ¶¶32-33.

The Competing Movants do not contend, because they cannot, that the Pension Fund did not suffer a loss as a result of the October 27, 2017 disclosure. While the Pension Fund sold its shares prior to the final disclosure, that is not an impediment to

- 5 -

serving as Lead Plaintiff. "[W]here a putative lead plaintiff sold all its shares after a partial disclosure of misconduct by the defendant but before the final disclosure that led to the lawsuit, that putative lead plaintiff does not face the unique defense of having to show loss causation to the extent that it cannot serve as lead plaintiff." *Juliar v. SunOpta, Inc.*, No. 08 Civ. 933 (PAC), 2009 U.S. Dist. LEXIS 58118, at *7-*8 (S.D.N.Y. Jan. 30, 2009) (appointing institutional investor who sold shares after partial disclosure as lead plaintiff) (citation omitted); *see also In re Gen. Elec. Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *12 (S.D.N.Y. July 29, 2009) (no unique loss causation defense where a putative lead plaintiff sold all its shares after a partial disclosure).

Indeed, courts routinely appoint investors as lead plaintiff when they sell their shares of stock after a partial disclosure and are not holding any shares at the time of a later disclosure. *See, e.g.*, *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-cv-04617 (RJH), 2006 U.S. Dist. LEXIS 3028, at *18 (S.D.N.Y. Jan. 25, 2006) ("the Operating Engineers Trust is not unable to prove loss causation simply because all of its shares were sold before the end of the Class Period"); *Montoya v. Mamma.com Inc.*, No. 05 Civ. 2313 (HB), 2005 U.S. Dist. LEXIS 10224, at *6-*7 (S.D.N.Y. May 31, 2005) (same). In other words, for PSLRA purposes, the Pension Fund suffered a compensable loss – in this case, one that is larger than the Competing Movants' combined loss.

- 6 -

The Competing Movant's reliance on *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231 (E.D.N.Y. 2011) is misplaced.  In that case, the final disclosure revealed that the company's chief executive officer resigned "following his disclosure that certain improper payments were allegedly made in connection with the Company's contract with one customer."  *Id*. at 233-34.  The court analyzed the loss causation disclosures and found that the earlier partial disclosure after which the presumptive lead plaintiff sold, "did not disclose the improper payments being made to a customer. That was not revealed until the [end of the class period]." *Id*. at 238 n.18.  As a result, the court in *FalconStor* concluded that, on the face of the pleadings, it could not "confidently infer that the [first] disclosure actually revealed fraud or misconduct sufficient to qualify as a partial disclosure," and determined that the lead plaintiff suffered no loss. *Id.* at 240.

That is not the case here.  Putting aside that courts should not be delving into the merits questions at this preliminary stage of the proceedings, each of the Complaints filed against BT Group - ***including the one filed by the Competing Movants' counsel*** – alleges that on October 27, 2016 the Company announced that it "had uncovered 'inappropriate management behavior' at its Italian division," which spurred an investigation leading to the identification of "certain historical accounting

errors" and caused it to "reassess[] certain areas of management judgment."[3]  *Sarraf*, Dkt. No. 1 at ¶44; *see also Christian*, Dkt. No. 1 at ¶33. (the October 27, 2016 press release "revealed a write down . . . due to certain historical accounting errors in its Italian operations").  The final revelation on January 24, 2017, was an "[u]pdate on [the] investigation into BT's Italian business," which assured investors that "[t]he improper behaviour in our Italian business is an extremely serious matter" and that the Company was "deeply disappointed with the improper practices which we have found in our Italian business."  *Sarraf*, Dkt. No. 1 at ¶46; *Christian*, Dkt. No. 1 at ¶34. Therefore, even if the Court were to consider the Pension Fund's ability to prove loss causation at this stage of the proceedings – it should not – the same "risk" that the Pension Fund will be unable to prove loss causation is not present in this case. *Montoya*, 2005 U.S. Dist. LEXIS 10224, at *7 (the Pension Fund "can allege that the subject of the fraudulent statement or omissions was the cause of the actual loss suffered and, therefore, satisfy the test[] articulated by the Supreme Court in *Dura*"); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 132 (S.D.N.Y. 2011) ("We [see] no reason why a net seller who sold all of his shares after the fraud began to be

---

[3]   The Competing Movants maintain that the Pension Fund's "claim in its brief that 'the Company had **uncovered** 'inappropriate management behavior' at its Italian division" is "unsupported by the language of the Company's October 27, 2016 announcement."  Dkt. No. 18, at 2 n. 1.  This argument is not well-founded and is completely contradicted not only by the Company's October 27, 2016 announcement, but by the *Sarraf* complaint filed by their own counsel in the Southern District of New York.  *Sarraf*, at ¶44.

