**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEAN LEE, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>        v.<br><br>IQIYI, INC., YU GONG, and XIAODONG WANG,<br><br>        Defendants. | Case No. 1:20-cv-01830-LDH-JO |

**LE RIVAGE LLC'S OBJECTIONS PURSUANT TO FED. R. CIV. P. 72(a) TO MAGISTRATE JUDGE ORENSTEIN'S ORDER DATED OCTOBER 20, 2020 APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL**

## TABLE OF CONTENTS

I.     PRELIMINARY STATEMENT .........................................................................................1

II.    STATEMENT OF FACTS .............................................................................................2

III.   PROCEDURAL HISTORY.............................................................................................5

IV.    LEGAL STANDARD......................................................................................................7

V.     ARGUMENT...................................................................................................................8

       A.     The Order Does Not Consolidate the Related Actions ............................................8

       B.     The Order Does Not Appoint The Most Adequate Plaintiff as Lead
              Plaintiff ....................................................................................................................9

              1.     The *Le Rivage* Complaint Alleges A Plausible Partial Disclosure............10

              2.     Le Rivage Is Typical And Adequate............................................................14

VI.    CONCLUSION..............................................................................................................16

i

## TABLE OF AUTHORITIES

CASES

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ................................................................................................. 14

*Christian v. BT Grp. PLC*,
  2017 WL 3705804 (D.N.J. Aug. 28, 2017) ............................................................. 15

*Galmi v. Teva Pharm. Indus. Ltd.*,
  302 F. Supp. 3d 485 (D. Conn. 2017) ........................................................ 10, 11, 13

*In re Comverse Tech., Inc. Sec. Litig.*,
  2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ..................................................... 7, 13, 14

*In re Fuwei Films Sec. Litig.*,
  247 F.R.D. 432 (S.D.N.Y. 2008) ............................................................................. 16

*In re Gen. Elec. Sec. Litig.*,
  2009 WL 2259502 (S.D.N.Y. July 29, 2009) ......................................................... 15

*In re Gentiva Sec. Litig.*,
  281 F.R.D. 108 (E.D.N.Y. 2012) ....................................................................... 12, 15

*In re Star Gas Sec. Litig.*,
  2005 WL 818617 (D. Conn. Apr. 8, 2005) ............................................................. 13

*In re Take-Two Interactive Sec. Litig.*,
  551 F. Supp. 2d 247 (S.D.N.Y. 2008) ..................................................................... 12

*In re VimpelCom, Ltd.*,
  2016 WL 5390902 (S.D.N.Y. Sept. 26, 2016) ....................................................... 11

*In re WorldCom, Inc. Sec. Litig.*,
  219 F.R.D. 267 (S.D.N.Y. 2003) ............................................................................. 16

*Juliar v. SunOpta Inc.*,
  2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) .................................................. Passim

*Kaplan v. Gelfond*,
  240 F.R.D. 88 (S.D.N.Y. 2007) ................................................................................. 8

*Lentell v. Merrill Lynch & Co., Inc.*,
  396 F.3d 161 (2d Cir. 2005) ..................................................................................... 12

*Maliarov v. Eros Int'l PLC*,
  2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016) ........................................................... 11, 12, 13, 14

*Montoya v. Mamma.com Inc.*,
  2005 WL 1278097 (S.D.N.Y. May 31, 2005) ..................................................................... 12, 15

*Storms v. United States*,
  2014 WL 3547016 (E.D.N.Y. July 16, 2014) ............................................................................ 7

*Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*,
  95 F. Supp. 3d 607 (S.D.N.Y. 2015) ................................................................................. 13, 14

*United States v. Murphy*,
  703 F.3d 182 (2d Cir. 2012) ....................................................................................................... 7

*Weiner v. McKeefery*,
  2014 WL 2048381 (E.D.N.Y. May 19, 2014) ........................................................................... 7

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
  2006 WL 197036 (S.D.N.Y. Jan. 25, 2006) ............................................................................ 15

STATUTES

15 U.S.C. § 78u-4 (a)(3)(B)(ii) ..................................................................................................... 2, 8

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................................................ 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ..................................................................................................... 9

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) .................................................................................................... 9

28 U.S.C. § 636(b)(1)(A) ................................................................................................................... 7

