**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
|                        x | |
| : | |
| JEAN LEE, Individually and On Behalf of All :<br>Others Similarly Situated, | Case No. 1:20-cv-01830-LDH-SJB |
| : | |
| : | Judge LaShann DeArcy Hall |
|         Plaintiff, : | |
| : | CLASS ACTION |
| : | |
|     v. : | |
| : | **DATE OF SERVICE: November 17, 2020** |
| IQIYI, INC., YU GONG, and XIAODONG : | |
| WANG, : | |
| : | |
|         Defendants. : | |
| : | |
|                        x | |

**RONALD L. HERSHBERGER AND ROBERT J. GEREIGE, MD'S MEMORANDUM**
**OF LAW IN OPPOSITION TO LE RIVAGE LLC'S OBJECTIONS PURSUANT**
**TO FED. R. CIV. P. 72(a) TO MAGISTRATE JUDGE ORENSTEIN'S**
**ORDER DATED OCTOBER 20, 2020 APPOINTING LEAD**
**PLAINTIFF AND APPROVING LEAD COUNSEL**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT .............................................................................................. 1

ARGUMENT ............................................................................................................................ 2

I.    FACTUAL BACKGROUND & PROCEDURAL HISTORY ........................................... 2

II.   LEGAL STANDARD ...................................................................................................... 7

III.  MAGISTRATE JUDGE ORENSTEIN'S ORDER IS NEITHER "CLEARLY
      ERRONEOUS" NOR "CONTRARY TO LAW" ............................................................ 9

      A.    The Order Does Not Misapply the PSLRA ............................................................ 9

      B.    Magistrate Judge Orenstein Did Not Commit Clear Error in Finding
            Rivage Atypical and Inadequate ......................................................................... 11

CONCLUSION ....................................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bensley v. FalconStor Software, Inc.*,
   277 F.R.D. 231 (E.D.N.Y. 2011) ..................................................................................6, 13

*Chahal v. Credit Suisee Grp. AG*,
   No. 18 Civ. 2268 (AT) (SN), 2018 WL 6803377 (S.D.N.Y. Aug. 27, 2018) ........................12

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) ....................8, 14

*DiPilato v. 7-Eleven, Inc.*,
   662 F. Supp. 2d 333 (S.D.N.Y. 2009)..................................................................................7

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005)............................................................................................................12

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
   574 F.3d 29 (2d Cir. 2009)..................................................................................................13

*Foley v. Transocean Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) .........................................................................................10

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   903 F.2d 176 (2d Cir. 1990)................................................................................................12

*Grodko v. Cent. European Distribution Corp.*,
   No. CIV.A. 12-5530 JBS, 2012 WL 6595931 (D.N.J. Dec. 17, 2012) ...........................11, 13

*H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*,
   106 F.R.D. 551 (S.D.N.Y. 1985) .........................................................................................7

*Kaplan v. S.A.C. Capital Advisors, L.P.*,
   947 F. Supp. 2d 368 (S.D.N.Y. 2013)..................................................................................7

*MacWade v. Kelly*,
   230 F.R.D. 379 (S.D.N.Y. 2005) .........................................................................................8

*Montoya v. Mamma.com Inc.*,
   No. 05 Civ. 2313 (HB), 2005 WL 1278097 (S.D.N.Y. May 31, 2005).................................15

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*,
   229 F.R.D. 395 (S.D.N.Y. 2004) .........................................................................................9

*Rhode Island Laborers' Pension Fund v. FedEx Corp.*,
   No. 19-CV-5990 (RA), 2019 WL 5287997 (S.D.N.Y. Oct. 18, 2019)....................................10

*Salinger v. Sarepta Therapeutics, Inc.*,
   No. 19-CV-8122 (VSB), 2019 WL 6873807 (S.D.N.Y. Dec. 17, 2019)................................11

*Schaffer v. Horizon Pharma Plc*,
   No. 16-CV-1763 (JMF), 2016 WL 3566238 (S.D.N.Y. June 27, 2016) ...............................12

*Sgalambo v. McKenzie*,
   268 F.R.D. 170 (S.D.N.Y. 2010) ........................................................................................11

*Thompson v. Keane*,
   No. 95 Civ. 2442 (SHS) (AJP), 1996 WL 229887 (S.D.N.Y. May 6, 1996) ...........................8

