**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEAN LEE, Individually and On Behalf of All Others Similarly Situated, | Case No. 1:20-cv-01830-LDH-JO |
| Plaintiff, | |
| v. | |
| IQIYI, INC., YU GONG, and XIAODONG WANG, | Date of Service: November 24, 2020 |
| Defendants. | |

**LE RIVAGE LLC'S REPLY IN SUPPORT OF ITS OBJECTIONS PURSUANT TO FED. R. CIV. P. 72(a) TO MAGISTRATE JUDGE ORENSTEIN'S ORDER DATED OCTOBER 20, 2020 APPOINTING LEAD PLAINTIFF AND APPROVING LEAD COUNSEL**

**TABLE OF CONTENTS**

I.    PRELIMINARY STATEMENT ............................................................................................ 1

II.   ARGUMENT.................................................................................................................... 2

      A.    G&H Concede That The Order Fails To Consolidate The Related Actions In
            Violation Of The PSLRA..................................................................................... 2

      B.    The Order Does Not Evaluate The Plausibility Of The October 30, 2018 Partial
            Disclosure ............................................................................................................ 3

      C.    Because the Partial Disclosure Is Plausibly Alleged, Le Rivage is Neither Atypical
            Nor Inadequate..................................................................................................... 6

III.  CONCLUSION.................................................................................................................. 8

i

## TABLE OF AUTHORITIES

**CASES**

*Acticon AG v. China North East Petroleum Holdings, Ltd.*,
  692 F.3d 34 (2d Cir. 2012)...................................................................................... 6

*Bensley v. FalconStor Software, Inc.*,
  277 F.R.D. 231 (E.D.N.Y. 2011) .......................................................................... 7

*Chahal v. Credit Suisse Group AG*,
  2018 WL 6803377 (S.D.N.Y. Aug. 27, 2018)..................................................... 4

*Galmi v. Teva Pharm. Indus. Ltd.*,
  302 F. Supp. 3d 485 (D. Conn. 2017)................................................................ 4, 5

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
  903 F.2d 176 (2d Cir. 1990)................................................................................. 6

*Grodko v. Central European Dist. Corp.*,
  2012 WL 6595931 (D.N.J. Dec. 17, 2012)......................................................... 5

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  574 F.3d 29 (2d Cir. 2009)................................................................................... 8

*In re Gentiva Sec. Litig.*,
  281 F.R.D. 108 (E.D.N.Y. 2012) ...................................................................... 4, 6

*In re Take-Two Interactive Sec. Litig.*,
  551 F. Supp. 2d 247 (S.D.N.Y. 2008)............................................................... 5, 8

*In re VimpelCom, Ltd.*,
  2016 WL 5390902 (S.D.N.Y. Sept. 26, 2016)..................................................... 5

*Juliar v. SunOpta Inc.*,
  2009 WL 1955237 (S.D.N.Y. Jan. 30, 2009) ...................................................... 6

*Maliarov v. Eros International PLC*,
  2016 WL 1367246 (S.D.N.Y. Apr. 5, 2016)........................................................ 7

*Montoya v. Mamma.com Inc.*,
  2005 WL 1278097 (S.D.N.Y. May 31, 2005) ...................................................... 3

*Topping v. Deloitte Touche Tohmatsu CPA*,
  95 F. Supp. 3d 607 (S.D.N.Y. 2015)................................................................... 7

ii

**STATUTES**

15 U.S.C. § 78u-4 ........................................................................................................... 2, 5

**RULES**

FED. R. CIV. P. 72(a).......................................................................................................... 1

Lead Plaintiff Movant Le Rivage LLC ("Le Rivage") respectfully submits this memorandum of law in further support of its objection (the "Objection," Dkt. No. 76) to Magistrate Judge Orenstein's Memorandum and Order dated October 20, 2020 (the "Order," Dkt. No. 67) and in reply to G&H's opposition to Le Rivage's objections (the "Opp.", Dkt. No. 80).[1]

