**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEAN LEE, Individually and On Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>    v.<br><br>iQIYI, INC., YU GONG, XIAODONG WANG, BAIDU, INC., ROBIN YANHONG LI, QI LU, HERMAN YU, XUYANG REN, VICTOR ZHIXIANG LIANG, CHUAN WANG, GISELLE MANON, GOLDMAN SACHS (ASIA) LLC, CREDIT SUISSE SECURITIES (USA) LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, CITIGROUP GLOBAL MARKETS INC., and UBS SECURITIES LLC,<br><br>        Defendants. | 20-cv-1830 (DG) (TAM)<br><br><br>**ECF Case**<br>**Electronically Filed** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**THE UNDERWRITER DEFENDANTS' JOINDER IN THE iQIYI DEFENDANTS'**
**MOTION TO DISMISS**

July 16, 2021

O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
(212) 326-2000

*Attorneys for Defendants Goldman Sachs (Asia) LLC, Credit Suisse Securities (USA) LLC, Merrill Lynch, Pierce, Fenner & Smith, Incorporated, China Renaissance Securities (Hong Kong) Limited, Citigroup Global Markets Inc., and UBS Securities LLC (the "Underwriter Defendants")*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ....................................................................................................- 1 -

BACKGROUND ..........................................................................................................................- 3 -

ARGUMENT.................................................................................................................................- 3 -

    I.      PLAINTIFFS LACK SECTION 11 STANDING BECAUSE THEY
           HAVE NO COGNIZABLE DAMAGES. ....................................................- 3 -

          A.    iQIYI's ADS Price Exceeded the IPO Price When Suit Was First
                Brought Claiming that the Registration Statement Contained a
                Material Misstatement. ........................................................................- 3 -

          B.    iQIYI's ADS Price Exceeded the IPO Price When Suit Was First
                Brought Against the Underwriter Defendants Claiming that the
                Registration Statement Contained a Material Misstatement..................- 5 -

    II.     THE ACCAC FAILS TO PLEAD A SECTION 11 CLAIM. ...........................- 5 -

          A.    The ACCAC Fails to Plead that the Underwriters Acted with
                Scienter. ..............................................................................................- 7 -

          B.    The ACCAC Fails to Plead a Materially False Statement in the
                Offering Materials.................................................................................- 8 -

           C.    The Absence of Loss Causation Is Apparent on the Face of the
                ACCAC.................................................................................................- 10 -

CONCLUSION.............................................................................................................................- 10 -

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Adelphia Commc'ns Corp., Sec. Litig.*,
No. 03 MD 1529 (LMM), 2007 WL 2615928 (S.D.N.Y. Sept. 10, 2007) ................................. 6

*In re Alcatel Sec. Litig.*,
382 F. Supp. 2d 513 (S.D.N.Y. 2005) ......................................................................................... 6

*Alpern v. UtiliCorp United, Inc.*,
84 F.3d 1525 (8th Cir. 1996) ................................................................................................. 4, 5

*In re Alstom SA*,
406 F. Supp. 2d 433 (S.D.N.Y. 2005) ........................................................................................ 8

*In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*,
381 F. Supp. 2d 192 (S.D.N.Y. 2004) ....................................................................................... 5

*In re A–Power Energy Generation Sys. Ltd. Sec. Litig.*,
No. 11–MDL–2302, 2012 WL 1983341 (C.D. Cal. May 31, 2012) .......................................... 9

*In re Barclays Bank PLC Sec. Litig.*,
09 Civ. 1989 (PAC), 2016 WL 3235290 (S.D.N.Y. June 9, 2016) ............................................ 4

*Caiafa v. Sea Containers Ltd.*,
06 Civ. 2565 (RMB), 2008 WL 11516813 (S.D.N.Y. May 15, 2008) ...................................... 7

*Coronel v. Quanta Capital Holdings Ltd.*,
No. 07 Civ. 1405 (RPP), 2009 WL 174656 (S.D.N.Y Jan. 26, 2009) ...................................... 7

*In re ECOtality, Inc. Sec. Litig.*,
No. 13-03791-SC, 2014 WL 4634280 (N.D. Cal. Sept. 16, 2014) ........................................... 8

