UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

IN RE iQIYI, INC. SECURITIES LITIGATION

       :   20-cv-01830 (DG) (TAM)

       :   **ECF CASE**
       :   **Electronically Filed**
       :
       :   **Oral Argument Requested**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE iQIYI DEFENDANTS' MOTION TO DISMISS THE AMENDED CONSOLIDATED CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000

*Attorneys for Defendants iQIYI,
Inc., Baidu, Inc., Yu Gong,
Xiaodong Wang, Robin Yanhong
Li, Qi Lu, Herman Yu, Victor
Zhixiang Liang, Xuyang Ren,
Chuan Wang, and Giselle Manon*

Served on: September 29, 2021

**TABLE OF CONTENTS**

<u>Page</u>

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT..........................................................................................................................2

I.      PLAINTIFFS' EXCHANGE ACT CLAIMS SHOULD BE DISMISSED ......................2

         A.      Plaintiffs Fail To Allege any Misrepresentation.....................................................2

               1.      Plaintiffs Fail To Allege iQIYI's Daily Active Users Were Overstated .....2

               2.      Plaintiffs Fail To Allege iQIYI's Deferred Revenues Were Overstated .....4

               3.      Plaintiffs Fail To Allege Membership Revenues Were Misstated.............5

               4.      Plaintiffs Fail To Allege a Misstatement Regarding Xin'ai Sports ............7

         B.      Plaintiffs Fail To Allege a Strong Inference of Scienter.......................................8

         C.      Plaintiffs Fail To Allege Loss Causation ..............................................................9

II.     PLAINTIFFS HAVE NOT SUFFERED ANY SECURITIES ACT DAMAGES ...........10

CONCLUSION....................................................................................................................10

# TABLE OF AUTHORITIES

Page(s)

*In re A-Power Energy Generation Systems Ltd. Securities Litigation*,
No. MDL 11–2302–GW(CWx), 2012 WL 1983341 (C.D. Cal. May 31, 2012) ............2, 4

*In re Advanced Battery Technologies, Inc. Securities Litigation*,
No. 11 CIV. 2279, 2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012) ....................................4

*In re AmTrust Financial Services, Inc. Securities Litigation*,
No. 17-CV-1545 (LAK), 2019 WL 4257110 (S.D.N.Y. Sept. 9, 2019) ...........................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...........................................................................................5, 6, 7

*In re Avon Securities Litigation*,
No. 19 CIV. 01420 (CM), 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) ........................9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......................................................................................................6

*In re BofI Holding, Inc. Securities Litigation*,
977 F.3d 781 (9th Cir. 2020), *petition for cert. docketed,* No. 20-1364 (U.S. Oct. 8, 2020)
..............................................................................................................................2

*Chapman v. Mueller Water Products, Inc.*,
466 F. Supp. 3d 382 (S.D.N.Y. 2020) ............................................................................8

*In re China Education Alliance, Inc. Securities Litigation*,
No. CV 10-9239 CAS (JCx), 2011 WL 4978483 (C.D. Cal. Oct. 11, 2011) ....................2

*In re China Mobile Games & Entertainment Group, Ltd. Securities Litigation*,
No. 14-CV-4471, 2016 WL 922711 (S.D.N.Y. Mar. 7, 2016) .........................................8

*In re China XD Plastics Company Limited Securities Litigation*,
No. 14-CV-05308 (GBD), 2016 WL 1241522 (S.D.N.Y. Mar. 23, 2016)....................5, 8

*Cortec Industries, Inc. v. Sum Holding L.P.*,
949 F.2d 42 (2d Cir. 1991)..............................................................................................8

*Dean v. China Agritech, Inc.*,
No. CV 11-01331, 2011 WL 5148598 (C.D. Cal. Oct. 27, 2011) ...................................4

*In re Elan Corp. Securities Litigation*,
543 F. Supp. 2d 187 (S.D.N.Y. 2008) ............................................................................2

*Fadem v. Ford Motor Co.*,
352 F. Supp. 2d 501 (S.D.N.Y. 2005), *aff'd*, 157 F. App'x 398 (2d Cir. 2005)............8, 9

ii

*In re Flag Telecom Holdings, Ltd. Securities Litigation*,
    308 F. Supp. 2d 249 (S.D.N.Y. 2004) ...................................................................................3

