**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JEAN LEE, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> iQIYI, INC., YU GONG, XIAODONG WANG, BAIDU, INC., ROBIN YANHONG LI, QI LU, HERMAN YU, XUYANG REN, VICTOR ZHIXIANG LIANG, CHUAN WANG, GISELLE MANON, GOLDMAN SACHS (ASIA) LLC, CREDIT SUISSE SECURITIES (USA) LLC, MERRILL LYNCH, PIERCE, FENNER & SMITH, INCORPORATED, CHINA RENAISSANCE SECURITIES (HONG KONG) LIMITED, CITIGROUP GLOBAL MARKETS INC., and UBS SECURITIES LLC, <br><br> Defendants. | 20-cv-1830 (DG) (TAM) <br><br><br> **ECF Case** <br> **Electronically Filed** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF**
**THE UNDERWRITER DEFENDANTS' JOINDER IN THE iQIYI DEFENDANTS'**
**MOTION TO DISMISS**

September 29, 2021

O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
(212) 326-2000

*Attorneys for Defendants Goldman Sachs (Asia) LLC, Credit Suisse Securities (USA) LLC, Merrill Lynch, Pierce, Fenner & Smith, Incorporated, China Renaissance Securities (Hong Kong) Limited, Citigroup Global Markets Inc., and UBS Securities LLC (the "Underwriter Defendants")*

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................................... 1

ARGUMENT ............................................................................................................................... 1

    I.      PLAINTIFFS HAVE NO SECTION 11 DAMAGES. .......................................... 1

           A.      The Proper Date for Damages Is That of the First Suit Alleging That the "Registration Statement . . . Contained an Untrue Statement." ................................................................................................. 1

           B.      iQIYI's Value Exceeded the IPO Price on April 16, 2020, When the First Suit Alleging Misleading Statements in the Registration Statement Was Filed. ................................................................................. 4

    II.     THE ACCAC SOUNDS IN FRAUD. ................................................................... 5

    III.    THE ACCAC FAILS TO STATE A CLAIM. ...................................................... 7

           A.      Plaintiffs Implicitly Concede That the ACCAC Does Not Plead the Underwriters' Scienter. ............................................................................... 7

           B.      The ACCAC Fails to Plead a Materially False Statement in the Offering Materials. ................................................................................... 9

           C.      There Is No Loss Causation for the Section 11 Claim Because iQIYI's Trading Price Increased the Day After the Alleged Corrective Disclosure. ................................................................................. 9

CONCLUSION ........................................................................................................................... 10

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alpern v. UtiliCorp United, Inc.*,
   84 F.3d 1525 (8th Cir. 1996) ........................................................................................ 2, 3

*Arnold Chevrolet LLC v. Trib. Co.*,
   No. 04-CV-3097 DRH WDW, 2007 WL 2743490 (E.D.N.Y. Sept. 17, 2007) ........................ 9

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988)............................................................................................................ 4

*In re Broderbund/Learning Co. Sec. Litig.*,
   294 F.3d 1201 (9th Cir. 2002) ........................................................................................... 3

*Cai v. Switch, Inc.*,
   Case No. 2:18-CV-1471 JCM (VCF), 2020 WL 3893246 (D. Nev. July 10, 2020) ................. 5

*Caiafa v. Sea Containers Ltd.*,
   331 F. App'x 14 (2d Cir. 2009) .......................................................................................... 6

*Caiafa v. Sea Containers, Ltd.*,
   06 Civ. 2565 (RMB), 2008 WL 11516813 (S.D.N.Y. May 15, 2008) .................................... 8

*Central Laborers' Pension Fund v. SIRVA, Inc.*,
   No. 04 C 7644, 2006 WL 2787520 (N.D. Ill. Sept. 26, 2006)............................................. 3

*In re CINAR Corp. Sec. Litig.*,
   186 F. Supp. 2d 279 (E.D.N.Y. 2002) ............................................................................. 6, 7

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014) .............................................................................................. 9

*In re Corning*,
   No. 01-CV-6580-CJS, 2004 WL 1056063 (W.D.N.Y. Apr. 9, 2004) ...................................... 9

