UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

IN RE iQIYI, INC. SECURITIES LITIGATION   :  20-cv-01830 (DG) (TAM)

                             :

                             :  **ECF CASE**

                             :

                             :  **Oral Argument Requested**

                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## JOINT MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE *iQIYI* ACTION FOR <u>FAILURE TO PLEAD SCIENTER, LOSS CAUSATION, AND STANDING</u>

| | |
|---|---|
| O'MELVENY & MYERS LLP<br>7 Times Square<br>New York, New York 10036<br>(212) 326-2000 | SKADDEN, ARPS, SLATE,<br>  MEAGHER & FLOM LLP<br>One Manhattan West<br>New York, New York 10001<br>(212) 735-3000 |
| *Attorneys for Defendants Goldman Sachs (Asia) LLC, Credit Suisse Securities (USA) LLC, Merrill Lynch, Pierce, Fenner & Smith, Incorporated, China Renaissance Securities (Hong Kong) Limited, Citigroup Global Markets Inc., and UBS Securities LLC (the "Underwriter Defendants")* | *Attorneys for Defendants iQIYI, Inc., Baidu, Inc., Yu Gong, Xiaodong Wang, Robin Yanhong Li, Qi Lu, Herman Yu, Victor Zhixiang Liang, and Giselle Manon* |

Served: November 30, 2022

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................1

ARGUMENT ....................................................................................................................3

I.    PLAINTIFFS' EXCHANGE ACT CLAIMS SHOULD BE DISMISSED ........................3

      A.    Plaintiffs Fail To Allege a Strong Inference of Scienter..........................3

            1.    Plaintiffs Fail To Allege Motive and Opportunity.....................4

            2.    Plaintiffs Fail To Allege Conscious Misbehavior or Recklessness .............4

      B.    Plaintiffs Fail To Allege Loss Causation .................................................6

II.   PLAINTIFFS' SECURITIES ACT CLAIMS SHOULD BE DISMISSED........................8

      A.    Plaintiffs' Failure to Plead Scienter Mandates Dismissal of the Securities Act Claims ................................................................................8

      B.    Plaintiffs Lack Standing Because They Have No Cognizable Damages...............11

      C.    The Absence of Loss Causation Is Apparent on the Face of the Complaint .........12

CONCLUSION....................................................................................................................12

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*In re Alcatel Sec. Litig.*,
    382 F. Supp. 2d 513 (S.D.N.Y. 2005)..................................................................9

*Alpern v. UtiliCorp United, Inc.*,
    84 F.3d 1525 (8th Cir. 1996) ......................................................................12

*ATSI Communications, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)..........................................................................4

*In re Barclays Bank PLC Securities Litigation*,
    No. 09 Civ. 1989 (PAC), 2016 WL 3235290 (S.D.N.Y. June 9, 2016) ............................11

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)..................................................................................7

*In re Bayou Hedge Fund Litigation*,
    534 F. Supp. 2d 405 (S.D.N.Y. 2007), *aff'd sub nom. S. Cherry St., LLC v.
    Hennessee Grp. LLC*, 573 F.3d 98 (2d Cir 2009)..................................................5

*Caiafa v. Sea Containers Ltd.*,
    331 F. App'x 14 (2d Cir. 2009) ....................................................................8

*Caiafa v. Sea Containers Ltd.*,
    06 Civ. 2565 (RMB), 2008 WL 115168135 (S.D.N.Y. May 15, 2008) ............................10

*In re Centerline Holding Co. Securities Litigation*,
    380 F. App'x 91 (2d. Cir. 2010) ..................................................................6

*Central States, Southeast & Southwest Areas Pension Fund v. Federal Home Loan
    Mortgage Corp.*,
    543 F. App'x 72 (2d Cir. 2013) ....................................................................7

*Chill v. General Electric Co.*,
    101 F.3d 263 (2d Cir. 1996)........................................................................4

*Coronel v. Quanta Capital Holdings Ltd.*,
    No. 07 Civ. 1405 (RPP), 2009 WL 174656, at (S.D.N.Y Jan. 26, 2009) ..........................10

*Cozzarelli v. Inspire Pharm. Inc.*,
    549 F.3d 618 (4th Cir. 2008) ......................................................................8

