**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE iQIYI, INC. SECURITIES LITIGATION | Master File No. 1:20-cv-01830-DG-TAM |
| | **Oral Argument Requested** |

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN**
**OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS THE *iQIYI* ACTION FOR**
**FAILURE TO PLEAD SCIENTER, LOSS CAUSATION, AND STANDING**

## TABLE OF CONTENTS

I.      Introduction ................................................................................................................... 1

II.     Plaintiffs Adequately Allege Exchange Act Claims ..................................................... 2

        A.      The Complaint Adequately Alleges Strong Inferences Of Scienter ................. 2

                1.      iQIYI's User Numbers And Revenue Figures Were Critical To Its
                        Core Operations ................................................................................... 3

                2.      Defendants' Concealment Of Investigations Supports A Strong
                        Inference Of Scienter .......................................................................... 5

                3.      iQIYI Knew its Accounting Treatment of Xinai Sports Violated
                        GAAP and Misled Investors ............................................................... 6

                4.      Additional Evidence Supports A Strong Inference Of Scienter ........... 6

        B.      The Complaint Adequately Alleges Loss Causation ........................................ 7

                1.      The First Partial Disclosure Established Loss Causation ..................... 7

                2.      The Final Partial Disclosure Established Loss Causation..................... 9

III.    The Complaint Alleges Viable Securities Act Claims................................................. 10

        A.      Plaintiffs Suffered Damages And Have Section 11 Standing.......................... 10

        B.      The Complaint Securities Act Claims Are Not Subject to Heightened
                Pleading Standards ...................................................................................... 12

                1.      The Section 11 Claim Does Not Sound In Fraud ............................... 12

                2.      The Section 11 Defendants Are Not Subject To Heightened
                        Pleading Standards ........................................................................... 14

                3.      Plaintiffs Are Not Required To Allege Scienter For Section 11 ......... 15

IV.     THE COMPLAINT ADEQUATELY ALLEGED SECTIONS 20(a) AND 15......... 17

V.      CONCLUSION ......................................................................................................... 17

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alpern v. UtiliCorp United, Inc.*,
 84 F.3d 1525 (8th Cir. 1996) ........................................................................ 11

*Basic Inc. v. Levinson*,
 485 U.S. 224 (1988) ....................................................................................... 8

*Behrendsen v. Yangtze River Port & Logistics Ltd.*,
 2021 WL 2646353 (E.D.N.Y. June 28, 2021) ............................................... 9

*Caiafa v. Sea Containers Ltd.*,
 2008 WL 11516813 (S.D.N.Y. May 15, 2008) ............................................ 16

*Cent. Laborers' Pension Fund v. SIRVA, Inc.*,
 2006 WL 2787520 (N.D. Ill. Sept. 22, 2006) .............................................. 11

*Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*,
 543 F. App'x 72 (2d Cir. 2013) ..................................................................... 9

*City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc.*,
 2010 WL 6617866 (E.D.N.Y. Dec. 23, 2010) .............................................. 12

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
 752 F.3d 173 (2d Cir. 2014) ......................................................................... 16

*DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*,
 323 F. Supp. 3d 393 (S.D.N.Y. 2018) ..................................................... 7, 10

*Dura Pharms., Inc. v. Broudo*,
 544 U.S. 336 (2005) ....................................................................................... 7

*Erica P. John Fund, Inc. v. Halliburton Co.*,
 563 U.S. 804 (2011) ....................................................................................... 8

*Fresno Cnty. Employees' Ret. Ass'n v. comScore, Inc.*,
 268 F. Supp. 3d 526 (S.D.N.Y. 2017) ..................................................... 13, 15

*Freudenberg v. E*Trade Fin. Corp.*,
 712 F. Supp. 2d 171 (S.D.N.Y. 2010) ...................................................... 3, 9

*Gordon v. Vanda Pharms. Inc.*,
 2021 WL 911755 (E.D.N.Y. Mar. 10, 2021) ............................................ 7, 9

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.,*
2021 WL 1178216 (S.D.N.Y. Mar. 29, 2021) ................................................................ 4

*In re Alcatel Sec. Litig.,*
382 F. Supp. 2d 513 (S.D.N.Y. 2005)......................................................................... 14

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.,*
324 F. Supp. 2d 474 (S.D.N.Y. 2004)................................................... 3, 4, 15, 16

*In re Avon Sec. Litig.,*
2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) ........................................................... 6

*In re Barclays Bank PLC Securities Litigation,*
2016 WL 3235290 (S.D.N.Y. June 9, 2016) ............................................................ 11

*In re Bristol Myers Squibb Co. Sec. Litig.,*
586 F. Supp. 2d 148 (S.D.N.Y. 2008)........................................................................ 9

*In re Broderbund/Learning Co. Sec. Litig.,*
294 F.3d 1201 (9th Cir. 2002) ................................................................................. 11

*In re Centerline Holding Co. Sec. Litig.,*
380 F. App'x 91 (2d Cir. 2010) .................................................................................. 5

*In re China Mobile Games & Ent. Grp., Ltd Sec. Litig.,*
2016 WL 922711 n.12 (S.D.N.Y. Mar. 7, 2016) ...................................................... 9

*In re CINAR Corp. Sec. Litig.,*
186 F. Supp. 2d 279 (E.D.N.Y. 2002) ............................................................... 13, 15

*In re CitiGroup Inc. Bond Litig.,*
723 F. Supp. 2d 568 (S.D.N.Y. 2010)....................................................................... 13

*In re Elan Corp. Securities Litigation,*
2004 WL 1305845 (S.D.N.Y. May 18, 2004) ..................................................... 5, 13

*In re Finjan Holdings, Inc.,*
No. 21-16702, 2023 WL 329413 (9th Cir. Jan. 20, 2023) ....................................... 17

*In re Fuwei Films Sec. Litig.,*
634 F. Supp. 2d 419 (S.D.N.Y. 2009)................................................................ 9, 15, 16

*In re Gentiva Sec. Litig.,*
932 F. Supp. 2d 352 (E.D.N.Y. 2013) .................................................................. 9, 10

