UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
      :

IN RE iQIYI, INC. SECURITIES LITIGATION   : 20-cv-01830 (DG) (TAM)
      :
      : **ECF CASE**
      :
      : **Oral Argument Requested**
      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE *iQIYI* ACTION FOR FAILURE TO PLEAD SCIENTER, LOSS CAUSATION, AND STANDING

O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
(212) 326-2000

*Attorneys for Defendants Goldman Sachs (Asia) LLC, Credit Suisse Securities (USA) LLC, Merrill Lynch, Pierce, Fenner & Smith, Incorporated, China Renaissance Securities (Hong Kong) Limited, Citigroup Global Markets Inc., and UBS Securities LLC (the "Underwriter Defendants")*

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000

*Attorneys for Defendants iQIYI, Inc., Baidu, Inc., Yu Gong, Xiaodong Wang, Robin Yanhong Li, Qi Lu, Herman Yu, Victor Zhixiang Liang, and Giselle Manon*

Served: March 3, 2023

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................1

ARGUMENT...............................................................................................................................2

I.      PLAINTIFFS' EXCHANGE ACT CLAIMS SHOULD BE DISMISSED ......................2

        A.      Plaintiffs Fail To Allege a Strong Inference of Scienter......................................2

                1.      Plaintiffs Abandon Their Motive Allegations..............................................2

                2.      Plaintiffs Fail To Allege Conscious Misbehavior or Recklessness.............3

        B.      Plaintiffs Fail To Allege Loss Causation ..............................................................7

II.     PLAINTIFFS' SECURITIES ACT CLAIMS SHOULD BE DISMISSED.......................9

        A.      Plaintiffs Must Plead Scienter for Their Securities Act Claims,  But Fail to
                Do So.....................................................................................................................9

        B.      Plaintiffs Lack Standing Because They Have No Cognizable Damages..............12

        C.      There Is No Loss Causation for the Section 11 Claim.........................................13

CONCLUSION..........................................................................................................................13

**TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re Avon Securities Litigation*,
  No. 19-cv-01420 (CM), 2019 WL 6115349 (S.D.N.Y. Nov. 18, 2019) ...........................5

*Born v. Quad/Graphics, Inc.*,
  521 F. Supp. 3d 469 (S.D.N.Y. 2021) ........................................................................3

*In re Bristol Myers Squibb Co. Securities Litigation*,
  586 F. Supp. 2d 148 (S.D.N.Y. 2008) ......................................................................6

*Caiafa v. Sea Containers Ltd.*,
  331 Fed. App'x 14 (2d Cir. 2009) ............................................................................9

*Central States, Southeast & Southwest Areas Pension Fund v.
  Federal Home Loan Mortgage Corp.*,
  543 F. App'x 72 (2d Cir. 2013)................................................................................9

*Chapman v. Mueller Water Products, Inc.*,
  466 F. Supp. 3d 382 (S.D.N.Y. 2020) .......................................................................3

*In re Cinar Corp. Securities Litigation.*,
  186 F. Supp. 2d 279 (E.D.N.Y. 2002) .......................................................................9

*City of Westland Police & Fire Retirement System v. MetLife, Inc.*,
  129 F. Supp. 3d 48 (S.D.N.Y. 2015) .........................................................................7

*In re Corning*,
  No. 01-cv-6580 (CJS), 2004 WL 1056063 (W.D.N.Y. Apr. 9, 2004),
  *aff'd*, 2005 WL 714352 (2d Cir. Mar. 30, 2005)........................................................11

*Cozzarelli v. Inspire Pharmaceuticals Inc.*,
  549 F.3d 618 (4th Cir. 2008)..................................................................................10

*In re Elan Corp.*,
  No. 02-cv-865 (RMB) (FM), 2004 WL 1305845 (S.D.N.Y. May 18, 2004) ....................6

*Fresno County Employees Retirement Association v. comScore, Inc.*,
  268 F. Supp. 3d 526 (S.D.N.Y. 2017) ......................................................................11

*In re Fuwei Films Securities Litigation*,
  634 F. Supp. 2d 419 (S.D.N.Y. 2009) .......................................................................8

*In re Gentiva Securities Litigation*,
   932 F. Supp. 2d 352 (E.D.N.Y. 2013) ...................................................................6

*Greco v. Qudian Inc.*,
   No. 1:20-cv-577 (GHW), 2022 WL 4226022 (S.D.N.Y. Sept. 13, 2022).........................4

*Jackson v. Abernathy*,
   960 F.3d 94 (2d Cir. 2020)....................................................................................3

*In re Jumei International Holding Ltd. Securities Litigation*,
   No. 14-cv-9826 (WHP), 2017 WL 95176 (S.D.N.Y. Jan. 10, 2017) ..............................10

*Kalnit v. Eichler*,
   264 F.3d 131 (2d Cir. 2001)....................................................................................3

*Lea v. TAL Education Group*,
   837 F. App'x 20 (2d Cir. 2020)...............................................................................8

