UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
            :

IN RE iQIYI, INC. SECURITIES LITIGATION   :  20-cv-01830 (DG) (TAM)
            :

            : **ECF CASE**
            :

            : **Oral Argument Requested**
            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
            :

IN RE BAIDU, INC. SECURITIES LITIGATION   :  20-cv-3794 (DG) (TAM)
            :

            : **ECF CASE**
            :

            : **Oral Argument Requested**
            :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS THE *iQIYI* AND *BAIDU* ACTIONS

| | |
|---|---|
| O'MELVENY & MYERS LLP<br>7 Times Square<br>New York, New York 10036<br>(212) 326-2000 | SKADDEN, ARPS, SLATE,<br>  MEAGHER & FLOM LLP<br>One Manhattan West<br>New York, New York 10001<br>(212) 735-3000 |
| *Attorneys for Defendants Goldman Sachs (Asia) LLC, Credit Suisse Securities (USA) LLC, Merrill Lynch, Pierce, Fenner & Smith, Incorporated, China Renaissance Securities (Hong Kong) Limited, Citigroup Global Markets Inc., and UBS Securities LLC (the "Underwriter Defendants")* | *Attorneys for Defendants iQIYI, Inc., Baidu, Inc., Yu Gong, Xiaodong Wang, Robin Yanhong Li, Qi Lu, Herman Yu, Victor Zhixiang Liang, and Giselle Manon* |

Served on: March 25, 2024

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ........................................................................................... 1

ARGUMENT .......................................................................................................................... 3

I.    PLAINTIFFS STILL FAIL TO ALLEGE SCIENTER ...................................................... 3

II.   PLAINTIFFS STILL FAIL TO ALLEGE FALSITY ........................................................ 6

      A.    Plaintiffs' New Allegations Do Not Show iQIYI's DAUs Were Overstated ......... 6

      B.    Plaintiffs' New Allegations Do Not Show iQIYI's Customer Advances and
            Deferred Revenue Were Overstated ....................................................................... 7

      C.    Plaintiffs Allege No New Facts About iQIYI's Membership Services
            Revenues or Accounting for Xin'ai Sports .............................................................. 9

III.  PLAINTIFFS STILL FAIL TO ALLEGE LOSS CAUSATION ....................................... 9

CONCLUSION ....................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*In re Aegean Marine Petroleum Network, Inc. Securities Litigation*,
    529 F. Supp. 3d 111 (S.D.N.Y. 2021) ................................................................5

*In re Barclays PLC Securities Litigation*,
    No. 22 CIV. 8172 (KPF), 2024 WL 757385 (S.D.N.Y. Feb. 23, 2024)............................4

*Lee v. iQIYI, Inc.*,
    No. 20-cv-1830 (LDH) (JO), 2020 WL 6146862 (E.D.N.Y. Oct. 20, 2020) ...................10

*In re MINISO Group Holding Ltd. Securities Litigation*,
    No. 22-CV-9864 (ER), 2024 WL 759246 (S.D.N.Y. Feb. 23, 2024) ................................2

*Purgess v. Sharrock*,
    33 F.3d 134 (2d Cir. 1994).........................................................................10

*Shenwick v. Twitter, Inc.*,
    282 F. Supp. 3d 1115 (N.D. Cal. 2017)...........................................................4

Defendants respectfully submit this supplemental memorandum of law in further support of their motions to dismiss the *iQIYI* Action and the *Baidu* Action.[1]

## PRELIMINARY STATEMENT

Plaintiffs' Second Amended Complaints ("SACs") add almost nothing new and fail to rectify the multiple independent defects that are fatal to both Actions as a matter of law. On scienter, Plaintiffs still allege no particularized facts showing any Defendant knew or recklessly disregarded any information contrary to the challenged statements. The SACs contain only three new scienter allegations: that certain iQIYI executives (i) admitted they monitored DAUs; (ii) periodically met with iQIYI's Audit Committee to review the company's financial statements; and (iii) reviewed the PRC tax filings of some (but not all) of iQIYI's VIEs. But Plaintiffs still fail to allege with particularity that any of this information was contrary to iQIYI's and Baidu's public disclosures. Plaintiffs also still fail to allege anything at all about what the Underwriters knew or had access to. This failure to allege particularized facts supporting a strong inference of scienter warrants dismissal of both Actions in their entirety since all of Plaintiffs' claims rest on the same allegations sounding in fraud.