- 8 -

Case 1:20-cv-01830-DG-TAM   Document 55-5   Filed 07/06/20   Page 14 of 18 PageID
#: 1493
Case 2:17-cv-00497-KM-JBC   Document 20   Filed 04/17/17   Page 13 of 17 PageID: 461

exposed, and was thus legally harmed by the fraud in all of its sales, could not be an adequate lead plaintiff.").  The Pension Fund sold its shares after the October 27, 2016 partial disclosure which each complaint – including the one filed by the Competing Movants' counsel – alleges was specifically related to the final revelation of fraud.[4]

Finally, even if the Court were to entertain the Competing Movants' theoretical argument to its desired conclusion – *i.e.*, that the Pension Fund "may also lack standing" – that argument also fails because it is well established that a lead plaintiff is not required to have standing to state a claim on every single day of the class period. *See Hevesi v. Citigroup, Inc.*, 366 F.3d 70, 82-83 (2d Cir. 2004) ("[I]t is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim."); *see also Fishbury, Ltd. v. Connetics Corp.*, No 06 Civ. 11496 (SWK), 2006 U.S. Dist. LEXIS 90696, at *12 (S.D.N.Y. Dec. 14, 2006) ("It is well settled law in this Circuit that the lead plaintiff in a securities class action need not have standing to sue on all causes of action raised in the underlying class complaint."); *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 205 (S.D.N.Y. 2003) ("In conducting the lawsuit on behalf of all class members and all those who have brought complaints that have

---

[4]   To the extent it deems it appropriate at the time of the filing of an amended complaint, the Pension Fund is prepared to include an additional class representative who held shares of BT Group through the final disclosure, thereby addressing all of the concerns raised by the Competing Movants. *See In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 286 (S.D.N.Y. 2003) ("The PSLRA does not prohibit the addition of named plaintiffs to aid the Lead Plaintiff in representing the class.").

been consolidated under their leadership, Lead Plaintiffs have a responsibility to identify and include named plaintiffs who have standing to represent the various potential subclasses of plaintiff who may be determined, at the class certification stage, to have distinct interests or claims."). As the court in *In re Cendant Corp. Litigation*, 182 F.R.D. 144, 148 (D.N.J. 1998) stated: "notwithstanding every plaintiff's undeniable interest in an outcome most favorable to his or her position, every warrior in this battle cannot be a general."

This conclusion is also evident from the text of the PSLRA itself in which the "most adequate plaintiff" (*i.e.*, the lead plaintiff) is the investor with the largest financial interest who also preliminarily satisfies the requirements of Fed. R. Civ. P. 23 – *not* the investor who has the ability to assert all possible claims. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii); *see also In re Smith Barney Transfer Agent Litig.*, No. 05 Civ. 7583 (WHP), 2006 U.S. Dist. LEXIS 19728, at *11 (S.D.N.Y. Apr. 17, 2006) ("Any requirement that a different lead plaintiff be appointed to bring every single available claim would contravene the main purpose of having a lead plaintiff – namely, to empower one or several investors with a major stake in the litigation to exercise control over the litigation as a whole."); *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 254 (S.D.N.Y. 2003) (rejecting the argument that there should be separate lead plaintiffs for different claims and stating, "[A]t this stage only one

Case 1:20-cv-01830-DG-TAM    Document 55-5    Filed 07/06/20    Page 16 of 18 PageID
#: 1495
Case 2:17-cv-00497-KM-JBC    Document 20    Filed 04/17/17    Page 15 of 17 PageID: 463

Lead Plaintiff is necessary.  Designating multiple Lead Plaintiffs to represent each cause of action would fracture the litigation . . .").

Accordingly, because the Competing Movants have failed to provide any proof to rebut the presumption in favor of the Pension Fund's status as the "most adequate plaintiff," the Court should appoint the Pension Fund as lead plaintiff and approve its selection of Robbins Geller Rudman & Dowd LLP as Lead Counsel and Carella, Byrne, Cecchi, Olstein, Brody & Agnello, P.C. as Local Counsel.

## III.  CONCLUSION

For all the foregoing reasons, the Pension Fund submits that it should be appointed as Lead Plaintiff and its choice of Lead and Local Counsel should be approved.  The Competing Movants' motion should be denied.

DATED:  April 17, 2017        CARELLA, BYRNE, CECCHI, OLSTEIN,
BRODY & AGNELLO, P.C.


*s/ James E. Cecchi*
JAMES E. CECCHI

5 Becker Farm Road
Roseland, NJ  07068
Telephone:  973/994-1700
973/994-1744 (fax)

Local Counsel

ROBBINS GELLER RUDMAN
  & DOWD LLP
DOUGLAS WILENS
SABRINA E. TIRABASSI
120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)
dwilens@rgrdlaw.com
stirabassi@rgrdlaw.com

[Proposed] Lead Counsel for Plaintiff

# CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 17, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.


<em>s/ James E. Cecchi</em>
_____
JAMES E. CECCHI