RULES

Fed. R. Civ. P. 23 ......................................................................................................................... 1, 9

Fed. R. Civ. P. 42(a) ......................................................................................................................... 8

Fed. R. Civ. P. 72(a) ..................................................................................................................... 1, 7

Lead Plaintiff Movant Le Rivage LLC ("Le Rivage") respectfully submits this memorandum of law pursuant to Fed. R. Civ. P. 72(a) in objection to Magistrate Judge Orenstein's Memorandum and Order dated October 20, 2020 (the "Order," Dkt. No. 67) appointing Robert J. Gereige, M.D. and Ronald L. Hershberger (together, "G&H") as Lead Plaintiff, approving G&H's selection of Labaton Sucharow LLP and the Rosen Law Firm as Co-Lead Counsel for the above-captioned action, and denying Le Rivage's Motion for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Lead Counsel ("Le Rivage's Motion," Dkt. No. 33). The Order is contrary to the mandate of the Private Securities Litigation Reform Act ("PSLRA") to appoint the "most adequate plaintiff" as lead plaintiff.

## I.     PRELIMINARY STATEMENT

This is a securities fraud class action alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the PSLRA. Pursuant to the PSLRA, the Court shall appoint the "most adequate plaintiff" as lead plaintiff. The movant with the largest financial interest in the relief sought by the class who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is presumed to be the most adequate plaintiff. This presumption may be rebutted only upon proof that the most adequate plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

The Order correctly identifies Le Rivage as the movant with the largest financial interest, and presumptively most adequate plaintiff. *See* Order at 2. The Order, however, incorrectly disqualifies Le Rivage on the basis that "its loss theory renders its claims so atypical as to preclude leadership of the putative class" because Le Rivage's losses flow from a partial corrective disclosure. Order at 3.

1

The Order should be set aside and Le Rivage's Motion should be granted because: (1) the Order does not consolidate Le Rivage's action[1] with the above-captioned action; (2) contrary to law, the Order disregards the partial corrective disclosure on October 30, 2018, out of hand, without evaluating the plausibility of the alleged corrective disclosure; and (3) the Order erroneously excluded Le Rivage as atypical.  As an initial matter, Le Rivage's action must be consolidated with the above-captioned action, as requested by Le Rivage's Motion, because the two actions arise from substantially the same facts.  Moreover, whether the partial disclosure is plausibly alleged is critical to the analysis of appointing a lead plaintiff, and the Order fails to make that determination using the alleged facts.  The fact that Le Rivage filed the complaint that alleges the October 30, 2018 disclosure is wholly irrelevant to whether the partial disclosure is plausibly alleged and to whether Le Rivage is typical and adequate of all class members.  If the October 30, 2018 disclosure is plausibly alleged, then it is undisputed that Le Rivage is the movant with the largest financial interest.  Le Rivage is also typical and adequate, by virtue of the fact that all class members would be entitled to recover based on the October 30, 2018 disclosure.

Therefore, Le Rivage respectfully requests that the Order be vacated, and Le Rivage's Motion be reconsidered by the District Court.

## II.    STATEMENT OF FACTS

The *Lee* Action and the *Le Rivage* Action are brought on behalf of persons and entities who purchased or otherwise acquired iQIYI Inc. ("iQIYI" or the "Company") securities between

---

[1] Le Rivage filed a substantially similar class action, captioned *Le Rivage LLC v. iQIYI, Inc., et al.*, Case No. 1:20-cv-02653-LDH-JO (the "*Le Rivage* Action"), on June 15, 2020, prior to filing a lead plaintiff motion in the above-captioned action (the "*Lee* Action"), as contemplated by the PSLRA. *See* 15 U.S.C. § 78u-4 (a)(3)(B)(ii) (mandating consolidation of cases alleging "substantially the same claim or claims arising under this chapter" before a lead plaintiff is selected to lead the consolidated action).

March 29, 2018 and April 7, 2020, inclusive (the "Class Period").  iQIYI, the "Netflix of China," purports to be an innovative market-leading online entertainment service in China.  *See Lee Action*, Dkt. No. 1 (the "*Lee* Complaint"), ¶ 8; Declaration of Gregory B. Linkh ("Linkh Decl."), Ex. 1 (the "*Le Rivage* Complaint"), ¶ 2.