*Topping v. Deloitte Touche Tohmatsu CPA*,
   95 F. Supp. 3d 607 (S.D.N.Y. 2015)....................................................................................14

*Weiss v. Friedman, Billings, Ramsey Grp., Inc.*,
   No. 05-CV-04617(RJH), 2006 WL 197036 (S.D.N.Y. Jan. 25, 2006)...................................15

**Rules & Statutes**

Fed. R. Civ. P. 72(a) ...............................................................................................1, 7, 12, 16

Fed. R. Civ. P. 23.....................................................................................................9, 10, 14, 15

15 U.S.C. § 78u-4 *et seq.* ................................................................................................ *passim*

Court-Appointed Lead Plaintiff Ronald L. Hershberger and Robert J. Gereige, MD (together, "H& G") respectfully submit this memorandum of law in opposition to the objections filed by Le Rivage LLC ("Rivage"), pursuant to Fed. R. Civ. P. 72(a), to Magistrate Judge Orenstein's order dated October 20, 2020 (ECF No. 67) (the "Order"), appointing H&G as Lead Plaintiff and approving their selection of Labaton Sucharow LLP ("Labaton Sucharow") and the Rosen Law Firm ("Rosen Law") as Co-Lead Counsel for the above-captioned action.[1]

## PRELIMINARY STATEMENT

Rivage's objections fail to pass the high threshold required for reconsideration under Rule 72(a) of the Federal Rules of Civil Procedure ("Rule 72(a)").  Under this deferential standard, it must be shown that the magistrate judge's order was in clear error or contrary to law. Rivage, has failed to show how the *specific findings* in Magistrate Judge Orenstein's Order are clearly erroneous or contrary to law.

In the Order, Magistrate Judge Orenstein found Rivage to be atypical, inadequate, and subject to unique defenses based on its trading pattern and theory of damages.  Specifically, Rivage completely sold out of its position in iQIYI, Inc. ("iQIYI" or the "Company") securities *sixteen months* before the end of the Class Period and attendant corrective disclosure.  Rivage's actionable damages, therefore, are solely reliant upon a disputed partial disclosure Rivage manufactured in a transparent attempt to establish recoverable damages, which purportedly occurred *eighteen months* before the end of the Class Period.  Rivage, as the *only movant* reliant on this questionable disclosure of fraud to establish damages, was thus found atypical and subject to unique defenses based on its unique loss theory.  Moreover, Magistrate Judge

---

[1]    Unless otherwise noted, emphasis has been added throughout.

Orenstein further found Rivage inadequate for being solely reliant upon such a damages theory that could potentially undermine the claims of all other members of the proposed Class.

Because Magistrate Judge Orenstein's Order followed the required procedure under the PSLRA, was soundly within the Court's discretion, and supported by case law, the Order is neither clearly erroneous nor contrary to law.  Rivage's attempts to rehash the entirety of the Lead Plaintiff briefing process is simply a last ditch effort to secure Lead Plaintiff appointment, and should be denied.

## ARGUMENT

### I.   FACTUAL BACKGROUND & PROCEDURAL HISTORY

The above-captioned securities class action (the "Action") was filed on April 16, 2020 against iQIYI and certain senior executives (together, "Defendants").  The Action, which was brought on behalf of persons who purchased or otherwise acquired iQIYI securities between March 29, 2018 and April 7, 2020 (the "Class Period"), alleges violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act").  The Action, which alleges that Defendants fraudulently inflated certain of the Company's key metrics, is premised on a report released on April 7, 2020 by Wolfpack Research (the "Report").  The Report, which is the only universally accepted and plausible partial disclosure, stated that since "well before" the Company's March 2018 initial public offering ("IPO"), that Defendants had: (1) overstated iQIYI's user numbers; (2) inflated the Company's revenues; (3) inflated iQIYI's  expenses and prices of assets to conceal its revenue inflation; and (4) all together released misleading financial information to falsely create the appearance of a cash generative company.  ECF No. 1 ¶¶ 35-42.  In connection with the filing of the Action, Rosen Law, counsel for the filing plaintiff, published notice to all members of the putative Class informing them of the pendency of claims against

2

Defendants, as well as the June 15, 2020, deadline to file motions for appointment as Lead Plaintiff.