## I.    PRELIMINARY STATEMENT

G&H concede that the Order does not assess whether the October 30, 2018 disclosure is plausibly alleged. They instead ask the Court to affirm the Order by drawing an adverse inference about the adequacy of the October 30, 2018 disclosure and of Le Rivage merely because Le Rivage was the only movant to allege it. This is fundamentally flawed for a few reasons. First, whether a disclosure is plausibly alleged requires analyzing the alleged facts—which the Order fails to do. Second, courts have often considered partial disclosures that were alleged by only one of the movants. Third, the fact that Le Rivage alleged the partial disclosure on the last day for putative class members to seek leadership does not, by itself, render the partial disclosure meritless, especially because courts have considered disclosures raised for the first time in motion papers. In fact, it is clear that Judge Orenstein saw no issue with Le Rivage filing a complaint during the statutory period to do so.

G&H claim that the plausibility of the disclosure was not outcome determinative, but that is precisely why the Order must be vacated. If the October 30, 2018 disclosure is plausibly alleged, not only is Le Rivage the movant with the largest financial interest, it is also typical and adequate of all class members. Moreover, the failure to hold any shares through the final corrective

---

[1] Unless otherwise stated, capitalized terms have the meaning previously set forth in Le Rivage's Objection.

disclosure does not subject Le Rivage to unique defenses.  Courts have often appointed such movants as lead plaintiff so long as they held over at least one plausible partial disclosure.

Therefore, Le Rivage submits that the Order should be vacated, Le Rivage should be appointed Lead Plaintiff, and its selection of Glancy Prongay & Murray LLP should be approved.

## II.    ARGUMENT

The lead plaintiff in a securities class action is the investor with the largest financial interest who is typical and adequate of the members of the plaintiff class.    15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Though this determination is made at the initial pleadings stage of the case, courts routinely make factual determinations as to the scope of the allegations when appointing the lead plaintiff representative of the class.

G&H commit the same error as in the Order, claiming that Le Rivage is atypical and inadequate merely because it is the only ***movant*** to rely on the disclosure to derive its losses, overlooking the fact that, if the October 30, 2018 disclosure is plausibly alleged, then all putative class members are entitled to claim losses flowing from that disclosure.  The Order fails to even consider the plausibility of the partial disclosure using the facts alleged in a complaint filed before the lead plaintiff movant deadline, contrary to applicable law, and thus should be vacated.

### A.    G&H Concede That The Order Fails To Consolidate The Related Actions In Violation Of The PSLRA

When the motions for appointment as lead plaintiff and related briefing were filed, there were two related actions pending in this district: the *Lee* and the *Le Rivage* Actions.  Both allege violations of the Exchange Act with a corrective disclosure on April 7, 2020.  Accordingly, Le Rivage sought consolidation of the *Lee* and *Le Rivage* Actions.  The Order, however, fails to render a decision on Le Rivage's motion for consolidation, in violation of the PSLRA.  *See* Order; 15 U.S.C. § 78u-4(a)(3)(B)(ii) ("[T]he court shall not make the determination required by clause (i)

2

[i.e., as to the appointment of lead plaintiff] until after the decision on the motion to consolidate is rendered.").

Tellingly, G&H do not contest this. Not only do they acknowledge that Le Rivage moved to consolidate the two actions, they also concede that the Order fails to do so and agree that the two actions, along with the *Jenkins* Action that was transferred into this district after the lead plaintiff deadline, should be consolidated.  Opp. at 6 & n.5.  G&H, however, selectively accept the parts of the Order that are favorable to them while simultaneously acknowledging that the Order fails to apply this clear mandate of the PSLRA.