*In re Elan Corp. Sec. Litig.*,
No. 02 Civ. 865 (RMB) (FM), 2004 WL 1305845 (S.D.N.Y. May 18, 2004) ...................... 6, 7

*Gabriel Capital, L.P. v. Natwest Finance, Inc.*,
137 F. Supp. 2d 251 (S.D.N.Y. 1999) ........................................................................................ 8

*Ganino v. Citizens Utilities Co.*,
228 F.3d 154 (2d Cir. 2000) ....................................................................................................... 6

*Garber v. Legg Mason, Inc.*,
537 F. Supp. 2d 597 (S.D.N.Y. 2008) ...................................................................................... 10

*Geiger v. Solomon-Page Group, Ltd.*,
933 F. Supp. 1180 (S.D.N.Y.1996) ............................................................................................ 7

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
   95 F. Supp. 2d 169 (S.D.N.Y. 2000) ....................................................................... 7

*In re Indep. Energy Holdings PLC Sec. Litig.*,
   154 F. Supp. 2d 741 (S.D.N.Y. 2001) ...................................................................... 8

*In re JPMorgan Chase Sec. Litig.*,
   363 F. Supp. 2d 595 (S.D.N.Y. 2005) .................................................................. 6, 7

*Jiajia Luo v. Sogou, Inc.*,
   465 F. Supp. 3d 393 (S.D.N.Y. 2020) .................................................................. 6, 7

*Ladmen Partners, Inc. v. Globalstar, Inc.*,
   No. 07 Civ. 0976 (LAP), 2008 WL 4449280 (S.D.N.Y. Sept. 30, 2008).................................. 6

*In re Marsh & McLennan Cos. Sec. Litig.*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006) .................................................................. 6, 7

*Mills v. Polar Molecular Corp.*,
   12 F.3d 1170 (2d Cir. 1993) ................................................................................... 8

*In re OSG Secs. Litig.*,
   971 F. Supp. 2d 387 (S.D.N.Y. 2013) ...................................................................... 6

*Pierce v. Morris*,
   Civil Action No. 4:03-CV-026-Y, 2006 WL 2370343 (N.D. Tex. Aug. 16, 2006) .............. 4, 5

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004) ................................................................................... 8

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000) ..................................................................................... 8

*Scone Invs., L.P. v. Am. Third Mkt. Corp.*,
   No. 97 CIV. 3802 (SAS), 1998 WL 205338 (S.D.N.Y. Apr. 28, 1998).................................. 6

*Scott v. GM Co.*,
   46 F. Supp. 3d 387 (S.D.N.Y. 2014) ........................................................................ 9

*In re Shoretel Inc., Sec. Litig.*,
   No. C 08-00271 CRB, 2009 WL 248326 (N.D. Cal. Feb. 2, 2009) ......................................... 9

*In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*,
   774 F. Supp. 2d 584 (S.D.N.Y. 2011) ..................................................................... 10

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*In re Wash. Mut. Sec., Deriv. & ERISA Litig.*,
   Nos. 2:08–md–1919 MJP, C08–387 MJP, 2010 WL 4272567 (W.D. Wa. Oct. 12, 2010)........ 4

*Wexner v. First Manhattan*,
   902 F. 2d 169 (2d Cir. 1990) ................................................................................................ 7

*In re WRT Energy Sec. Litig.*,
   No. 96 CIV. 3610 (JFK), 96 CIV. 3611 (JFK), 1999 WL 178749 (S.D.N.Y. Mar. 31, 1999)... 8

**Statutes**

15 § U.S.C. 77k(e) .................................................................................................................... 3

15 U.S.C. § 77k(a) ................................................................................................................ 1, 3

The Underwriter Defendants[1] respectfully join in the iQIYI Defendants' motion to dismiss the Amended Consolidated Class Action Complaint ("ACCAC"), and write separately to explain further why the ACCAC's Section 11 claim (Count III)—the sole claim against the Underwriter Defendants—should be dismissed.