*Freudenberg v. E\*Trade Financial Corp.*,
    712 F. Supp. 2d 171 (S.D.N.Y. 2010) ...................................................................................9

*Harris v. AmTrust Financial Services, Inc.*,
    649 F. App'x 7 (2d Cir. 2016)........................................................................................4, 8

*Ho v. Duoyuan Global Water, Inc.*,
    887 F. Supp. 2d 547 (S.D.N.Y. 2012) ...................................................................................2

*Lea v. TAL Education Group*,
    837 F. App'x 20 (2d Cir. 2020)............................................................................................10

*In re Lions Gate Entertainment Corp. Securities Litigation*,
    165 F. Supp. 3d 1 (S.D.N.Y. 2016) ......................................................................................9

*Lucas v. Icahn*,
    616 F. App'x 448 (2d Cir. 2015)..........................................................................................8

*Maverick Fund, L.D.C. v. Comverse Technology, Inc.*,
    801 F. Supp. 2d 41 (E.D.N.Y. 2011) ..................................................................................10

*Menaldi v. Och-Ziff Capital Management Group LLC*,
    164 F. Supp. 3d 568 (S.D.N.Y. 2016) ...................................................................................9

*Miao v. Fanhua, Inc.*,
    442 F. Supp. 3d 774 (S.D.N.Y. 2020) ...................................................................................2

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Group, PLC*,
    709 F.3d 109 (2d Cir. 2013)..................................................................................................6

*Pierce v. Morris*,
    Nos. 4:03-CV-026-Y, et al., 2006 WL 2370343 (N.D. Tex. Aug. 16, 2006) ...................10

*In re Rockwell Medical, Inc. Securities Litigation*,
    No. 16 Civ. 1691 (RJS), 2018 WL 1725553 (S.D.N.Y. Mar. 30, 2018) ............................9

*In re UBS AG Securities Litigation*,
    No. 07 CIV. 11225 RJS, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom.*
    *City of Pontiac Policemen's and Firemen's Retirement System v. UBS AG,* 752 F.3d 173
    (2d Cir. 2014) .................................................................................................................4, 7

*Zhong Zheng v. Pingtan Marine Enterprise Ltd.*,
    379 F. Supp. 3d 164 (E.D.N.Y. 2019) ................................................................................10

The iQIYI Defendants[1] respectfully submit this reply memorandum of law in further support of their motion to dismiss Plaintiffs' Amended Consolidated Class Action Complaint.

## PRELIMINARY STATEMENT

Doubling down on their blind reliance on an admittedly biased short-seller report, Plaintiffs' Opposition fails to rebut their multiple independent pleading failures and confirms the Complaint should be dismissed in its entirety with prejudice.

First, all of Plaintiffs' claims should be dismissed for failure to plead falsity. The Opposition has no answer to the reliability and apples-to-oranges comparison issues that foreclose Plaintiffs' Daily Active Users ("DAUs") and deferred revenue claims. Plaintiffs' disregard of "obvious alternative explanations" and their failure to plead non-conclusory allegations defeat their membership services revenue claim and their Xin'ai Sports transaction claims.

Second, Plaintiffs' Exchange Act claims should be dismissed for failure to plead scienter, as they do not allege that Defendants were in possession of information contradicting their public statements.

Third, Plaintiffs' claims fail for lack of causation. Quite simply, iQIYI's ADS price *increased* after the Wolfpack Report was released. iQIYI's subsequent disclosure of SEC and NASDAQ investigations revealed no new information and was not a "corrective disclosure."

Fourth, Plaintiffs have no Section 11 claims. The Opposition confirms that the date of the first-filed complaint is the relevant date for calculating statutory damages. Because iQIYI's ADS price exceeded its IPO price on that date, there can be no statutory damages.

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the Memorandum of Law in Support of the iQIYI Defendants' Motion to Dismiss ("Opening Brief" or "Br."). "Opposition" or "Opp." refers to Lead Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss. "Pls.' Appendix" and "Pls.' Ex." refers to the appendix and exhibits attached to the Opposition. All citations and internal quotations marks are omitted, and all emphases in quotations are added, unless otherwise indicated.