*Coronel v. Quanta Capital Holdings, Ltd.*,
   No. 07 Civ. 1405 (RPP), 2009 WL 174656 (S.D.N.Y Jan. 26, 2009)..................................... 8

*Cozzarelli v. Inspire Pharm. Inc.*,
   549 F.3d 618 (4th Cir. 2008) ............................................................................................. 6

*Felske v. Hirschmann*,
   No. 10 CIV. 8899 RMB, 2012 WL 716632 (S.D.N.Y. Mar. 1, 2012) ..................................... 7

*In re Fortune Systems Sec. Litigation*,
   680 F. Supp. 1360 (N.D. Cal. 1987)................................................................................... 4

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*,
268 F. Supp. 3d 526 (S.D.N.Y. 2017) ................................................................ 7

*In re J.P. Morgan Chase Sec. Litig.*,
363 F. Supp. 2d 595 (S.D.N.Y. 2005) ................................................................ 8

*Johnson v. NYFIX, Inc.*,
399 F. Supp. 2d 105 (D. Conn. 2005) ................................................................ 6

*In re Jumei Int'l Holding Ltd. Sec. Litig.*,
14cv9826, 2017 WL 95176 (S.D.N.Y. Jan. 10, 2017) ...................................... 7

*Levy v. Maggiore*,
48 F. Supp. 3d 428 (E.D.N.Y. 2014) ................................................................ 7

*In re Marsh & McLennan Cos. Sec. Litig.*,
501 F. Supp. 2d 452 (S.D.N.Y. 2006) ........................................................... 8, 9

*Maverick Fund, L.D.C. v. Comverse Tech., Inc.*,
801 F. Supp. 2d 41 (E.D.N.Y. 2011) .............................................................. 10

*Merzin v. Provident Fin. Gp., Inc.*,
2004 WL 5785782 (S.D. Ohio) ........................................................................ 4

*Merzin v. Provident Financial Group, Inc.*,
311 F. Supp. 2d 674 (S.D. Ohio 2004) ............................................................ 4

*Mussington v. St. Luke's-Roosevelt Hosp. Ctr.*,
824 F. Supp. 427 (S.D.N.Y. 1993) ................................................................... 3

*In re Mutual Funds Inv. Litig.*,
384 F. Supp. 2d 845 (D. Md. 2005) .................................................................. 2

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012) ............................................................................. 5

*In re NIO, Inc. Sec. Litig.*,
19-CV-1424 (NGG) (JRC), 2021 WL 3566300 (E.D.N.Y. Aug. 12, 2021) ......... 6, 7

*Pierce v. Morris*,
Nos. 95–1456, 95–2356, 2006 WL 2370343 (N.D. Tex. Aug. 16, 2006) ............ 2, 3

*Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*,
89 F. Supp. 3d 602 (S.D.N.Y. 2015) ............................................................... 10

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Popkin v. Nat'l Ben. Life Ins. Co.*,
711 F. Supp. 1194 (S.D.N.Y. 1989) ................................................................................. 3

*Rubke v. Capital Bancorp Ltd*,
551 F.3d 1156 (9th Cir. 2009) ....................................................................................... 6

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015) .............................................................................. 8

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
248 F. Supp. 3d 428 (S.D.N.Y. 2017) ........................................................................ 6, 7

*In re Snap Inc. Sec. Litig.*,
Case No. 2:17–cv–03679–SVW–AGR, 2018 WL 2972528 (C.D. Cal. June 7, 2018) .......... 4, 5

*Thompson v. Campbell*,
No. 9:09-CV-1379GLS/DRH, 2010 WL 2483290 (N.D.N.Y. June 4, 2010) ........................... 3

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016) ......................................................................................... 8

**Statutes**

15 U.S.C. § 77(k)(e)(1) .................................................................................................. 2

15 U.S.C. § 77k(a) ..................................................................................................... 1, 2

15 U.S.C. § 77k(e) ......................................................................................................... 5

## PRELIMINARY STATEMENT[1]

Plaintiffs' Opposition confirms that the ACCAC fails to plead a Section 11 claim:

- Plaintiffs have no Section 11 damages. They ignore the statutory language mandating that the date for measuring damages is when a complaint first alleged that "any part of the registration statement . . . contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). Here, that date is April 16, 2020, because that is when Plaintiffs first alleged that statements in iQIYI's IPO Registration Statement were fraudulent. Because iQIYI's trading price exceeded its IPO price on that date, there are no damages under Section 11(e).