*In re Elan Corp. Securities Litigation*,
    No. 02-CIV-865 (RMB) (FM), 2004 WL 1305845 (S.D.N.Y. May 18, 2004).........6, 9, 10

*Ford v. Voxx International Corp.*,
  No. 14-CV-4183 (JS) (AYS), 2016 WL 3982466 (E.D.N.Y. July 22, 2016)......................3

*Geiger v. Solomon-Page Group, Ltd.*,
  933 F. Supp. 1180 (S.D.N.Y.1996).................................................................................10

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
  95 F. Supp. 2d 169 (S.D.N.Y. 2000).............................................................................10

*Hutchison v. Deutsche Bank Securities Inc.*,
  647 F.3d 479 (2d Cir. 2011)..........................................................................................12

*In re Initial Public Offering Securities Litigation*,
  241 F. Supp. 2d 281 (S.D.N.Y. 2003).............................................................................11

*Jackson v. Abernathy*,
  960 F.3d 94 (2d Cir. 2020)..............................................................................................5

*Janbay v. Canadian Solar, Inc.*,
  No. 10 Civ. 4430 (RWS), 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ......................7, 8

*Jiajia Luo v. Sogou, Inc.*,
  465 F. Supp. 3d 393 (S.D.N.Y. 2020)..............................................................................9

*Johnson v. NYFIX, Inc.*,
  399 F. Supp. 2d 105 (D. Conn. 2005)................................................................................8

*In re JPMorgan Chase Sec. Litig.*,
  363 F. Supp. 2d 595 (S.D.N.Y. 2005), *aff'd*, 553 F.3d 187 (2d Cir. 2009)..................9, 10

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001).............................................................................................4

*Lentell v. Merrill Lynch & Co.*,
  396 F.3d 161 (2d Cir. 2005)..............................................................................................7

*In re Lions Gate Ent. Corp. Securities Litigation*,
  165 F. Supp. 3d 1 (S.D.N.Y. 2016) ..................................................................................6

*In re Marsh & McLennan Cos. Sec. Litig.*,
  501 F. Supp. 2d 452 (S.D.N.Y. 2006)...........................................................................9, 10

*Meyer v. Greene*,
  710 F.3d 1189 (11th Cir. 2013) .......................................................................................8

*In re OSG Secs. Litig.*,
  971 F. Supp. 2d 387 (S.D.N.Y. 2013)..............................................................................9

*Pierce v. Morris*,
  No. 4:03-CV-026-Y, Nos. 4:03-CV-026 et seq., 2006 WL 2370343 (N.D. Tex. Aug. 16, 2006) ...........................................................................................................12

*Rombach v. Chang*,
  355 F.3d 164 (2d Cir. 2004).............................................................................................9

*Rubke v. Capital Bancorp Ltd*,
  551 F.3d 1156 (9th Cir. 2009) .........................................................................................8

*Sinay v. CNOOC Ltd.*,
  554 F. App'x 40 (2d Cir. 2014) .......................................................................................5

*Singh v. Cigna Corp.*,
  918 F.3d 57 (2d Cir. 2019)...............................................................................................3

*In re State Street Bank & Trust Co. Fixed Income Funds Investment Litigation*,
  774 F. Supp. 2d 584 (S.D.N.Y. 2011).............................................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)..........................................................................................................3

*In re Turquoise Hill Resources Ltd. Securities Litigation*,
  No. 13 Civ. 8846 (LGS), 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ..........................5

*Wexner v. First Manhattan*,
  902 F. 2d 169 (2d Cir. 1990)...........................................................................................10

*In re XP Inc. Securities Litigation*,
  No. 20-cv-1502, 2021 WL 861917 (E.D.N.Y. Mar. 8, 2021)............................................6

**STATUTES**

15 U.S.C. § 77k(e) ..............................................................................................................11

15 U.S.C. § 78u-4(b)(2) .........................................................................................................1

Defendants in the *iQIYI* Action ("Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the Amended Consolidated Class Action Complaint (ECF No. 104) ("*iQIYI* Complaint" or "*iQIYI* Compl.") for failure to plead scienter, loss causation and standing, pursuant to this Court's October 6, 2022 Order Granting the Parties' Coordinated Briefing Proposal, Rules 8(a), 9(b) and 12(b)(6) of the Federal Rules of Civil Procedure and Section 101(b) of the Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)(2) (the "PSLRA").[1]

## PRELIMINARY STATEMENT

In addition to failing to allege any material misstatement or omission (as demonstrated in the Common Motion to Dismiss), Plaintiffs also fail to allege scienter and loss causation for all their claims, and standing for their Securities Act claims—each of which independently warrants dismissal.