*In re HEXO Corp. Sec. Litig.*,
524 F. Supp. 3d 283 (S.D.N.Y. 2021)................................................................... 16

*In re Hi-Crush Partners L.P. Sec. Litig.*,
2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) ............................................................ 3

*In re IMAX Sec. Litig.*,
272 F.R.D. 138 (S.D.N.Y. 2010) .............................................................................. 9

*In re Initial Pub. Offering Sec. Litig.*,
241 F. Supp. 2d 281 (S.D.N.Y. 2003)............................................................... 12, 16

*In re JP Morgan Chase Sec. Litig.*,
363 F. Supp. 2d 595 (S.D.N.Y. 2005)..................................................................... 14

*In re Jumei Int'l Holding Ltd. Sec. Litig.*,
2017 WL 95176 (S.D.N.Y. Jan. 10, 2017) ............................................................. 14

*In re Lions Gate Ent. Corp. Sec. Litig.*,
165 F. Supp. 3d 1 (S.D.N.Y. 2016)........................................................................... 5

*In re Marsh & Mclennan Companies, Inc. Sec. Litig.*,
501 F. Supp. 2d 452 (S.D.N.Y. 2006)..................................................................... 14

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
988 F. Supp. 2d 406 (S.D.N.Y. 2013)....................................................................... 9

*In re NIO, Inc. Sec. Litig.*,
2021 WL 3566300 (E.D.N.Y. Aug. 12, 2021)........................................................ 14

*In re Openwave Sys. Sec. Litig.*,
528 F. Supp. 2d 236 (S.D.N.Y. 2007)....................................................................... 9

*In re OSG Securities Litigation*,
971 F. Supp. 2d 387 (S.D.N.Y. 2013)............................................................... 13, 14

*In re Sanofi Sec. Litig.*,
87 F. Supp. 3d 510 (S.D.N.Y. 2015)....................................................................... 16

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001)........................................................................................ 2

*In re Take-Two Interactive Sec. Litig.*,
551 F. Supp. 2d 247 (S.D.N.Y. 2008)....................................................................... 9

iv

*In re Turquoise Hill Resources Ltd. Securities Litigation*,
  2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ............................................................................ 7

*In re Vivendi, S.A. Sec. Litig.*,
  838 F.3d 223 (2d Cir. 2016) ...................................................................................................... 7

*In re Wachovia Equity Sec. Litig.*,
  753 F. Supp. 2d 326 (S.D.N.Y. 2011) ...................................................................................... 13

*In re XP Inc. Securities Litigation*,
  2021 WL 861917 (E.D.N.Y. Mar. 8, 2021) ................................................................................ 5

*Jackson v. Abernathy*,
  960 F.3d 94 (2d Cir. 2020) ........................................................................................................ 4

*Janbay v. Canadian Solar, Inc.*,
  2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ...................................................................... 8, 10

*Jiajia Luo v. Sogou, Inc.*,
  465 F. Supp. 3d 393 (S.D.N.Y. 2020) ...................................................................... 14, 15, 16

*Lea v. TAL Education Group*,
  837 F. App'x 20 (2d Cir. 2020) ................................................................................................ 8

*Lilly v. State Tchrs. Ret. Sys. of Ohio Pension Fund*,
  608 F.2d 55 (2d Cir. 1979) ........................................................................................................ 5

*Longo v. OSI Sys., Inc.*,
  2021 WL 1232678 (C.D. Cal. Mar. 31, 2021) .......................................................................... 9

*Lormand v. US Unwired, Inc.*,
  565 F.3d 228 (5th Cir. 2009) ..................................................................................................... 2

*Maverick Fund, L.D.C. v. Comverse Tech., Inc.*,
  801 F. Supp. 2d 41 (E.D.N.Y. 2011) ........................................................................................ 8

*McKenna v. Smart Techs. Inc.*,
  2012 WL 1131935 (S.D.N.Y. Apr. 3, 2012) ............................................................................ 16

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
  164 F. Supp. 3d 568 (S.D.N.Y. 2016) ...................................................................................... 5

*Merzin v. Provident Fin. Grp., Inc.*,
  311 F. Supp. 2d 674 (S.D. Ohio 2004) .................................................................................... 11

*Meyer v. Greene*,
    710 F.3d 1189 (11th Cir. 2013) .................................................................................. 10

*Novak v. Kasaks*,
    216 F.3d 300 (2d Cir. 2000)........................................................................................ 6

*Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*,
    2017 WL 1192888 (S.D.N.Y. Mar. 29, 2017) ............................................................ 17

*Pierce v. Morris*,
    2006 WL 2370343 (N.D. Tex. Aug. 16, 2006) .......................................................... 12

*Plumbers' & Pipefitters' Local No. 562 Supplemental Plan & Tr. v. J.P. Morgan Acceptance
    Corp.*,
    2012 WL 601448 (E.D.N.Y. Feb. 23, 2012).............................................................. 12

*Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*,
    89 F. Supp. 3d 602 (S.D.N.Y. 2015)........................................................................ 8, 9

*Plumbers & Pipefitters Nat'l Pension Fund v. Davis*,
    2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020)............................................................. 6

*Rombach v. Chang*,
    355 F.3d 164 (2d Cir. 2004)................................................................................. 14, 15

*Silvercreek Mgmt., Inc. v. Citigroup, Inc.*,
    248 F. Supp. 3d 428 (S.D.N.Y. 2017)....................................................................... 14

*Sinay v. CNOOC Ltd.*,
    554 F. App'x 40 (2d Cir. 2014) ................................................................................. 4

*Snellink v. Gulf Res., Inc.*,
    870 F. Supp. 2d 930 (C.D. Cal. 2012) ...................................................................... 9

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007)................................................................................................... 2

*United States v. Rittweger*,
    2003 WL 22290228 (S.D.N.Y. Oct. 6, 2003) ............................................................ 5

**Statutes**

15 U.S.C. § 77(k)(e)(1) ...................................................................................................... 10

15 U.S.C. § 78u-4(b)(2)(A)................................................................................................. 2

28 U.S.C. § 2072(b) ........................................................................................................... 17

**<u>Rules</u>**

Fed. R. Civ. P. 9(b) ........................................................................................................... 17

Pursuant to the Court's October 6, 2022 Order, Plaintiffs in the *iQIYI* action submit this memorandum in opposition to the *iQIYI* Defendants' Motion to dismiss the iQIYI Complaint.[1]

## I.    Introduction

The iQIYI Complaint pleads a strong inference of scienter as to each Exchange Act Defendant. The Company's DAUs, revenue, and deferred revenue figures were critical, and iQIYI's management widely reported and consistently discussed these metrics with analysts on conference calls. Second Circuit law instructs courts to infer defendants' knowledge of matters that represent a significant part of the company's business and are critical to the company's core operations.