*Lilly v. State Teachers Retirement System of Ohio Pension Fund*,
   608 F.2d 55 (2d Cir. 1979)....................................................................................6

*In re Lions Gate Entertainment Corp. Securities Litigation*,
   165 F. Supp. 3d 1 (S.D.N.Y. 2016) ........................................................................5

*Lipow v. Net1 UEPS Technologies, Inc.*,
   131 F. Supp. 3d 144 (S.D.N.Y. 2015) ....................................................................5

*Longo v. OSI Systems, Inc.*,
   No. 17-cv-8841 (FMO) (SKx), 2021 WL 1232678
   (C.D. Cal. Mar. 31, 2021) ....................................................................................8

*In re Marsh & McLennan Cos. Securities Litigation*,
   501 F. Supp. 2d 452 (S.D.N.Y. 2006) ...................................................................11

*Maverick Fund, L.D.C. v. Comverse Technology, Inc.*,
   801 F. Supp. 2d 41 (E.D.N.Y. 2011)......................................................................8

*Menaldi v. Och-Ziff Capital Management Group LLC*,
   164 F. Supp. 3d 568 (S.D.N.Y. 2016) ...................................................................6

*In re Nio, Inc., Securities Litigation*,
   19-cv-1424 (NGG) (JRC), 2021 WL 366300 (E.D.N.Y. Aug. 12, 2021) .......................10

*Nurlybayev v. SmileDirectClub, Inc.*,
   205 A.D.3d 455 (1st Dep't 2022)...........................................................................12

*Pierce v. Morris*,
No. 4:03-cv-026-Y (TRM), 2006 WL 2370343 (N.D. Tex. Aug. 16, 2006)...................12

*Plumbers & Pipefitters National Pension Fund v. Davis*,
No. 1:16-cv-3591 (GHW), 2020 WL 1877821 (S.D.N.Y. Apr. 14, 2020)........................5

*Plumbers & Pipefitters National Pension Fund v. Orthofix International N.V.*,
89 F. Supp. 3d 602 (S.D.N.Y. 2015) .................................................................8

*In re Renewable Energy Group Securities Litigation*,
No. 22-cv-335, 2022 WL 14206678 (2d Cir. Oct. 25, 2022) ...........................................3

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004).................................................................................9, 11

*Rubke v. Capital Bancorp Ltd.*,
551 F.3d 1156 (9th Cir. 2009).................................................................................10

*Silvercreek Management, Inc. v. Citigroup, Inc.*,
248 F. Supp. 3d 428 (S.D.N.Y. 2017) ...................................................................10

*Sinay v. CNOOC Ltd.*,
554 F. App'x 40 (2d Cir. 2014).................................................................................3

*In re Skechers USA, Inc. Securities Litigation*,
444 F. Supp. 3d 498 (S.D.N.Y. 2020) ...................................................................3

*Snellink v. Gulf Resources, Inc.*,
870 F. Supp. 2d 930 (C.D. Cal. 2012) ...................................................................8

*In re State Street Bank & Trust Co. Fixed Income Funds Investment Litigation*,
774 F. Supp. 2d 584 (S.D.N.Y. 2011) ...................................................................13

*Tongue v. Sanofi*,
816 F.3d 199 (2d Cir. 2016).................................................................................11

*In re Turquoise Hill Resources Ltd. Securities Litigation*,
No. 13-cv-8846 (LGS), 2014 WL 7176187 (S.D.N.Y. Dec. 16, 2014) ........................4, 5

*United States v. Rittweger*,
No. 02-cr-122 (JGK), 2003 WL 22290228 (S.D.N.Y. Oct. 6, 2003)................................6

*Wu v. GSX Techedu Inc.*,
No. 2:20-cv-04457 (ES) (JRA), 2023 WL 2207422 (D.N.J. Feb. 24, 2023).....................6

*Zhong Zheng v. Pingtan Marine Enterprise Ltd.*,
    379 F. Supp. 3d 164 (E.D.N.Y. 2019) ............................................................................8

**STATUTES**

15 U.S.C. § 77k(e) ....................................................................................................................12

Defendants in the *iQIYI* Action ("Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the *iQIYI* Complaint for failure to plead scienter, loss causation, and standing.[1]

## PRELIMINARY STATEMENT

Plaintiffs' Opposition fails to rebut their multiple independent pleading failures and confirms that the *iQIYI* Complaint should be dismissed in its entirety with prejudice.

First, the Opposition confirms that the *iQIYI* Complaint pleads no facts supporting the requisite strong inference of scienter, offering nothing but a bare-bones motive claim. And because Plaintiffs cannot allege any particularized allegations in the *iQIYI* Complaint that would establish conscious misbehavior or recklessness, the Opposition relies primarily on generic references to the core operations doctrine. At bottom, Plaintiffs point to no specific information contrary to Defendants' statements to support an inference of fraud. And Plaintiffs concede (as they must) that the *iQIYI* Complaint makes no scienter allegations at all against the Securities Act Defendants, whose alleged conduct Plaintiffs also concede is the same as that of the Exchange Act Defendants.