As to falsity, Plaintiffs allege new facts only regarding their DAU and deferred revenue claims. With respect to DAUs, the SACs add a conclusory assertion that QuestMobile, Aurora, and iQIYI all calculate DAUs the same way. But accepting this as true renders Plaintiffs' claim less plausible, not more. Plaintiffs offer no explanation whatsoever for why QuestMobile's and Aurora's estimates differ dramatically from ***each other*** if they both calculate DAUs the same

---

[1] Capitalized terms not defined herein have the meanings ascribed to them in the prior motion to dismiss briefing. All citations and internal quotation marks are omitted, and all emphases in quotations are added, unless otherwise indicated. ECF cites are to the *iQIYI* docket, unless otherwise indicated.

way. Thus, QuestMobile's and Aurora's conflicting estimates still establish nothing about whether iQIYI's reported DAUs were overstated.

With respect to deferred revenue, the SACs now allege (i) the total reported "customer advances and deferred revenue" for iQIYI's five VIEs; and (ii) that Plaintiffs obtained "credit reports" for these five entities. But they still fail to allege anything about these third-party credit reports or the unspecified "PRC tax filings" on which the reports are supposedly based. Without allegations (and there are none) establishing that the "deferred revenue" reported in the VIEs' PRC tax filings measured the same thing for the same period under the same accounting principles as the consolidated "customer advances and deferred revenue" reported in iQIYI's Registration Statement (and that the PRC tax data was accurately reflected in the third-party credit reports), nothing can be inferred from a difference between the credit reports and the Registration Statement.

Finally, Plaintiffs' new alleged partial corrective disclosure (an earnings announcement 11 months before the Wolfpack Report) does nothing to bolster their loss causation allegations. Indeed, Plaintiffs already specifically disclaimed reliance on this announcement in opposing competing lead plaintiff motions earlier in this litigation. And for good reason. The announcement had nothing to do with the alleged misstatements at issue here.

Ultimately, the paucity of new allegations confirms that Plaintiffs have no answer to the dispositive defects in their claims. Both Actions should therefore be dismissed, as similar recent cases parroting short seller attacks have been. *See, e.g.*, *In re MINISO Grp. Holding Ltd. Sec. Litig.*, No. 22-CV-9864 (ER), 2024 WL 759246 (S.D.N.Y. Feb. 23, 2024).

## ARGUMENT

### I.    PLAINTIFFS STILL FAIL TO ALLEGE SCIENTER

Plaintiffs no longer even try to plead motive and opportunity.  Both SACs delete the motive allegations that Plaintiffs previously abandoned in their opposition briefs.  (*See iQIYI* Redline (ECF No. 175-1) at 70; *Baidu* Redline (ECF No. 75-1) at 75.)  Plaintiffs' allegations of knowledge or recklessness continue to fall far short of supporting a strong inference of scienter.  At oral argument, the Court directly asked Plaintiffs if they "have any allegations that any individual defendant was presented with information that was contrary" to Defendants' public disclosures.  (Tr. at 30:5-7.)  Plaintiffs conceded they do not.  (*Id.* at 30:8-9 ("We don't have specific direct evidence of them seeing a document.").)  The SACs add a conclusory assertion that Defendants' "own admissions to monitoring, relying on, and reviewing not only the Company's very own financial data, but also the data as reported by QuestMobile, provides direct evidence of [Defendants'] access to and knowledge of information that contradicted their statements to investors."  (*iQIYI* SAC ¶ 206; *Baidu* SAC ¶ 246; *see also iQIYI* SAC ¶ 196; *Baidu* SAC ¶ 232.)  But Plaintiffs' factual allegations do not support that assertion.

First, Plaintiffs allege that Defendants "admitted to monitoring [iQIYI's] DAUs," citing a letter from iQIYI's counsel to the SEC.  (*iQIYI* SAC ¶ 6; *Baidu* SAC ¶ 5; *see also iQIYI* SAC ¶ 197; *Baidu* SAC ¶ 233.)  But Plaintiffs fail to allege that any internal DAU data Defendants monitored contradicted the reported numbers.  Simply saying Defendants monitored DAU data establishes nothing.  Pleading scienter required Plaintiffs to allege Defendants monitored data showing that the reported DAU numbers were *false*.  They again fail to do so.  Plaintiffs cannot plug this gap with vague references to QuestMobile.  (*iQIYI* SAC ¶¶ 9, 198; *Baidu* SAC ¶¶ 8, 234-35.)  Plaintiffs claim that Defendants "undoubtedly were aware that the Company's public statements were false and misleading as they repeatedly referenced data from QuestMobile."