On April 7, 2020, during market hours, Wolfpack Research released a report (the "Wolfpack Report") "detailing, among other things, how iQIYI had misled investors and failed to disclose pertinent information generally and in its Registration Statement, including: (i) iQIYI overstating its user numbers; (ii) iQIYI inflating its revenues; (iii) iQIYI inflating expenses and prices of assets to conceal its revenue inflation; and (iv) iQIYI misleading financial reporting creating the appearance of a cash generative company."  *Lee* Complaint, ¶ 35; *Le Rivage* Complaint, ¶ 40.  On this news, iQIYI American Depositary Shares ("ADSs" or "shares") fell $0.99 per share, or approximately 6%, to close at $16.51 per share on April 8, 2020, thereby injuring investors.  *See Lee* Complaint at ¶ 42; *Le Rivage* Complaint at ¶ 47.

Comparing the Company's SEC filings and its filings with the State Administration for Industry and Commerce, the Wolfpack Report revealed that iQIYI overstated its advertising revenue by "7.9% and 19.7% in 2017 and 2018, respectively."  *Lee* Complaint at ¶ 37; *Le Rivage* Complaint at ¶ 42.  In addition, the Wolfpack Report revealed that iQIYI "overstates its DAU [daily active user] numbers by 42% to 60%."  *Lee* Complaint at ¶ 38; *Le Rivage* Complaint at ¶ 43. The Wolfpack Report also revealed a "mathematical contradiction" between the Company's membership growth and declining real deferred revenue figures.  *Lee* Complaint at ¶ 39; *Le Rivage* Complaint at ¶ 44.  The Wolfpack Report also revealed that the Company had overpaid for its acquisition of Chengdu Skymoons Digital Entertainment ("Skymoons") in part because Skymoons "was not the true originator of the design of its only successful game."  *Lee*

3

Complaint at ¶ 40; *Le Rivage* Complaint at ¶ 45.  The Wolfpack Report also revealed that iQIYI's bartering transactions was overstated.  *Lee* Complaint at ¶ 41; *Le Rivage* Complaint at ¶ 46.

As a result, the *Lee* and *Le Rivage* Actions allege that Defendants made false and/or misleading statements and/or failed to disclose that: (1) iQIYI inflated its revenue figures; (2) iQIYI inflated its user numbers; (3) iQIYI inflated its expenses to cover up other fraud; and (4) as a result, Defendants' public statements were materially false and misleading at all relevant times.  *See Lee* Complaint, ¶ 34; *Le Rivage* Complaint, ¶ 39.

The two actions differ in only one respect: the *Le Rivage* Action alleges that Defendants failed to disclose that the Company's advertising growth was overstated because it included customers whose content should not have been permitted, which was partially revealed on October 30, 2018 when iQIYI purportedly "cleaned up some not so healthy advertisements."  *See Le Rivage* Complaint, ¶¶ 25, 39.  Specifically, iQIYI had previously stated that it is "obligated to monitor the advertising content shown on [its] platform" and that "to fulfill these monitoring functions, we include clauses in all of our advertising contracts requiring that all advertising content . . . must comply with relevant laws and regulations."  *See* Linkh Decl., Ex. 2 at 25-26. But, "[t]he truth began to emerge on October 30, 2018 when iQIYI stated that it had 'cleaned up some not so healthy advertisements on the in-feed side.'"  *Le Rivage* Complaint, ¶ 25.  On October 30, 2018, in connection with its third quarter 2018 financial results, the Company held a conference call during which its Chief Financial Officer stated: "[W]e have some customers which do not have the accelerated license needed to put their ads on the Internet. . . . [B]ecause they don't have[,] like I said, related documents to prove they are qualified advertisers so we just let them go. I think that's a major reason why we see something like a decline on our customer

4

numbers[.]" *Id.* On this news, the Company's share price fell $2.56, or nearly 12% to close at $19.64 per share on October 31, 2018. *Id.* at ¶ 26.

However, the October 30, 2018 disclosure suggested that the purported "clean up" fixed the issue and that future advertising numbers would accurately depict iQIYI's growth based on advertisers who adhered to relevant regulations. What was not known at the time was that this purported "clean up" was part of a larger and ongoing fraud. As the Wolfpack Report later revealed, iQIYI's advertising revenue reported to the SEC was still overstated, along with other financial metrics. *See Lee* Complaint, ¶¶ 37-41; *Le Rivage* Complaint, ¶¶ 42-46.