Thereafter, a substantively identical action captioned *Shiferaw v. iQIYI, Inc.*, No. 20-cv-03115 (S.D.N.Y.) (the "*Shiferaw* Action") was filed on April 17, 2020 in the United States District Court for the Southern District of New York, and later voluntarily dismissed.[2]  On April 27, 2020, the securities class action captioned *Jenkins v. iQIYI, Inc.*, No. 20-cv-03068 (E.D.N.Y.) (the "*Jenkins* Action"), was filed in the United States District Court for the Central District of California.  The *Jenkins* Action, in addition to pleading the same Class Period and April 7, 2020 corrective disclosure, included claims under Sections 11 and 15 of the Securities Act of 1933 in connection with the Company's IPO.  By order dated July 6, 2020, after the expiration of the Lead Plaintiff deadline, the *Jenkins* Action was transferred to the United States District Court for the Eastern District of New York.  *See Jenkins* Action, ECF No. 64.

Finally, less than **two hours** before the expiration of the Lead Plaintiff deadline on June 15, 2020, Rivage filed its own securities class action captioned *Le Rivage LLC v. iQiyi, Inc.*, No. 20-cv-02653 (E.D.N.Y.) (the "*Rivage* Action").  Unlike **every other** pending case, however, the *Rivage* Action included a partial disclosure on October 30, 2018.  On this date, iQIYI announced it had **proactively** removed certain advertising customers based on then-present concerns they lacked accelerated licenses to put ads on the internet, which according to the *Rivage* Action, revealed that iQIYI had overstated its advertising growth.[3]  *See Rivage* Action ECF No. 1 ¶¶ 22-

---

[2]  The *Shiferaw* Action, based on its similarity to the Action, was voluntarily dismissed by the filing plaintiff, represented by Labaton Sucharow, in the interests of efficiency, consistency, and the preservation of judicial resources.

[3]  Moreover, the *Rivage* Action fails to indicate that any slowdown in advertising growth was also attributed to the unrelated impact of the FIFA World Cup, which at the very least, had an equal effect on the price of iQIYI securities.  *See* https://www.sec.gov/Archives/edgar/data/

26; 40-47.  In connection to the partial disclosure, the *Rivage* Action alleges in conclusory fashion that historical financial statements in the Company's IPO materials, issued seven months prior to the alleged October 2018 partial disclosure, were false and misleading. However, Rivage makes no effort to reconcile its alleged October 2018 "partial disclosure" with the Report's uncontested assertion that iQIYI's fraud had been entirely concealed prior to issuance of the Report in April 2020.  *See* ECF No. 1 ¶¶ 35-41.  Tellingly, based on Rivage's trading in its certification (signed on June 15, 2020), it completely liquidated its iQIYI holdings approximately *sixteen months prior* to April 7, 2020 (*see id.* ECF No. 1-1), and therefore entirely dependent on the October 30, 2018 partial disclosure to establish recoverable damages under Supreme Court precedent.

Out of the ten Lead Plaintiff applicants to timely file motions on June 15, 2020, Rivage was the *only* movant to request consolidation of its case filed abruptly on the eve of the deadline. No other motion so much as referenced Rivage's complaint, and more importantly, no other movant recognized the October 30, 2018 partial disclosure in their motion.  Following the filing of the competing Lead Plaintiff motions, numerous movants, including H&G, challenged Rivage's gamesmanship for filing an eleventh hour complaint with a manufactured partial disclosure unrelated to the Report's allegations that Defendants had been committing accounting fraud since before the IPO, in an attempt to transform its unconnected trading losses into a cognizable financial interest.

After holding a telephonic hearing on the Lead Plaintiff motions on August 3, 2020, Magistrate Judge Orenstein issued an order appointing H&G as Lead Plaintiff and approving

---

1722608/000119312518312866/d646377dex991.htm.  Further, the October 31, 2018 decline in the price of iQIYI securities all but evaporated the following day—in fact closing at a *higher price* than on October 30, 2018.

their selection of Lead Counsel on October 20, 2020.  While the Order did not explicitly disclaim the propriety of the October 30, 2018 disclosure (despite apparent skepticism), Magistrate Judge Orenstein found that Rivage's trading and loss theory rendered it terminally atypical and inadequate, and posed unique defenses which could harm the proposed Class:

> Whatever the plausibility of Le Rivage's attempt to characterize its losses as flowing from its relatively unique purported ability to detect and respond to iQIYI's fraud over a year before the release of the Wolfpack Report, I conclude that its loss theory renders its claims so atypical as to preclude leadership of the putative class.  Le Rivage's claims, unlike those of the other leadership candidates and the class as a whole, rely on a theory that iQIYI's alleged fraud was apparent, and caused shareholder losses, well before the Wolfpack Report.  That may subject Le Rivage to uniquely applicable defense arguments and even undermine the claims of other class members who did not sell their iQIYI shares earlier. As a result, I conclude that Le Rivage is not the most adequate candidate to serve as lead counsel.