> **B.      The Order Does Not Evaluate The Plausibility Of The October 30, 2018 Partial Disclosure**

G&H claim that the Order found Le Rivage's losses to be "entirely dependent on a disclosure of fraud ***so far detached*** from the operative disclosure of fraud," but the Order does not render any conclusion as to whether the alleged partial corrective disclosure is related to the final corrective disclosure.  Opp. at 11 (emphasis added); *see* Order at 3.  That is precisely why the Order should be vacated.  The Order merely doubted whether Le Rivage's "purported ability to detect and respond to iQIYI's fraud over a year before the release of the Wolfpack Report" was characteristic of all class members.  Order at 3.  However, this misconstrues the nature of a partial disclosure, which reveals some corrective information to the market generally.  *See e.g.*, *Montoya v. Mamma.com Inc.*, 2005 WL 1278097, at *2 (S.D.N.Y. May 31, 2005) (loss causation does not require *full* disclosure).  Any class member that purchased shares before the partial corrective disclosure, and sold after the partial corrective disclosure may claim a loss stemming from that disclosure, regardless of whether they "detected" iQIYI's fraud.  Surely, there are many such investors.

Contrary to G&H's assertion, Le Rivage does not seek to have courts "blindly accept as true" a partial disclosure alleged in an initial pleading. Opp. at 11. It is clear that the Order fails to conduct the requisite factual analysis of the allegations as to whether the partial disclosure is plausibly alleged. *See* Order at 3-4; *see also In re Gentiva Sec. Litig.*, 281 F.R.D. 108, 115-16 (E.D.N.Y. 2012) (finding sufficient basis for partial disclosure at the lead plaintiff stage); *Galmi v. Teva Pharm. Indus. Ltd.*, 302 F. Supp. 3d 485, 502 (D. Conn. 2017) (concluding that six events alleged in reply brief were not plausible partial disclosures because they were not sufficiently related to the fraud alleged in the complaint).[2] It is equally clear that Le Rivage has alleged a plausible partial disclosure. The October 30, 2018 disclosure revealed that iQIYI's advertising growth had been overstated in the past by including customers who lacked "related documents to prove they are qualified advertisers," which casted doubt on the Company's prior statements that it monitors the advertising content on its platform. *See also* Objection at 4-5, 10. However, the October 30, 2018 disclosure did not fully reveal the fraud because, as the Wolfpack Report later revealed, iQIYI's reported revenue and user numbers were still overstated and iQIYI had inflated its expenses to cover up other fraud. *See* Objection at 3-4.

G&H assert that a partial disclosure requires something more than "attaching a skeletal justification to any price decline," but as described herein and in prior submissions, Le Rivage has alleged a plausible nexus between the partial corrective disclosure, the Company's prior statements, and the final corrective disclosure.[3] Rather than dispute that nexus, G&H attempt to

---

[2] *Cf. Chahal v. Credit Suisse Group AG*, 2018 WL 6803377, at *2 (S.D.N.Y. Aug. 27, 2018) (affirming magistrate's lead plaintiff appointment where no case law supported objector's "proposition that an investor group *must* include the individual investor with the greatest financial interest") (cited by Opp. at 12).

[3] G&H's lament that "a non-party movant [cannot] control the contours of the litigation" is disingenuous. Opp. at 6. The PSLRA dictates that the "person or group of persons that . . . has either filed the complaint or made a motion in response to a notice" (i.e. a non-party movant) shall

4

impose new requirements to allege the plausibility of a disclosure, ones that were not considered by the Order and that are not grounded in case law.  First, G&H suggest that a plaintiff must refute non-fraudulent alternative explanations for a stock price decline.  *See* Dkt. No. 80 at 3 n.3.  Not so.[4]  Plaintiffs need only allege that a disclosure "possess[es] a sufficient nexus to a prior misstatement such that it reveals at least part of the falsity of that misstatement," which Le Rivage has done.  *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 283 (S.D.N.Y. 2008).