## PRELIMINARY STATEMENT

As the iQIYI Defendants demonstrate, the Section 11 claim fails as to all defendants for three reasons:  (i) Plaintiffs lack Section 11 standing because they have no Section 11 damages; (ii) the ACCAC does not plead facts showing a material misstatement that could give rise to Section 11 liability; and (iii) it is apparent from the ACCAC's face that the Registration Statement's allegedly misleading statements did not cause any alleged loss.  The Underwriters should be dismissed for the additional independent reason that the ACCAC does not plead facts giving rise to a strong inference of the Underwriter Defendants' scienter, as plaintiffs must do, where, as here, the Section 11 claim sounds in fraud.

*Standing*.  An investor has no standing to bring a Section 11 claim if it cannot show damages under the prescribed statutory formula.  A prerequisite under that formula is that the value of the security is less than the IPO price when the investor files a suit alleging that the relevant "registration statement . . . contained an untrue statement of a material fact."  15 U.S.C. § 77k(a).  Plaintiffs here cannot satisfy that requirement against the Underwriter Defendants for two independent reasons.  *First*, the initial complaint alleging that iQIYI's Registration

---

[1] As used herein, (i) "Underwriter Defendants" means defendants Goldman Sachs (Asia) LLC, Credit Suisse Securities (USA) LLC, Merrill Lynch, Pierce, Fenner & Smith, Incorporated, China Renaissance Securities (Hong Kong) Limited, Citigroup Global Markets Inc., and UBS Securities LLC; (ii) "iQIYI Defendants" as used herein refers collectively to iQIYI, Inc. ("iQIYI" or the "Company"); Baidu, Inc. ("Baidu"); Robin Yanhong Li, Qi Lu, Herman Yu, Victor Zhixiang Liang, and Giselle Manon; (iii) "iQIYI Brief" means Defendants' Joint Motion to Dismiss the Consolidated Amended Complaint for Violation of the Federal Securities Laws (cited herein as "iQIYI Br. at __"); and (iv) "Registration Statement" means the March 28, 2018 registration statement for iQIYI's initial public offering. Unless otherwise specified, all emphasis is added and all citations and quotations are omitted.

Statement contained material misstatements was filed on April 16, 2020, when iQIYI's ADS closed at $19.24, well above the $18.00 IPO price.  This first reason applies to all Securities Act defendants.  *Second*, if the Court were to use instead the first date a Section 11 claim was asserted against the Underwriter Defendants (January 19, 2021), iQIYI's ADS closed even higher on that date, at $19.49 per share.  Thus, even if Plaintiffs could plead Section 11 damages against the other Securities Act defendants—which they cannot based on the plain language of the statute and the undisputed facts—they still would not be able to plead Section 11 damages against the Underwriter Defendants.

*No material misstatements*.  Section 11 liability can only be triggered by misstatements in a registration statement; not oral statements, press releases, or even other SEC filings.  Here, while the ACCAC challenges four categories of statements, only the Registration Statement's disclosures concerning iQIYI's 2017 and 2018 daily average users and deferred revenues are at issue for the Section 11 claim.  But the ACCAC's allegations concerning these subjects are simply too conclusory to state a claim.  For this reason, too, the Section 11 claim should be dismissed.

*Scienter:*  Where a Section 11 claim sounds in fraud, it must satisfy the stringent fraud pleading requirements of Federal Rule of Civil Procedure 9(b).  This includes pleading facts showing that the defendants acted with scienter, or fraudulent intent.  Here, the ACCAC asserts claims both for fraud and negligence based on the exact same statements in iQIYI's IPO Offering Materials—a textbook example of a Securities Act claim that "sounds in fraud."  Yet the ACCAC fails to include any allegations that the Underwriter Defendants deliberately or recklessly misled investors.  For this reason as well, the Section 11 claim against the Underwriter Defendants should be dismissed.

*Negative causation*:  While Plaintiffs need not affirmatively plead loss causation under Section 11, courts nevertheless dismiss Section 11 claims where it is apparent on the face of the complaint that the alleged misrepresentations did not cause the plaintiffs' alleged losses.  Such is the case here, because iQIYI's ADS price *increased* on the day of the alleged corrective disclosure.

## BACKGROUND

The Underwriter Defendants adopt and incorporate by reference the iQIYI Brief's Statement of Facts.  (*See* iQIYI Br. 5–8.)