## ARGUMENT

### I.    PLAINTIFFS' EXCHANGE ACT CLAIMS SHOULD BE DISMISSED

#### A.    Plaintiffs Fail To Allege any Misrepresentation

The Opposition does not dispute that the bulk of the Complaint is copied from the Wolfpack Report, devoid of well-pled allegations documenting Plaintiffs' or counsel's efforts to corroborate the short seller's claims.[2]  (Opp. at 7; *see* Br. at 9.)  Such complaints have been held to raise "reliability concerns" that call for "a particular need for close scrutiny."  *Miao v. Fanhua, Inc.*, 442 F. Supp. 3d 774, 801 (S.D.N.Y. 2020).  Contrary to the Opposition's mischaracterization, these "reliability concerns" are not "factual disputes."[3]  (Opp. at 7; *see id.* at 8, 11, 12, 14.)  The PSLRA requires that plaintiffs plead "the reliability of the[ir] sources" in their Complaint—a threshold requirement designed to weed out complaints, like the one here, that do not pass muster at the pleading stage.  *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 207 (S.D.N.Y. 2008).

##### 1.    Plaintiffs Fail To Allege iQIYI's Daily Active Users Were Overstated

Absent ***common measurements***, no comparison with other sources can show that a company's reported metrics were false.  *See In re A-Power Energy Generation Sys. Ltd. Sec. Litig.*, No. MDL 11-2302-GW(CWx), 2012 WL 1983341, at *8 (C.D. Cal. May 31, 2012).  (Br. at 10.)  Here, the Complaint makes no attempt to show that QuestMobile, Aurora, and iQIYI calculated

---

[2]    Plaintiffs' claim that Defendants "concede the falsity" of the denials of the Wolfpack Report (Opp. at 7 n.3) is contradicted by the Opposition (*id.* at 23) and is plainly false (Br. at 22).

[3]    The observation in *In re China Education Alliance, Inc. Securities Litigation*, No. CV 10-9239 CAS (JCx), 2011 WL 4978483, at *5 (C.D. Cal. Oct. 11, 2011), that the reliability of a short seller's report is "a question of fact" has been called into substantial question by the Ninth Circuit's holding in *In re BofI Holding, Inc. Securities Litigation*, 977 F.3d 781, 797 (9th Cir. 2020), *petition for cert. docketed*, No. 20-1364 (U.S. Oct. 8, 2020), that courts should treat short sellers' reports with a heavy dose of skepticism as short sellers have a "financial incentive to convince others to sell."  *In re BofI*, 977 F.3d at 797.  *Ho v. Duoyuan Global Water, Inc.* relies on the same questionable holding in *China Education*, and in any case, is inapposite, as it addressed a motion to *strike*.  887 F. Supp. 2d 547, 564 (S.D.N.Y. 2012).  (*See* Opp. at 7.)

2

DAUs the same way. Thus, nothing can be inferred from the fact that QuestMobile's and Auroa's estimates are both lower than the Company's reported DAUs. Plaintiffs also ignore that QuestMobile and Aurora themselves disclaim the accuracy of their estimates. (Br. at 10.)

Nonetheless, Plaintiffs argue that QuestMobile's estimates must have been correct and should be credited over the Company's data because iQIYI previously referred investors to QuestMobile. (Opp. at 8.) But as the Opposition itself shows, iQIYI cited QuestMobile's data only as corroboration for the market *trends* that the Company's data revealed (e.g., that iQIYI had the "fastest growing user base in 2018").[4] (*Id.* at 8 n.5.) iQIYI has never represented that QuestMobile's DAU numbers—as opposed to general trends—were precise enough to be relied on for anything else, much less that QuestMobile calculates DAUs the same way iQIYI does, or that third-party data is more accurate or reliable than iQIYI's. (*Id.*)[5]

Furthermore, contrary to Plaintiffs' assertion that QuestMobile and Aurora "precisely chart the *true amounts*" of iQIYI's DAUs (Opp. at 9), QuestMobile's and Aurora's DAU numbers differ significantly from *each other* (e.g., 86.1 million vs. 113 million for Q4 2017) (CAC ¶¶ 41–42). In fact, these differences dwarf the alleged difference between QuestMobile's and the Company's DAU figures (e.g., 113 million vs. 126 million for Q4 2017). (*Id.* ¶ 41.) The contradictory nature of Plaintiffs' allegations alone warrants dismissal.

---

[4] In addition to being inactionable puffery, iQIYI's statement that it has a "massive and highly engaged user base" (CAC ¶ 124) cannot be the basis for a securities claim for the additional reason that the statement is, by Plaintiffs' own admission, factually true, as confirmed by the very QuestMobile data on which they rely (Opp. at 10 n.8; *see* Br. at 11 n.7; CAC ¶ 42).