- Plaintiffs fail to plead the Underwriters' scienter. While Plaintiffs contend that this action does not sound in fraud because the ACCAC separates its Section 10(b) and Section 11 claims, they do not address the ACCAC's textbook fraud allegations that the Underwriters "knew of" facts contrary to the Registration Statement's disclosures. And Plaintiffs' fallback argument that Rule 9(b) does not require them to plead scienter mischaracterizes the many cases holding that it does.

- Plaintiffs fail to plead the most fundamental element of a Section 11 claim—falsity.

- Plaintiffs cannot show loss causation. Plaintiffs argue that they can do so based on the iQIYI ADS price decline two days after the alleged corrective disclosure. But Plaintiffs do not dispute that the ADS price *increased* the day after the corrective disclosure, and they cite no case finding loss causation adequately pleaded in those circumstances.

## ARGUMENT

### I.    PLAINTIFFS HAVE NO SECTION 11 DAMAGES.

#### A.    The Proper Date for Damages Is That of the First Suit Alleging That the "Registration Statement . . . Contained an Untrue Statement."

Plaintiffs correctly concede that Section 11 damages are limited to "the difference between the amount paid for the security [not to exceed the IPO price] and the value thereof as of the time such suit was brought." 15 U.S.C. § 77(k)(e)(1) (quoted in Pls. Opp. 28). But Plaintiffs

---

[1] Unless otherwise specified, (i) all capitalized terms shall have the meanings ascribed to them in the Memorandum of Law in Support of the Underwriter Defendants' Joinder in the iQIYI Defendants' Motion to Dismiss ("Underwriters' Brief," cited herein as "UW Mem. __"); (ii) all emphasis is added; and (iii) all citations and quotations are omitted. "Opposition" shall mean Lead Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss, cited herein as "Pl. Mem. __."

erroneously contend that "such suit" in Section 11(e) refers to a suit asserting a "Section 11 claim." (Pls. Opp. 28.) This ignores Section 11's plain language.

"Such suit" in Section 11(e) refers to subsection (a),[2] which in turn describes an action alleging that "any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." 15 U.S.C. § 77k(a). The statute thus focuses on whether the suit challenged the registration statement's truthfulness, not whether it contained a Section 11 claim.[3] Here, the first suit alleging misrepresentations and omissions in the Registration Statement was the April 16, 2020 complaint. (*See* UW Mem. 3.)

Plaintiffs note that the Eighth Circuit in *Alpern* used the earlier filing date to salvage the Section 11 claim, whereas doing so here would result in dismissal. (Pls. Opp. 29 n.28.) But in finding that the later Section 11 claim shared a common factual nucleus with the earlier-filed Section 10(b) suit, and therefore related back to it under Rule 15, the court in *Alpern* relied on Rule 15's purpose "to permit cases to be decided on their merits."[4] Relation-back serves that purpose here by ensuring that a claim for which there is no damages—i.e., where an element of the claim is missing[5]—does not proceed. In contrast, *Central Laborers' Pension Fund v. SIRVA, Inc.*—the case Plaintiffs cite in arguing that Rule 15 should not be used to dismiss a case—

---

[2] *See* 15 U.S.C. § 77k(e)(1) ("The suit authorized under subsection (a) may be to recover such damages" as are authorized under Section 11(e).).

[3] *See Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525, 1543–44 (8th Cir. 1996) (holding that date of "such suit" was that of earlier-filed claim under Section 10(b) because later-filed Section 11 claim related back to earlier complaint); *Pierce v. Morris*, Nos. 95–1456, 95–2356, 2006 WL 2370343, at *4–5 (N.D. Tex. Aug. 16, 2006) (same).