**First**, Plaintiffs fail to allege facts giving rise to the requisite strong inference of scienter—*i.e.*, an intent to defraud investors. This basis for dismissal applies to *all* the complaint's claims—even the Securities Act claims because they sound in fraud. Plaintiffs make the unremarkable assertion that iQIYI's parent company, Defendant Baidu, and iQIYI's chairman, Defendant Li (who is also Baidu's CEO), wished to see iQIYI's share price increase. But this universal desire shared by any large shareholder does not evidence a motive to commit securities fraud. Separately, Plaintiffs point to the "core operations" doctrine and to the Sarbanes-Oxley Act ("SOX")

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in Defendants' Joint Memorandum of Law in Support of the Defendants' Motions to Dismiss for Failure to Allege Any Material Misstatement or Omission ("Common Motion to Dismiss" or "Common MTD"). Defendants hereby incorporate by reference the Common Motion to Dismiss. All citations and internal quotation marks are omitted, and all emphases in quotations are added, unless otherwise indicated.

1

certifications signed by certain of iQIYI's officers to insist that they must have known iQIYI's statements were false. But courts routinely reject such bare-bones allegations as insufficient to plead the requisite strong inference of scienter. Plaintiffs also argue that iQIYI's disclosure of the SEC and NASDAQ investigations into the Wolfpack Report's allegations supports an inference of scienter because the disclosure allegedly came four months after the investigations began. But as Plaintiffs concede, iQIYI had no duty to disclose those investigations at all. Its decision to do so voluntarily and proactively shows candor, not scienter. And the complaint makes no scienter allegations at all against the Securities Act defendants. (*Infra* § I.A., II.A.)

**Second**, all of Plaintiffs' claims independently fail for lack of loss causation. Plaintiffs in federal securities cases typically plead loss causation by alleging a drop in the company's stock price when the falsity of the prior misrepresentations was revealed by a "corrective disclosure." Here, Plaintiffs allege that the Wolfpack Report supposedly revealed misstatements in iQIYI's Offering Documents and annual reports. But iQIYI's ADS price *increased* the day the Wolfpack Report was released, and, in any event, the report was expressly based solely on publicly available information. Plaintiffs also point to iQIYI's disclosure of the SEC and NASDAQ investigations, but that neither corrected any prior misstatement by the Company nor implied anything about the veracity of the Wolfpack Report's allegations. And even then, iQIYI's stock price held steady. (*Infra* §§ I.B, II.C.)

**Third**, Plaintiffs lack standing for their Section 11 claims because they have no cognizable damages under Section 11's statutory damages formula. As relevant here, statutory damages are determined by comparing the IPO price to the stock price on the day this litigation was commenced or, if applicable, the price at which Plaintiffs sold their shares before this litigation. But iQIYI's stock price, whether measured when this lawsuit was filed or when Plaintiffs sold their shares

2

before this lawsuit, was *above* the IPO price.  Plaintiffs thus have no damages and no cognizable claim under Section 11.  (*Infra* § II.B.)

## ARGUMENT

### I.    PLAINTIFFS' EXCHANGE ACT CLAIMS SHOULD BE DISMISSED

Plaintiffs bring their Exchange Act claims against iQIYI, Baidu, Yu Gong and Xiaodong Wang (collectively, the "Exchange Act Defendants").  (*iQIYI* Compl. ¶¶ 16–21.)  To state a claim for securities fraud under Section 10(b) of the Exchange Act, Plaintiffs must allege, among other things, (1) a material misrepresentation or omission; (2) scienter; and (3) loss causation.  *Singh v. Cigna Corp.*, 918 F.3d 57, 62 (2d Cir. 2019).  As explained in the Common Motion to Dismiss, Plaintiffs fail to allege a material misrepresentation.  Moreover, as demonstrated below, the iQIYI Complaint fails to plead scienter and loss causation, and falls far short of the degree of particularity required under Rule 9(b) and the PSLRA.  *See Ford v. Voxx Int'l Corp.*, No. 14-CV-4183 (JS) (AYS), 2016 WL 3982466, at *4–5 (E.D.N.Y. July 22, 2016).