The Complaint adequately pleads loss causation. A corrective disclosure may take two days before its effects are fully incorporated into the stock price. And announcements of governmental investigations can establish loss causation where, as here, the investigation is focused on the very subject matter forming the basis of Defendants' misrepresentations.

Defendants' efforts to dismiss the Section 11 claim also fall flat. Statutory damages are measured using iQIYI's stock price on the date a complaint alleging a Section 11 claim is first filed—not the date when a related Section 10(b) claim is first filed.  Under this correct method, Plaintiffs have suffered Section 11 damages. Nor does the Section 11 claim sound in fraud merely because certain of the alleged misrepresentations overlap with the Section 10(b) claim. An overwhelming majority of cases hold that when, as here, a complaint separates its Sections 10(b) and 11 claims, bases the Section 11 claim on negligence, and disclaims all fraud as to the Section

---

[1] Undefined terms have the same meaning as set forth in the Amended Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "*iQIYI* Complaint," ECF No. 104), cited as "¶__". "*iQIYI* MTD" shall refer to the *iQIYI* Defendants' November 30, 2022 memorandum of law in support of their motion to dismiss the *iQIYI* Complaint for failure to plead scienter, loss causation, and standing.

11 claim, the Section 11 claim does not sound in fraud. The Court should deny Defendants' motions in their entirety

## II.    Plaintiffs Adequately Allege Exchange Act Claims

### A.    The Complaint Adequately Alleges Strong Inferences Of Scienter

Defendants incorrectly argue that the Complaint did not adequately allege scienter. *iQIYI MTD* at 3. The Complaint sets forth detailed allegations that show, *inter alia*, that iQIYI's DAU and revenue figures were so critical to its core operations that Defendants knew or were reckless in not knowing that they were inflated and that Defendants concealed from investors governmental investigations regarding the truth of the Wolfpack Report's veracity. Viewed holistically, as the Court must, such allegations raise a strong inference of scienter.

The PSLRA requires that a complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). "Plaintiffs can plead scienter by (a) alleging facts demonstrating that defendants had both the motive and an opportunity to commit fraud or (b) otherwise alleging facts to show strong circumstantial evidence of defendants' conscious misbehavior or recklessness." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74 (2d Cir. 2001). When analyzing scienter, "the court's job is not to scrutinize each allegation in isolation but to assess all the allegations holistically." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 326 (2007). The "inference that the defendant acted with scienter need not be irrefutable, *i.e.,* of the 'smoking-gun' genre, or even the 'most plausible of competing inferences;'" rather, "it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Id.* at 314, 324. That is, "a tie favors the plaintiff." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 254 (5th Cir. 2009) (citing *Tellabs*, 551 U.S. at 324).

2

**1.**    **iQIYI's User Numbers And Revenue Figures Were Critical To Its Core Operations**

iQIYI's DAUs, revenue and deferred revenue were critical metrics for analyzing its operating performance, and Defendants constantly touted these core metrics to investors. ¶¶172–186. The core operations doctrine "permits an inference that a company and its senior executives have knowledge of information concerning the 'core operations' of a business." *In re Hi-Crush Partners L.P. Sec. Litig.*, 2013 WL 6233561, at *26 (S.D.N.Y. Dec. 2, 2013). Matters that are "critical to the long[-]term viability" of a company and affect a "significant source of income" are core operations and alone can raise a strong inference of scienter. *Id.*; *see also In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 489-90 (S.D.N.Y. 2004) (high-level officers' and directors' knowledge of facts inferred when such facts were critically important to company); *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 199 (S.D.N.Y. 2010) (same).

Defendants do not dispute that iQIYI's DAUs, membership services revenues, and deferred revenues were critical to iQIYI's core operations. Thus, the Court should infer that Defendants knew of those inflated figures. DAUs generated over 75% of iQIYI's revenue and was the most accurate way for investors to assess iQIYI's overall viewership numbers. ¶¶173–174. iQIYI claimed that a "massive and highly engaged user base"—which includes DAUs—was one of its key competitive strengths and that its success "was primarily attributable" to those strengths. ¶¶175–176; *see also* ¶¶177–179. Defendants, themselves, acknowledged membership services revenues were critical to iQIYI's core operations. ¶182 ("[m]embership services . . . [was] the biggest revenue contributor for the Company."); *id.* ("[m]embership business continued to be the main engine driving our growth."). The media likewise recognized that "[i]t's clear from iQIYI's strategy [] that it intends membership services to be the anchor of its business." ¶183.

3

iQIYI's deferred revenue figures were likewise critical to iQIYI's business as they go hand-in-hand with membership services revenues. ¶44. Indeed, customer memberships (and the membership services revenues derived therefrom) are the largest portion of deferred revenue and represents at least 80% of total deferred revenue. ¶46.

Just as important to iQIYI's business was its investment in Xin'ai. Defendant Gong explained that Xin'ai was "an important part of [iQIYI's]content library" and similarly reaffirmed that "sports content is obviously a very important racetrack for[iQIYI]." ¶184. The Xin'ai transaction was also crucial to Defendants' ability to book a considerable amount of deferred revenue at a time when membership services revenues and deferred revenues were inexplicably diverging resulting in the finagling of GAAP accounting rules. *Atlas*, 324 F. Supp. 2d at 490 (acknowledging core operations supports finding defendants knew or should have known about issues in financial statements where statements issued in connection with important acquisition).