Second, Plaintiffs' claims independently fail for lack of causation. The Opposition cannot dispute that iQIYI's ADS price ***increased*** the day the Wolfpack Report was released, and on six of the next seven trading days. Plaintiffs point to the one day during that period (the day after the Wolfpack Report) where there was a downward blip, claiming it was caused by the report. But no

---

[1]    Capitalized terms not defined herein have the meanings ascribed to them in Defendants' Joint Memorandum of Law in Support of the Defendants' Motions to Dismiss the *iQIYI* Action for Failure to Plead Scienter, Loss Causation, and Standing ("Opening Brief" or "Br."). Defendants hereby incorporate by reference Defendants' Joint Reply Memorandum of Law in Further Support of the Defendants' Motions to Dismiss for Failure to Allege Any Material Misstatement or Omission ("Common Reply"). "Opposition" or "Opp." refers to Lead Plaintiffs' Memorandum of Law in Opposition to Defendants' Motions to Dismiss the *iQIYI* Action for Failure to Plead Scienter, Loss Causation, and Standing. All citations and internal quotation marks are omitted, and all emphases in quotations are added, unless otherwise indicated.

authority supports such cherry-picking, and Plaintiffs' argument contradicts their own allegations that iQIYI's ADS trade in an efficient market and their trading price therefore promptly incorporates all material public information. In any event, there was no corrective disclosure. Short-seller reports that repackage publicly available information—even foreign information—do not constitute corrective disclosures, nor does the announcement of an investigation that revealed no new information to the market.

Finally, Plaintiffs' arguments likewise do not salvage their Securities Act claims. The Opposition confirms those claims are based on the exact same factual allegations as the Exchange Act claims. Under controlling Second Circuit authority, therefore, the Securities Act claims must satisfy Rule 9(b)'s stringent fraud pleading requirements. They do not. The Opposition argues that Rule 9(b) does not apply because Plaintiffs disclaimed fraud allegations for the Securities Act claims and segregated those claims from the Exchange Act claims. But such disclaimers are insufficient, and Plaintiffs have consistently blurred the line between the fraud and non-fraud claims—even in their Opposition—by lumping together all the Defendants in ascribing fraudulent intent. Furthermore, Plaintiffs have no damages under the Securities Act's formula—and thus lack standing—because iQIYI's ADS price exceeded its IPO price when this action was first filed. The Opposition urges the Court to use the ADS price on the date of the ***third-filed*** complaint, but such date-shopping finds no support in the text of the Securities Act's or applicable caselaw.

## ARGUMENT

I.    **PLAINTIFFS' EXCHANGE ACT CLAIMS SHOULD BE DISMISSED**

A.    **Plaintiffs Fail To Allege a Strong Inference of Scienter**

1.    **Plaintiffs Abandon Their Motive Allegations**

The Opposition rightly abandons any argument that Defendants Li and Baidu's desire to improve iQIYI's profitability constitutes motive to commit securities fraud. (*iQIYI* Compl.

2

¶¶ 190-91.)  *Chapman v. Mueller Water Prods., Inc.*, 466 F. Supp. 3d 382, 406 n.7 (S.D.N.Y. 2020) (dismissing claims as abandoned where the opposition did not advance arguments in support of those allegations).   In a footnote, Plaintiffs assert that Defendants "had a motive to mischaracterize the Xin'ai transaction" to mask the divergence of membership services revenues and deferred revenues (Opp. at 6 n.4), but Plaintiffs cite no particularized factual allegations to support that claim.  Moreover, Plaintiffs still fail to allege any "concrete benefits" that anyone gained by allegedly mischaracterizing the Xin'ai transaction.  *See Kalnit v. Eichler*, 264 F.3d 131, 139 (2d Cir. 2001).

**2.      Plaintiffs Fail To Allege Conscious Misbehavior or Recklessness**

The Opposition's recklessness arguments fare no better.  Relying principally on the "core operations" doctrine, Plaintiffs argue that iQIYI's management ***must have known*** of the alleged fraud given the purported importance of iQIYI's Daily Active Users ("DAUs"), revenue, deferred revenue figures, and the Xin'ai investment.  (Opp. at 3-4.)  To the extent the core operations doctrine even survives the passage of the PSLRA, *see In re Renewable Energy Grp. Sec. Litig.*, No. 22-cv-335, 2022 WL 14206678, at *3 n.4 (2d Cir. Oct. 25, 2022), courts routinely hold that allegations of the core importance of information are insufficient to plead scienter, "absent particularized allegations of ***specific information*** Defendants had at their disposal that rendered their statements false or misleading."  *Born v. Quad/Graphics, Inc*., 521 F. Supp. 3d 469, 493 (S.D.N.Y. 2021); *see, e.g.*, *Jackson v. Abernathy*, 960 F.3d 94, 99 (2d Cir. 2020) ("core importance" argument was "plainly insufficient to raise a strong inference" of scienter); *Sinay v. CNOOC Ltd.*, 554 F. App'x 40, 42 (2d Cir. 2014) (plaintiffs cannot "sufficiently plead[] scienter based on what [defendant] 'must have known'"); *In re Skechers USA, Inc. Sec. Litig.*, 444 F. Supp.