3

(*iQIYI* SAC ¶ 9; *Baidu* SAC ¶ 8.)  But they do not allege that any Defendant ever reviewed, much less relied on, the specific QuestMobile reports that Plaintiffs claim contradict iQIYI's reported DAUs.  Nor do they allege any Defendant ever suggested that QuestMobile's DAU estimates are more accurate than iQIYI's internal data.  Instead, Plaintiffs point to a few analyst calls where iQIYI executives referenced certain market data from QuestMobile.  (*iQIYI* SAC ¶¶ 50, 198, 287; *Baidu* SAC ¶¶ 74, 235.)  Plaintiffs raised the same statements in their opposition brief.  (Common MTD Opp. at 10 n.8.)  The statements have nothing to do with whether iQIYI's reported DAUs were accurate; they merely cite QuestMobile for certain comparative rankings and other market dynamics—which makes sense given iQIYI and Baidu do not have access to their competitor's user data.  (*See* iQIYI's Q4 2018 Earnings Call (ECF No. 138-4) at 4; iQIYI's Q2 2019 Earnings Call (ECF No. 138-5) at 9; iQIYI's Q3 2019 Earnings Call (ECF No. 138-6) at 3; *see also Baidu* SAC ¶¶ 73, 234.)  These references provide no support for an inference that any Defendant knew or recklessly disregarded that iQIYI's reported DAUs were false.[2]

---

[2]  The cases Plaintiffs cited at oral argument also provide no support for inferring scienter here.  For example, in *Shenwick v. Twitter, Inc.*, 282 F. Supp. 3d 1115 (N.D. Cal. 2017) (cited in Tr. at 23:9-13), the issue was not—as here—whether defendants falsely reported DAUs.  The issue was whether Twitter intentionally failed to disclose DAUs altogether to mislead investors.  *Id.* at 1135-36.  The court held that plaintiffs adequately alleged that defendants knew the undisclosed DAU numbers given the metric's importance to the company's business and the executives' repeated references to DAUs (without disclosing the actual numbers).  *Id.* at 1145-47.  Similarly, in *In re Barclays PLC Securities Litigation*, No. 22 CIV. 8172 (KPF), 2024 WL 757385 (S.D.N.Y. Feb. 23, 2024) (cited in Tr. at 31:14-24), Judge Failla concluded it is "difficult to believe that the Executive Defendants were unaware of the [bank's] need to implement controls" that would have prevented the over-issuance of $17.7 billion worth of unregistered securities over five years, since such issuances were "critical[] . . . to its financing operations" and the executives were "the persons responsible for the [bank's] compliance" and "had a duty to monitor whether such controls were implemented."  *Id.* at *19.  These decisions show that to the extent courts still rely on the core operations doctrine at all, it is only to rebut a suggestion that executives were unaware of key undisclosed information.  It does not support an inference—like Plaintiffs urge here— that executives must have known that reported financial metrics were false simply because the metrics are important to the company.

4

Second, Plaintiffs allege that "iQIYI's management periodically met with the Audit Committee to review and discuss the Company's financial statements—further supporting the fact that Exchange Act Defendants were aware of the iQIYI's true user metrics and revenue figures during the Class Period." (*iQIYI* SAC ¶ 8; *Baidu* SAC ¶ 7; *see also iQIYI* SAC ¶¶ 201-04; *Baidu* SAC ¶¶ 238-41, 243-44.) But Plaintiffs do not allege that the user metrics and revenue figures the Audit Committee allegedly reviewed were contrary to the numbers iQIYI reported. In fact, Plaintiffs allege nothing at all about what the Audit Committee reviewed and when. If anything, the fact that iQIYI's financial reports were approved by its auditor and Audit Committee **undermines** an inference of scienter. *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 167-68 (S.D.N.Y. 2021).