When both disclosures are properly included to evaluate the movant with the largest financial interest,[2] it is undisputed that Le Rivage has nearly three times the losses claimed by G&H: Le Rivage suffered $5,026,299.86 loss, while G&H suffered only a $1,894,657.19 loss. *See* Order at 2; *see also* Linkh, Decl., Exs. 3 & 4. In appointing G&H as lead plaintiff, the Magistrate Judge did not reach a conclusion as to whether the October 30, 2018 disclosure is properly alleged, contrary to applicable law.

## III.    PROCEDURAL HISTORY

On April 16, 2020, plaintiff Jean Lee commenced the above-captioned action against iQIYI and certain of its officers in this District.

On April 27, 2020, plaintiff Thomas Jenkins commenced a substantially similar securities fraud action in the United States District Court for the Northern District of California against iQIYI and certain of its officers and directors, captioned *Jenkins v. iQIYI, Inc., et al.*, Case No. 4:20-cv02882 (the "*Jenkins* Action" and together with the *Lee* and *Le Rivage* Actions, the "Related Actions"). In addition to asserting claims pursuant to the Exchange Act on behalf of

---

[2] The preferred method is to calculate financial loss by matching sales to purchases on a last in/first out (LIFO) basis.

investors who acquired iQIYI securities during the Class Period, the *Jenkins* Action also alleges violations of the Securities Act on behalf of investors who acquired iQIYI ADSs pursuant and/or traceable to the Company's IPO.  On July 9, 2020, the *Jenkins* Action was transferred to this district as Case No. 1:20-cv-03068.

On June 15, 2020, plaintiff Le Rivage commenced an action substantially similar to the *Lee* Action and alleged a partial disclosure on October 30, 2018.

On June 15, 2020, ten movants (or movant groups) filed competing motions for appointment as lead plaintiff and approval of lead counsel pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA").  The motions were filed by Le Rivage[3] (Dkt. No. 33); Tranquil Bay, LLC ("Tranquil Bay") (Dkt. No. 10); the Chiha and Shah Family Group (Dkt. No. 13); Dae Kim (Dkt. No. 16); Glenn Wagner, Young K. Han, and Michael Safari, on behalf of Safari Enterprises, Inc. (Dkt. No. 19); G&H (Dkt. No. 25); Laura Maria Dominguez Moreno, individually and on behalf of Coliving Costa Blacca, Sociedad Limitada ("Moreno") (Dkt. No. 26); Hung Truong (Dkt. No. 29); Wing Yu Chan (Dkt. No. 32); and Sugumar Ariathurai and Thomas Jenkins (Dkt. No. 37).

Five of those movants filed notices stating that they do not oppose the competing motions for lead plaintiff.  Dkt. Nos. 42-45, 51.  One movant requested that his motion and supporting papers be stricken and ignored by all parties.  *See* Dkt. No. 41.

The four remaining movants (Le Rivage, G&H, Tranquil Bay, and Moreno) filed briefs in opposition to the competing motions for appointment as lead plaintiff.  *See* Dkt. Nos. 47, 48, 50, 52.  They also filed replies in support of their own motions and in response to the competing opposition briefs.  *See* Dkt. Nos. 54, 55, 57, 58.

---

[3] Le Rivage's motion also requested consolidation of the *Lee* and *Le Rivage* Actions.

On August 3, 2020, Magistrate Judge Orenstein held a telephonic hearing regarding the pending motions.  *See* Linkh Decl., Ex. 5, Transcript ("Tr.").  On October 20, 2020, Magistrate Judge Orenstein entered the Order appointing G&H as lead plaintiff and approving their selection of Labaton Sucharow LLP and the Rosen Law Firm as Co-Lead Counsel.

## IV.   LEGAL STANDARD

Rule 72(a) of the Federal Rules of Civil Procedure provides that "[t]he district judge . . . must consider timely objections and modify or set aside any part of the [magistrate judge's non-dispositive pretrial rulings] that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); *see also* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.").