ECF No. 67 at 4-5.  Thus, in exercising the gatekeeping function afforded to the courts by the PSLRA, Magistrate Judge Orenstein denied Rivage's motion, ***notwithstanding*** whether the disputed partial disclosure in the *Rivage* Action is plausible.  Following Rivage's disqualification, the Order appointed H&G Lead Plaintiff, as the movant who alleged the largest loss while also satisfying the typicality and adequacy requirements.

Not being content with Magistrate Judge Orenstein's determination as to the most adequate plaintiff, counsel for Rivage filed objections to the Order on November 3, 2020.  *See* ECF No. 76.  Based on its overbroad objections, however, Rivage does nothing more than rehash the same arguments from its previous submissions in the Action—all of which have been previously litigated.[4]

---

[4]   To the extent the Court does find it proper to consider Rivage's (repeated) arguments—most if not all of which are irrelevant to the Order—H&G respectfully repeat and reaffirm the arguments made against Rivage throughout the Lead Plaintiff briefing process.  *See* ECF No. 50 at 3-11.

*First*, Rivage argues that the Order failed to consolidate the Action with the *Rivage* Action. *See id.* at 8-9. H&G are not opposed to both the *Jenkins* and *Rivage* Actions being consolidated with the Action, but still object to the validity of the October 30, 2018 disclosure as pled.[5]

*Second*, Rivage *again* argues that the October 30, 2018 disclosure was plausible, seemingly taking great offense that it never received a final determination on the merits at this early stage in the litigation. *See id.* at 10-13. For the reasons plainly stated in its previous submissions in the Action, H&G strongly contest the validity of this disclosure as pled—simply attaching a skeletal justification to any price decline does not allow a non-party movant to control the contours of the litigation.[6] Further, Rivage again attempts to paint its counsel's obvious gamesmanship for filing a complaint on the eve of the Lead Plaintiff deadline as a good faith effort based on thoughtful investigation. *See id.* at 11. Despite the fact that the plausibility of the disclosure and the gamesmanship of Rivage's counsel *was not* outcome determinative in the Order, Rivage *still seeks* that the entire Order be vacated to re-litigate these issues once more.

*Finally*, similar to how Magistrate Judge Orenstein should have blindly accepted Rivage's highly contested partial disclosure, Rivage argues that Magistrate Judge Orenstein should have likewise found it typical and adequate for holding shares over *any* partial disclosure of fraud, regardless of the fact they sold out *sixteen months* prior to the only universally

---

[5]    Based on the late filing of the *Rivage* Action, no movant beside Rivage moved to consolidate the *Rivage* Action with the Action. Likewise, the *Jenkins* Action was transferred to this District *after* the Lead Plaintiff deadline. Therefore, it is of no surprise that no other movant moved for consolidation.

[6]    *See Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 240 (E.D.N.Y. 2011) ("In proving causation, there must be more than just a decline in price as a result of a disclosure by the company that the company is doing poorly; there must be some identification of a disclosure of the *fraud* that causes a drop in the stock price.") (emphasis in original)

6

accepted disclosure. *See id.* 14-16. This argument, however, fails to establish that the Order was clearly erroneous or misapplied the law in determining that Rivage is atypical, inadequate, and subject to unique defenses based on its trading and damages theory.

For the reasons discussed herein, Rivage has failed the substantial burden required to warrant reconsideration of the Order. Accordingly, H&G respectfully submit that Rivage's objections to the Order be denied.