Second, G&H recklessly argue that the partial disclosure is somehow less genuine because the stock partially recovered the next day.  Dkt. No. 80 at 3 n.3.  The same argument, however, could potentially be used to dispute the final disclosure on April 7, 2020: following the release of the Wolfpack Report, the price of iQIYI shares fell $0.99 to close at $16.51 per share on April 8, 2020, but recovered the next trading session to close at $17.37 per share on April 9, 2020.  In seeking to maintain their appointment as lead plaintiff, G&H recklessly raise doubts that jeopardize the entire class's interest and likelihood of recovery based on the Wolfpack Report.  In any event, loss causation is not negated as a matter of law because the stock recovered.  *See, e.g.*,

---

be appointed as lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  And, courts have frequently considered the adequacy of partial disclosures using facts alleged for the first time in motion papers, thereby controlling the contours of the litigation.  *See Galmi*, 302 F. Supp. 3d at 501 (reply brief); *In re VimpelCom, Ltd.*, 2016 WL 5390902, at *3 (S.D.N.Y. Sept. 26, 2016) (response to motion for reconsideration of order appointing lead plaintiff).

[4] To claim that losses with an "unrelated cause" should be excluded, G&H rely on *Grodko v. Central European Dist. Corp.*, 2012 WL 6595931 (D.N.J. Dec. 17, 2012), which is inapposite because the movant sought appointment in *CEDC II* based on losses traceable to the partial disclosures in a factually distinct case, *CEDC I*.  There, *CEDC I* concerned concealed problems with the company's vodka business which culminated when it incurred an impairment charge for deteriorated trademarks. 2012 WL 6595931 at *2.  In contrast, *CEDC II* was related to misleading financial statements due to the company's failure to account for retroactive trade rebates.  *Id.*  The court rejected the Prosperity Subsidiary Group in *CEDC II* because it attempted to trace its losses to the March 2011 disclosure, which "was related to the impairment charge that forms the heart of the *CEDC I* action, not the Russian trade rebates at the heart of the [the *CEDC II*] action."  *Id.* at *6.

5

*Acticon AG v. China North East Petroleum Holdings, Ltd.*, 692 F.3d 34, 41 (2d Cir. 2012) (price rebound could represent market reaction to disclosure or unrelated gains).

Finally, G&H repeatedly emphasize that the October 30, 2018 disclosure is "eighteen months" prior to the final disclosure. Opp. at 1, 9, 10, 15. This timing, however, has little bearing on whether the partial disclosure is adequately alleged, especially because Le Rivage contends the partial disclosure was part of a larger fraud to overstate iQIYI's financial metrics.[5] Indeed, G&H do not cite a single case in support of their apparent proposition that a partial disclosure must be near the end of the class period.

### C. Because the Partial Disclosure Is Plausibly Alleged, Le Rivage is Neither Atypical Nor Inadequate

G&H, like the Order, make much ado of the fact that Le Rivage was the only movant to rely on the October 30, 2018 disclosure to claim its losses, but this is irrelevant. If the partial disclosure is plausibly alleged at this stage (which it is), then *all* putative class members stand to benefit—thus, Rivage is typical and adequate. *See e.g.*, *Gentiva*, 281 F.R.D. at 120 (movant who sold shares after partial disclosures was typical and adequate). Therefore, when the October 30, 2018 disclosure is properly included in assessing leadership of the action, Le Rivage is typical, adequate, and not subject to unique defenses. *Cf. Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 179-80 (2d Cir. 1990) (unique defense where proposed representative "continued purchases of CDs through Merrill despite having notice of, and having investigated, the alleged fraud") (cited by Opp. at 12 n.11).

---

[5] G&H incorrectly claim that Le Rivage alleges a "leakage" theory of liability, where a plaintiff alleges that news of the fraud leaked to certain investors, but not the market generally, prior to the final corrective disclosure. Opp. at 15 (citing *Juliar v. SunOpta Inc.*, 2009 WL 1955237, at *2 (S.D.N.Y. Jan. 30, 2009) (large increase in trading volume prior to final disclosure)). This is not a leakage case. Le Rivage has alleged that an announcement revealed to the investing public the falsity of the Company's prior statements.