## ARGUMENT

I.      **PLAINTIFFS LACK SECTION 11 STANDING BECAUSE THEY HAVE NO COGNIZABLE DAMAGES.**

      A.      **iQIYI's ADS Price Exceeded the IPO Price When Suit Was First Brought Claiming that the Registration Statement Contained a Material Misstatement.**

As explained in the iQIYI Brief, Plaintiffs lack standing to bring a Section 11 claim because they cannot show damages under the statute's damages formula.  (*See* iQIYI Br. 24.) Section 11(e) measures investors' damages as "the difference between the amount paid for the security (*not exceeding the price at which the security was offered to the public*)" and "the value thereof as of the time such suit was brought."  15 § U.S.C. 77k(e).  "[S]uch suit" is "[t]he suit authorized under subsection (a)" of the statute, *id*., i.e., a suit claiming that a "registration statement . . . contained an untrue statement of a material fact," 15 U.S.C. § 77k(a).

Here, April 16, 2020, is the date of the first complaint alleging that the Registration Statement for iQIYI's IPO contained materially false or misleading statements.  (*See Lee* Original Compl. [Dkt. 1] ¶ 17.)  And even though there were subsequent lawsuits and pleadings that likewise alleged material misstatements in that Registration Statement, April 16, 2020,

remains the operative date for Section 11(e) purposes: "[T]he proper date for 'the time such suit was brought' . . . is that of the first-filed complaint, rather than of a later-filed amended or consolidated complaint."[2]  iQIYI's ADS closed at $19.24 on April 16, 2020 (Declaration of Robert A. Fumerton in Support of iQIYI Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint, Ex. B at 12), above the $18.00 offering price, and thus Plaintiffs' Section 11 claim must be dismissed for failure to plead cognizable damages.[3]

Plaintiffs have nevertheless argued that April 27, 2020 (when iQIYI's ADS briefly dipped below the $18.00 IPO price) is the proper filing date for Section 11 damages purposes, because whereas the April 16 complaint contained only Exchange Act claims, the April 27 complaint (filed by plaintiff Jenkins) asserted a Securities Act Section 11 claim (although not against the Underwriter Defendants), albeit based on the same offering document.  (*See* Dkt. No. 99 at 2–3.)  The Section 11 claim in the April 27 complaint, however, "relates back . . . to the date when the securities action was commenced, not when an amended complaint was filed."[4]  Consistent with the plain language of Section 11(e), the "relevant date for measuring [] damages" is "the date [Plaintiffs] filed [their] initial complaint, alleging securities violations under § 10(b)," as long as that complaint alleged material misleading statements in the offering materials for that security.[5]  Otherwise, Securities Act plaintiffs could game the system by filing

---

[2] *In re Barclays Bank PLC Sec. Litig.*, 09 Civ. 1989 (PAC), 2016 WL 3235290, at *5 (S.D.N.Y. June 9, 2016); *see, e.g., In re Wash. Mut. Sec., Deriv. & ERISA Litig.*, Nos. 2:08–md–1919 MJP, C08–387 MJP, 2010 WL 4272567, at *11 (W.D. Wa. Oct. 12, 2010) ("Damages may be calculated [for] Section 11 [as] the difference in between the amount paid for the securities . . . and the value thereof as of . . . the filing of the first complaint seeking relief for the same alleged misconduct.").

[3] *See, e.g., Pierce v. Morris*, Civil Action No. 4:03-CV-026-Y, 2006 WL 2370343, at *4 (N.D. Tex. Aug. 16, 2006) (dismissing Section 11 claim where price of securities "was greater than the price for which [plaintiff] bought [the company's] stock" on the "original filing date").

[4] *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1542 (8th Cir. 1996).

[5] *Id.*

Exchange Act claims based on alleged misstatements in a security's offering documents, and then delaying "Securities-Act claims until stock prices fall . . . giving the plaintiff two bites at the apple."[6]

**B.      iQIYI's ADS Price Exceeded the IPO Price When Suit Was First Brought Against the Underwriter Defendants Claiming that the Registration Statement Contained a Material Misstatement.**