[5] Despite Plaintiffs' claim that they "are not required to precisely quantify the amount by which" DAUs were overstated (Opp. at 10), their own cited cases hold that the failure to "specify . . . the approximate value" of challenged figures may render it "impossible to determine" falsity. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 308 F. Supp. 2d 249, 265 (S.D.N.Y. 2004).

### 2.    Plaintiffs Fail To Allege iQIYI's Deferred Revenues Were Overstated

Plaintiffs' deferred revenue claim has the same apples-and-oranges problem: they compare iQIYI's reported "***customer advances and*** deferred revenue" with deferred revenue alone derived from third-party sources. (Br. at 12.)  Even setting aside all of the other problems with Plaintiffs' sources (discussed *infra*), their failure to account for the impact of customer advances precludes any inference from the mere fact that Plaintiffs' deferred revenue estimate differs from iQIYI's reported ***customer advances and*** deferred revenue.  *See A-Power Energy*, 2012 WL 1983341, at *8.  The Opposition ignores this dispositive pleading defect.  *In re UBS AG Sec. Litig.*, No. 07 CIV. 11225 RJS, 2012 WL 4471265, at *18 n.18 (S.D.N.Y. Sept. 28, 2012), *aff'd sub nom. City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173 (2d Cir. 2014).

Moreover, in *Harris v. AmTrust Financial Services, Inc.*, 649 F. App'x 7 (2d Cir. 2016), the Second Circuit expressed serious skepticism of whether, as a matter of law, plaintiffs can allege falsity by showing "that the aggregate . . . of an issuer's individual subsidiaries' financial statements filed with [PRC] regulators materially differed from the consolidated [financials] reported to the SEC."  *Id.* at 10 n.3.  Instead of grappling with *Harris*, Plaintiffs cite authorities that "are inapposite because, unlike [*Harris*]"—and this case—those cases "involve allegations that a *single legal entity* had reported materially different results in different jurisdictions."  *Id.*[6]

But even assuming, notwithstanding *Harris*, that Plaintiffs could adequately allege falsity by aggregating the filings of iQIYI's VIEs, Plaintiffs must at least "separately identify" the VIEs that reported financials to the foreign authority and "separately present the relevant financial data for any subsidiary so an accurate aggregate comparison can be made to [the] SEC filings."  *In re*

---

[6]    *See In re Advanced Battery Techs., Inc. Sec. Litig.*, No. 11 CIV. 2279, 2012 WL 3758085, at *10 (S.D.N.Y. Aug. 29, 2012) (comparing one entity's SAIC and SEC filings); *Dean v. China Agritech, Inc.*, No. CV 11-01331, 2011 WL 5148598, at *2 (C.D. Cal. Oct. 27, 2011) (same).

4

*China XD Plastics Co. Sec. Litig.*, No. 14-CV-05308 (GBD), 2016 WL 1241522, at \*5 (S.D.N.Y. Mar. 23, 2016).   Plaintiffs did not do so.   Their incantation that "GAAP required iQIYI to consolidate its VIEs" in its SEC filings (Opp. at 14) misses the point, as it is not the case (and Plaintiffs do not argue) that every iQIYI VIE has to file financial results with Chinese authorities. Absent well-pled allegations that the VIEs that reported their financials to the Chinese authorities were ***exactly*** the same ones that contributed to iQIYI's consolidated financials in its SEC filings, "an accurate aggregate comparison" cannot be made.   *China XD*, 2016 WL 1241522, at \*5.

Moreover, Plaintiffs do not even purport to base their comparison on actual filings with the Chinese authorities.   Instead, Plaintiffs' allegations are based on third-party ***credit reports***.   (Opp. at 10; CAC ¶ 59.)   Plaintiffs' failure to explain how the credit reports extracted information, and what effort, if any, Plaintiffs took to confirm the integrity of the extraction process and to corroborate the accuracy of the information raises serious reliability concerns about the sources of data that are key to Plaintiffs' comparison exercise.[7]

### 3. Plaintiffs Fail To Allege Membership Revenues Were Misstated

Plaintiffs cannot dispute that some or all of what they themselves call "innocent explanation[s]" (CAC ¶ 57) can account for the alleged divergence between membership revenue and deferred revenue in Q4 2018 and Q1 2019 (Br. at 14–15).   Nonetheless, Plaintiffs ask this Court to "disregard[]" these innocent alternative explanations "at this stage."   (Opp. at 15.)   But "[w]here a complaint pleads facts that are ***merely consistent*** with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   On a motion to dismiss, Defendants do not have to definitively "explain

---

[7]   Tellingly, despite improperly submitting a slew of documents with their Opposition that are not referenced in the Complaint, Plaintiffs still have not provided these alleged credit reports.