[4] *Alpern*, 84 F.3d at 1543.

[5] *See In re Mutual Funds Inv. Litig.*, 384 F. Supp. 2d 845, 866 (D. Md. 2005) (noting that "the existence of recoverable damages is an element of a Section 11 claim").

focused not on Section 11(e), but on the statute of limitations,[6] which does not reach the claim's merits.[7]  The statute of limitations is not relevant here, and as *Alpern* recognized, courts have used the relation-back doctrine for many other purposes.[8]  Also unavailing is Plaintiffs' contention that the court in *Pierce v. Morris* was concerned with "the same plaintiff" filing both complaints (*see* Pls. Opp. 29 n. 28): The original complaint in that case was filed by Jim Pierce,[9] whereas the later-filing Section 11 plaintiff was Global Undervalued Securities Masterfund.[10]

The cases Plaintiffs cite are inapposite.  *In re Broderbund/Learning Co. Sec. Litig.* did not even consider when "such suit" was brought under Section 11(e), but rather whether the plaintiff disposed of his securities for more than the IPO price (he did, and his claim was dismissed for that reason).[11]  And *Merzin v. Provident Financial Group, Inc.* held that a Section 11 claim did not relate back to a complaint filed by a different plaintiff who did not purchase

---

[6] No. 04 C 7644, 2006 WL 2787520, at *10 (N.D. Ill. Sept. 26, 2006) (noting that relation-back in that case "would, in effect, shorten the statute of limitations on plaintiff's section 11 claims, not lengthen it, as Rule 15 contemplates.").

[7] *See Thompson v. Campbell*, No. 9:09-CV-1379GLS/DRH, 2010 WL 2483290, at *2 (N.D.N.Y. June 4, 2010) ("Accordingly, this action is hereby dismissed as time-barred. This dismissal is not an adjudication on the merits"); *Popkin v. Nat'l Ben. Life Ins. Co.*, 711 F. Supp. 1194, 1199 (S.D.N.Y. 1989) (Court "need not reach the merits of the claims dismissed as untimely"); *Mussington v. St. Luke's-Roosevelt Hosp. Ctr.*, 824 F. Supp. 427, 434 (S.D.N.Y. 1993), *aff'd,* 18 F.3d 1033 (2d Cir. 1994) ("Because the federal claims will be dismissed for lack of timeliness, the merits need not be decided at this time.").

[8] 84 F.3d at 1543 ("Although the relation back doctrine is typically applied with reference to statutes of limitations, courts have utilized the concept for other purposes.").

[9] *See Pierce*, 2006 WL 2370343, at * 1 ("On January 13, 2003, plaintiff Jim Pierce, on behalf of himself and others similarly situated, filed a complaint against AmeriCredit, Morris, Berce, and Barrington.").

[10] *See id.* at *10 ("Defendants argue that Plaintiffs lack standing to assert the first § 11 claim because the only plaintiff alleging damage for that claim—Global Undervalued Securities Masterfund ('Global')—did not actually suffer damage.").

[11] *See* 294 F.3d 1201, 1205 (9th Cir. 2002) ("In short, Wolfe's stock was 'disposed of in the market' at $33.45 per share, and he achieved a gain rather than a loss.").

-3-

securities pursuant to the registration statement.[12]  Here, there is no dispute that the original

plaintiff Lee purchased iQIYI stock issued under the IPO Registration Statement.

>    **B.    iQIYI's Value Exceeded the IPO Price on April 16, 2020, When the First Suit Alleging Misleading Statements in the Registration Statement Was Filed.**

Plaintiffs do not dispute that iQIYI's trading price on April 16, 2020 (and January 19,

2021) exceeded iQIYI's IPO price.  Instead, Plaintiffs argue in a footnote that, in some

circumstances, "value" under Section 11(e) "is not necessarily equal to price."[13]  But based on

Plaintiffs' own allegations in the ACCAC, this case does not involve the "unusual and rare"

circumstances warranting a finding that the stock's "true value" differed from its market value.[14]