### A.    Plaintiffs Fail To Allege a Strong Inference of Scienter

Plaintiffs' Exchange Act claims should be dismissed because they fail to allege the requisite strong inference of scienter.  Plaintiffs "must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007).  The inference of scienter must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.*  Scienter may be pled through particularized factual allegations showing (i) a "motive and opportunity" to commit fraud, or (ii) "strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Comms., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).  Plaintiffs fail on both counts.

3

### 1.    Plaintiffs Fail To Allege Motive and Opportunity

Plaintiffs fail to plead motive and opportunity to engage in the alleged fraud.  They claim that because Defendants Li and Baidu owned a large stake in iQIYI and wanted iQIYI to succeed, the Exchange Act Defendants had the motive to defraud iQIYI's investors.  (*iQIYI* Compl. ¶¶ 190–91.)  However, such generic motives, which are common to any parent company or director, are insufficient to plead scienter.  *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996).  Rather, Plaintiffs must point to "concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged."  *Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).  Here, Plaintiffs do not allege any suspicious stock sales, insider trading, or other compensation dependent on the supposed fruits of the alleged fraud.

In any event, courts have long held that the motives of parent companies, their subsidiaries, and their executives are not fungible.  *See, e.g.*, *Chill*, 101 F.3d at 268 ("Ultimately, whether [the subsidiary] defrauded plaintiffs and whether its parent, GE, defrauded plaintiffs are different questions.").  Thus, Plaintiffs' allegations regarding Defendant Li—who is not even an Exchange Act Defendant—establish nothing about the Exchange Act Defendants' states of mind.  (*iQIYI* Compl. ¶¶ 190–91.)  Similarly, Plaintiffs' allegations regarding Defendant Baidu demonstrate nothing about the motives of the other Exchange Act Defendants.[2]  (*Id.*)

### 2.    Plaintiffs Fail To Allege Conscious Misbehavior or Recklessness

Having failed to adequately allege motive, Plaintiffs must "produce a stronger inference of recklessness" to plead scienter.  *Kalnit*, 264 F.3d at 143.  To meet this standard, Plaintiffs must "allege facts approaching a knowledgeable participation in the fraud or a deliberate and conscious

---

[2]    To the extent Plaintiffs reference related party transactions between iQIYI and Baidu (*iQIYI* Compl. ¶ 191), they do not allege these transactions were improper or undisclosed.

disregard of facts." *In re Bayou Hedge Fund Litig.*, 534 F. Supp. 2d 405, 415 (S.D.N.Y. 2007), *aff'd sub nom. S. Cherry St., LLC v. Hennessee Grp. LLC*, 573 F.3d 98 (2d Cir 2009).

Plaintiffs fail to do so. They rely principally on the core operations doctrine, asserting that iQIYI's CEO and CFO must have known of the alleged fraud given the purported importance of the information at issue and the duration of the purported fraud. (*iQIYI* Compl. ¶¶ 172–86.) But courts routinely hold that "absent particularized allegations of *specific information* Defendants had at their disposal that rendered their statements false or misleading," allegations pointing only to the importance of information are insufficient to plead scienter. *See, e.g.*, *Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020) (rejecting plaintiff's "core importance" argument as "plainly insufficient to raise a strong inference" of scienter); *Sinay v. CNOOC Ltd.*, 554 F. App'x 40, 42 (2d Cir. 2014) (plaintiffs cannot "sufficiently plead[] scienter based on what [defendant] 'must have known'"). Because Plaintiffs do not allege any Exchange Act Defendant had access to any specific information contradicting iQIYI's statements, their attempt to invoke the core operations doctrine adds nothing to their inadequate scienter allegations. For the same reason, they cannot plead scienter by noting that iQIYI's disclosures contained SOX certifications—another tactic that courts have universally rejected. *See, e.g.*, *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 13 Civ. 8846 (LGS) 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014) (allegations of SOX certifications insufficient to plead scienter absent particularized allegations showing the certifications were not honestly and reasonably believed to be true when made).