DAUs, membership services revenue, deferred revenues, and the Xin'ai investment were all critical to iQIYI's core operations, and Defendants "had a duty to familiarize [themselves] with the facts relevant to the core operations of the [C]ompany and the financial reporting of those operations." *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 2021 WL 1178216, at *46 (S.D.N.Y. Mar. 29, 2021).[2] Accordingly, under the core operations doctrine, "[i]t is reasonable to infer that in the course of such duties, . . . [Defendants] recognized that [iQIYI] was not in the strong financial position that it represented publicly." *In re Aegean*, 2021 WL 1178216 at *46.

---

[2] Defendants' reliance on *Jackson v. Abernathy* is misplaced because, there, plaintiff "offer[ed] no arguments other than merely stating that the MicroCool gown was a 'key product' for the [defendants]." 960 F.3d 94, 99 (2d Cir. 2020). Here, the Complaint alleges facts as to why those matters were critically important to iQIYI, including that Defendants themselves stated as much throughout the Class Period. *Sinay v. CNOOC Ltd.* is similarly inapposite since plaintiffs there did not even allege core operations. 554 F. App'x 40 (2d Cir. 2014).

### 2. Defendants' Concealment Of Investigations Supports A Strong Inference Of Scienter

Defendants falsely denied the allegations in the Wolfpack Report—without first making any internal investigation. ¶¶3, 157. These false exculpatory statements prove their scienter. *Lilly v. State Tchrs. Ret. Sys. of Ohio Pension Fund*, 608 F.2d 55, 62 (2d Cir. 1979); *United States v. Rittweger*, 2003 WL 22290228, at *7 (S.D.N.Y. Oct. 6, 2003). Defendants also admittedly waited four months before telling investors that the SEC and NASDAQ were investigating iQIYI for the same misconduct alleged in the Complaint. ¶188. Defendants' denials and concealment of the investigations demonstrate that they were aware of the severity of the Wolfpack Report's claims yet chose to keep investors in the dark until at least August 13, 2020—approximately four months after they were first informed of the investigations. *Id., Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 585 (S.D.N.Y. 2016) (inference of scienter established where defendants "waited to disclose" the existence of a SEC and DOJ investigation).[3] Defendants cite *In re Elan Corp. Securities Litigation*, 2004 WL 1305845 (S.D.N.Y. May 18, 2004), claiming that their denials of the Wolfpack Report do not support an inference of scienter because Plaintiffs have not adequately alleged that those denials were false. *iQIYI* MTD at 6. However, unlike in *Elan* where defendants simply decided not to admit to wrongdoing, Defendants here affirmatively referenced the Wolfpack Report and assured investors that the report "contains numerous errors, unsubstantiated statements and misleading conclusions and interpretations," which Defendants knew or were reckless in not knowing was not true. ¶¶146–147.

---

[3] *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1 (S.D.N.Y. 2016) and *In re XP Inc. Securities Litigation*, 2021 WL 861917 (E.D.N.Y. Mar. 8, 2021) are irrelevant. *In re Centerline Holding Co. Sec. Litig.*, 380 F. App'x 91 (2d Cir. 2010) is inapposite because Plaintiffs are not premising liability on Defendants not disclosing the investigations in a timely fashion; instead, their delay serves as evidence of Defendants' bad faith efforts to conceal their wrongdoing—demonstrating scienter.

### 3. iQIYI Knew its Accounting Treatment of Xinai Sports Violated GAAP and Misled Investors

The Complaint alleges that three independent and reliable sources in PRC reported that iQIYI made a RMB38.25 mm cash only investment into Xin'ai in return for 38.25% of the equity and that iQIYI never promised to provide Xinai with RMB763.75mm of future non-cash consideration reported in connection with its investment. ¶85. This evidences that iQIYI's recording of RMB736,750mm of deferred revenue was wholly fraudulent. The Complaint meets the scienter requirement because it specifically alleges "defendants' knowledge of facts or access to information contradicting their public statements." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000). There is no innocent explanation for iQIYI recording RMB736,500 million of deferred revenue based on a wholly fictional promise to provide future goods and services.[4]

### 4. Additional Evidence Supports A Strong Inference Of Scienter

Defendants also argue that Defendants' SOX certifications cannot support scienter. *iQIYI MTD* at 5. That simply is not true. While signing SOX certifications in and of itself may not establish scienter, in situations where defendants "attest[] to the adequacy of their internal controls," as here, it provides an additional indicia of scienter when performing the holistic analysis. *Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, 2020 WL 1877821, at *14 (S.D.N.Y. Apr. 14, 2020); *In re Avon Sec. Litig.*, 2019 WL 6115349, at *21 (S.D.N.Y. Nov. 18, 2019) (same). Here, Defendants Gong and Wang both signed SOX certifications, certifying that the Company's internal controls over financial reporting were effective—evidencing their access and purported review of iQIYI's financial data. ¶¶192–193. Thus, Defendants Gong and Wang

---

[4] Defendants also had a motive to mischaracterize the Xin'ai transaction at a time when membership services revenues and deferred revenues were inexplicably diverging and Defendants needed to manufacture substantial deferred revenue to mask this divergence and avoid detection of their fraud.

knew, or at the very least, were severely reckless in not knowing of the underlying facts that rendered their statements regarding their viewership figures and revenues materially false and misleading. ¶¶194–195.[5] Accordingly, the Complaint adequately alleges scienter.

## B.    The Complaint Adequately Alleges Loss Causation

The Complaint alleges that upon publication of the Wolfpack Report, iQIYI's share price declined 4.3% over a two-day period. ¶¶151–156. Then when iQIYI disclosed the SEC and NASDAQ investigations, its share price declined another 11%. ¶¶161–166. This demonstrates the "causal connection between the material misrepresentation and the loss" incurred. *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005). "[A] plaintiff can establish loss causation either by showing a 'materialization of risk' or by identifying a 'corrective disclosure' that reveals the truth behind the alleged fraud." *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 261 (2d Cir. 2016). Loss causation is satisfied under materialization of risk when a "loss was foreseeable" and "within the zone of risk concealed by the misrepresentations." *DoubleLine Cap. LP v. Odebrecht Fin., Ltd.*, 323 F. Supp. 3d 393, 456 (S.D.N.Y. 2018). "[L]oss causation is governed by the traditional 'short and plain statement' rule laid out in Rule 8." *Gordon v. Vanda Pharms. Inc.*, 2021 WL 911755, at *3 (E.D.N.Y. Mar. 10, 2021).