3

3d 498, 528 (S.D.N.Y. 2020) ("In the utter absence of any other evidence of fraudulent intent, the [core operations] doctrine itself is insufficient to give rise to the necessary inference.").[2]

Plaintiffs cite no case since the PSLRA—and Defendants are aware of none—relying exclusively on the core operations theory to plead scienter, as Plaintiffs urge here, without particularized allegations of the specific contrary information to which defendants had access or knew.  It is not enough to allege that iQIYI's and Baidu's executives had access to general information about the subjects at issue; Plaintiffs "***must specifically identify*** the reports or statements containing" information contrary to their public statements.  *Greco v. Qudian Inc.*, No. 1:20-cv-577 (GHW), 2022 WL 4226022, at *26 (S.D.N.Y. Sept. 13, 2022) ("Scienter . . . cannot be inferred solely from the fact that, due to the defendants' board membership or executive managerial position, they ***had access*** to the company's internal documentation as well as any adverse information.").  Plaintiffs devote much of their Opposition to arguing that DAUs, revenue, deferred revenue figures, and the Xin'ai investment were important to iQIYI's business but identify no specific information at Defendants' disposal that contradicted any of their public statements.  (Opp. at 3-4.)  The only documents Plaintiffs cite—financial statements related to Xin'ai Sports—are not contrary to iQIYI's accounting for the Xin'ai Sports venture in its U.S. public filings (*see* Common MTD at 23-26; Common Reply at 7-8), and Plaintiffs fail to allege that any particular Defendant had those documents.

Plaintiffs' reliance on iQIYI's SOX certifications adds nothing to their inadequate scienter allegations.  (Opp. at 6.)  *See, e.g.*, *In re Turquoise Hill Res. Ltd. Sec. Litig.*, No. 13-cv-8846 (LGS), 2014 WL 7176187, at *7 (S.D.N.Y. Dec. 16, 2014) (allegations regarding individual defendants'

---

2    By contrast, in the cases Plaintiffs cite (Opp. at 3-4), the complaints identified specific contrary information that the defendants allegedly knew or to which they had access.

4

SOX certifications insufficient to plead scienter absent particularized allegations showing the certifications "were not honestly and reasonably believed to be true when made").[3]

Plaintiffs also fail in attempting to plead scienter based on iQIYI's supposed "delay" in announcing the SEC and NASDAQ investigations. (Opp. at 5.) *See Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 167 (S.D.N.Y. 2015) ("[T]he government investigations cannot bolster allegations of scienter that do not exist, and, as currently plead, the government investigations are just that, investigations."). Plaintiffs claim that this alleged delay is evidence of an effort to conceal wrongdoing. (Opp. at 5 n.3.) But Defendants had no duty to disclose the SEC and NASDAQ investigations, so any alleged delay in their disclosure is no indication of an intent to defraud. *See In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) ("[A] government investigation, without more, does not trigger a generalized duty to disclose.").[4] Disclosing those investigations (regardless of timing), without any legal obligation to do so, shows prudence and candor—not conscious misbehavior or recklessness. Plaintiffs' cases also confirm that "***an***

---

[3]   Plaintiffs assert that *Turquoise Hill* is distinguishable because Plaintiffs allege "Gong and Wang either knew or were reckless in not knowing that iQIYI's figures were inaccurate." (Opp. at 7 n.5.) But *Turquoise Hill* rejected virtually identical conclusory allegations as insufficient. *See Turquoise Hill*, 2014 WL 7176187, at *4 (allegation that defendants "'knew and/or recklessly disregarded' that 'the public documents and statements issued . . . were materially false and misleading'"). In contrast, the two cases Plaintiffs cite involved what is lacking here: particularized factual allegations showing defendants knew of the alleged misrepresentation. *See Plumbers & Pipefitters Nat'l Pension Fund v. Davis*, No. 1:16-cv-3591 (GHW), 2020 WL 1877821, at *14 (S.D.N.Y. Apr. 14, 2020) (defendants allegedly "were told that their strategy had a 'Ponzi Scheme'-like quality"); *In re Avon Sec. Litig.*, No. 19-cv-01420 (CM), 2019 WL 6115349, at *19 (S.D.N.Y. Nov. 18, 2019) (defendants allegedly were "in charge" of decisions related to the alleged fraud and "were frequently updated about the consequences").