Third, Plaintiffs allege that Defendant Gong (iQIYI's CEO) served as the legal representative for three of iQIYI's five VIEs and "must have signed off on [their] tax returns— which contained the true deferred revenue amounts that contradicted the amounts the Exchange Act Defendants disclosed to investors." (*iQIYI* SAC ¶¶ 199-200; *Baidu* SAC ¶¶ 236-37.) Even taking this conclusory allegation at face value, it does not support scienter because reviewing financial data for **three** VIEs would not indicate anything about whether iQIYI's consolidated financials for **all five** VIEs were overstated.[3]

As established in Defendants' prior briefs, Plaintiffs' failure to plead scienter requires dismissal of all claims in both Actions because Plaintiffs' Securities Act claims and Exchange Act claims are based on the same allegations sounding in fraud. The *iQIYI* Plaintiffs' superficial

---

[3]  Plaintiffs' other scienter allegations just repeat their prior arguments regarding SOX certifications (*iQIYI* SAC ¶¶ 7, 205; *Baidu* SAC ¶¶ 6, 242, 245), the SEC and NASDAQ inquiries (*iQIYI* SAC ¶ 15; *Baidu* SAC ¶ 13), and the accounting for Xin'ai Sports (*iQIYI* SAC ¶¶ 225-26; *Baidu* SAC ¶¶ 266-67). These allegations are still insufficient for the same reasons demonstrated in the prior briefing.

changes to their Securities Act allegations—such as sprinkling the word "negligence" throughout (*iQIYI* SAC ¶¶ 277, 283, 285, 294, 362) and changing "false and misleading" to "untrue" (*id.* ¶¶ 327, 343(e), 353, 356)—do not alter the substance of their claims, which is that iQIYI's Registration Statement artificially inflated DAUs and customer advances and deferred revenue to defraud investors.  (*See* ECF No. 84 ¶ 277 (the *iQIYI* Plaintiffs' original consolidated complaint alleging "[f]raud is the only plausible explanation").)

## II.   PLAINTIFFS STILL FAIL TO ALLEGE FALSITY

### A.   Plaintiffs' New Allegations Do Not Show iQIYI's DAUs Were Overstated

Plaintiffs add a single new conclusory allegation about DAUs: that QuestMobile and Aurora "each used the same methodology for calculating DAUs: the number of unique devices that used iQIYI's apps at least once during the day."  (*iQIYI* SAC ¶¶ 48, 146, 286; *Baidu* SAC ¶¶ 72, 173, 201; *see also iQIYI* SAC ¶ 5; *Baidu* SAC ¶ 4.)  But this allegation makes Plaintiffs' misrepresentation claim even less plausible.  If QuestMobile and Aurora use the same methodology, then why do their respective estimates of iQIYI's DAUs differ so greatly from *each other*?  Plaintiffs continue to allege that QuestMobile estimates iQIYI had 113 million DAUs in the fourth quarter of 2017, 122.6 million DAUs in 2018, and 114.2 million DAUs in 2019.  (*iQIYI* SAC ¶ 147; *Baidu* SAC ¶ 72.)  Yet, Plaintiffs also continue to allege that, "[a]ccording to Aurora's data, between December 2017 and March 2019, **iQIYI never had more than 90 million mobile DAU**."  (*iQIYI* SAC ¶ 52 (emphasis in original); *Baidu* SAC ¶ 76.)  Indeed, for some periods, QuestMobile's estimates differ more from Aurora's than from iQIYI's.  Plaintiffs do not even attempt to explain this glaring contradiction in their allegations.[4]

---

[4]   One obvious potential explanation is that the three companies used different underlying data. Plaintiffs do not allege that QuestMobile's and Aurora's calculations are based on iQIYI's actual user data.  Indeed, Plaintiffs allege nothing about the source of QuestMobile's or Aurora's data.  If QuestMobile and Aurora extrapolated from surveys of select consumers,