An order is "clearly erroneous if, based on all the evidence, a reviewing court 'is left with the definite and firm conviction that a mistake has been committed,'" *Storms v. United States*, 2014 WL 3547016, at *4 (E.D.N.Y. July 16, 2014) (quoting *United States v. Murphy*, 703 F.3d 182, 188 (2d Cir. 2012)), and "is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law, or rules of procedure," *Weiner v. McKeefery*, 2014 WL 2048381, at *3 (E.D.N.Y. May 19, 2014).  An order misapplies and is contrary to law where it fails to consider criteria which could lead to a different decision under existing case law.  *See In re Comverse Tech., Inc. Sec. Litig.*, 2007 WL 680779, at *4 (E.D.N.Y. Mar. 2, 2007) (vacating Magistrate Judge's order appointing lead plaintiff because it "decline[d] to consider the implications of loss causation when applying the PSLRA standard").

7

## V.    ARGUMENT

### A.    The Order Does Not Consolidate the Related Actions

The Order fails to render a decision on Le Rivage's request to consolidate the *Lee* and *Le Rivage* Actions, which clearly "involve common questions of law and fact." Fed. R. Civ. P. 42(a). Each of the Related Actions presents similar factual and legal issues, as they all involve the same subject matter and present the same legal issues. Each presents the same or similar theories for recovery, and each is based on the same allegedly wrongful course of conduct. The *Jenkins* Action alleges violations of the Securities Act, while the *Lee* and *Le Rivage* Actions allege violations of the Exchange Act; however, all of them allege a corrective disclosure on April 7, 2020. Also, the *Le Rivage* Action alleges a partial corrective disclosure on October 30, 2018. Neither of these differences is sufficient to deny consolidation. *See e.g.*, *Kaplan v. Gelfond*, 240 F.R.D. 88, 91 (S.D.N.Y. 2007) ("Differences in causes of action, defendants, or the class period do not render consolidation in appropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interests of judicial economy served by consolidation.").

Le Rivage requested consolidation of the *Lee* and *Le Rivage* Actions, which were the only two Related Actions pending in this district when its Motion was filed. *See* Dkt. No. 35 at 4-5. No movant opposed Le Rivage's Motion in this respect. *See* Dkt. Nos. 48, 50, 52. Yet the Order makes no determination as to whether consolidation is appropriate. *See* Order. As such, the Order is contrary to Federal Rule of Civil Procedure 42(a). It also contravenes the PSLRA, which states that "the court shall not make the determination required by clause (i) [i.e., appoint the most adequate plaintiff as lead plaintiff] until after the decision on the motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii).

8

For the reasons set forth in Le Rivage's Motion, and because no party opposed the request for consolidation, Le Rivage respectfully requests the Court to consolidate the Related Actions.

### B.    The Order Does Not Appoint The Most Adequate Plaintiff as Lead Plaintiff

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws.  As soon as practicable after the Court decides any pending motion to consolidate, the PSLRA directs courts to consider any motion to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B).  The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff"— *i.e.*, the plaintiff most capable of adequately representing the interests of the Class—is the class member that:

(aa) has either filed the complaint or made a motion in response to a notice . . . ;

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The presumption in favor of appointing a movant as lead plaintiff may be rebutted only upon proof "by a purported member of the plaintiff class" that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Here, the crux of the competing movants' dispute is whether the October 30, 2018 disclosure is a plausible partial disclosure: if it is, then Le Rivage has the largest financial interest among the lead plaintiff movants.  But the Order does not grapple with the issue, reaching ***no conclusion*** as to whether the October 30, 2018 disclosure is a plausible partial disclosure.  Compounding the error, the Order finds Le Rivage atypical of all class members,

9

apparently because ***no other lead plaintiff movant*** alleges losses based on the October 30, 2018 disclosure.  In both respects, the Order is contrary to law, clearly erroneous, and should be reconsidered.