## II.     LEGAL STANDARD

Rule 72(a) provides that a district judge may modify or set aside any part of a magistrate judge's order on a non-dispositive matter if "it is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a).[7] Importantly, the "clearly erroneous or contrary to law" standard is **not** a *de novo* review. *Kaplan v. S.A.C. Capital Advisors, L.P.*, 947 F. Supp. 2d 368, 369 n.1 (S.D.N.Y. 2013) (refusing to apply *de novo* standard of review when "follow[ing] the plain text of Federal Rule of Civil Procedure 72(a)"); *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009) ("When reviewing a pretrial order regarding non-dispositive issues [under Rule 72(a)], a district court judge may **only** reconsider the order where it has been shown that the magistrate's order is clearly erroneous or contrary to law.") (internal quotation marks and citation omitted). Indeed, "the magistrate judge's non-dispositive rulings should be afforded **substantial deference**." *Kaplan*, 947 F. Supp. 2d at 69 n.1 (quoting *R.F.M.A.S., Inc. v. So*, 748 F. Supp. 2d 244, 248 (S.D.N.Y. 2010)). The party asserting objections under Rule 72(a) therefore bears a "**heavy burden** of showing that the ruling was 'clearly erroneous or contrary to law.'" *H.L. Hayden Co. of N.Y., Inc. v. Siemens Med. Sys., Inc.*, 106 F.R.D. 551, 553 (S.D.N.Y. 1985).

---

[7]    H&G note that Rivage has requested relief under Rule 72(a), which governs a magistrate judge's ruling on non-dispositive matters. *See* ECF No. 76, at 7.

7

"A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *MacWade v. Kelly*, 230 F.R.D. 379, 381 (S.D.N.Y. 2005) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). An order is only considered "contrary to law" when it "fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Thompson v. Keane*, No. 95 Civ. 2442 (SHS) (AJP), 1996 WL 229887, at *1 (S.D.N.Y. May 6, 1996) (internal quotations omitted).[8]

At present, the ***only issue*** before the Court—subject to a substantially deferential standard of review—is whether Magistrate Judge Orenstein's Order was clearly erroneous or contrary to law, *i.e.*, finding Rivage atypical and inadequate based on its trading and loss theory. As set forth below, Rivage fails to meet this heavy burden. Instead, Rivage seeks a second bite at the apple in re-litigating the entire universe of issues which have already been fully briefed. Magistrate Judge Orenstein's decision, however, based on the broad discretion afforded to courts by the PSLRA in appointing a lead plaintiff, was fairly based on the evidence and fully supported by the law.

---

[8]  Rivage's assertion that "[a]n order misapplies and is contrary to law where it fails to consider criteria which could lead to a different decision under existing case law," grossly misstates the deferential standard under Rule 72(a). *See* ECF No. 76 at 7. The court in, *In re Comverse Technology, Inc. Securities Litigation*, the case relied upon by Rivage for this proposition, vacated the order of a magistrate judge for ***failing to apply binding Supreme Court and Second Circuit authority***, not because the magistrate judge could have reached a different decision under any case law. No. 06-CV-1825 (NGG) (RER), 2007 WL 680779 (E.D.N.Y. Mar. 2, 2007) (using same Rule 72(a) standard as listed above).

**III.   MAGISTRATE JUDGE ORENSTEIN'S ORDER IS NEITHER "CLEARLY ERRONEOUS" NOR "CONTRARY TO LAW"**

H&G respectfully submit that because the Order was well-within the bounds of judicial discretion in appointing a lead plaintiff under the PSLRA, Rivage's blatant attempt to reargue its motion should be denied.  Here, because Rivage was solely reliant on a purported partial disclosure of fraud a year and a half prior to the end of the Class Period to establish cognizable damages, Magistrate Judge Orenstein found Rivage atypical, subject to unique defenses, and therefore inadequate to represent the Class.  Accordingly, the determinative factor in the Order is whether Rivage's unique trading and loss theory rendered it atypical and inadequate.  Simply put, there was no departure from the statutory standard under the PSLRA to warrant reconsideration of the Order.

**A.   The Order Does Not Misapply the PSLRA**

The PSLRA lead plaintiff appointment procedure is unique in that on one hand it sets forth a straightforward sequential criteria, whereas on the other, courts are afforded considerable latitude in applying said criteria on a case by case basis.  Indeed, it is well-established that courts, in the exercise of their gatekeeping function on behalf of absent class members, have an "ultimate obligation to appoint as lead plaintiff the member or members of the purported plaintiff class . . . 'most capable of representing the interests of the class members.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 407 n.19 (S.D.N.Y. 2004) (citation omitted).