G&H's contentions presume that the partial disclosure is not plausibly alleged, further confirming that the Order should be vacated because it fails to render any conclusion as to the plausibility of the October 30, 2018 disclosure.  For example, G&H claim that Le Rivage will have to spend time and resources defending the disclosure, but this is equally true of the April 7, 2020 disclosure and there is a similar risk that one or both will ultimately fail.  G&H also claim that Le Rivage's effort to include a class representative who held over the April 7, 2020 disclosure is a "back door approach," but that is premised on the belief that the October 30, 2018 will not survive and the additional class representative will be necessary to maintain the class's interests.  Absent a determination or any analysis whatsoever as to the plausibility of the disclosure, the likelihood of that scenario is far from clear.

In the cases cited by G&H, courts rejected a movant as subject to unique defenses because its losses were traceable to partial disclosures that were suspect and unlikely to be plausibly alleged.  But in *Bensley v. FalconStor Software, Inc.*, the movant had merely alleged that on January 14, 2010, the Company announced that it would report results below previously-issued guidance, from which the court could not "confidently infer" a revelation of potentially illegal payments because "other market factors like general economic factors [c]ould cause a drop in earnings that had nothing to do with the fraud."  277 F.R.D. 231, 239-40 (E.D.N.Y. 2011).  In *Maliarov v. Eros International PLC*, "there [was] a serious question as to whether [the] movant's losses [were] the proximate result of a company's misconduct" because it relied "on unsupported allegations that those with 'early access to the Alpha Exposure Report' leaked such information in an unspecified manner."  2016 WL 1367246, at *3-4 (S.D.N.Y. Apr. 5, 2016).  And in *Topping v. Deloitte Touche Tohmatsu CPA*, there was no plausible partial disclosure from which the movant could trace its losses.  95 F. Supp. 3d 607, 622 (S.D.N.Y. 2015).  Here, neither the Order nor G&H

7

explain why the October 30, 2018 disclosure is of "limited significance or merit." Opp. at 13. Moreover, this partial disclosure is related to the final corrective disclosure. *See* Section B, *supra*.[6]

A movant who fails to hold any shares through the final disclosure does not face a unique defense of having to show loss causation. G&H attempt to distinguish this case from Le Rivage's supporting case law by arguing that the latter involved partial disclosures near or at the end of the class period. *See* Opp. at 14-15. But a plausible partial disclosure is not less significant per se because it occurred earlier in the class period. Whether the disclosure was two months into the class period or two years into the class period is irrelevant, so long as it "reveals at least part of the falsity of [a prior] misstatement." *Take-Two*, 551 F. Supp. 2d at 283. Additionally, if it is relevant at all, the timing of the partial disclosure must be viewed relative to the length of the class period. *See e.g. In re Gen. Elec. Sec. Litig.*, 2009 2259502, *4 (S.D.N.Y. July 29, 2009) (declining to exclude movant who sold four months into approximately six-month long class period).

## III.    CONCLUSION

For the foregoing reasons, Magistrate Judge Orenstein's Oder dated October 20, 2020 should be vacated, Le Rivage should be appointed lead plaintiff, and its choice of counsel should be approved.

---

[6] G&H's other case on this point is likewise distinguishable. In *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, the Second Circuit rejected plaintiffs' attempt to "have it both ways." 574 F.3d 29, 41 (2d Cir. 2009). Specifically, it found that "Plaintiffs cannot allege that Defendants made certain misstatements, namely, that Flag was doing well compared to its competitors, and simultaneously argue that the misstatement itself constituted a corrective disclosure, that is, the fact that the other companies were not doing well exposed the public to the truth about Flag's misstatements." *Id.*

Respectfully submitted,

Dated: November 24, 2020                    **GLANCY PRONGAY & MURRAY LLP**

By: */s/ Gregory B. Linkh*
Gregory B. Linkh (GL-0477)
230 Park Ave., Suite 530
New York, NY 10169
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
glinkh@glancylaw.com

-and-

Robert V. Prongay (admitted *pro hac vice*)
Kevin F. Ruf (admitted *pro hac vice*)
Charles H. Linehan
Pavithra Rajesh
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Le Rivage LLC*

9

**PROOF OF SERVICE**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old.

On November 24, 2020, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Eastern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on November 24, 2020, at Los Angeles, California.

*s/ Gregory B. Linkh*
Gregory B. Linkh