Even if the Court were to base the Section 11(e) damages analysis on the date a Securities Act claim was first filed, the operative date for the Underwriter Defendants would not be April 27, 2020.  That is because the Underwriter Defendants were not named as defendants in the April 27, 2020 *Jenkins* complaint.  For the Underwriter Defendants, January 19, 2021, would be the operative date, because that is "the date on which the Underwriter Defendants were added to the [a]mended [c]omplaint."[7]  (*See* Consol. Am. Compl. [Dkt No. 84].)  And because iQIYI's ADS closed above the $18.00 IPO price, on January 19, 2021 ($19.49),[8] Plaintiffs have no Section 11 damages against the Underwriter Defendants on this basis as well.[9]

## II.      THE ACCAC FAILS TO PLEAD A SECTION 11 CLAIM.

As the iQIYI Defendants show, the ACCAC's Section 11 claim sounds in fraud because it is based on the same statements alleged in the Section 10(b) claim to be fraudulent.  (*See* iQIYI Br. 25.)  In their Consolidated Amended Complaint, Plaintiffs acknowledged as much, alleging that "[f]raud is the only plausible explanation for the differences" between the results iQIYI reported in its Registration Statement and the alleged actual performance.  (Consol. Am. Compl. [Dkt. No. 84] ¶ 277.)  Plaintiffs' removal of that telling allegation from the ACCAC does not

---

[6] *Pierce*, 2006 WL 2370343, at *4.

[7] *In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.*, 381 F. Supp. 2d 192, 245 (S.D.N.Y. 2004).

[8] (*See* Declaration of Robert A. Fumerton in Support of iQIYI Defendants' Motion to Dismiss the Amended Consolidated Class Action Complaint, Ex. B at 16.)

[9] *Id.*

alter the analysis, because Plaintiffs still plead both fraud and negligence claims based on the exact same statements.  (*See* iQIYI Br. 25.)  And Plaintiffs' "[b]are disclaimers" in the ACCAC (¶ 233) "are insufficient to shield any claims that actually sound in fraud from the requirements of Rule 9(b)."[10]

Those allegations sound in fraud not only as to the iQIYI Defendants, but also the Underwriter Defendants.  Throughout the ACCAC, Plaintiffs lump the iQIYI Defendants and the Underwriter Defendants together—referring to them collectively as "the Securities Act Defendants"—without attempting to distinguish between the two groups in alleging that they made false and misleading statements.  (*See e.g.* ACCAC ¶¶ 316, 326, 328).   Plaintiffs' entire complaint therefore sounds in fraud[11] and must satisfy Rule 9(b)'s particularized pleading requirements (*see* iQIYI Br. 25).

---

[10] *In re OSG Secs. Litig.*, 971 F. Supp. 2d 387, 396 (S.D.N.Y. 2013). *See also Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 408 (S.D.N.Y. 2020) (rejecting complaint's disclaimers of intent to plead fraud in Section 11 claim); *In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 492 (S.D.N.Y. 2006) ("Allowing plaintiffs to allege fraud over [hundreds of] paragraphs and then withdraw those claims for eight paragraphs in order to state a Section 11 claim eviscerates Rule 9(b)'s mandate to safeguard a defendant's reputation from improvident charges of wrongdoing."); *In re JPMorgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) ("Plaintiffs cannot evade the Rule 9(b) strictures by summarily disclaiming any reliance on a theory of fraud or recklessness."), *aff'd*, 553 F.3d 187 (2d Cir. 2009); *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 530 (S.D.N.Y. 2005) ("Plaintiffs' boilerplate disclaimers that their allegations are incorporated into their claims under sections 11 and 12(a)(2) except to the extent any such allegation may be deemed to sound in fraud is insufficient to remove those allegations from the requirements of Rule 9(b)."); *In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865 (RMB) (FM). 2004 WL 1305845 (S.D.N.Y. May 18, 2004) (holding that Securities Act claims sounded in fraud "[n]otwithstanding the Plaintiffs' fraud disclaimer" because claims were "peppered" with words like "inaccurate and misleading").