5

what caused the divergence." (Opp. at 14.) *See Iqbal*, 556 U.S. at 680 (dismissing claim "*more likely* explained by[] lawful" conduct).[8]

Here, the divergence between deferred revenue and membership revenue is "just as much," if not more, "in line with a wide swath of rational and competitive business" realities as with any vague inference of fraud. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007). The Opening Brief illustrates how differences in timing and price could cause such a divergence.[9] (Br. at 14–15.) Another variation of that example (*see* Appendix II) shows how the divergence could occur even if "average subscription lengths increased" during the relevant periods (Opp. at 15). Plaintiffs also do not deny (*see* Br. at 15), and thus implicitly concede, that the divergence could be explained by a significant drop in virtual currency or increase in on-demand purchases (CAC ¶¶ 44–45). In short, there are a multitude of obvious, innocuous explanations for the divergence that Plaintiffs have chosen to ignore, even after these alternative explanations have been brought to Plaintiffs' attention. "Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Moreover, the mere noncorrelation between two metrics does not show which one is correct. Plaintiffs acknowledge they have taken inconsistent positions, claiming at one point that membership services revenue was inflated, as evidenced by lagging deferred revenue numbers, but asserting elsewhere that iQIYI's deferred revenue figures are inaccurate. (CAC ¶¶ 53, 59.) Yet they insist iQIYI allegedly inflated the two metrics "at different times." (Opp. at 16.) Putting

---

[8]  Even Plaintiffs' cases acknowledge that dismissal is warranted if "at least one . . . competing inference[] rises to the level of an 'obvious alternative explanation.'" *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 121 (2d Cir. 2013).

[9]  Plaintiffs' attempt to disprove Defendants' example fails. (Opp. at 15.) Appendix I illustrates how the impact of different membership *types* (annual, quarterly, monthly) could cause the same trend shown in the Opening Brief—wherein deferred revenues decrease as membership revenues increase (Br. at 15)—even assuming "members join every month" (Opp. at 15).

6

aside this blatant cherry-picking, this response fails to explain why iQIYI allegedly benefited from the inflation of one metric at one point, but not another, and fails to allege any particularized facts to show what the "correct" metric should have been at the relevant times and by how much the reported metric was inflated over the "correct" amounts.

### 4.    Plaintiffs Fail To Allege a Misstatement Regarding Xin'ai Sports

To plead falsity for iQIYI's Xin'ai transaction accounting, "plaintiffs must plead first that an ASC topic or section of a particular topic objectively was the only correct guidance to apply." *In re AmTrust Fin. Servs., Inc. Sec. Litig.*, No. 17-CV-1545 (LAK), 2019 WL 4257110, at *16 (S.D.N.Y. Sept. 9, 2019). (Br. at 17.)  Plaintiffs fail to do so, relying instead on naked assertions that "GAAP still does not permit iQIYI's accounting treatment" and there is "no acceptable alternative." (Opp. at 18.)  But such "[t]hreadbare recitals" should be disregarded.[10] *Iqbal*, 556 U.S. at 678; *see In re AmTrust*, 2019 WL 4257110, at *16.  Plaintiffs reiterate that "iQIYI should have recorded its future obligations to Xin'ai as a liability—not as deferred revenue." (Opp. at 17; *see also id.* at 6, 18.)  But deferred revenue *is* a liability. (Ex. C at F-4.)