Plaintiffs allege that "[t]he market for iQIYI common stock was open, well-developed,

and efficient *at all relevant times*." (ACCAC ¶ 169; *see also id.* ¶ 208(b) ("iQIYI securities are

traded in an efficient market.").)  As a result, "the market for iQIYI's securities promptly

digested current information regarding iQIYI from publicly available sources and reflected such

information in iQIYI's securities price(s)." (*Id.* ¶ 209.)[15]  But Plaintiffs allege no material

information concerning iQIYI's 2017 and 2018 daily average user metrics or deferred revenues

that was withheld from the market as of April 16, 2020.  To the contrary, the ACCAC (i) alleges

that the April 7, 2020 Wolfpack Research report revealed that these metrics were misstated (*id.* ¶

---

[12] 311 F. Supp. 2d 674, 686 (S.D. Ohio 2004) (declining to find subsequent Section 11 claim related back because "none of the Plaintiffs who filed suit prior to the [Section 11] Plaintiffs had standing to file a Section 11 claim"); *see also Merzin v. Provident Fin. Gp., Inc.*, 2004 WL 5785782 (S.D. Ohio) (defendants' reply memorandum, Section VI).

[13] Pl. Mem. 30 n.29 (quoting *In re Snap Inc. Sec. Litig.*, 2018 WL 2972528, at *8–9 (C.D. Cal. June 7, 2018)).

[14] *In re Fortune Systems Sec. Litigation*, 680 F. Supp. 1360, 1370 (N.D. Cal. 1987).

[15] *See Basic Inc. v. Levinson*, 485 U.S. 224, 241 (1988) (recognizing that a "fraud on the market theory is based on the hypothesis that … the price of a company's stock is determined by" publicly available material information).

85); and (ii) identifies no subsequent corrective disclosure concerning those metrics. The ACCAC thus lacks any plausible allegations that iQIYI's trading price on April 16, 2020 (or January 19, 2021) did not reflect its true value.[16]

Neither of the cases Plaintiffs cite compels a contrary result. *NECA-IBEW Health & Welfare Fund*, involved mortgage-backed securities that, unlike iQIYI's ADS, traded in an illiquid market and so had no actual market price.[17]  And *In re Snap* was wrongly decided. There, the court speculated that the "value" of Snap, Inc. stock *at its IPO* could have been lower than its IPO price.[18]  But Section 11(e) does not measure Section 11 damages based on the security's theoretical inherent value on the IPO date.  Rather, it uses "the difference between *the amount paid for the security* (not exceeding the *price* at which the security was offered to the public)" and "the value thereof *as of the time such suit was brought*." 15 U.S.C. § 77k(e).

## II.    THE ACCAC SOUNDS IN FRAUD.

As the Underwriters showed, the Section 11 claim sounds in fraud because (i) it rests on the same alleged misrepresentations as the Section 10(b) claim; and (ii) Plaintiffs alleged in their prior pleading that "[f]raud is the only plausible explanation" for the offering materials' alleged misstatements.  (*See* UW Mem. 5.)  Plaintiffs respond that they may base a Section 11 claim on the same misconduct as a Section 10(b) claim without Rule 9(b) applying.  (Pls. Mem. 32–33.)

---

[16] *Cai v. Switch, Inc.*, Case No. 2:18-CV-1471 JCM (VCF), 2020 WL 3893246, at *3 (D. Nev. July 10, 2020) (rejecting notion that "value" does not mean "market price" where plaintiffs failed to allege facts showing "unusual and rare situation").

[17] 693 F.3d 145, 167 (2d Cir. 2012) ("The value of a security is not unascertainable simply because it trades in an illiquid market and therefore has no 'actual market price.'").

[18] Case No. 2:17–cv–03679–SVW–AGR, 2018 WL 2972528, at *9 ("[I]f Plaintiffs could show that the stock's price at IPO should have been $7.00 because of the omissions and misrepresentations—instead of $10.00, those Plaintiffs would still have suffered $3.00 in damages because of the issues present in the S–1 disclosure.").