Plaintiffs also assert that the timing of iQIYI's disclosures regarding the SEC and NASDAQ investigations somehow supports a strong inference of scienter. (*iQIYI* Compl. ¶¶ 187–89.) However, Defendants had no duty to disclose these investigations at all. *See In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) ("[A] government investigation,

5

without more, does not trigger a generalized duty to disclose."); *In re XP Inc. Sec. Litig.*, No. 20-cv-1502, 2021 WL 861917, at *9 (E.D.N.Y. Mar. 8, 2021) ("[S]everal courts have dismissed claims premised on the failure to disclose ongoing regulatory investigations.").   The Second Circuit has made clear that "where liability is premised upon alleged material omissions, if the complaint does not present facts indicating a clear duty to disclose . . . plaintiff's scienter allegations do not provide strong evidence of conscious misbehavior or recklessness."  *In re Centerline Holding Co. Sec. Litig.*, 380 F. App'x 91, 93 (2d. Cir. 2010).   Indeed, Defendants' decision to disclose the investigations at all (regardless of timing), notwithstanding the absence of any legal obligation to do so, shows prudence and candor—the opposite of conscious misbehavior or recklessness.

Lastly, Defendants' denials of the Wolfpack Report do not support an inference of scienter because Plaintiffs have not alleged any facts showing that those denials were false.  (Common MTD at 26.)  *See In re Elan Corp.*, No. 02-CIV-865 (RMB) (FM), 2004 WL 1305845, at *23 (S.D.N.Y. May 18, 2004) ("[I]f the mere denial of a class action plaintiff's accusations were sufficient to establish a defendant's scienter, the requirement of pleading the requisite mental state with particularity would frequently become a mere formality.").  Because Plaintiffs' theory of fraud is neither cogent nor more compelling than competing inferences of non-fraudulent intent, their Exchange Act claims fail.

### B.    Plaintiffs Fail To Allege Loss Causation

Plaintiffs' Exchange Act claims also fail because they have not pled loss causation. Plaintiffs must allege that the misstatement or omission "concealed something from the market that, when disclosed, negatively affected the value of the security."  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005).  Plaintiffs contend their losses were caused by two purported

6

corrective disclosures: the Wolfpack Report and iQIYI's disclosures of the SEC and NASDAQ investigations.  Both theories fail as a matter of law.

Plaintiffs cannot rely on the Wolfpack Report to allege loss causation because the report was not followed by any decline in iQIYI's stock price.  "Without a corresponding stock price decline, an announcement cannot establish loss causation."  *Janbay v. Canadian Solar, Inc.*, No. 10 Civ. 4430 (RWS), 2012 WL 1080306, at \*16 (S.D.N.Y. Mar. 30, 2012).  On April 7, 2020, the day the report was released, iQIYI's ADS price closed at $17.30, a $0.54 (3.22%) *increase* from the previous day.  (Ex. B at 12.)  Although Plaintiffs point to a slight drop in iQIYI's stock price the following day, they do not allege any facts to suggest that this belated price movement had anything to do with the Wolfpack Report.  To the contrary, Plaintiffs allege that the market for iQIYI's securities was "efficient" (*iQIYI* Compl. ¶ 169) and "promptly digested current information regarding iQIYI from publicly available sources and reflected such information in iQIYI's securities price(s)" (*id.* ¶ 209).  These admissions negate Plaintiffs' attempt to cherry-pick a different day to measure investors' reaction than the day on which the Wolfpack Report was actually published.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 246 (1988).[3]

Unable to deny the increase in iQIYI's ADS price following the publication of the Wolfpack Report, Plaintiffs characterize it as only a "partial" disclosure, arguing that the "full truth" was not revealed until iQIYI disclosed months later that the SEC and NASDAQ had commenced inquiries into certain of the Wolfpack Report's allegations.  (*iQIYI* Compl. ¶ 148.)

---

[3]   Moreover, disclosures that simply repackage already-public information are not "corrective." *Cent. States, Se. & Sw Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x, 72, 75 (2d Cir. 2013) ("[T]hird-party articles and reports express[ing] negative *opinions* . . . based on information that was already publicly available . . . are not 'corrective' for the purpose of pleading loss causation.").  Here, the Wolfpack Report expressly states that "*all Information . . . has been obtained from public sources.*" (Ex. H at 36.)