### 1.    The First Partial Disclosure Established Loss Causation

With respect to the April 7, 2020 partial disclosure, Defendants argue that the Wolfpack Report does not support loss causation because there was no stock price decline within a day of publication of the report. *iQIYI* MTD at 6–8. However, courts routinely hold that even if a company's stock price does not drop within one trading day of a corrective event, loss causation

---

[5] *In re Turquoise Hill Resources Ltd. Securities Litigation*, 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) is distinguishable because, unlike there, the Complaint here alleges that Gong and Wang either knew or were reckless in not knowing that iQIYI's reported figures were inaccurate. ¶195.

7

can still be established when the market digests the information over a two-day period. *Maverick Fund, L.D.C. v. Comverse Tech., Inc.*, 801 F. Supp. 2d 41, 49, 54 (E.D.N.Y. 2011) (stock decline over two days sufficient to establish loss causation); *Plumbers & Pipefitters Nat. Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 621 (S.D.N.Y. 2015) (same). Here, the Complaint adequately alleges loss causation because on April 7, 2020, the Wolfpack Report—which was 37 pages long and contained complex, cross-border accounting and financial analyses based on complex Chinese filings—was released, and at the end of the next trading day, iQIYI's stock price dropped 4.3% as investors digested the information contained in the report. ¶¶151-156.[6]

Defendants further criticize the Wolfpack Report for stating that "all [i]nformation . . . has been obtained from public sources." *iQIYI* MTD 7 n.3. But, Plaintiffs obtained the so-called "already public information" only after conducting extensive research and data analysis of PRC media reports and archived industry reports, which are only published in Chinese and not readily accessible. ¶251 n.40. Thus, U.S. investors could not have been expected to obtain such information prior to the report's release. The Second Circuit agrees. In *Lea v. TAL Education Group*, despite a report stating that "all information contained herein . . . has been obtained from public sources," the Second Circuit held that the report was a sufficient corrective disclosure because "much of the information, including SAIC filings of multiple entities in a different language and Chinese court documents, was not readily accessible to investors." 837 F. App'x 20,

---

[6] *Janbay v. Canadian Solar, Inc.*, 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) is distinguishable because the stock did not drop at all following the release of an article. Nor does *Basic Inc. v. Levinson*, 485 U.S. 224 (1988) relevant to the loss causation analysis as *Basic* does not ban plaintiffs from alleging loss causation on a multi-day drop in a motion for class certification— where loss causation is not even relevant. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 807 (2011) (securities fraud plaintiffs "need not" "prove loss causation in order to obtain class certification").

28 (2d Cir. 2020).[7] Additionally, there is no real dispute that "a short seller's report can constitute a corrective disclosure." *Behrendsen v. Yangtze River Port & Logistics Ltd.*, 2021 WL 2646353, at \*15 (E.D.N.Y. June 28, 2021); *Gordon*, 2021 WL 911755, at \*4 (same).

### 2.     The Final Partial Disclosure Established Loss Causation

Courts have consistently held that announcements of government and internal investigations—such as iQIYI's announcement of the SEC, NASDAQ, and its internal investigations on August 13 and 14—constitute corrective disclosures and support loss causation. *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 388 (E.D.N.Y. 2013) ("[A]n announcement regarding a governmental investigation into the precise subject matter which forms the basis of the fraudulent practices at issue can qualify as a partial corrective disclosure."); *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 988 F. Supp. 2d 406, 428 (S.D.N.Y. 2013) (same); *Orthofix Int'l*, 89 F. Supp. 3d at 621 (Defendant's announcement that it would be "review[ing]" its prior revenue recognition practices established loss causation).[8]

When Defendants announced the SEC investigation and internal review of iQIYI's books and records on August 13, 2020 (after the market closed), and NASDAQ's investigation on August

---

[7] *See also In re China Mobile Games & Ent. Grp., Ltd Sec. Litig.*, 2016 WL 922711, at \*9 n.12 (S.D.N.Y. Mar. 7, 2016) ("The [short seller] report contains information that was not readily accessible, including [information from] . . . financial filings in Chinese."); *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 438 (S.D.N.Y. 2009) (Chinese-language article in Chinese news media not public information); *Longo v. OSI Sys., Inc.*, 2021 WL 1232678, at \*7 (C.D. Cal. Mar. 31, 2021) (same); *Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 942 (C.D. Cal. 2012) (same). Because such information was effectively not public, reliance on *Cent. States, Se. & Sw. Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72 (2d Cir. 2013) is misplaced.

[8] *See also In re IMAX Sec. Litig.*, 272 F.R.D. 138, 149 (S.D.N.Y. 2010) ("disclosure of a government investigation may be sufficient to adequately plead loss causation"); *Freudenberg*, 712 F. Supp. 2d at 203 (same); *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 165 (S.D.N.Y. 2008) (same); *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 287 (S.D.N.Y. 2008) (same); *In re Openwave Sys. Sec. Litig.*, 528 F. Supp. 2d 236, 252 (S.D.N.Y. 2007) (same).

14, 2020—which Defendants admitted they had known for months—the truth concealed by Defendants' misrepresentations was fully revealed, causing a 11.4% stock price decline. ¶¶159–163. Indeed, the investigations were directly related to iQIYI's financial and operating records as well as documents related to "certain acquisitions and investments that were identified in the [Wolfpack Report]." ¶¶159–160.[9] Because these investigations were foreseeable consequences of, and within the zone of risk concealed by, Defendants' misrepresentations, loss causation has been established under the Rule 8 pleading standard. *DoubleLine*, 323 F. Supp. 3d at 456.[10]

### III.   The Complaint Alleges Viable Securities Act Claims

#### A.   Plaintiffs Suffered Damages And Have Section 11 Standing

Defendants argue that Plaintiffs lack standing for the Section 11 claim because Plaintiffs supposedly did not suffer any loss under Section 11's damages formula. *iQIYI* MTD at 11. Under Section 11, damages are measured as: "the difference between the amount paid for the security [not to exceed the IPO price] and the ***value thereof*** as of the time such suit was brought." 15 U.S.C. § 77(k)(e)(1). Here, the IPO price of iQIYI's stock was $18 per share, and the closing price of iQIYI's stock on April 27, 2020—when the Section 11 claim was first brought—was $17.22. Plaintiffs have thus suffered damages and are entitled to recovery.