[4]   Plaintiffs assert, without any explanation, that *Lions Gate* is "irrelevant" (Opp. at 5 n.3), yet it, too, involved Exchange Act claims predicated on defendants' failure to disclose an SEC investigation. The court found that, "in the absence of a pre-existing duty to disclose," plaintiffs failed to adequately allege scienter. *Lions Gate*, 165 F. Supp. 3d at 24.

5

***investigation alone is not sufficient*** to give rise to a requisite cogent and compelling inference of scienter." *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 380 (E.D.N.Y. 2013).[5]

Finally, iQIYI's denial of wrongdoing after the release of the Wolfpack Report also does not support an inference of scienter. (Opp. at 5.) As an initial matter, Plaintiffs have not alleged any facts showing those denials were false. (Common MTD at 26; Common Reply at 2.) *See Wu v. GSX Techedu Inc.*, No. 2:20-cv-04457 (ES) (JRA), 2023 WL 2207422, at *14 (D.N.J. Feb. 24, 2023) ("There are no particularized facts showing how . . . the Individual Defendants' direct denials of the short-seller reports, were false" because "the Amended Complaint does not contain any specific facts to show that the Individual Defendants would have seen a particular document or report, or had a conversation . . . that would alert them to the fraudulent scheme."); *see also In re Elan Corp.*, No. 02-cv-865 (RMB) (FM), 2004 WL 1305845, at *23 (S.D.N.Y. May 18, 2004). Notably, in the almost three years since the iQIYI press release, no proof of any misstatements has emerged, iQIYI has not restated any of its financials, and no company or individual has been subjected to any fines or sanctions in connection with any of the Wolfpack Report allegations.[6]

That iQIYI denied the allegations "without first making any internal investigation" does not suggest scienter because the Wolfpack Report's significant flaws were obvious on its face.

---

[5]  In the cases Plaintiffs cite, the defendants did not merely "delay" announcing an investigation; they affirmatively misrepresented their potential liability. *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 585 (S.D.N.Y. 2016) (defendants affirmatively "misrepresent[ed] their exposure to civil and criminal liability" despite knowing "about the SEC-DOJ Investigation"); *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 168 (S.D.N.Y. 2008) (defendant "provided a false certification").

[6]  In contrast, the cases Plaintiffs cite involved denials in the face of significant evidence demonstrating the representations were false. *See Lilly v. State Tchrs. Ret. Sys. of Ohio Pension Fund*, 608 F.2d 55, 61-62 (2d Cir. 1979) (defendants had received a tip regarding problems with loans that they did not disclose and made "arguably false exculpatory statements"); *United States v. Rittweger*, No. 02-cr-122 (JGK), 2003 WL 22290228, at *3-5 (S.D.N.Y. Oct. 6, 2003) (defendants made false representations to investors about the control of their accounts and fictitious investments).

(Opp. at 5.)  iQIYI denied the allegations because "the Company *believe[d]* that the [Wolfpack Report] contain[ed] numerous errors, unsubstantiated statements and misleading conclusions and interpretations regarding information relating to the Company." (*iQIYI* Compl. ¶ 93.)  In addition, iQIYI's immediate denial—the very same day as the Wolfpack Report's release—could not possibly have misled a reasonable person into believing the Company had already, in a matter of hours, conducted an internal investigation. *See City of Westland Police & Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 81 (S.D.N.Y. 2015) (company's denial of wrongdoing did not support securities fraud claims absent allegations showing that "(1) [defendant] did not actually believe, contemporaneously with its statements, that the various allegations were 'without merit,' or (2) [defendant's] opinion—i.e., that the allegations lacked merit—would mislead a reasonable person reading the Company's financial statements fairly and in context").  Because Plaintiffs have failed to plead conscious misbehavior or recklessness, their Exchange Act claims must be dismissed.

### B.    Plaintiffs Fail To Allege Loss Causation

The Opposition also confirms that Plaintiffs have not adequately pleaded loss causation. Plaintiffs' Opposition does not (and cannot) dispute that iQIYI's ADS price *increased* following the April 7, 2020 10:35 a.m. release of the Wolfpack Report, closing 3.22% above the previous day. (Ex. B at 12.)  iQIYI's ADS price continued to increase for six of the next seven trading days. (*Id.*)  Plaintiffs urge the Court to ignore these increases because of a single-day decline *the day after* the Wolfpack Report. (Opp. at 7-8.)  But Plaintiffs point to no facts suggesting that this belated price movement was related to the report.  Plaintiffs' argument also contradicts their allegations that the market for iQIYI's ADS is "efficient" and "promptly digested current information regarding iQIYI." (*iQIYI* Compl. ¶¶ 169, 209.)  Assuming the truth of those allegations, iQIYI's ADS price would have fallen the *same day* that the Wolfpack Report was published.  It did not.  In addition, none of Plaintiffs' cases supports their argument, as they

7

involved an immediate decline that continued over the course of two days. *See Maverick Fund, L.D.C. v. Comverse Tech., Inc.*, 801 F. Supp. 2d 41, 48-49, 54 (E.D.N.Y. 2011) (loss causation established where the stock price dropped on the day of the disclosure, and then continued to drop over the next two days); *Plumbers & Pipefitters Nat'l Pension Fund v. Orthofix Int'l N.V.*, 89 F. Supp. 3d 602, 608 (S.D.N.Y. 2015) (same).