In any event, Plaintiffs also fail to adequately allege the basis for their assertion that QuestMobile, Aurora, and iQIYI calculate DAUs the same way.  Plaintiffs claim this is based on "representations made by QuestMobile to Lead Counsel and Aurora's very own reports."  (*iQIYI SAC* ¶ 48 n.6; *Baidu SAC* ¶ 72 n.5.)  As to QuestMobile, Plaintiffs fail to allege: (i) with whom Lead Counsel spoke, (ii) when, (iii) the person's role, and, most importantly, (iv) the basis for the person's alleged knowledge, including whether the person was directly involved in calculating the iQIYI DAU estimates on which Plaintiffs rely or, if not, how the person purportedly knows how QuestMobile estimated iQIYI's DAUs in the reports at issue.  As to Aurora, Plaintiffs do not quote or even cite any representation in Aurora's reports about how it estimated iQIYI's DAUs.  Indeed, the Aurora reports cited in the SACs contain no such representation.  (*See iQIYI SAC* ¶ 51 nn.7-9; *Baidu SAC* ¶ 75 nn.6-8.)  Absent these supporting facts, the SACs' allegations fail to satisfy *Iqbal*'s plausibility standard, let alone Rule 9(b).

At bottom, merely alleging that three entities used the same methodology to measure DAUs yet all reached different results indicates nothing about which one was correct.  Given Plaintiffs' failure to allege the source of QuestMobile's and Aurora's data or explain why their DAU estimates differ so dramatically from each other, the SACs do not even plausibly allege that these third-party estimates were correct and iQIYI's reported DAUs were false, let alone plead with particularity that Defendants overstated iQIYI's DAUs to defraud investors.

### B.    Plaintiffs' New Allegations Do Not Show iQIYI's Customer Advances and Deferred Revenue Were Overstated

With respect to deferred revenue, Plaintiffs now allege (i) the total reported "customer advances and deferred revenue" for iQIYI's five VIEs; and (ii) that Plaintiffs obtained "credit

---

that could explain why their estimates differ from each other and from iQIYI's actual user data.  But this provides no basis to conclude that iQIYI's reported DAUs were false.

reports" for these five entities.  (*iQIYI* SAC ¶¶ 5, 70-74, 151-153, 291-93, 366-69; *Baidu* SAC ¶¶ 4, 94-96, 179-181.)  But these allegations still do not even plausibly support the premise of Plaintiffs' claim: that the aggregate of the "deferred revenues" allegedly shown in these PRC "credit reports" should equal the consolidated "customer advances and deferred revenue" reported in iQIYI's U.S. Registration Statement.

Most importantly, Plaintiffs still fail to allege facts establishing that the "deferred revenue" metric in the PRC credit reports is the same as the "customer advances and deferred revenue" metric reported in iQIYI's Registration Statement.  On their face, the two metrics are different, as the latter includes customer advances.  Plaintiffs also still fail to allege anything about how these credit reports were prepared.  They claim the reports are based on "PRC tax filings" (*iQIYI* SAC ¶ 68; *Baidu* SAC ¶ 92), but they do not allege what tax filings or how the credit agency obtained this information.  Plaintiffs likewise fail to allege anything about how the PRC tax filings were prepared, including under what accounting principles.  Although Plaintiffs continue to allege a variety of general accounting information about filings with China's State Administration for Industry and Commerce (SAIC), they do not allege that the PRC tax filings underlying the credit reports were for the SAIC.  (*See iQIYI* SAC ¶¶ 116-38, 294-319; *Baidu* SAC ¶¶ 143-64.)  In fact, Plaintiffs acknowledge that the SAIC is distinct from "the State Tax Bureau," and all they allege about filings with the State Tax Bureau is that "all revenue earned from any source by the entity must be recorded as revenue during the fiscal year such revenue is earned."  (*iQIYI* SAC ¶ 126; *Baidu* SAC ¶ 153.)  This says nothing about how deferred revenue is calculated.[5]

---

[5] It is no surprise that Plaintiffs allege nothing about the PRC tax filings considering Plaintiffs do not claim to have ever seen them.  Plaintiffs also still do not submit the credit reports on

In short, it is simply implausible to conclude that the consolidated "customer advances and deferred revenue" reported in iQIYI's Registration Statement were false merely because the "deferred revenue" shown in certain third-party "credit reports" allegedly based on unspecified "PRC tax filings" do not add up to the same number.