**1.     The *Le Rivage* Complaint Alleges A Plausible Partial Disclosure**

The *Le Rivage* Complaint alleges a plausible partial disclosure, and as such, Le Rivage has the largest recoverable losses among the lead plaintiff movants.  *See* Linkh Decl., Exs. 3 & 4; Dkt. No. 47 at 4-5 (comparison with all movants); *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 502 (D. Conn. 2017) ("So long as a partial disclosure can be plausibly alleged, a proposed lead plaintiff should not be precluded from relying on that disclosure to establish recoverable losses.").  On October 30, 2018, iQIYI stated that it had "cleaned up some not so healthy advertisements on the in-feed side" by letting go of customers who lacked "related documents to prove they are qualified advertisers." *Le Rivage* Complaint at ¶ 25.  This partially disclosed that iQIYI's advertising growth had been overstated in the past because it included customers whose content should not have been permitted, and that there would be a negative financial impact to iQIYI when such customers were removed.   However, the Company suggested that the purported "clean up" fixed the issue and that future advertising numbers would accurately depict iQIYI's growth based on advertisers who adhered to relevant regulations.  As the Wolfpack Report later revealed, iQIYI's advertising revenue reported to the SEC was still overstated, along with other financial metrics.  *See* Dkt. No. 55 at 6-7; *see also Juliar v. SunOpta Inc.*, 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) ("[A]t this stage in the case [movant] has adequately alleged partial disclosure" prior to final disclosure that Company was restating its financial position based on "the announcement of [director resignation], a large increase in trading volume in the week prior to the January 24 corrective disclosure, and an analyst report on January 22 with adverse ratings of SunOpta.").

In an attempt to preclude Le Rivage from consideration, the competing movants argued that the Court should not even consider the plausibility of the partial disclosure because the filing of the *Le Rivage* Action on the last day of the 60-day notice period was improper gamesmanship. *See* Dkt. No. 48 at 5-6; Dkt. No. 50 at 3-5 (citing *Maliarov v. Eros Int'l PLC*, 2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016)); Dkt. No. 52 at 4-6.  This is a red herring.  Not only was the *Le Rivage* Action timely filed within the notice period, courts have considered partial disclosures alleged for the first time in a responsive filing.  *See e.g.*, *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d at 501 (reply brief); *In re VimpelCom, Ltd.*, 2016 WL 5390902, at *3 (S.D.N.Y. Sept. 26, 2016) (response to motion for reconsideration of order appointing lead plaintiff); *Juliar*, 2009 WL 1955237, at *2 (declaration supporting lead plaintiff motion).  *Maliarov* is also inapposite: there, the court was concerned by a "specter of gamesmanship" because the movant had authorized the filing of the complaint alleging a purported disclosure, but it was not filed until *two weeks later* (*i.e.*, on the last day for potential class members to file a lead plaintiff motion). 2016 WL 1367246 at *4.  Le Rivage and its counsel investigated the claims and alleged additional disclosures as soon as practicable and its complaint was filed during the statutory period.  Certainly, it is not gamesmanship to file a complaint within the statutory period when it would even be permissible to allege the same partial corrective disclosure in its lead plaintiff motion papers rather than a complaint.  Thus, the Magistrate Judge appropriately dismissed the competing movants' concerns and clearly did not disqualify Le Rivage due to its purported gamesmanship.  *See* Tr. at 21:17-23:3 (affirming that the movants had the requested remedy— "to take a look at this drop and the reasons for it").

However, the Order explicitly declines to determine the plausibility of the partial disclosure.  *See* Order at 3 ("Whatever the plausibility of Le Rivage's attempt to characterize its

11

losses . . . over a year before the release of the Wolfpack Report . . . .").  Instead, the Order rejects Le Rivage because its "claims, unlike those of the other leadership candidates and the class as a whole, rely on a theory that iQIYI's **alleged fraud was apparent**, and caused shareholder losses, well before the Wolfpack Report."  *Id.*  (emphasis added).  This obfuscates the significance of a partial disclosure, which merely reveals *some* corrective information to the investing public.  *Montoya v. Mamma.com Inc.*, 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005) ("[P]laintiffs need only allege 'that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security,' and loss causation does not require *full* disclosure . . . .") (quoting *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 173 (2d Cir. 2005)).  Whether the entire fraud was apparent at the time of the October 30, 2018 disclosure is irrelevant to whether it constitutes a plausible partial disclosure. *See In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 283 (S.D.N.Y. 2008) ("[T]he disclosure must possess a sufficient nexus to a prior misstatement such that it reveals **at least part of the falsity** of that misstatement.") (emphasis added).  In fact, if there were such a requirement that the fraud be apparent from a given disclosure, then there would never be a partial disclosure because the fraud would be fully revealed by the first and only disclosure.  Yet there are numerous cases reflecting that a partial disclosure need only bear some connection to a prior statement or, under a "substantial leakage theory," to a series of disclosures that together reveal the fraud. *See, e.g.*, *Juliar*, 2009 WL 1955237, at *2 (adverse analyst report partially disclosed Company's overstated financials).