Under the PSLRA, a court is to consider any timely motion made by members of the proposed plaintiff class to serve as lead plaintiff and appoint the "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(i).  In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person who: (1) filed a complaint or made a

9

motion to serve as lead plaintiff; (2) has the largest financial interest in the relief sought by the class; and (3) who otherwise satisfies the typicality and adequacy requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23").  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Foley v. Transocean Ltd.*, 272 F.R.D. 126, 127 (S.D.N.Y. 2011).  This presumption may be rebutted upon a showing that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Rhode Island Laborers' Pension Fund v. FedEx Corp.*, No. 19-CV-5990 (RA), 2019 WL 5287997, at *1 (S.D.N.Y. Oct. 18, 2019).  In the event the movant claiming the largest financial interest fails this Rule 23 inquiry, or its presumed most adequate status is rebutted, courts begin the analysis anew with the movant claiming the next largest financial interest, and so forth.

Here, the Order did not diverge from the sequential procedure required by the PSLRA in finding that Rivage was not the "most adequate plaintiff."  Magistrate Judge Orenstein, in accordance with the PSLRA, first examined Rivage's Lead Plaintiff application based on the fact that it had "claimed" the largest financial interest of approximately $5 million.  Notably, this review was performed ***over numerous prior objections*** that Rivage lacked a cognizable financial interest because it liquidated its position in iQIYI sixteen months prior to the end of the Class Period, and was therefore solely dependent on the *Rivage* Action's faulty partial disclosure.

Magistrate Judge Orenstein then determined, however, that Rivage had failed the Rule 23 inquiry.  Specifically, Magistrate Judge Orenstein found that Rivage, as the only movant totally reliant on a damages theory that the fraud had been at least partially revealed eighteen months before the end of the Class Period, rendered it atypical to the proposed class and subjected it to

10

unique defenses.[9]  *See* Order at 3.  Moreover, Magistrate Judge Orenstein noted that because Rivage's recoverable damages were entirely dependent on a disclosure of fraud so far detached from the operative disclosure of fraud, that its appointment could even undermine the claims of the proposed Class.[10]  *See* Order at 3-4;  *see also Grodko v. Cent. European Distribution Corp.*, No. CIV.A. 12-5530 JBS, 2012 WL 6595931, at *5 (D.N.J. Dec. 17, 2012) ("A lead plaintiff whose losses do not relate, either temporally or topically, to the alleged wrongdoing will be subject to unique defenses regarding loss causation.").   Thus, there is nothing to indicate that Rivage did not get a "fair shot" at appointment.  Rivage's motion was considered, and rightfully denied based on its atypical trading.

> **B.    Magistrate Judge Orenstein Did Not Commit Clear Error in Finding Rivage Atypical and Inadequate**

Notwithstanding the amount of time spent arguing that the October 30, 2018 disclosure is plausible as pled (which it is not) and citing cases for the boilerplate proposition that securities class actions can plead partial disclosures of fraud, Rivage spends scant time arguing the determination as to its typicality and adequacy was made in clear error.  *See* ECF No. 76 at 14-16.  It seems, according to Rivage, that as long as a lead plaintiff applicant suffers a loss on ***any*** partial disclosure—which courts are apparently required to blindly accept as true—that the typicality and adequacy prong is satisfied.  *See id.* at 15.  This argument, like all of Rivage's objections, is overbroad, and fails to surmount the strong burden in establishing that Magistrate

---

9    *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173–74 (S.D.N.Y. 2010) (plaintiff's claims must arise from same event, practice or course of conduct that gives rise to other class members' claims, and plaintiff's claims are based on the same legal theory to satisfy typicality requirement).

10    *Salinger v. Sarepta Therapeutics, Inc.*, No. 19-CV-8122 (VSB), 2019 WL 6873807, at *2–5 (S.D.N.Y. Dec. 17, 2019) (plaintiff's claims cannot be at odds with those of the class to satisfy adequacy requirement).

Judge Orenstein did not properly exercise his broad discretion under the PSLRA.  *See Chahal v. Credit Suisse Grp. AG*, No. 18 Civ. 2268 (AT) (SN), 2018 WL 6803377, at *3 (S.D.N.Y. Aug. 27, 2018) (dismissing objections by competing lead plaintiff movant under Rule 72(a) and deferring to magistrate judge's determination as to most adequate plaintiff).[11]

Indeed, because the Lead Plaintiff briefing process in this case has revolved around the validity of the *Rivage* Action's October 30, 2018 "partial disclosure," if appointed, Rivage will clearly have to spend considerable time and resources defending this disclosure—which time and resources should be spent representing the Class.  Moreover, if Defendants were successful in proving the *Rivage* Action has failed to allege an actual partial disclosure, Rivage would lack cognizable damages under the Exchange Act, thus warranting the appointment of a new Lead Plaintiff.[12]  *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336 (2005) (cognizable damages under Exchange Act must have causal connection to the alleged fraud).  It is for precisely these reasons that Congress fashioned judicial safeguards in appointing a lead plaintiff under the PSLRA, which safeguards were properly exercised here.