[11] *See, e.g., In re Adelphia Commc'ns Corp., Sec. Litig.*, No. 03 MD 1529 (LMM), 2007 WL 2615928 at *9 (S.D.N.Y. Sept. 10, 2007) (Section 11 claim against underwriter sounded in fraud because "[t]he Complaint as a whole is targeted at the fraud . . . not negligence, and the few paragraphs set aside under Count I do not alter the character of Plaintiffs' allegations"); *Ladmen Partners, Inc. v. Globalstar, Inc.*, No. 07 Civ. 0976 (LAP), 2008 WL 4449280 at *12–13 (S.D.N.Y. Sept. 30, 2008) (Section 11 claim against underwriters sounded in fraud because "in a number of allegations of essentially fraudulent conduct, the [complaint] makes no effort whatsoever to distinguish the Underwriter Defendants from [other] Defendants"). *See also Ganino v. Citizens Utilities Co.,* 228 F.3d 154, 168 (2d Cir. 2000) ("The district court should review the Complaint to determine whether it meets our Circuit's pleading requirements for scienter as to each of the defendants."); *Scone Invs., L.P. v. Am. Third Mkt. Corp.*, No. 97 CIV. 3802 (SAS), 1998 WL 205338, at *4 (S.D.N.Y. Apr. 28, 1998) ("[A] complaint may not rely upon blanket references to the acts of all the defendants without identifying the nature of each defendant's participation in the fraud.").

### A.    The ACCAC Fails to Plead that the Underwriters Acted with Scienter.

Among Rule 9(b)'s pleading requirements is that a complaint plead specific facts giving rise to a "strong inference" that each defendant acted with scienter, or fraudulent intent.[12]  In the Second Circuit, the defendants' scienter is always at issue when Rule 9(b) applies:  "Rule 9(b) requires that all averments of fraud be stated with particularity.  In this circuit, that long has meant the plaintiff must allege with particularity the circumstances constituting the fraud *and scienter*."[13]  Thus, even though scienter is not ordinarily an element of a Section 11 claim, a complaint that sounds in fraud must nevertheless plead each defendant's fraudulent intent, even for a Section 11 claim.[14]

Pleading the fraudulent intent of third-party advisors, such as underwriters, presents a higher bar than alleging scienter for issuers and their officers and directors.[15]  For third-party

---

[12] *Jiajia Luo*, 465 F. Supp. 3d at 408; *Caiafa v. Sea Containers Ltd.*, 06 Civ. 2565 (RMB), 2008 WL 11516813, at *5 (S.D.N.Y. May 15, 2008) (recognizing that where Section 11 claim sounds in fraud, plaintiffs must "plead with particularity a strong inference of scienter in connection with a material misrepresentation or omission") (citation omitted); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d at 635 ("summarily disclaiming any reliance on a theory of fraud or recklessness" insufficient to "evade" Rule 9(b)).

[13] *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 95 F. Supp. 2d 169, 174 (S.D.N.Y. 2000) (emphasis in original); *see also Wexner v. First Manhattan*, 902 F. 2d 169, 172 (2d Cir. 1990) ("Although scienter need not be alleged with great specificity, plaintiffs are still required to plead the factual basis which gives rise to a strong inference of fraudulent intent.").

[14] *See Coronel v. Quanta Capital Holdings Ltd.*, No. 07 Civ. 1405 (RPP), 2009 WL 174656, at *15–16 (S.D.N.Y Jan. 26, 2009) (where Section 11 and 12(a)(2) claims sounded in fraud, plaintiff must "convey through factual allegations that the defendants made materially false statements, and that they did so with scienter"); *Caiafa*, 2008 WL 11516813, at *5 (where Section 11 claim sounds in fraud, plaintiffs must "plead with particularity a strong inference of scienter," and dismissing claim for failure to do so); *In re Marsh & McLennan Cos.*, 501 F. Supp. 2d at 492 ("Plaintiffs must either provide sufficient allegations of the defendants' fraudulent intent, or withdraw allegations of fraud against certain defendants and allege those defendants' negligence."); *In re JPMorgan Chase*, 363 F. Supp. 2d at 635 (dismissing Securities Act claim that sounded in fraud because "plaintiffs have failed to plead a strong inference of scienter properly"); *In re Elan Corp. Sec. Litig.*, 2004 WL 1305845, at *11 ("Whatever the merits of the Plaintiffs' Section 11 claim regarding Pharma might be were it couched as a negligence claim, the Plaintiffs plainly have not adequately alleged that Elan engaged in fraud in connection with Pharma."); *Geiger v. Solomon-Page Group, Ltd.*, 933 F. Supp. 1180, 1189–90 (S.D.N.Y.1996) (dismissing Section 11 claim against underwriter that sounded in fraud for failure to plead scienter).