The Opposition also contends that "iQIYI never promised to provide . . . future goods and services to Xin'ai Sports" because the PRC financial statements for Wuhan DDMC (iQIYI's partner in the venture) allegedly do not reflect such a promise. (Opp. at 16–17.)  This argument fails for four reasons.  First, because iQIYI's disclosure did not break out the cash and noncash

---

[10]  Plaintiffs argue iQIYI's application of ASC 606 was false because it "did not 'transfer control of a distinct nonfinancial asset,'" but "only made a promise to do so at some future date." (Opp. at 19.)  Even accepting *arguendo* Plaintiffs' reading of accounting standards, their claim is belied by the Complaint, which states that iQIYI's 2018 Annual Report "disclose[d] revenue from content licensed to an equity investee," showing that some nonfinancial assets had been transferred by the date of its disclosure. (CAC ¶ 84.)  Plaintiffs also "conceded . . . by silence" that the application of ASC 606 was proper because Xin'ai meets the definition of a customer, and that iQIYI did in fact report costs of revenues. *UBS AG*, 2012 WL 4471265, at *18 n.18. (Br. at 18–19 n.12–13.)

components of the investment, iQIYI could not have misstated them.  (Br. at 18 n.11.)  Second, courts are rightly skeptical of attempts to establish falsity by comparing the filings of *different* entities.  *Harris*, 649 F. App'x at 10 n.3.  (*See supra* § I.A.2.)  Third, Plaintiffs fail to allege any basis to conclude that Wuhan DDMC's PRC financials *should have* included such information, as Wuhan DDMC was not to provide or receive any of the goods and services at issue.  *See China XD*, 2016 WL 1241522, at *5.  In any event, Wuhan DDMC's Shanghai Stock Exchange filing on August 8, 2018—a document of which this Court may take judicial notice[11]— states that "iQiyi will provide support to Xin'ai Sports in terms of traffic and advertising," i.e., the very noncash consideration that Plaintiffs claim iQIYI fabricated.  (Ex. S at 2.)  Fourth, Plaintiffs' "failure to attach or even reference comparable data" from the documents is an "independent pleading failure," as it is "virtually impossible" to ascertain the purpose of the documents or whether they include complete information on the transaction.  *China XD*, 2016 WL 1241522, at *5 n.12.

## B.      Plaintiffs Fail To Allege a Strong Inference of Scienter

The Opposition rightly abandons Plaintiffs' theory that Defendants Li and Baidu's desire to improve iQIYI's profitability constitutes motive to commit securities fraud.  *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 406 n.7 (S.D.N.Y. 2020).  (CAC ¶¶ 190–91.)[12]

---

[11]   *See Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (defendants may produce documents "integral to the complaint" and "public disclosure documents" of which a "plaintiff has been put on notice").  Defendants attach hereto as Exs. R and S the August 7, 2018 document filed with the Shanghai Stock Exchange referenced in the Complaint (CAC ¶ 85), and a related filing on the same topic on the very next day.

[12]   Plaintiffs' new claim that iQIYI "had a motive to mischaracterize the Xin'ai transaction" to mask their membership revenue fraud also fails.  (Opp. at 24 n.22.)  Plaintiffs "cannot amend their pleadings through issues raised solely in their briefs."  *Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005), *aff'd*, 157 F. App'x 398 (2d Cir. 2005).  And "conclusory language about a desire to conceal is insufficient to" allege scienter.  *In re China Mobile Games & Ent. Grp., Ltd. Sec. Litig.*, No. 14-CV-4471, 2016 WL 922711, at *7 (S.D.N.Y. Mar. 7, 2016).  That iQIYI "fully and accurately disclosed the mechanics of the" transaction is "flatly inconsistent with an intent to mislead."  *Lucas v. Icahn*, 616 F. App'x 448, 450 (2d Cir. 2015).

Plaintiffs also fail to establish recklessness.  Plaintiffs' cases confirm that core operations and SOX certification allegations only suffice when coupled with allegations "that Defendants were aware of or had access to information contrary to their public statements." *Freudenberg v. E\*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 201 (S.D.N.Y. 2010); *see In re Avon Sec. Litig.*, No. 19 CIV. 01420 (CM), 2019 WL 6115349, at \*21 (S.D.N.Y. Nov. 18, 2019) (Defendant made "SOX certifications even after receiving reports" of contradictory information).  Plaintiffs do not allege any contradictory information here.[13]  (Br. at 21.)  Similarly, Plaintiffs' cases confirm that iQIYI had no independent duty to disclose the investigation.[14]  *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 582–84 (S.D.N.Y. 2016) (no duty to disclose uncharged wrongdoing, except where plaintiff *affirmatively* denied it "was not facing an investigation . . . when, in fact, it was").  Absent such a duty, iQIYI's decision to wait to disclose the investigations cannot support recklessness.  *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 24 (S.D.N.Y. 2016).[15]