That is wrong; a securities complaint sounds in fraud, triggering Rule 9(b)'s fraud pleading requirements, when it "employs the exact same factual allegations to allege violations of Section 11 as it uses to allege fraudulent conduct under Section 10(b) of the Exchange Act."[19]

Plaintiffs never even acknowledge that they previously alleged that "fraud" is the "only explanation" for the allegedly misleading statements in the Registration Statement.  (*See* UW Mem. 5.)  And even after Plaintiffs excised that allegation—only after the Defendants brought it to the Court's attention—the ACCAC still includes knowing-falsity allegations against the Underwriters.  It alleges, for example, that as a result of the Underwriters' "due diligence" investigation—which allegedly included "virtually unlimited access" to "confidential, current corporate information concerning the Company's most up-to-date operational and financial results and prospects" and meetings with "iQIYI's lawyers, management and top executives" (ACCAC ¶ 313(c)–(d))— "the Underwriter Defendants *knew* of, or in the exercise of reasonable care should have known of, iQIYI's existing problems as detailed herein" (*see id.* ¶ 313(d).  This case therefore stands in sharp contrast to those Plaintiffs cite:

- *In re CINAR Corp. Sec. Litig.*:  the complaint did not sound in fraud as to defendants whose knowledge of and complicity in the alleged fraudulent activity was not pleaded.[20]

- *In re NIO, Inc. Sec. Litig.*:  Rule 9(b) did not apply because the complaint rested on "allegations [of] Defendants' failure to make 'a *reasonable* investigation' or possess

---

[19] *Rubke v. Capital Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009); *Caiafa v. Sea Containers Ltd.*, 331 F. App'x 14, 16 (2d Cir. 2009) (applying Rule 9(b) where "plaintiffs' Section 11 claim relies on the same factual allegations that served as a basis for their Section 10(b) claim"); *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008) (Rule 9(b) applies to Section 11 claim where "[t]he complaint also claims that the false statements in the prospectuses support plaintiffs' Exchange Act counts"); *Johnson v. NYFIX, Inc.*, 399 F. Supp. 2d 105, 122 (D. Conn. 2005) (Section 11 claim sounded in fraud where plaintiffs "include several allegations in this count that they later cite in support of their scienter arguments for the section 10(b) claim").

[20] 186 F. Supp. 2d 279, 308 (E.D.N.Y. 2002).

*reasonable* grounds for the facts presented to investors in the Registration Statement," not allegations that the defendants knew the statements were false.[21]

- *In re Jumei Int'l Holding Ltd. Sec. Litig.*: the complaint did not sound in fraud because the plaintiffs made it easy to distinguish between the fraud and non-fraud claims[22]; Plaintiffs here, however, have erased that distinction by alleging that the Underwriters had knowledge of the alleged misstatements.

Plaintiffs also fail to acknowledge that the ACCAC lumps together the Underwriters and the other Defendants without explaining who did what. (*See* UW Mem. 6.) The failure to differentiate among Defendants distinguishes this case from those Plaintiffs cite, in which "a fair reading of the [complaint] d[id] not reveal any allegations that could lead to an inference that the [Section 11] defendants were complicit in the fraud."[23]

## III.    THE ACCAC FAILS TO STATE A CLAIM.

### A.    Plaintiffs Implicitly Concede That the ACCAC Does Not Plead the Underwriters' Scienter.

Plaintiffs make no attempt to argue that the ACCAC satisfies Rule 9(b)'s pleading requirements against the Underwriters, and thus they have tacitly conceded the point.[24]  Instead,

---

[21] 19-CV-1424 (NGG) (JRC), 2021 WL 3566300, at *5 (E.D.N.Y. Aug. 12, 2021); *see Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 448 (S.D.N.Y. 2017) (complaint alleging only failure to "ma[k]e a reasonable investigation" or "possess[] reasonable grounds for believing that the statements contained in the registration statement were true" did not sound in fraud) (cited in Pls. Mem. 33).

[22] 14cv9826, 2017 WL 95176, at *3 (S.D.N.Y. Jan. 10, 2017) (noting that pleading made "it easy to distinguish" between fraud and non-fraud claims).