But the Company's subsequent announcement of the SEC and NASDAQ inquiries were not corrective disclosures, as they did not reveal anything about whether iQIYI's prior disclosures were accurate. "The announcement of an investigation reveals just that—an investigation—and nothing more." *Meyer v. Greene*, 710 F.3d 1189, 1201 (11th Cir. 2013); *see also Janbay*, 2012 WL 1080306, at *15 ("The announcement of an SEC subpoena or an internal investigation is itself insufficient to plead loss causation."). While a corresponding stock drop may be attributable to a generalized sense of uncertainty (*see iQIYI* Compl. ¶ 164), "[t]hat does not mean that the investigations, in and of themselves, reveal to the market that a company's previous statements were false or fraudulent." *Meyer*, 710 F.3d at 1201. For all of these reasons, Plaintiffs' Exchange Act claims fail as a matter of law and should be dismissed with prejudice.

## II. PLAINTIFFS' SECURITIES ACT CLAIMS SHOULD BE DISMISSED

### A. Plaintiffs' Failure to Plead Scienter Mandates Dismissal of the Securities Act Claims

As demonstrated in the Common Motion to Dismiss, a securities complaint sounds in fraud—thereby triggering Rule 9(b)'s fraud pleading requirements—when it "employs the exact same factual allegations to allege violations of Section 11 as it uses to allege fraudulent conduct under Section 10(b) of the Exchange Act." *Rubke v. Capital Bancorp Ltd*, 551 F.3d 1156, 1161 (9th Cir. 2009).[4] That is precisely what the Complaint here does. It asserts the same allegations and same purported misstatements as the basis for Plaintiffs' fraud claim under the Exchange Act

---

[4]  *Accord Caiafa v. Sea Containers Ltd.*, 331 F. App'x 14, 16 (2d Cir. 2009) (applying Rule 9(b) where "plaintiffs' Section 11 claim relies on the same factual allegations that served as a basis for their Section 10(b) claim"); *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008) (Rule 9(b) applies to Section 11 claim where "[t]he complaint also claims that the false statements in the prospectuses support plaintiffs' Exchange Act counts"); *Johnson v. NYFIX, Inc.*, 399 F. Supp. 2d 105, 122 (D. Conn. 2005) (Section 11 claim sounded in fraud where plaintiffs "include several allegations in this count that they later cite in support of their scienter arguments for the section 10(b) claim").

and their Securities Act claims.  (*See* Common Mot. to Dismiss at 10-11.)  That is all that is required for Rule 9(b) to apply.  *See Rombach v. Chang*, 355 F.3d 164, 172 (2d Cir. 2004).

Plaintiffs acknowledged as much in their Consolidated Amended Complaint in this action, alleging that "[f]raud is the only plausible explanation for the differences" between the results iQIYI reported in its Registration Statement and the company's alleged actual performance.  (Consol. Am. Compl. [Dkt. No. 84] ¶ 277.)  The telling removal of that allegation from the current complaint does not alter the analysis, because Plaintiffs still plead both fraud and negligence claims based on the exact same allegations.  Plaintiffs' bare disclaimers of fraud (*iQIYI* Compl. ¶ 233) "are insufficient to shield any claims that actually sound in fraud from the requirements of Rule 9(b)."  *In re OSG Secs. Litig.*, 971 F. Supp. 2d 387, 396 (S.D.N.Y. 2013).[5]

Plaintiffs' entire complaint therefore sounds in fraud and must satisfy Rule 9(b)'s particularized pleading requirements.  Among those requirements is that a complaint plead facts giving rise to a "strong inference that each defendant acted with scienter."  *Jiajia Luo*, 465 F.