---

[9] *Janbay* is distinguishable because the court found the announcement of the investigation did not "link" the "investigation to the actual fraudulent conduct." 2012 WL 1080306, at *15. In contrast, the Complaint here links the investigations to facts "identified in the [Wolfpack Report]." ¶¶159–160. Defendants similarly cite *Meyer v. Greene*, 710 F.3d 1189 (11th Cir. 2013) for the proposition that announcements of investigations, with nothing more, cannot constitute a corrective disclosure. However, this Court in *Gentiva* discussed *Meyer's* holding and expressly rejected it—finding that "[a]fter this review of the authorities, ultimately, ***the Court rejects the idea that the disclosure of an investigation, absent an actual revelation of fraud, is not a corrective disclosure***." 932 F. Supp. 2d at 387–88 (emphasis added).

[10] Defendants also argue that the Complaint's Securities Act claims fail for lack of loss causation on the same grounds as the Exchange Act claims. However, Plaintiffs need not establish loss causation under Section 11.

Defendants incorrectly contend that the relevant date for measuring Section 11 damages is April 16, 2020, the filing date of the first complaint, on the basis that it contained a Section 10(b) claim that arises from the same events as the later complaints containing a Section 11 claim. *iQIYI MTD* at 11. However, the April 16, 2020 complaint did not ***allege any Section 11 claim***—the only fact relevant to this statutory analysis. The first complaint to allege a Section 11 claim—and thus the relevant date for assessing statutory damages—is the April 27, 2020 complaint. *See In re Broderbund/Learning Co. Sec. Litig.*, 294 F.3d 1201, 1204 (9th Cir. 2002) (Section 11 "damages must be 'measured by the difference between the amount paid for the security and its price at either the time it was sold or ***the date the Section 11 claim was filed***.'"); *Cent. Laborers' Pension Fund v. SIRVA, Inc.*, 2006 WL 2787520, at *11 (N.D. Ill. Sept. 22, 2006) (measuring damages based on complaint where "[p]laintiff first asserted its section 11 claims," rejecting argument that the proper complaint was the first complaint that only asserted Section 10(b) claims); *Merzin v. Provident Fin. Grp., Inc.*, 311 F. Supp. 2d 674, 686 (S.D. Ohio 2004) (measuring damages against date on which complaint alleged Section 11 claims instead of date of initial filing because it "would not comport with the interests of justice to allow . . . relat[ion] back to a [c]omplaint . . . for which no other party had standing to bring a Section 11 claim").

*In re Barclays Bank PLC Securities Litigation*, 2016 WL 3235290 (S.D.N.Y. June 9, 2016) does not compel a contrary conclusion. While the court there used the date on which the first complaint was filed, that complaint ***also contained Section 11 claims***, distinguishable from the facts here.[11]

---

[11] Thus, Defendants' other cited cases for this proposition fail for the same reasons. *iQIYI* MTD at 11. Additionally, reliance on *Alpern v. UtiliCorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) is inapposite because, there, plaintiff asked the court to apply the relation-back doctrine to save his section 11 claim, which is distinguishable from here, where Defendants attempt to defeat Plaintiffs' Section 11 claim. *Id.* at 1542–43; *SIRVA*, 2006 WL 2787520, at *10 (distinguishing *Alpern* for same reason). Nor does *Pierce v. Morris*, compel a different outcome since, unlike here,

11

Defendants also assert that Plaintiff Hershberger has no statutory damages for shares he sold before the lawsuit because that sale price exceeded the IPO price. *iQIYI* MTD at 11. Because Plaintiff Hershberger's damages and standing are only affected with respect to the shares he sold before the lawsuit, he continues to have damages and standing for the shares he held. (ECF No. 25-3). Accordingly, Defendants' argument is inconsequential to Plaintiff Hershberger's and the Class's right to recover damages for shares held after filing the lawsuit. At most, Defendants' argument boils down to Plaintiffs purportedly not being able to plead the exact amount of damages to which Plaintiff Hershberger is entitled. However, "[t]o survive a motion to dismiss, Plaintiffs need not plead their exact damages." *Plumbers' & Pipefitters' Local No. 562 Supplemental Plan & Tr. v. J.P. Morgan Acceptance Corp.*, 2012 WL 601448, at *9 (E.D.N.Y. Feb. 23, 2012); *City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Tr. Inc.*, 2010 WL 6617866, at *6–7 (E.D.N.Y. Dec. 23, 2010) ("[p]laintiffs allege that they have suffered damage in the form of a drop in the value of their investments. . . . While it remains to be seen whether [p]laintiffs can prove their damages, they need not set forth any more with respect to damages at the pleading stage.").[12]

**B.     The Complaint Securities Act Claims Are Not Subject to Heightened Pleading Standards**

**1.     The Section 11 Claim Does Not Sound In Fraud**

Defendants claim that the Complaint's Section 11 claim sounds in fraud because it is based on some of the same misrepresentations alleged in the Section 10(b) claim, and as such, the

---

the same plaintiff there filed both complaints so the court did not want to give that plaintiff "two bites at the apple." 2006 WL 2370343, at*4 (N.D. Tex. Aug. 16, 2006).