Plaintiffs contend that the Wolfpack Report contained non-public information because it relied on publicly available Chinese sources. (Opp. at 8.) But disclosures that repackage already-public information are not "corrective" even when they rely on "foreign sources" such as the foreign news articles Plaintiffs rely on here. *Zhong Zheng v. Pingtan Marine Enter. Ltd.*, 379 F. Supp. 3d 164, 178 (E.D.N.Y. 2019). Here, similar to *Zhong Zheng*, the alleged corrective disclosure relied exclusively on publicly available media reports and industry reports, which the Opposition itself admits. (Opp. at 8; *see also* Ex. H at 36 (Wolfpack Report explicitly stating that "*all Information . . . has been obtained from public sources*").) This alone warrants dismissal.[7]

The Opposition also contends that iQIYI's announcement of the SEC and NASDAQ investigations constitutes a corrective disclosure because it was focused on the same subject matter as some of the alleged misstatements. (Opp. at 9-10.) But Plaintiffs ignore the fundamental requirement that the disclosure reveal *new* information to the market. *See Cent. States, Se. & Sw.*

---

[7]  In contrast, the corrective disclosures in the cases on which Plaintiffs rely included information from non-public sources, such as "interviews of former employees," *Lea v. TAL Education Group*, 837 F. App'x 20, 28 (2d Cir. 2020), which the Wolfpack Report did not. *See also Longo v. OSI Sys., Inc.*, No. 17-cv-8841 (FMO) (SKx), 2021 WL 1232678, at *7 (C.D. Cal. Mar. 31, 2021) ("[A]n in-person visit to Albania was required to obtain the [underlying] document [] disclosed in the [short-seller] [r]eport."); *Snellink v. Gulf Res., Inc.*, 870 F. Supp. 2d 930, 937, 942 (C.D. Cal. 2012) (noting that certain of defendant's filings were not publicly available because authorization of a company representative was required for access). And *Fuwei Films* did not involve loss causation at all. There, the court was considering whether there is a duty to disclose publicly available information, rendering the case inapposite. *In re Fuwei Films Sec. Litig.*, 634 F. Supp. 2d 419, 437-38 (S.D.N.Y. 2009).

*Areas Pension Fund v. Fed. Home Loan Mortg. Corp.*, 543 F. App'x 72, 75 (2d Cir. 2013) (no loss causation where plaintiff did "not identify how the alleged corrective disclosures even purported to reveal some then-undisclosed *fact* with regard to the specific misrepresentations alleged in the complaint" (emphasis in original)).  The mere fact that the SEC and NASDAQ were looking into the short seller's accusations reveals nothing about the veracity of those accusations or the accuracy of iQIYI's prior statements.[8]   In any event, the disclosure of the investigations is insufficient to establish loss causation because even after the announcement, iQIYI's ADS price held steady.  (*See* Ex. B at 14.)  Plaintiffs' failure to plead loss causation is fatal to their claim.

## II.     PLAINTIFFS' SECURITIES ACT CLAIMS SHOULD BE DISMISSED

### A.     Plaintiffs Must Plead Scienter for Their Securities Act Claims, But Fail to Do So

Plaintiffs do not deny that the alleged misstatements underlying their Securities Act claims are also the subject of their fraud-based Exchange Act Claims.  Rather, they argue that this fact alone does not mean their Section 11 claim sounds in fraud.  (Opp. at 13.)  But the only case they cite for this proposition—*In re Cinar Corp. Sec. Litig.*, 186 F. Supp. 2d 279 (E.D.N.Y. 2002)— has not been good law for nearly two decades, since the Second Circuit's subsequent decision in *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004).  There, the Court held that Securities Act claims sound in fraud whenever they arise from "the same course of conduct that would support a Rule 10b–5 claim." *Id.* at 171.  The Second, Fourth, and Ninth Circuits have all since reiterated that holding.[9]

---

8    Plaintiffs' cases (Opp. at 9-10) are inapposite because the investigation announcements there either were the first indication of an issue with defendant's disclosures or revealed new information about the subjects at issue.