**C.    Plaintiffs Allege No New Facts About iQIYI's Membership Services Revenues or Accounting for Xin'ai Sports**

Plaintiffs' remaining Exchange Act claims based on (i) iQIYI's membership services revenues and (ii) accounting for Xin'ai Sports are materially unchanged and thus fail for the same reasons demonstrated in the prior briefing.  (Common MTD at 19-25.)  Indeed, the SACs do not allege *any* new facts about iQIYI's membership services revenues.  And while the SACs allege additional detail about the capital structure of Xin'ai Sports (*iQIYI* SAC ¶¶ 98-99; *Baidu* SAC ¶¶ 122-23), Plaintiffs made the same point in their Opposition brief.  (Common MTD Opp. at 21.)  As explained in Defendants' prior Reply (at 8), the fact that Xin'ai Sports' capital structure does not show iQIYI's non-cash contribution does not suggest that contribution was "invented" (*iQIYI* SAC ¶ 98; *Baidu* SAC ¶ 122).  Plaintiffs do not—and cannot—allege any facts establishing that such non-cash contributions *should be* reflected in Xin'ai Sports' capital structure.  Thus, nothing can be inferred from the absence of iQIYI's non-cash contribution.

**III.    PLAINTIFFS STILL FAIL TO ALLEGE LOSS CAUSATION**

Lastly, Plaintiffs still fail to allege loss causation because their new alleged corrective disclosure had nothing to do with the alleged misstatements here.  Specifically, the SACs cite iQIYI's and Baidu's first quarter 2019 earnings releases on May 16, 2019—11 months before the Wolfpack Report—which showed a decline in deferred revenue for both companies.  (*iQIYI* SAC

---

which they rely and offer no explanation for their continued concealment of these documents, which form the entire basis of their claim.

¶¶ 11, 102, 170; *Baidu* SAC ¶¶ 9, 126, 216.) But Plaintiffs do not allege that Defendants misstated deferred revenue for the first quarter 2019 or concealed that deferred revenue could decline that quarter, as Defendants explained in opposing leave to amend. (*Baidu* Reply at 7-8.) Thus, the earnings announcement was not corrective or a materialization of an undisclosed risk.

In fact, Plaintiffs previously disavowed this purported corrective disclosure when competing lead plaintiff movants relied on it. For example, the *iQIYI* Lead Plaintiffs (Ronald Hershberger and Robert Gereige) characterized it as an "eleventh-hour, token partial disclosure" that "is contradictory to the entire theory of the case and was added simply to manufacture a loss where there was none." (ECF No. 54 at 3.) Magistrate Judge Orenstein appointed Hershberger and Gereige as lead plaintiffs on that basis. *See Lee v. iQIYI, Inc.*, No. 20-cv-1830 (LDH) (JO), 2020 WL 6146862, at *2 (E.D.N.Y. Oct. 20, 2020). Similarly, *Baidu* Co-Lead Plaintiff Central Pennsylvania Teamsters Pension Fund argued "there is no basis for this date to serve as a partial disclosure" because the first quarter 2019 results did not "reveal[] any details concerning defendants' allegedly fraudulent misconduct." (*Baidu* ECF No. 31 at 6.) Plaintiffs are bound by these admissions. *Purgess v. Sharrock*, 33 F.3d 134, 144 (2d Cir. 1994) ("A court can appropriately treat statements in briefs as binding judicial admissions of fact."). It is not only meritless but bad faith for Plaintiffs to now reverse course and claim the first quarter 2019 results were a partial corrective disclosure.

## CONCLUSION

Plaintiffs in both Actions have had numerous opportunities to state a claim. Their latest complaints confirm that they cannot do so. For the reasons demonstrated herein and in the prior motion to dismiss briefing (*iQIYI* ECF Nos. 158, 159, 164, 165; *Baidu* ECF Nos. 63, 64, 69, 70), both the *iQIYI* Action and the *Baidu* Action should be dismissed in their entirety with prejudice.

Dated:  New York, New York
       March 25, 2024

                                                       Respectfully submitted,

/s/ William J. Sushon

Jonathan Rosenberg
William J. Sushon
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
(212) 326-2000
jrosenberg@omm.com
wsushon@omm.com

*Attorneys for Defendants Goldman Sachs (Asia) LLC; Credit Suisse Securities (USA) LLC; Merrill Lynch, Pierce, Fenner & Smith Incorporated; China Renaissance Securities (Hong Kong) Limited; Citigroup Global Markets Inc.; and UBS Securities LLC*

/s/ Robert A. Fumerton

Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Attorneys for Defendants iQIYI, Inc., Baidu, Inc., Yu Gong, Xiaodong Wang, Robin Yanhong Li, Qi Lu, Herman Yu, Victor Zhixiang Liang, and Giselle Manon*