Moreover, the plausibility of the partial disclosure is a factual inquiry, one that the Order fails to conduct, contrary to law.  *See, e.g.*, *In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 115-16 (E.D.N.Y. 2012) (revised guidance is plausible partial disclosure given the surrounding

12

circumstances); *Juliar*, 2009 WL 1955237, at *2 (citing factual allegations supporting "substantial leakage" theory); *see also Galmi*, 302 F. Supp. 3d at 501-03 (analyzing whether disclosures "plausibly alleged that pre-August 2016 trading losses were the result of Teva's fraudulent conduct").[4] Drawing improper inferences from the fact that the first complaint does not allege October 30, 2018 as a partial corrective disclosure, Judge Orenstein rejects, without analysis, that the October 30, 2018 disclosure is plausibly related to the April 7, 2020 disclosure, as alleged by the Le Rivage Complaint. *See* Tr. at 9:16-18[5]; *see also In re Star Gas Sec. Litig.*, 2005 WL 818617, at *7 (D. Conn. Apr. 8, 2005) (recognizing it is "premature to limit the plaintiff class in this way at such an early stage of the litigation" because appointed lead plaintiffs could amend complaint to include allegations not made by first-filing plaintiff). This also overlooks that a lead plaintiff must be appointed to oversee the consolidated action, which as set forth in Section V.A., *supra*, should include the *Le Rivage* Action and the October 30, 2018 disclosure.

In the cases cited by the Order, courts had rejected the plausibility of the alleged disclosure (which the Order does not do), and ***as a result*** rejected movants. *Maliarov*, 2016 WL 1367246, at *3 (no plausible leakage theory); *Topping v. Deloitte Touche Tohmatsu CPA, Ltd.*, 95 F. Supp. 3d 607, 617-18 (S.D.N.Y. 2015) ("[T]he October 3, 2011 letter does not constitute a partial disclosure."); *see also Comverse*, 2007 WL 680779, at *4 (excluding losses sustained from sales that "did not follow any alleged corrective disclosure"). In any event, those cases are

---

[4] And, by failing to consolidate the Related Actions, the Order leaves open the possibility that Le Rivage can pursue its claims as its own class action with adequately alleged disclosures on October 30, 2018 and April 7, 2020, leading to potentially duplicative relief with the *Lee* Action which currently only alleges a disclosure on April 7, 2020. *Compare* Dkt. No. 35 at 4-5 (requesting consolidation), *with* Order.

[5] *See also* Tr. at 8:14-20 ("What do you think it means that no one else came out of the woodwork either before or after the filing deadline to allege the timing you alleged, that what really caused the loss and what caused the sell-off was the earlier partial disclosure?").

13

not analogous to this case because the alleged corrective disclosures in those cases were not as robust as the October 30, 2018 disclosure alleged by Le Rivage. *See Maliarov*, 2016 WL 1367246, at *3 (new complaint made "unsupported allegations that those with 'early access to the Alpha Exposure Report' leaked such information in an unspecified manner"); *Topping*, 95 F. Supp. 3d at 619-22 (announcement that auditor would review cash balances did not reveal that CEO was siphoning cash).

Therefore, the Order should be vacated, and the Court should determine whether the October 30, 2018 is an adequate partial disclosure, which it is.  *Comverse*, 2007 WL 680779 at *4 (vacating Magistrate Judge's Order appointing lead plaintiff because it did not "determine precisely which losses each plaintiff stands to recover as this litigation proceeds[, a] decision [that] turns on whether each alleged loss . . . is adequately supported by allegations of loss causation").  When the October 30, 2018 disclosure is properly considered, Le Rivage is clearly the movant with the largest financial interest, as its losses are nearly three times those of G&H, the movant appointed by the Order.  *See* Linkh Decl., Exs. 3 & 4.