---

[11]    *See also Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 903 F.2d 176, 179-80 (2d Cir. 1990) (holding that it was not an abuse of discretion for the district court to find the proposed class representative inappropriate because its claim would be subject to unique defenses); *Schaffer v. Horizon Pharma Plc*, No. 16-CV-1763 (JMF), 2016 WL 3566238 (S.D.N.Y. June 27, 2016) (denying motion for reconsideration after previously determining lead plaintiff movant subject to unique defenses).

[12]    Rivage has baldly stated that it will elect a class representative who held over the April 7, 2020 corrective disclosure if appointed.  *See* ECF No. 76 at 16.  This back door approach, however, would set a troublesome precedent whereby an investor with large, unrelated losses, could merely allege any price decline as a disclosure, then assure the court they will appoint a class representative—regardless of its financial interest—over the actual disclosure at issue.  *Cf. Bensley*, 277 F.R.D. at 242 (rejecting proposal by lead plaintiff movant subject to unique defenses through dependence on disputed partial disclosure to include plaintiff who held on final disclosure).

On this point, numerous courts have declined to appoint lead plaintiff movants where its losses were tethered solely to a "partial disclosure" of limited significance or merit. *See Bensley*, 277 F.R.D. at 240 (presumptive lead plaintiff held inadequate where it was an in-and-out trader and had not alleged sufficient facts from which the court could "confidently infer" that an early disclosure after which it sold its shares "actually revealed fraud or misconduct sufficient to qualify as a partial disclosure"; the early disclosure only announced that financial results would be lower than prior guidance, whereas a later disclosure clearly revealed that improper payments had been made to a customer—*i.e.*, the alleged fraud).[13]  Therefore, Rivage's assertion that the Order should be vacated for failing to determine the plausibility of the October 30, 2018 partial disclosure is the only true "red herring" at issue here. *See Bensley*, 277 F.R.D. at 241 ("***While the Court makes no finding regarding whether the January announcement relating to projected revenues constitutes a disclosure of fraud, it finds that the Fund is subject to unique adequacy and typicality defenses that render it an inadequate Class representative***. Although a lead plaintiff is not required to have standing to assert every possible claim . . . there remains the risk that the Fund will not be able to prove loss causation.") (internal citations and quotation marks omitted).

Further, Rivage attempts to distinguish the authority relied upon by Magistrate Judge Orenstein by arguing these cases only rejected lead plaintiff applicants after rejecting the

---

[13]    *See also Grodko*, 2012 WL 6595931, at *5–6 (disqualifying putative lead plaintiffs who sold their shares nine months before the earliest disclosure at issue, rejecting losses following an earlier partial disclosure as sufficient grounds for loss causation where a related complaint described those losses as having an unrelated cause); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 41 (2d Cir. 2009) ("Plaintiffs have failed to demonstrate that any of the information that leaked' into the market prior to [the date of the alleged corrective disclosure], revealed the truth with respect to the specific misrepresentations alleged . . . . [R]ather than providing evidence of corrective disclosures, the industry events cited by Plaintiffs appear in their complaint in the context of Defendants' misleading statements themselves.").

13

plausibility of a partial disclosure. *See* ECF No. 76 at 13-14; *see also* Order at 3-4. Not true. In *Maliarov v. Eros International PLC*, the court, in **addition** to ultimately rejecting a partial disclosure for loss causation purposes, found that the movant whose losses pre-dated the non-disputed corrective disclosure, "would be completely barred from recovery if no earlier disclosure date is established," and thus subject to unique defenses. No. 15-CV-8956 (AJN), 2016 WL 1367246, at *4 (S.D.N.Y. Apr. 5, 2016) ("If there is a serious question as to whether a movant's losses are the proximate result of a company's misconduct, courts frequently decline to appoint that person as lead plaintiff.") (collecting cases). The other two cases serve to justify Magistrate Judge Orenstein's finding that complete reliance on a questionable partial disclosure can give rise to unique defenses which endanger the proposed Class. *See Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 622 n.16 (S.D.N.Y. 2015) (noting that movant who sold out prior to the end of the class period would be subject to unique defenses) (collecting cases); *Comverse*, 2007 WL 680779, at *4 (loss causation cannot be established where trading losses are not be linked to a valid disclosure of fraud).