[15] *See In re Indep. Energy Holdings PLC Sec. Litig.*, 154 F. Supp. 2d 741, 764 (S.D.N.Y. 2001) (quoting *In re WRT Energy Sec. Litig.*, No. 96 CIV. 3610 (JFK), 96 CIV. 3611 (JFK), 1999 WL 178749, at *9 (S.D.N.Y. Mar. 31, 1999)) ("Where the allegations of recklessness pertain to third-party advisers, such as underwriters or accountants,

advisers like underwriters, "the allegations must approximate an actual intent to aid in the fraud being perpetrated by the . . . company."[16]  But the ACCAC lacks any allegation—even a conclusory one—that any of the Underwriter Defendants acted with intent to defraud or even conscious recklessness.  To the contrary, the ACCAC affirmatively disclaims any such allegations.  (*See* ACCAC ¶ 233.)  Under these circumstances, the ACCAC cannot satisfy Rule 9(b)'s scienter pleading requirement, and it should be dismissed on that basis alone.[17]

>    **B.      The ACCAC Fails to Plead a Materially False Statement in the Offering Materials.**

Rule 9(b) also imposes stringent particularity requirements for pleading falsity.[18]  This requires the ACCAC to plead not only the "who, what, when, where, and why" of its misrepresentation claim, but also particularized facts showing that the challenged statements were materially false and misleading when made.[19]  Even the Rule 8 standard prohibits Plaintiffs from relying on conclusory allegations and requires well-pleaded facts sufficient to support a plausible conclusion that the Registration Statement included a material misstatement or

---

plaintiffs' allegations must be commensurately stronger."); *see also In re Alstom SA*, 406 F. Supp. 2d 433, 449 (S.D.N.Y. 2005) (recognizing different standard for pleading scienter against "corporate insider, with direct involvement in day-to-day affairs" versus third-party advisors).

[16] *Gabriel Capital, L.P. v. Natwest Finance, Inc.*, 137 F. Supp. 2d 251, 263–64 (S.D.N.Y. 1999); *see also Rothman v. Gregor*, 220 F.3d 81, 98 (2d Cir. 2000) (scienter allegations against accountant must "approximate an actual intent to aid in the fraud being perpetrated by the audited company"); *In re WRT Energy Sec. Litig.*, 1999 WL 178749, at *9.

[17] *See, e.g., In re ECOtality, Inc. Sec. Litig.*, No. 13-03791-SC, 2014 WL 4634280, at *13 (N.D. Cal. Sept. 16, 2014) (dismissing Section 11 claim sounding in fraud because "Plaintiffs explicitly decline to allege that Defendants had fraudulent intent with respect to the registration statement").

[18] *See Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004) (affirming dismissal of complaint sounding in fraud because it did not "state with particularity the specific facts in support of [plaintiffs'] belief that [defendants'] statements were false when made," as Rule 9(b) requires) (alterations in original).

[19] *See Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993) (under Rule 9(b), "complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent").

omission.[20]  Under either standard, the ACCAC fails to state a Section 11 claim that the

Registration Statement's daily average user figures or deferred revenue results were materially

false.[21]  As the iQIYI Brief explains:

- *Daily Average Users*:  the ACCAC fails to plead how the conflicting daily average user data from Questmobile and Aurora were calculated such that they provide an apples-to-apples comparison to the data iQIYI reported in the Registration Statement.  (*See* iQIYI Br. 9–10.)  Nor does the ACCAC provide any explanation for why Questmobile's and Aurora's calculations should be deemed more reliable than iQIYI's own data, especially when Questmobile's and Aurora's calculations differ materially *from each other*.  (*See id.* at 10–11.)  The ACCAC does not even allege what the "correct" DAUs actually were or the amount by which iQIYI allegedly overstated such figures.  (*See id.* at 11.)  The ACCAC therefore fails to plead that iQIYI's daily average user numbers were false.  (*See id.*)

- *Deferred Revenues*:  the ACCAC's allegations concerning iQIYI's deferred revenues are similarly defective because (i) they rest on alleged "credit reports" ostensibly "based on" iQIYI's Chinese tax filings, yet the ACCAC provides no detail concerning these alleged credit reports (such as who authored them, when they were prepared, what methodology was used to calculate deferred revenues, or other key information); and (ii) the ACCAC fails to plead sufficient facts concerning the underlying tax filings, such as which iQIYI VIEs' filings were used and what accounting standards applied, and Plaintiffs do not even allege that they have seen the underlying tax filings.  (*See id.* at 12–13.)