### C.    Plaintiffs Fail To Allege Loss Causation

Unable to deny that iQIYI's ADS price *increased* following the 10:35 a.m. release of the Wolfpack Report and continued to increase for six of the next seven trading days (CAC ¶ 6; Ex. B at 12), Plaintiffs ask this Court to focus on iQIYI's ADS price the day *after* the report's release (Opp. at 25).  None of Plaintiffs' cases supports this argument, as they involved an "immediate

---

[13]    Plaintiffs also fail to establish, as they must, that any of these metrics or the Xin'ai investment "constitute nearly all of [iQIYI's] business." *In re Rockwell Med., Inc. Sec. Litig.*, No. 16 Civ. 1691 (RJS), 2018 WL 1725553, at \*14 (S.D.N.Y. Mar. 30, 2018).

[14]    Plaintiffs' assertion that mere denial of the Wolfpack Report's allegations "prove[s] . . . scienter," if sufficient, would nullify the entire scienter requirement.  (Opp. at 22; Br. at 22.)

[15]    Plaintiffs' claim that scienter is supported because iQIYI never promised to provide services to Xin'ai (Opp. at 23–24), cannot be raised for the first time in the Opposition. *Fadem*, 352 F. Supp. 2d at 516.  Moreover, Plaintiffs fail to show iQIYI's promise was false.  (*Supra* § I.A.4.)

9

decline" that continued for two days. *Maverick Fund, L.D.C. v. Comverse Tech., Inc.*, 801 F. Supp. 2d 41, 54 (E.D.N.Y. 2011).  Their argument also contradicts their allegation that the market is "efficient" and "promptly digested current information regarding iQIYI." (CAC ¶¶ 169, 209.)[16]

Moreover, iQIYI's investigation announcement was not a corrective disclosure or a materialization of a concealed risk, as it did not reveal new information.  (Br. at 23.)  The Opposition admits the investigations were "directly related" to the Wolfpack Report.  (Opp. at 27.)

## II.  PLAINTIFFS HAVE NOT SUFFERED ANY SECURITIES ACT DAMAGES

Plaintiffs assert that "the only fact relevant to this statutory analysis" is when a Section 11 claim was first alleged.  (*Id.* at 28.)  Not so.  Where—as here—the complaints arise from the same set of events, the proper date is the filing of the first-filed complaint.[17]  Plaintiffs' approach encourages gamesmanship—i.e., to "delay filing Securities-Act claims until stock prices fall." *Pierce v. Morris*, Nos. 4:03-CV-026-Y, et al., 2006 WL 2370343, at *4 (N.D. Tex. Aug. 16, 2006). This argument also fails for the reasons demonstrated in the Underwriters' Reply Brief, which the iQIYI Defendants adopt in full and incorporate by reference.  (*See* UWs Reply at 1–5.)[18]

## CONCLUSION

For the foregoing reasons, the CAC should be dismissed in its entirety with prejudice.

---

[16]  Disclosures that repackage already-public information are not "corrective" even when they rely on "foreign sources." *Zhong Zheng v. Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 178 (E.D.N.Y. 2019).  Plaintiffs' cases all included non-public sources, such as "interviews of former employees." *Lea v. TAL Educ. Grp.*, 837 F. App'x 20, 28 (2d Cir. 2020).  Here, in contrast, Wolfpack relied on public filings and reports.  (Ex. H at 36; Opp. at 8.)

[17]  Plaintiffs' claim that the ADS price did not equal its "value" (Opp. at 30 n.29) is belied by the allegation that the market reflects all information "in iQIYI's securities price(s)" (CAC ¶ 209).

[18]  Plaintiffs' Securities Act claims also fail for lack of falsity and causation, for substantially the same reasons as their Exchange Act claims.  (*See supra* §§ I.A.1-2, I.C.)  Also, as explained in the Underwriters' Reply Brief, the Securities Act claims sound in fraud yet fail to satisfy Rule 9(b)'s pleading requirements.  (*See* UWs Reply at 5–7.)

Dated: New York, New York
     September 29, 2021

Respectfully submitted,


/s/ Robert A. Fumerton
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Attorneys for Defendants iQIYI, Inc.,
Baidu, Inc., Yu Gong, Xiaodong Wang,
Robin Yanhong Li, Qi Lu, Herman Yu,
Victor Zhixiang Liang, Xuyang Ren,
Chuan Wang, and Giselle Manon*