[23] *Fresno Cnty. Emps.' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 558 (S.D.N.Y. 2017); *see also In re CINAR Corp.*, 186 F. Supp. 2d at 308 (Rule 9(b) did not apply to defendants whose knowledge and complicity in the fraud was not pleaded); *In re NIO, Inc.*, 2021 WL 3566300, at *5 (Rule 9(b) did not apply where claim turned on failure to possess reasonable grounds for statements or to make a reasonable investigation); *Silvercreek Mgmt., Inc.*, 248 F. Supp. 3d at 448 (same); *In re Jumei Int'l Holding Ltd.*, 2017 WL 95176, at *3 (Rule 9(b) did not apply because it was "easy to distinguish" between fraud and non-fraud claims).

[24] *Levy v. Maggiore*, 48 F. Supp. 3d 428, 452 (E.D.N.Y. 2014) ("Plaintiff does not respond to this argument and the Court therefore construes Plaintiff's failure to respond as an abandonment of this claim.").

-7-

Plaintiffs argue that scienter pleading is *never* required for a Section 11 claim.  (Pls. Opp. 34–35.)  But that is wrong, as multiple cases the Underwriters cited show:

- In *Coronel v. Quanta Capital Holdings, Ltd.*, the complaint sounded in fraud because its allegations "infer[red] an intent to defraud" and therefore required that the complaint include "factual allegations that the defendants made materially false statements, *and that they did so with scienter*."[25]

- In *Caiafa v. Sea Containers, Ltd.*, the court held that "[t]he Section 11 Claim sounds in fraud and must (but does not here) satisfy the particularity requirements of Rule 9(b), *including*, as Plaintiffs acknowledge (Pl. Mem. at 24 n.18), *the requirement to plead with particularity a strong inference of scienter in connection with a material misrepresentation or omission*."[26]

- In *In re Marsh & McLennan Cos. Sec. Litig.*, the court found that "[b]ecause the heightened pleading requirements of Rule 9(b) apply, Plaintiffs must adequately plead that . . . the . . . Section 11 Defendants *were reckless*."[27]

- The court in *In re J.P. Morgan Chase Sec. Litig.* held that "the entire complaint sound[ed] in fraud," and dismissed the Section 11 claims because, among other things, "plaintiffs have failed to plead a strong inference of scienter properly."[28]

Plaintiffs bury in a footnote their contention that these cases "either do not discuss scienter in the Section 11 context or do not expressly state if scienter was required" (Pls. Opp. 35 n.35)—that is plainly wrong.  Equally wrong is Plaintiffs' unsupported suggestion that the Second Circuit has held that "scienter is never required under Section 11."  (*Id.*)  The Second Circuit in *In re Sanofi Sec. Litig.* only affirmed the trial court's ruling that the complaint failed to plead falsity,[29] not the trial court's dicta—without analysis—that Section 11 claims sounding in fraud do not require particularized scienter allegations.[30]  And in *City of Pontiac Policemen's &*

---

[25] No. 07 Civ. 1405 (RPP), 2009 WL 174656, at *15–16 (S.D.N.Y Jan. 26, 2009).

[26] 06 Civ. 2565 (RMB), 2008 WL 11516813, at *5 (S.D.N.Y. May 15, 2008).

[27] 501 F. Supp. 2d 452, 492 (S.D.N.Y. 2006).

[28] 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005).

[29] *See Tongue v. Sanofi,* 816 F.3d 199, 208 (2d Cir. 2016).

[30] 87 F. Supp. 3d 510, 528 n.8 (S.D.N.Y. 2015).

*Firemen's Ret. Sys.* the Second Circuit merely mentioned the uncontroversial principle that Section 11 claims that do *not* sound in fraud "need not allege scienter, reliance, or causation."[31]

Allowing Plaintiffs to tarnish the Underwriters by alleging that they "knew of" the alleged misrepresentations, without particularized allegations demonstrating that knowledge, would undermine a core Rule 9(b) purpose—protecting defendants' reputations from baseless fraud allegations.[32]  Because Plaintiffs indisputably have failed to plead the Underwriters' scienter, the Section 11 claim against them must be dismissed.  (*See* UW Mem. 7–8.)