---

[5]   *See also Jiajia Luo v. Sogou, Inc.*, 465 F. Supp. 3d 393, 408 (S.D.N.Y. 2020) (rejecting complaint's disclaimers of intent to plead fraud in Section 11 claim); *In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 492 (S.D.N.Y. 2006) ("Allowing plaintiffs to allege fraud over [hundreds of] paragraphs and then withdraw those claims for eight paragraphs in order to state a Section 11 claim eviscerates Rule 9(b)'s mandate to safeguard a defendant's reputation from improvident charges of wrongdoing."); *In re JPMorgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 635 (S.D.N.Y. 2005) ("Plaintiffs cannot evade the Rule 9(b) strictures by summarily disclaiming any reliance on a theory of fraud or recklessness."), *aff'd*, 553 F.3d 187 (2d Cir. 2009); *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513, 530 (S.D.N.Y. 2005) ("Plaintiffs' boilerplate disclaimers that their allegations are incorporated into their claims under sections 11 and 12(a)(2) except to the extent any such allegation may be deemed to sound in fraud is insufficient to remove those allegations from the requirements of Rule 9(b)."); *In re Elan Corp. Sec. Litig.*, No. 02 Civ. 865 (RMB) (FM), 2004 WL 1305845 (S.D.N.Y. May 18, 2004) (Securities Act claims sounded in fraud "[n]otwithstanding the Plaintiffs' fraud disclaimer" because claims were "peppered" with words like "inaccurate and misleading").

Supp. 3d at 408.[6]  In the Second Circuit, the defendants' scienter is at issue when Rule 9(b) applies:  "Rule 9(b) requires that all averments of fraud be stated with particularity.  In this circuit, that long has meant the plaintiff must allege with particularity the circumstances constituting the fraud *and scienter*."  *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, 95 F. Supp. 2d 169, 174 (S.D.N.Y. 2000) (emphasis in original); *see also Wexner v. First Manhattan*, 902 F. 2d 169, 172 (2d Cir. 1990) ("Although scienter need not be alleged with great specificity, plaintiffs are still required to plead the factual basis which gives rise to a strong inference of fraudulent intent.").  Thus, even though scienter is not ordinarily an element of a Section 11 claim, a plaintiff pursuing a Section 11 claim sounding in fraud must nevertheless plead each defendant's fraudulent intent.[7]

---

[6]  *See also Caiafa v. Sea Containers Ltd.*, 06 Civ. 2565 (RMB), 2008 WL 11516813, at \*5 (S.D.N.Y. May 15, 2008) (recognizing that where Section 11 claim sounds in fraud, plaintiffs must "plead with particularity a strong inference of scienter in connection with a material misrepresentation or omission") (citation omitted); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d at 635 ("summarily disclaiming any reliance on a theory of fraud or recklessness" is insufficient to "evade" Rule 9(b)).

[7]  *See, e.g.*, *Coronel v. Quanta Capital Holdings Ltd.*, No. 07 Civ. 1405 (RPP), 2009 WL 174656, at \*15–16 (S.D.N.Y Jan. 26, 2009) (where Section 11 and 12(a)(2) claims sounded in fraud, plaintiff must "convey through factual allegations that the defendants made materially false statements, and that they did so with scienter"); *Caiafa*, 2008 WL 11516813, at \*5 (where Section 11 claim sounds in fraud, plaintiffs must "plead with particularity a strong inference of scienter," and dismissing claim for failure to do so); *In re Marsh & McLennan Cos.*, 501 F. Supp. 2d at 492 ("Plaintiffs must either provide sufficient allegations of the defendants' fraudulent intent, or withdraw allegations of fraud against certain defendants and allege those defendants' negligence."); *In re JPMorgan Chase*, 363 F. Supp. 2d at 635 (dismissing Securities Act claim that sounded in fraud because "plaintiffs have failed to plead a strong inference of scienter properly"); *In re Elan Corp. Sec. Litig.*, 2004 WL 1305845, at \*11 ("Whatever the merits of the Plaintiffs' Section 11 claim regarding Pharma might be were it couched as a negligence claim, the Plaintiffs plainly have not adequately alleged that Elan engaged in fraud in connection with Pharma."); *Geiger v. Solomon-Page Group, Ltd.*, 933 F. Supp. 1180, 1189–90 (S.D.N.Y. 1996) (dismissing Section 11 claim against underwriter that sounded in fraud for failure to plead scienter).

As demonstrated above, the Complaint fails to plead scienter for the Exchange Act defendants.  (*See supra* at 3-6.)  And the Complaint makes no scienter allegations—not even conclusory ones—against the Securities Act defendants.  The Securities Act claims, like the Exchange Act claims, therefore must be dismissed for failure to plead scienter.