[12] Because Defendants do not contend that Plaintiff Hershberger did not retain any shares after selling some prior to the lawsuit, *In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281 (S.D.N.Y. 2003) is inapposite. In fact, *IPO* cuts against Defendants' other arguments concerning Plaintiffs supposedly not having damages because the share price on the date of suit was purportedly higher than the offering price. *IPO* rejected the same argument made by defendants there, holding that "[w]hile such [p]laintiffs may indeed be unable to prove damages, that is not an appropriate question at this stage." *Id.* at 351 n.80.

heightened pleading standards under Rule 9(b) apply. *iQIYI* MTD at 8–9. But Defendants cannot force a heightened pleading standard for a Section 11 claim simply because it contains similar statements to a Section 10(b) claim. "A Section 11 claim does not sound in fraud simply because it is based on acts that also support a claim for securities fraud under Section 10(b)." *In re CINAR Corp. Sec. Litig.*, 186 F. Supp. 2d 279, 308 (E.D.N.Y. 2002). Even if the same "false statements . . . provide the basis for both the Section 10(b) claims and the Section 11 claims," the Section 11 claims do not necessarily sound in fraud. *Id.* Thus, the heightened pleading standards under Rule 9(b) do not apply.[13]

Nor do Section 11 claims sound in fraud by containing phrases such as "materially false or misleading" or "untrue statements of material fact" since such phrases "merely track[] the language of Section 11." *In re Wachovia Equity Sec. Litig.*, 753 F. Supp. 2d 326, 375 (S.D.N.Y. 2011). Thus, "[b]ecause '[i]t is clear that the Second Circuit did not intend *Rombach* as an instruction that all § 11 pleadings should be subjected to the Rule 9(b) standard,' 'mere use of the statutory language is itself insufficient to render a complaint one that 'sounds in fraud.'" *Id.* (citations omitted); *In re CitiGroup Inc. Bond Litig.*, 723 F. Supp. 2d 568, 586 (S.D.N.Y. 2010) (same).[14]

Courts routinely allow plaintiffs to plead both Sections 10(b) and 11 claims in the alternative, without requiring heightened pleading standards for the Section 11 claims. *Fresno Cnty. Employees' Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 558 (S.D.N.Y. 2017) (finding that plaintiffs are "allowed to 'plead claims in the alternative'" and thus Section 11 claims do not

---

[13] Because Sections 10(b) and 11 can be based on the same misstatements, Defendants' cited cases (*iQIYI* MTD at 8) are inapposite.

[14] Based on that reasoning, Defendants' reliance on *Elan*, 2004 WL 1305845 is unavailing. Defendants' own cited case, *In re OSG Securities Litigation*, held that phrases such as "inaccurate and misleading" do not trigger Rule 9(b) pleading standards. 971 F. Supp. 2d 387, 405-06 (S.D.N.Y. 2013).

sound in fraud where the complaint "disclaims any allegations of fraud" and "is segregated into two parts"); *In re NIO, Inc. Sec. Litig.*, 2021 WL 3566300, at \*5 (E.D.N.Y. Aug. 12, 2021); *In re Jumei Int'l Holding Ltd. Sec. Litig.*, 2017 WL 95176, at \*3 (S.D.N.Y. Jan. 10, 2017) (same); *Silvercreek Mgmt., Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 448 (S.D.N.Y. 2017) (same, explaining that "mere presence of fraud allegations elsewhere in the complaint does not poison the well").[15] Even Defendants' cited case, *OSG*, found that a Section 11 claim that disclaimed any allegation of "scienter or fraudulent intent" and was addressed separately from the Section 10(b) claim did not sound in fraud—even though it used phrases such as "inaccurate and misleading." 971 F. Supp. 2d at 405–06.[16]

### 2. The Section 11 Defendants Are Not Subject To Heightened Pleading Standards

Despite Defendants' contention otherwise (*iQIYI* MTD at 9–10), the allegations against the Section 11 Defendants "are not subject to the heightened pleading requirements," even if the Section 10(b) Defendants were to benefit from Rule 9(b). *Rombach v. Chang*, 355 F.3d 164, 178 (2d Cir. 2004). The Second Circuit has held that even where a Section 11 claim sounds in fraud, Rule 9(b) does not apply to underwriters if the allegations against them "sound in negligence." *Id.* (Rule 9(b) did not apply to underwriters when complaint alleged: "each of the [u]nderwriter [d]efendants owed to the purchasers of the shares of [defendant] . . . the duty to make a reasonable

---

[15] *Jiajia Luo v. Sogou, Inc.* is distinguishable because, unlike here, that complaint was "replete with explicit claims of fraud," including that "defendants knew or recklessly disregarded that their statements were false and misleading." 465 F. Supp. 3d 393, 408 n.7 (S.D.N.Y. 2020).

[16] Defendants' cited cases are distinguishable because those complaints did not separate the claims. *See, e.g., In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F. Supp. 2d 452 (S.D.N.Y. 2006); *In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595 (S.D.N.Y. 2005); *In re Alcatel Sec. Litig.*, 382 F. Supp. 2d 513 (S.D.N.Y. 2005).

14

and diligent investigation of the statements contained in the [p]rospectus."); *Atlas*, 324 F. Supp. 2d at 503 (same).

The allegations against the Section 11 Defendants here sound in negligence. The Complaint alleges that they failed to conduct "an adequate and reasonable investigation into the business and operations of iQIYI, an undertaking known as a 'due diligence' investigation," which "was required of the [UW] Defendants in order to engage in the IPO." ¶313. The Complaint further alleges that the Section 11 Defendants breached their duty to conduct an adequate and reasonable investigation. ¶¶341–342. Notably, the portion of the Complaint alleging a Section 10(b) claim does not mention the underwriter Defendants. *CINAR*, 186 F. Supp. 2d at 308 (because fraud allegations "contain[ed] no mention" of a certain defendant, the Section 11 claim against that defendant "more clearly sound[ed] in strict liability, rather than fraud"); *Fresno*, 268 F. Supp. 3d at 558 (certain defendants were "not implicated by any fraud claims," and thus a "fair reading of the [complaint] does not reveal any allegations that could lead to an inference that [those] defendants were complicit in the fraud alleged against the 10(b) defendants"). As such, Plaintiffs "need allege no more than negligence to proceed under Section 11" against the Section 11 Defendants. *Rombach*, 355 F.3d at 171, 178; *see also In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 437 (S.D.N.Y. 2009) (Rule 9(b) inapplicable to allegations defendants reviewed and signed the registration statement and failed to conduct proper due diligence)