9    *See Caiafa v. Sea Containers Ltd.*, 331 Fed. App'x 14, 16 (2d Cir. 2009) (applying Rule 9(b) where "plaintiffs' Section 11 claim relies on the same factual allegations that served as a

*(cont'd)*

9

Plaintiffs nevertheless contend that they should be allowed to plead Section 10(b) and Section 11 claims in the alternative without Rule 9(b) applying to the Securities Act claims. (Opp. at 13-14.)  But as the authority Plaintiffs cite makes clear, that is true only where the complaint makes "it easy to distinguish" between fraud and non-fraud claims.  *In re Jumei Int'l Holding Ltd. Sec. Litig.*, 14-cv-9826 (WHP), 2017 WL 95176, at *3 (S.D.N.Y. Jan. 10, 2017).  That is not the case here.   The Complaint accuses of fraud not only the iQIYI Defendants, but also the Underwriters, by lumping them together with the other Defendants in alleging that they made misleading statements in the offering materials. (*See, e.g.*, *iQIYI* Compl. ¶¶ 326, 328.)  The Complaint specifically levels knowledge allegations at the Underwriters. (*See id.* ¶ 313(d) ("[T]he Underwriters **knew of**, or in the exercise of reasonable care should have known of, iQIYI's existing problems as stated herein.").)  Plaintiffs doubled down on this tactic in their Opposition, where they again accuse **all** the Defendants of fraudulent misconduct. (*See, e.g.*, Common Opp. at 2 ("In order to raise $2.25 billion in its IPO at the highest possible price per share, **Defendants** inflated iQIYI's viewership figures[.]"); *id.* at 5 ("**Defendants** inflated key metrics to make iQIYI appear more successful."); *id.* at 6 ("**Defendants** materially inflated iQIYI's deferred revenue from 2015 to 2017.").)  At bottom, Plaintiffs cannot escape what they originally alleged: "**Fraud** is the only plausible explanation" for the alleged misstatements underlying both their Securities Act and Exchange Act claims.).)  (*Compare* ECF No. 84 ¶ 277, *with iQIYI* Compl. ¶ 276.)[10]

---

basis for their Section 10(b) claim"); *Rubke v. Capital Bancorp Ltd.*, 551 F.3d 1156, 1161 (9th Cir. 2009); *Cozzarelli v. Inspire Pharm. Inc.*, 549 F.3d 618, 629 (4th Cir. 2008) (Rule 9(b) applies to Section 11 claim where "[t]he complaint also claims that the false statements in the prospectuses support plaintiffs' Exchange Act counts").

[10] Plaintiffs' cases are easily distinguished. *See In re Nio, Inc., Sec. Litig.*, 19-cv-1424 (NGG) (JRC), 2021 WL 366300, at *5 (E.D.N.Y. Aug. 12, 2021) (Securities Act claims alleged "Defendants' failure to make a 'a **reasonable** investigation,'" not that they knowingly made false statements); *Silvercreek Mgmt, Inc. v. Citigroup, Inc.*, 248 F. Supp. 3d 428, 448 (S.D.N.Y. 2017) (complaint alleged only failure to "ma[k]e a **reasonable** investigation" or

*(cont'd)*

Plaintiffs do not even attempt to argue that they have pleaded the Securities Act Defendants' scienter, tacitly conceding the point. Instead, they argue that scienter is never required for a Section 11 claim. (*See* Opp. at 15-17.) But that is wrong, as more than a quarter-century of caselaw shows. (*See* Br. at 10 n.7 (collecting cases).) The Second Circuit's decision in *Tongue v. Sanofi*, 816 F.3d 199 (2d Cir. 2016), on which Plaintiffs rely, is not to the contrary. (*See* Opp. at 15-16.) There, the court affirmed only the trial court's holding that the complaint failed to plead falsity, not the trial court's dicta—without analysis—that Section 11 claims sounding in fraud do not require particularized scienter allegations. *Tongue*, 816 F.3d at 208.

Applying Rule 9(b)'s stringent pleading requirements here also advances the Rule's important purposes. As the Second Circuit has repeatedly emphasized, "[t]he particularity requirement of Rule 9(b) serves to . . . 'safeguard a defendant's reputation from improvident charges of wrongdoing, and to protect a defendant against the institution of a strike suit.'" *Rombach*, 355 F.3d at 171 (quoting *O'Brien v. Nat'l Property Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991)). Having leveled serious allegations of fraud against all the Defendants, Plaintiffs should not be allowed to skirt Rule 9(b)'s particularity standards. *Id.*[11] Because

---

"possess[] ***reasonable*** grounds for believing" challenged statements in offering materials); *Fresno Cnty. Emps. Ret. Ass'n v. comScore, Inc.*, 268 F. Supp. 3d 526, 558 (S.D.N.Y. 2017) ("[A] fair reading of the [complaint] does not reveal any allegations that could lead to an inference that the [Section 11] defendants were complicit in the fraud.").

[11] *See also In re Marsh & McLennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 492 (S.D.N.Y. 2006) ("Allowing plaintiffs to allege fraud over nine hundred paragraphs and then withdraw those claims for eight paragraphs in order state a Section 11 claim eviscerates Rule 9(b)'s mandate to safeguard a defendant's reputation from improvident claims of wrongdoing."); *In re Corning*, No. 01-cv-6580 (CJS), 2004 WL 1056063, at *9 (W.D.N.Y. Apr. 9, 2004) (applying Rule 9(b) to Section 11 claim, recognizing that "[f]raud allegations may damage a defendant's reputation regardless of the cause of action in which they appear"), *aff'd*, 2005 WL 714352 (2d Cir. Mar. 30, 2005).