### 2.    Le Rivage Is Typical And Adequate

Without determining whether the October 30, 2018 is a plausible partial disclosure, the Order finds that Le Rivage's "loss theory renders its claims so atypical as to preclude leadership of the putative class" because Le Rivage "rel[ies] on a theory that iQIYI's alleged fraud was apparent . . . well before the Wolfpack Report."  Order at 3.  But a plausible partial disclosure would entitle all class members to recovery on a similar theory: the efficient market hypothesis provides that the iQIYI price "reflects all publicly available information, and hence, any material misrepresentations" such that "the reliance of individual plaintiffs on the integrity of the market price may be presumed."  *Basic Inc. v. Levinson*, 485 U.S. 224, 247-248 (1988); *see also* Tr. 10:7-11:12 (counsel clarifying that Le Rivage was not claiming to have "figured out" the fraud in

14

October 2018).  As such, iQIYI's share price incorporates the inflation caused by the fraud, and the price decline corresponding to corrective disclosures reflects the revelation of the fraud, both of which are true for all class members.  That is, Le Rivage need not have sold its shares on the belief that the Company had committed the fraud to be entitled to recovery, so it is not atypical of other class members.

To the extent the Magistrate Judge finds Le Rivage is atypical because it failed to hold any shares through the final disclosure, this too is clearly erroneous.  Order at 3; Tr. at 9:23-10:2. The weight of authority finds "that where a putative lead plaintiff sold all its shares after a partial disclosure of misconduct by the defendant but before the final disclosure that led to the lawsuit, that putative lead plaintiff does not face the unique defense of having to show loss causation to the extent that it cannot serve as lead plaintiff."  *In re Gentiva*, 281 F.R.D. at 116; *see also In re Gen. Elec. Sec. Litig.*, 2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009).  "[M]ost Courts who have refrained from appointing such lead plaintiffs have done so in the ***complete absence*** of partial corrective disclosures or in light of speculative or highly questionable partial disclosures." *In re Gentiva*, 281 F.R.D. at 115 (emphasis added).

Indeed, courts have often appointed investors as lead plaintiff who did not hold shares through the final disclosure because they held through at least one partial disclosure.  *See e.g.*, *Juliar*, 2009 WL 1955237 at *2; *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, 2006 WL 197036, at *5 (S.D.N.Y. Jan. 25, 2006); *Montoya*, 2005 WL 1278097, at *2; *see also Christian v. BT Grp. PLC*, 2017 WL 3705804, at *8 (D.N.J. Aug. 28, 2017) (appointing in-and-out trader where the "allegations present a fairly straightforward (and not atypical) case of progressive revelation of problem that turned out to be more serious than first believed" and refusing to speculate on other causes of the first alleged drop).

15

As set forth in Section V.B.1., *supra*, a plausible partial disclosure has been adequately alleged at this juncture. And, as Le Rivage sustained losses on that partial disclosure, it is typical and adequate of all class members, regardless of the fact that it did not hold shares through the end of the Class Period. Though there is a possibility that the October 30, 2018 disclosure may not survive a motion to dismiss, the same could be said of the final disclosure. To safeguard against that possibility, which could raise issues of standing, Le Rivage has already affirmed that it will "endeavor to add an additional representative that held shares through the final disclosure in an amended complaint." Dkt. No. 55 at 9; *see In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 286 (S.D.N.Y. 2003) (PSLRA permits the addition of named plaintiffs). As such, it would be premature to exclude Le Rivage, which is clearly the most adequate plaintiff, at this stage. *See In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432, 438 (S.D.N.Y. 2008) ("[T]he Second Circuit has held that there is no requirement that a court select as lead plaintiff only a movant with standing to assert every possible claim against every defendant, nor does the presumptive lead plaintiff fail to satisfy the typicality prong if he or she cannot assert every possible claim.").

## VI.    CONCLUSION

For the foregoing reasons, Magistrate Judge Orenstein's Order dated October 20, 2020 should be vacated, Le Rivage should be appointed lead plaintiff, and its choice of counsel should be approved.

Respectfully submitted,

Dated: November 3, 2020

**GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

16

-and-

Robert V. Prongay (admitted *pro hac vice*)
Kevin F. Ruf (admitted *pro hac vice*)
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Le Rivage LLC*