The cases cited by Rivage for the proposition that the Order was in "clear error" are all distinguishable, and further obfuscate the fact the Rule 23 inquiry is a discretionary one. In *In re Gentiva Securities Litigation*, the court declined to reject two lead plaintiff movants who sold their shares a mere **two months** before the final corrective disclosure, having suffered damages on earlier disclosures **directly related** to the alleged fraud. 281 F.R.D. 108, 115 (E.D.N.Y. 2012). Moreover, the court in *Gentiva* even noted that courts have declined to appoint as lead plaintiff a movant whose losses were reliant on **"speculative or highly questionable partial disclosures."** *Id.* Similarly, in *In re General Electric Securities Litigation*, the court declined to disqualify a lead plaintiff movant who sold its shares **four days** prior to the end of the class

14

period, yet held over a partial disclosure a month prior.  No. 09 Civ. 1951 (DC), 2009 WL 2259502, at *4 (S.D.N.Y. July 29, 2009).  In *Juliar v. SunOpta*, the judge refused to disqualify a proposed lead plaintiff group where ***only one of its members*** had sold its shares ***less than a week*** prior to the final corrective disclosure, after establishing there was a ***substantial*** leakage of the alleged fraud in the month prior.  No. 08 Civ. 933 (PAC), 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009).[14]

Of the cases relied upon by Rivage, none appoint a lead plaintiff reliant on a solitary and sharply disputed partial disclosure a year and a half before the end of the class period to establish cognizable losses.  Moreover, unlike the *Rivage* Action, these cases involved series of directly related partial disclosures leading up to the final disclosure, thereby providing substantial justification for a "leakage" theory.  As such, none of the cases appoint a movant, who unlike any other movant before the court, sold the entirety of their holdings well over a year before the final revelation of fraud.  Finally, these non-binding cases do nothing to supplant the discretionary review of the court in determining typicality and adequacy under Rule 23.

Accordingly, H&G respectfully submit that Rivage has failed its substantial burden in showing that the Order was clearly erroneous or contrary to law.  Here, Rivage was found atypical and inadequate for being reliant solely on a contested partial disclosure to establish losses and selling out of its position over a year before the end of the Class Period.  It was well-

---

[14]   The remaining cases fare little better.  *See, e.g.*, *Weiss v. Friedman, Billings, Ramsey Grp., Inc.*, No. 05-CV-04617(RJH), 2006 WL 197036, at *4 (S.D.N.Y. Jan. 25, 2006) (movant not disqualified where they sold after first of several partial disclosures five months before the end of the class period, where multiple movants had also sold out before the end of the class period); *Montoya v. Mamma.com Inc.*, No. 05 Civ. 2313 (HB), 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005) (refusal to disqualify movant who sold out after partial disclosure where multiple movants failed to hold over the final corrective disclosure).

15

within Magistrate Judge Orenstein discretion, and supported by the case law, to find that Rivage was subject to unique defenses based on its trading and loss theory. Thus, Rivage has failed to overcome the deferential standard of review under Rule 72(a) to warrant reconsideration of the Order.

## CONCLUSION

For the foregoing reasons, H&G respectfully submit that Magistrate Judge Orenstein's Order was not clearly erroneous nor contrary to law, and as such, Rivage's objections pursuant to Rule 72(a) should be denied.

DATED: November 17, 2020                    Respectfully submitted,

*/s/ Francis P. McConville*

**LABATON SUCHAROW LLP**
Christopher J. Keller
Eric J. Belfi
Francis P. McConville
David J. Schwartz
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile:  (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com
dschwartz@labaton.com

**THE ROSEN LAW FIRM, P.A.**
Phillip Kim, Esq.
Laurence M. Rosen, Esq.
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com

*Attorneys for Lead Plaintiff Ronald L. Hershberger*
*and Robert J. Gereige, MD and Co-Lead Counsel*
*for the Class*

16

## CERTIFICATE OF SERVICE

I hereby certify that on November 17, 2020, a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


/s/ *Francis P. McConville*