The only other Registration Statement disclosure that Plaintiffs challenge is that iQIYI

had "a massive and highly engaged user base, which drives [its] revenue growth."  (ACCAC ¶

318.)  This statement does not support a Section 11 claim for two reasons.  First, a generalized

expression of corporate optimism or "puffery" is not actionable under the federal securities laws.

(*See* iQIYI Br. 11.)  Second, the ACCAC nowhere alleges that iQIYI's user base was not in fact

---

[20] *See Scott v. GM Co.*, 46 F. Supp. 3d 387, 394 (S.D.N.Y. 2014) (holding that complaint "fail[ed] to meet the plausibility standard" of Rule 8 because plaintiff alleged "in a conclusory fashion" "no facts that, if true, would demonstrate that the Registration Statement contained a material misstatement or omission").

[21] *See In re A–Power Energy Generation Sys. Ltd. Sec. Litig.*, No. 11–MDL–2302, 2012 WL 1983341, at *12 (C.D. Cal. May 31, 2012) (noting that plaintiff's failure to show that defendants were responsible for making allegedly false statements is "arguably impermissible even under Rule 8"); *In re Shoretel Inc., Sec. Litig.*, No. C 08-00271 CRB, 2009 WL 248326, at *4 (N.D. Cal. Feb. 2, 2009) (dismissing claims under Rule 8 where plaintiffs "fail[ed] to articulate how the statement in the Registration Statement … was false").

"massive" or "highly engaged."  To the contrary, even under Aurora's alleged calculations, iQIYI's daily average users numbered nearly 90 million users.  (ACCAC ¶ 131.)  This is massive by any measure (indeed, it is nearly one-third the population of the United States) and reflects a user base that frequently enjoyed iQIYI's offerings.[22]

## C.   The Absence of Loss Causation Is Apparent on the Face of the ACCAC.

As the iQIYI Brief explains, Plaintiffs' Section 11 claim independently fails for lack of causation.  (*See* iQIYI Br. at 25.)  Courts dismiss Securities Act claims at the pleading stage if "it is apparent on the face of the complaint that the alleged loss is not causally connected to the misrepresentations at issue."[23]  Here, the ACCAC alleges that an April 7, 2020 report by short-seller Wolfpack Research first told investors that iQIYI's DAUs and deferred revenues reported in the Registration Statement were overstated.  (ACCAC ¶ 88.)  But iQIYI's ADS price increased $0.54 (3.22%) that day, making it apparent on the face of the complaint that these alleged misstatements cannot be the cause of any alleged loss.  (iQIYI Br. at 22.)

## CONCLUSION

Plaintiffs have no cognizable damages under Section 11, the sole predicate for their claim against the Underwriters, and thus lack standing to pursue that claim.  But even if Plaintiffs had standing, their claim against the Underwriter Defendants would nevertheless fail because it does not plead scienter or that the Registration Statement included a materially false statement.  The ACCAC should be dismissed with prejudice as to the Underwriter Defendants.

---

[22] *See Garber v. Legg Mason, Inc.*, 537 F. Supp. 2d 597, 613 (S.D.N.Y. 2008) (finding allegations that offered no explanation of how defendant "experienced a dramatic increase" in expenses "simply too conclusory, as they offer no possibility at all of assessing materiality as a matter of law").

[23] *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 588 (S.D.N.Y. 2011).

Dated:  July 16, 2021                                     Respectfully submitted,

                                                          _/s/ Jonathan Rosenberg_____
                                                          Jonathan Rosenberg
                                                          William J. Sushon
                                                          O'MELVENY & MYERS LLP
                                                          7 Times Square
                                                          New York, New York 10036
                                                          (212) 326-2000
                                                          jrosenberg@omm.com
                                                          wsushon@omm.com

                                                          *Attorneys for Underwriter Defendants*

- 11 -