**B.    The ACCAC Fails to Plead a Materially False Statement in the Offering Materials.**

The Underwriter Defendants adopt and incorporate by reference the iQIYI Defendants' reply arguments that the ACCAC fails to plead falsity.  (*See* iQIYI Defs' Reply at 2–8.)

**C.    There Is No Loss Causation for the Section 11 Claim Because iQIYI's Trading Price Increased the Day After the Alleged Corrective Disclosure.**

As the Underwriters showed, it is evident from the ACCAC and judicially-noticeable ADS trading prices that there is no loss causation for Plaintiffs' Section 11 claim.  (UW Mem. 10.)  Plaintiffs do not dispute that iQIYI's trading price *increased* on April 7, 2020, the day of the Wolfpack Report—the only alleged corrective disclosure that addressed information in the

---

[31] 752 F.3d 173, 182 (2d Cir. 2014).

[32] *See, e.g., In re Marsh & McLennan*, 501 F. Supp. 2d at 492 ("Allowing plaintiffs to allege fraud over nine-hundred paragraphs and then withdraw those claims for eight paragraphs in order to state a Section 11 claim eviscerates Rule 9(b)'s mandate to safeguard a defendant's reputation from improvident charges of wrongdoing."); *In re Corning*, No. 01-CV-6580-CJS, 2004 WL 1056063, at *9 (W.D.N.Y. Apr. 9, 2004) (recognizing that "[f]raud allegations may damage a defendant's reputation regardless of the cause of action in which they appear" in applying Rule 9(b) to Section 11 claim), *aff'd sub nom. In re Corning Inc. Sec. Litig.*, No. 04-2845-CV, 2005 WL 714352 (2d Cir. Mar. 30, 2005); *Arnold Chevrolet LLC v. Trib. Co.*, No. 04-CV-3097 DRH WDW, 2007 WL 2743490, at *4 (E.D.N.Y. Sept. 17, 2007) (recognizing in dismissing Section 11 claim that Rule 9(b)'s "heightened pleading requirement is designed to provide defendants with notice to enable preparation of their defense and protect defendants against harm to their reputation or goodwill").

Registration Statement.  Instead, Plaintiffs rely on the share-price decrease two days after the Wolfpack Report.  The problem for Plaintiffs, however, is that they cite no case—and the Underwriters are aware of none—in which a court concluded that loss causation could be shown where the price of the security increased on the trading day after the alleged corrective disclosure.  In *Maverick Fund, L.D.C. v. Comverse Tech., Inc.*, "the stock price declined immediately following" the alleged corrective disclosures,[33] and the court merely noted in passing a two-day price drop for one of nine separate alleged corrective disclosures.[34]  Similarly, in *Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*, the court discussed the total two-day price decline,[35] but the bulk of that decline happened the first day, when the company's stock price slid from $27.40 to $22.94 per share.  (*See* Sushon Reply Declaration, Ex. 1.)

Plaintiffs cannot rely on the August 13, 2020 press release to establish loss causation for their Section 11 claim (*See* Pls. Opp. 26–28), because the ACCAC does not allege that the release corrected anything in the Registration Statement.  Instead, the August 13, 2020 disclosure concerned only iQIYI's 1Q 2018 financial results, which have no bearing on the Registration Statement's 2015–17 DAU or deferred revenue figures challenged in the Securities Act claim, and acquisitions and investments that are likewise unrelated to the CAC's DAU and deferred revenue allegations.  (*See* ACCAC ¶ 159).

## CONCLUSION

The Section 11 claim against the Underwriters should be dismissed with prejudice.

---

[33] 801 F. Supp. 2d 41, 54 (E.D.N.Y. 2011).

[34] *Id.* at 49 (noting two-day price decline), 54 (listing eight separate corrective disclosures).

[35] 89 F. Supp. 3d 602, 621 (S.D.N.Y. 2015).

Dated:  September 29, 2021

Respectfully submitted,

/s/ Jonathan Rosenberg
Jonathan Rosenberg
William J. Sushon
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
(212) 326-2000
jrosenberg@omm.com
wsushon@omm.com

*Attorneys for Underwriter Defendants*