## B.    Plaintiffs Lack Standing Because They Have No Cognizable Damages

Plaintiffs also lack standing for their Securities Act claims because they can claim no loss under Section 11's statutory damages formula.  As relevant here, Section 11 defines damages as the difference between the amount paid for the security (not exceeding the IPO price) and either (1) the value of the security at the time the suit was brought, if plaintiff still holds the security, or (2) the price at which the security was sold before suit.  15 U.S.C. § 77k(e).  Where, as here, there have been several complaints alleging "claims [arising] from the same events," the "proper date" that the suit was brought "is [the date] of the first-filed complaint, rather than of a later-filed amended or consolidated complaint."  *See In re Barclays Bank PLC Sec. Litig.*, No. 09 Civ. 1989 (PAC), 2016 WL 3235290, at *5 (S.D.N.Y. June 9, 2016).

Because iQIYI's ADS price when this lawsuit was filed on April 16, 2020 ($19.24) *exceeds* the IPO price ($18.00), Plaintiffs have no statutory damages with respect to shares they still hold. (ECF No. 25-4 at 1–2; ECF No. 25-3 at 6).  Plaintiff Hershberger also has no statutory damages for the shares he sold before the lawsuit because that sale price also exceeded the IPO price (ECF No. 25-4 at 2).  *See In re Initial Public Offering Sec. Litig.*, 241 F. Supp. 2d 281, 351 (S.D.N.Y. 2003) ("[A] plaintiff who sells a security above its offering price has no cognizable damages under Section 11[.]").  The Securities Act claims should be dismissed on this basis alone.[8]

---

[8]    The ADS price when the third-filed complaint—the first to assert Section 11 claims—was filed in the Northern District of California is irrelevant because that complaint alleges the same misstatements and thus relates back to the first-filed action.  *Alpern v. UtiliCorp United, Inc.*,

*(cont'd)*

11

### C.    The Absence of Loss Causation Is Apparent on the Face of the Complaint

Plaintiffs' Securities Act claims also fail for lack of causation on the same grounds as their Exchange Act claims.  Even at the pleading stage, courts dismiss Securities Act claims if "it is apparent on the face of the complaint that the alleged loss is not causally connected to the misrepresentations at issue." *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 588 (S.D.N.Y. 2011).  That is precisely the case here, where the stock price *increased* on the day of the alleged corrective disclosure.  (*See supra* § I.C.)  Accordingly, Plaintiffs' Securities Act claims should be dismissed for lack of causation.[9]

### CONCLUSION

For the foregoing reasons, and those demonstrated in the Common Motion to Dismiss, the *iQIYI* Action should be dismissed in its entirety with prejudice.

---

84 F.3d 1525, 1544 (8th Cir. 1996) ("[A]mended complaint [adding Section 11 claim] relates back to the filing date of the original complaint," which asserted only Section 10(b) claim, "for purposes of calculating damages under § 11(e)(1)."); *Pierce v. Morris*, No. 4:03-CV-026-Y, Nos. 4:03-CV-026-Y et seq., 2006 WL 2370343, at *4 (N.D. Tex. Aug. 16, 2006) ("To rule otherwise would, in essence, allow a Securities-Act plaintiff to file Exchange-Act claims and delay filing Securities-Act claims until stock prices fall (assuming they do), giving the plaintiff two bites at the apple and rendering the defendant a sitting duck.").

[9]    Because iQIYI Plaintiffs fail to plead primary liability, their control person claims also fail. *See Hutchison v. Deutsche Bank Sec. Inc.*, 647 F.3d 479, 490 (2d Cir. 2011).

12

Dated: New York, New York
November 30, 2022

Respectfully submitted,

/s/ William J. Sushon
Jonathan Rosenberg
William J. Sushon
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
(212) 326-2000
jrosenberg@omm.com
wsushon@omm.com

*Attorneys for Defendants Goldman Sachs
(Asia) LLC; Credit Suisse Securities (USA)
LLC; Merrill Lynch, Pierce, Fenner & Smith
Incorporated; China Renaissance Securities
(Hong Kong) Limited; Citigroup Global
Markets Inc.; and UBS Securities LLC*

/s/ Robert A. Fumerton
Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Attorneys for Defendants iQIYI, Inc.,
Baidu, Inc., Yu Gong, Xiaodong Wang, Robin
Yanhong Li, Qi Lu, Herman Yu, Victor
Zhixiang Liang, and Giselle Manon*

13