### 3.    Plaintiffs Are Not Required To Allege Scienter For Section 11

Plaintiffs are not required to establish scienter for Section 11 claims. *iQIYI* MTD at 10.[17] While "[c]laims that sound in fraud must satisfy the heightened pleading requirements of Rule

---

[17] Defendants' reliance on *Sogou*, 465 F. Supp. 3d at 408 is misplaced. None of the defendants in *Sogou* moved to dismiss on scienter grounds, and the court did not apply any scienter analysis in granting dismissal. Rather, the court merely observed that "*[w]here scienter is at issue*, the plaintiff must 'state with particularity facts giving rise to a strong inference that the defendant

15

9(b), [] ***that Rule does not add substantive elements such as scienter to any claim***." *In re Sanofi Sec. Litig.*, 87 F. Supp. 3d 510, 528 n.8 (S.D.N.Y. 2015), *aff'd sub nom. Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016); *id.* ("Defendants argue that plaintiffs' other federal claims 'sound in fraud' and therefore also require proof of scienter. [] ***That is wrong.***") (citing *City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*, 752 F.3d 173, 182 (2d Cir. 2014)); *In re HEXO Corp. Sec. Litig.*, 524 F. Supp. 3d 283, 303 (S.D.N.Y. 2021) (declining to test Securities Act claims for scienter despite finding they sounded in fraud); *Atlas*, 324 F. Supp. 2d at 503 (even if Section 11 claim sounded in fraud, plaintiffs still need not plead scienter); *Fuwei*, 634 F. Supp. 2d, at 434 (same)[18] Applying Rule 9(b) cannot add any substantive elements, such as scienter, to Plaintiffs' Section 11 claims. *See, e.g., McKenna v. Smart Techs. Inc.*, 2012 WL 1131935, at *21 (S.D.N.Y. Apr. 3, 2012) ("That the Amended Complaint sounds in fraud simply connotes the pleading standard that plaintiff must meet under procedural rules. It is axiomatic that procedural rules cannot

---

acted with the requisite state of mind.'" *Id*. (emphasis added) (quoting the PSLRA); *see also In re Initial Pub. Offering Sec. Litig.*, 241 F. Supp. 2d 281, 338 (S.D.N.Y. 2003) ("the PSLRA pleading requirements have no application to claims that arise under Section 11 or other provisions of the Securities Act").

[18] *Caiafa v. Sea Containers Ltd*., 2008 WL 11516813, at *5 (S.D.N.Y. May 15, 2008) (iQIYI MTD at 10 & n.6) is easily distinguished because there, "Plaintiffs [mistakenly] acknowledge[d] … the requirement to 'plead with particularity a strong inference of scienter….'" Here, Plaintiffs oppose the incorrect assertion that scienter must be pled when Rule 9(b) applies. Defendants' other cited cases either do not discuss scienter in the Section 11 context or do not expressly state if scienter was required. Given the litany of recent Second Circuit case law holding that scienter is never required under Section 11, and that *Rombach* did not create such a requirement, Defendants' other cited cases should likewise be rejected as they either fail to point to any Second Circuit authority that requires scienter, or they misinterpret *Rombach*. Defendants' contention that Rule 9(b) requires that scienter be pleased "with particularity" (iQIYI MTD at 10) is simply wrong. Rule 9(b) explicitly provides: "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

16

eviscerate substantive law, imposed by statute or otherwise.") (citing 28 U.S.C. § 2072(b) (procedural rules "shall not abridge, enlarge, or modify any substantive right")).[19]

The Court should reject Defendants' unsupported attempts to add a scienter requirement where no such requirement exists. *See, e.g., Pehlivanian v. China Gerui Advanced Materials Grp., Ltd.*, 2017 WL 1192888, at *9 (S.D.N.Y. Mar. 29, 2017) ("In this Circuit, the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) apply to Section 11 and 12(a)(2) claims that sound in fraud. However, neither Section 11 nor Section 12(a)(2) requires that a plaintiff allege the scienter or reliance elements of a fraud cause of action.").

## IV.    THE COMPLAINT ADEQUATELY ALLEGED SECTIONS 20(a) AND 15

Finally, Defendants urge the Court to dismiss the Complaint's Sections 20(a) and 15 claims only because the Complaint supposedly fails to plead primary liability; Defendants do not challenge that the Section 20(a) Defendants did in fact possess control. MTD at 12 n.9. Thus, because the Complaint adequately alleges Sections 10(b) and 11 claims and control, the Complaint likewise adequately alleges Sections 20(a) and 15 claims.

## V.    CONCLUSION

Accordingly, the Court should deny Defendants' motions to dismiss in their entirety.

---

[19] As Ninth Circuit recently explained, "[t]he mere fact that a plaintiff has included allegations of fraud will not by itself add a scienter element to every cause of action alleged in the complaint." *In re Finjan Holdings, Inc.*, No. 21-16702, 2023 WL 329413, at *9 (9th Cir. Jan. 20, 2023). In *Finjan*, the Ninth Circuit held that a complaint alleging claims under Section 14(e) of the Exchange Act need not plead scienter, even where Rule 9(b) applies due to the claims sound in fraud, because scienter is not an element of Section 14(e). *Id*. at *8. ("It is not enough that the complaint 'sounded in fraud' or that the allegations tend to expound a theory of fraud. ***The question is instead whether the cause of action itself has scienter as a required element***.").

DATED: January 30, 2023

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**
*/s/ Laurence M. Rosen*
Phillip Kim
Laurence M. Rosen
Jing Chen
Daniel Tyre-Karp
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
  lrosen@rosenlegal.com
  jchen@rosenlegal.com
  dtyrekarp@rosenlegal.com

**LABATON SUCHAROW LLP**
James W. Johnson
Michael H. Rogers
David J. Schwartz
James T. Christie
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
Email: jjohnson@labaton.com
  mrogers@labaton.com
  dschwartz@labaton.com
  jchristie@labaton.com

*Co-Lead Counsel for iQIYI Lead Plaintiffs and the Class*