11

Plaintiffs have indisputably failed to plead scienter for the Securities Act Defendants, the Section 11 claim against them should be dismissed.

### B.    Plaintiffs Lack Standing Because They Have No Cognizable Damages

Plaintiffs' Securities Act claims also should be dismissed because Plaintiffs have no loss under the statutory damages formula in Section 11(e) of the Securities Act, 15 U.S.C. § 77k(e). Plaintiffs claim that damages should be measured from the date of the third-filed complaint, when the Section 11 claims were first asserted, rather than from the time the suit was brought.  (Opp. at 11.)  But where—as here—the complaints arise from the same set of events and are based on statements in the same offering documents, the proper date is the filing of the first-filed complaint. *See Nurlybayev v. SmileDirectClub, Inc.*, 205 A.D.3d 455, 457 (1st Dep't 2022) ("[F]ederal courts have tried to prevent the practice of 'date shopping' for Securities Act § 11 damages by directing that damages are to be calculated as of the date of filing of the first action.").  Plaintiffs' approach encourages gamesmanship—i.e., to "delay filing Securities-Act claims until stock prices fall." *Pierce v. Morris*, No. 4:03-cv-026-Y (TRM), 2006 WL 2370343, at *4 (N.D. Tex. Aug. 16, 2006). Because iQIYI's ADS price when this lawsuit was filed on April 16, 2020 ($19.24) *exceeds* the IPO price ($18.00), Plaintiffs have no statutory damages with respect to shares they still hold. (ECF No. 25.4 at 1-2; ECF No. 25.3 at 6.)[12]

Lastly, the Opposition does not dispute that Plaintiff Hershberger has no damages for the shares he sold before the lawsuit, as that sale price *exceeded* the IPO price.  (Opp. at 12; ECF No. 25.4 at 2.)  With respect to the shares that Hershberger retained, and as is true for all Plaintiffs, there can be no damages because the ADS price when the complaint was first filed exceeds the IPO price.  (ECF No. 25.4 at 1-2; ECF No. 25.3 at 6.)  Plaintiffs attack a strawman in arguing that

---

[12]    To the extent Plaintiffs' cited cases held otherwise, they were wrongly decided.  Additionally, all are out-of-Circuit and not binding here.

they do not have to plead "the exact amount of damages." (Opp. at 12.) The undisputed facts establish that Hershberger has *zero* damages. Plaintiffs' Securities Act claims fail because they have not suffered any Section 11 damages.

### C.    There Is No Loss Causation for the Section 11 Claim

As the Securities Act Defendants showed, there is likewise no loss causation for Plaintiffs' Section 11 claim. (Br. at 12.) Aside from the arguments Plaintiffs advance in favor of loss causation for their Exchange Act claims (which are defective for the reasons described above, *see supra* at 7-9), their only other response is a footnote contention—without citation—that they "need not" establish loss causation under Section 11. (Opp. at 10 n.10.) Regardless, courts dismiss Securities Act claims where, as here, "it is apparent on the face of the complaint that the alleged loss is not causally connected to the misrepresentations at issue." *In re State St. Bank & Tr. Co. Fixed Income Funds Inv. Litig.*, 774 F. Supp. 2d 584, 588 (S.D.N.Y. 2011).

### CONCLUSION

For the foregoing reasons, and those demonstrated in the Common Reply, the *iQIYI* Action should be dismissed in its entirety with prejudice.

13

Dated: New York, New York
   March 3, 2023

                   Respectfully submitted,

/s/ William J. Sushon        /s/ Robert A. Fumerton

Jonathan Rosenberg        Scott D. Musoff
William J. Sushon         Robert A. Fumerton
O'MELVENY & MYERS LLP    Michael C. Griffin
7 Times Square         SKADDEN, ARPS, SLATE,
New York, New York 10036     MEAGHER & FLOM LLP
(212) 326-2000         One Manhattan West
jrosenberg@omm.com       New York, New York 10001
wsushon@omm.com        Telephone: (212) 735-3000
                scott.musoff@skadden.com
*Attorneys for Defendants Goldman Sachs* robert.fumerton@skadden.com
*(Asia) LLC; Credit Suisse Securities (USA)* michael.griffin@skadden.com
*LLC; Merrill Lynch, Pierce, Fenner & Smith*
*Incorporated; China Renaissance Securities* *Attorneys for Defendants iQIYI, Inc.,*
*(Hong Kong) Limited; Citigroup Global*  *Baidu, Inc., Yu Gong, Xiaodong Wang, Robin*
*Markets Inc.; and UBS Securities LLC*  *Yanhong Li, Qi Lu, Herman Yu, Victor*
                *Zhixiang Liang, and Giselle Manon*