UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE iQIYI, INC. SECURITIES LITIGATION | Master File No. 1:20-cv-01830-DG-TAM **Oral Argument Requested** |
| In re BAIDU, INC. SECURITIES LITIGATION | Master File No. 1:20-cv-03794-DG-TAM **Oral Argument Requested** |

**LEAD PLAINTIFFS' SUPPLEMENTAL JOINT MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTIONS
TO DISMISS THE *iQIYI* AND *BAIDU* ACTIONS**

Date of Service:  April 8, 2024

**TABLE OF CONTENTS**

<b>Page</b>

INTRODUCTION ..................................................................................................................1

I.     ARGUMENT...............................................................................................................2

        A.     Plaintiffs Have Established Scienter....................................................................2

               1.     The Additional Allegations Bolster a Finding of Scienter.........................2

               2.     The Section 11 Claim Does Not Sound in Fraud or Require Scienter .................................................................................................5

        B.     Plaintiffs Have Established Falsity ....................................................................6

               1.     Defendants Misrepresented iQIYI's Active Users .....................................6

               2.     Defendants Misrepresented iQIYI's Deferred Revenue .............................8

               3.     Defendants Misrepresented iQIYI's Stake in Xin'ai Sports........................9

        C.     Plaintiffs Have Established Loss Causation ........................................................9

II.    CONCLUSION........................................................................................................10

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Belabbas v. Inova Software Inc.*,
2019 WL 13258046
(S.D.N.Y. Oct. 1, 2019) ................................................................................................10

*City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*,
814 F. Supp. 2d 395 (S.D.N.Y. 2011)...............................................................................6

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005).........................................................................................................9

*In re Barclays PLC Sec. Litig.*,
2024 WL 757385
(S.D.N.Y. Feb. 23, 2024) .................................................................................................5

*In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*,
2014 WL 285103
(S.D.N.Y. Jan. 27, 2014)..................................................................................................7

*In re New Oriental Educ. & Tech. Grp. Sec. Litig.*,
988 F. Supp. 2d 406 (S.D.N.Y. 2013)...............................................................................3

*In re NIO, Inc. Sec. Litig.*,
2021 WL 3566300
(E.D.N.Y. Aug. 12, 2021) ................................................................................................6

*In re Scholastic Corp. Sec. Litig.*,
252 F.3d 63 (2d Cir. 2001)....................................................................................2, 4, 5, 7

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004).........................................................................................5, 6

*SEC v. Nutra Pharma Corp.*,
450 F. Supp. 3d 278 (E.D.N.Y. 2020) ..............................................................................2

*Shaev v. Baker*,
2017 WL 1735573
(N.D. Cal. May 4, 2017) ..................................................................................................8

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007).....................................................................................................3, 5

**Page**

*United Indus. Workers Pension Plan v. Waste Mgmt., Inc.*,
    2024 WL 1312593
    (S.D.N.Y. Mar. 27, 2024) ................................................................................5

## STATUTES, RULES AND REGULATIONS

15 U.S.C.
    §77k.........................................................................................................5, 6
    §78j(b).................................................................................................2, 5, 6

Federal Rules of Civil Procedure
    Rule 8 ........................................................................................................6
    Rule 9(b) ...................................................................................................6

**INTRODUCTION**[1]

At oral argument, the Court granted Plaintiffs leave to amend their complaints and ordered supplemental briefing. Plaintiffs have now bolstered their already well pled allegations in three ways, including strengthening scienter, falsity, and loss causation.

*First*, Plaintiffs have added additional scienter allegations that show that Defendants had access to and reviewed information that contradicted their public statements. These allegations include that: Defendants admitted that they reviewed and monitored DAUs; Defendants regularly referenced and cited to contrary QuestMobile data; Defendants met with their internal audit committees to review and discuss financials; and at least one Defendant signed off on iQIYI's VIE's PRC tax returns, which contained the true deferred revenue amounts that contradicted Defendants' false statements. These allegations, when considered holistically with the previously pled scienter allegations, plainly establish the scienter of the Defendants.

*Second*, Plaintiffs have added allegations that further establish the falsity of Defendants' statements. These allegations include that: QuestMobile and Aurora were using the same methodology as iQIYI to calculate average DAUs; Defendants explicitly overstated iQIYI's deferred revenue from its five VIEs, which represented more than 99.9% of the company's total deferred revenues for 2016 and 2017, and; indisputable facts exist, drawn from multiple entities' regulatory filings, that show Defendants misrepresented iQIYI's stake in Xin'ai Sports. These allegations plausibly establish the falsity of the alleged misstatements.

---

[1] Capitalized terms not defined herein have the same meanings ascribed to them in Plaintiffs' prior motion to dismiss briefing ("iQIYI Opp." (ECF No. 162) and "Baidu Opp." (ECF No. 67)). "Supp. MTD." refers to Defendants' Supplemental Memorandum of Law in Support of their Motions to Dismiss. "iQIYI SAC" refers to the Second Amended Complaint filed in the *iQIYI* Action (ECF No. 175). "Baidu SAC" refers to the Amended Consolidated Complaint filed in the *Baidu* Action (ECF No. 75). Together, the "SACs." "Tr." refers to the transcript taken on February 26, 2024 hearing oral argument on the motions to dismiss.

*Finally*, in addition to the two well pled disclosure dates previously alleged, Plaintiffs added a third disclosure date and specify exactly how that new disclosure revealed additional facts regarding Defendants' fraudulent misconduct. And, even if the Court discredits that newly pled disclosure, Plaintiffs have alleged more than enough facts to move forward on the previously alleged ones.[2]

Defendants, faced with the reality that Plaintiffs have alleged enough to proceed with their claims, move the goalposts, and argue that the newly alleged facts are still not enough—despite conceding the exact point at oral argument. Defendants never wrestle with the SACs' new allegations, instead attempting to misdirect the Court to new faulty theories.

At bottom, the SACs adequately allege sufficient facts for the Court to deny the motions to dismiss.

## I.    ARGUMENT

### A.    Plaintiffs Have Established Scienter

#### 1.    The Additional Allegations Bolster a Finding of Scienter

Defendants continue to argue that the SACs do not adequately allege scienter. Supp. MTD at 3. They are still wrong. Their primary argument is that the SACs do not allege ***direct evidence*** of scienter. *Id.* But, contrary to Defendants' argument, the Second Circuit has held that plaintiffs need not plead direct evidence of scienter, and can establish it instead by "alleging facts to show strong ***circumstantial evidence*** of defendants' conscious misbehavior or recklessness." *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 74 (2d Cir. 2001) (emphasis added); *see also SEC v. Nutra Pharma Corp.*, 450 F. Supp. 3d 278, 287 (E.D.N.Y. 2020) (same).[3] Plaintiffs have already

---

[2] In addition, although not necessary, Plaintiffs addressed any purported defects within their Section 11 claim.

[3] Defendants' claim that Plaintiffs deleted certain motive allegations is of no moment. Supp. MTD at 3. First, as stated above, motive is not required, and scienter may be established through

met this burden. iQIYI Opp. at 2-7 (establishing scienter); Baidu Opp. at 4-15 (same).[4]

The new allegations in the SACs strengthen the already well pled inference of scienter. These allegations demonstrate, *inter alia*, that Defendants saw documents containing DAU and revenue figures during the Class Period—the exact subject matter of the misrepresentations. For example, the SACs allege that Defendants admitted that they reviewed and monitored DAUs during the Class Period. iQIYI SAC ¶197; Baidu SAC ¶233. The SACs further allege that Defendants regularly referenced and cited to QuestMobile user-base and DAU data during the Class Period, demonstrating that they had access to and reviewed the QuestMobile reports and the underlying data contained therein. iQIYI SAC ¶198; Baidu SAC ¶¶234-235. The SACs also allege that the management of both companies periodically met with their internal audit committees to review and discuss each company's financial statements. iQIYI SAC ¶¶201-202; Baidu SAC ¶¶238-241, 243-244.[5] And by signing SOX certifications, Defendants certified the accuracy of

---

conscious disregard or recklessness. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 325 (2007). Second, the SACs do allege motive—*i.e.*, that, with respect to the Xin'ai Sports investment, "to mask the disparity between iQIYI's real and overstated deferred revenue figures . . . Defendants needed a way to make it seem as though the Company's deferred revenue tracked the numbers that it was touting publicly, so it used this investment to record additional deferred revenue." iQIYI SAC ¶225; Baidu SAC ¶266. Thus, Defendants were motivated to create deferred revenue out of thin air to cover up the overstated revenue figures.

[4] Defendants attempt to re-attack the previously alleged scienter allegations. Supp. MTD at 4-5, nn.2-3. These attacks fail for the same reasons stated in the MTD oppositions and at oral argument.

[5] Defendants assert that the audit committees' approval of financial reports undermines scienter. Supp. MTD at 5. To do so, Defendants must ignore the SACs' allegations explaining that "it is not the Audit Committee's responsibility to plan or conduct audits or to determine that the Company's financial statements and disclosure are complete and accurate and are in accordance with GAAP and applicable laws, rules and regulations." iQIYI SAC ¶201; Baidu SAC ¶238. Instead, these are the responsibilities of each company's management and the independent auditor. *Id.* Besides, certification by independent auditors "cannot completely absolve the defendants of their obligation" to ensure the accuracy of the information filed with the SEC and "is not a complete defense to scienter" because "there is no way to determine what disclosures were made to the auditors and what considerations led the auditors to certify the financial statements." *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 988 F. Supp. 2d 406, 426 (S.D.N.Y. 2013).

each company's financial reporting, further evidencing their access to and review of the financial data pertaining to deferred revenue. iQIYI SAC ¶¶205, 227-230; Baidu SAC ¶¶242, 245, 268-275.

Notably, Defendants do not—because they cannot—argue that they did not monitor DAUs, review QuestMobile DAU data, or meet with their audit committees to review and discuss user metrics and revenue figures. Instead, they argue that the Court should ignore these allegations because Plaintiffs fail to allege that the precise internal DAU and revenue figures and QuestMobile data that Defendants reviewed contradicted the reported numbers. Supp. MTD at 3-4. However, the SACs allege that each company's internal DAUs and revenue figures, as well as the QuestMobile DAU data, established the *correct* DAU and revenue figures, that was contrary to Defendants' public statements and the information that Defendants had access to and reviewed. Allegations like these were sufficient for the Second Circuit to find scienter in *Scholastic Corp.*, where plaintiffs pled that certain internal data, that the defendants had access to and monitored, contradicted defendants' public statements—even though plaintiffs did not allege that any specific defendant reviewed the contrary information. 252 F.3d at 71, 76–77.

The SACs also allege that Defendant Gong, as iQIYI's legal representative, was required to, and did, sign off on iQIYI's VIE's PRC tax returns—which contained the true deferred revenue amounts that contradicted Defendants' false statements. iQIYI SAC ¶¶199-200; Baidu SAC ¶¶236-237. Again, Defendants claim that these allegations do not support scienter, but interestingly, do not dispute that Gong did, in fact, sign off on iQIYI's VIE's tax returns. Supp. MTD at 5. Instead, they contend—incorrectly—that financial data for three VIEs would not indicate that the financials for all five VIEs were overstated. *Id.* However, the 2015 Edition of Enterprise Income Tax Pre-payment Tax Return published by the Shanghai Municipal Tax Service, shows that the State Taxation Administration required the legal representative (here,

Gong) to sign off on quarterly and annual Advance Payment Tax Return of the PRC Income Tax applicable to the implementation of audit levy and verification collection enterprises (*i.e.*, **all** of the company's VIE's tax returns) (*id.*), rendering Defendants' argument meritless.

When considering Plaintiffs' allegations holistically, including the facts related to the importance of iQIYI's user numbers and revenue figures, waiting to disclose the investigations after falsely reassuring investors about the Wolfpack Report, improperly recognizing deferred revenue from its Xin'ai Sports transaction to cover up its overinflated revenue, and that Defendants signed their respective SOX certifications, the Court should find scienter. *Tellabs*, 551 U.S. at 326 (court must consider "all the allegations holistically"). Based on the facts pled in the SACs, "it is impossible to believe that the [] Defendants were ignorant" of each company's true DAUs and deferred revenue. *In re Barclays PLC Sec. Litig.*, 2024 WL 757385, at *19 (S.D.N.Y. Feb. 23, 2024); *see also United Indus. Workers Pension Plan v. Waste Mgmt., Inc.*, 2024 WL 1312593, at *7 (S.D.N.Y. Mar. 27, 2024) (scienter where defendants "had access to information contradicting [their] public statements").

### 2. The Section 11 Claim Does Not Sound in Fraud or Require Scienter

Defendants, in passing, seek Section 11's dismissal based on the erroneous assertion that the allegations sound in fraud and lack scienter. Supp. MTD at 5-6. Courts in this Circuit assess four factors to determine whether a Section 11 claim sounds in fraud: whether it (1) disclaims fraud allegations; (2) includes classic fraud language; (3) shows any nonfraudulent basis; and (4) is separated from fraud claims. *Rombach v. Chang*, 355 F.3d 164, 171-72 (2d Cir. 2004). Every factor weighs in Plaintiffs' favor. Not only does the Section 11 claim disclaim any allegation of fraud (iQIYI SAC ¶268), it is also separated from the Section 10(b) claim, alleges that the Securities Act Defendants acted negligently without using classic fraud language, and alleges alternative grounds

for liability—negligence.[6] Because the claim does not sound in fraud, Rule 8 applies here.[7] This is so even if the Section 11 claim is based on the same misrepresentations as Section 10(b) or contains some classic fraud language. *See, e.g.*, *In re NIO, Inc. Sec. Litig.*, 2021 WL 3566300, at *5 (E.D.N.Y. Aug. 12, 2021) (Section 11 did not sound in fraud, "even if overlapping conduct forms the basis for both" claims); *City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 424 n.12 (S.D.N.Y. 2011) (allegations sounded in negligence despite complaint containing some classic fraud language).

### B.   Plaintiffs Have Established Falsity

### 1.   Defendants Misrepresented iQIYI's Active Users

The SACs adequately allege that Defendants materially misled investors by overstating iQIYI's DAUs. Specifically, two leading industry research firms that cover China's mobile internet market—QuestMobile and Aurora—reported that the true average DAUs were substantially lower than what iQIYI reported to investors. Defendants' counsel stated at oral argument that the Court cannot infer Defendants' statements about iQIYI's DAU were false "[a]bsent facts showing that [QuestMobile and Aurora were] using the same methodology as iQIYI disclosed to investors." Tr. at 10:20-23. Counsel went as far as stating that, "there's not a single fact, Your Honor, in either complaint showing that these third parties used the same methodology for calculating DAUs as did iQ. ***That's what you need for falsity here***." *Id*. at 9:10-13 (emphasis

---

[6] *See, e.g.*, iQIYI SAC ¶¶334, 343(g), 353(c) & (e), 356, 383 (Section 11 allegations sounding in negligence, not fraud); *see also id.* ¶¶277, 283, 285, 290, 294, 362, 376(a)-(b); *Rombach*, 355 F.3d at 178 (not subject to Rule 9(b), "because they sound in negligence: 'each of the Underwriter Defendants owed to the purchasers of the shares of [Family Golf] . . . the duty to make a reasonable and diligent investigation of the statements contained in the Prospectus'").

[7] Defendants abandon their Section 11 standing/damages arguments, which makes sense since Plaintiffs easily allege damages when measured by when the Section 11 claim was first brought. iQIYI Opp. Section III.A. Additionally, for the reasons set forth in the prior opposition, even if the iQIYI SAC sounded in fraud, that would not require Plaintiffs to actually allege scienter. *Id*.

- 6 -

added). The SACs' new allegations establish that QuestMobile and Aurora were, in fact, using the same methodology as iQIYI to calculate average DAUs: the number of unique devices that used iQIYI's apps at least once during the day. iQIYI SAC ¶48 & n.6; Baidu SAC ¶72 & n.5.

Rather than concede that the SACs adequately plead the falsity of the DAU statements—which would be consistent with their position at oral argument—Defendants reverse course by claiming that the fact that QuestMobile, Aurora, and iQIYI all used the same methodology "makes Plaintiffs' misrepresentation claim even less plausible." Supp. MTD at 6. Putting aside that Defendants' new position directly contradicts their previous position, their attempt to cast doubt on the reliability of the QuestMobile and Aurora data fails for multiple reasons. First, "[t]he reliability of [these reports] is a question of fact" that cannot be decided at the pleading stage. *See, e.g.*, *In re Longwei Petroleum Inv. Holding Ltd. Sec. Litig.*, 2014 WL 285103, at *4 (S.D.N.Y. Jan. 27, 2014). Second, Defendants fail to acknowledge that they, themselves, conceded the reliability of the QuestMobile reports by repeatedly citing QuestMobile data to support iQIYI's performance. *See* iQIYI SAC ¶50; Baidu SAC ¶73. Third, Defendants contend that differences between the Aurora and QuestMobile data invalidates both sources—but both reports confirm that iQIYI overstated its DAUs. That the reports *corroborate* each other further supports the plausibility of the SACs' allegations. *Scholastic Corp.*, 252 F.3d at 72 ("Any information that sheds light on whether class period statements were false or materially misleading is relevant.").[8]

Accordingly, the SACs adequately plead the falsity of Defendants' DAU statements, and the Court should not entertain Defendants' improper attempts to use "hypothetical explanations"

---

[8] Defendants' complaints about the sources of the SACs allegations regarding QuestMobile and Aurora's methodologies are misplaced. Supp. MTD at 7. A spokesperson for QuestMobile described their methodology directly to Lead Counsel in response to an inquiry, and Aurora's methodology is detailed in their own contemporaneous reports. *See, e.g.*, https://www.199it.com/archives/748295.html; https://www.199it.com/archives/983719.html; https://m.jiemian.com/article/2956389.html.

to undermine these facts. *See Shaev v. Baker*, 2017 WL 1735573, at \*14 (N.D. Cal. May 4, 2017).

### 2.       Defendants Misrepresented iQIYI's Deferred Revenue

The SACs adequately allege that Defendants materially misled investors by overstating iQIYI's deferred revenue from 2015 to 2017. Specifically, PRC tax filings from iQIYI's five VIEs demonstrate that iQIYI's deferred revenue was significantly lower than what Defendants disclosed to investors. At oral argument, Defendants' counsel complained that iQIYI's deferred revenue should not be expected to match the deferred revenue of its five VIEs because the company had twelve other affiliated entities that could have also had deferred revenue. *See* Tr. at 13:8-13.[9] The new SAC allegations prove that: (i) Defendants explicitly overstated iQIYI's deferred revenue from its five VIEs, which the company disclosed separately from its total deferred revenues; and (ii) the deferred revenue from iQIYI's five VIEs represented more than 99.9% of the company's total deferred revenues for 2016 and 2017. iQIYI SAC ¶¶70-73; Baidu SAC ¶¶94-97.

Confronted with the apples-to-apples comparison of deferred revenue from iQIYI's VIEs, Defendants *again* resort to improperly attacking the credibility of the PRC tax filings. Supp. MTD at 8. The SACs explain that the VIEs' PRC tax filings, as cited in third party credit reports, are reliable because they are the most accurate sources of financial information for a PRC-based company. iQIYI SAC ¶¶116, 154; Baidu SAC ¶¶98-99, 143-144. Further, despite Defendants' claims otherwise (*see* Supp. MTD at 8), the SACs allege that deferred revenue in the PRC tax filings must be calculated using Chinese GAAP, which matches the calculation of deferred revenue under US GAAP. iQIYI SAC ¶116; Baidu SAC ¶¶143-144.[10]

---

[9] In a misleading attempt to undermine Plaintiffs' deferred revenue allegations, Defendants at oral argument cited an organizational chart from iQIYI's 2018 Form 20-F (filed in March 2019), which included several entities that did not even exist at the time that Defendants misled investors about deferred revenue in iQIYI's March 2018 Registration Statement. Because the chart included entities not even in existence at the time of the IPO, it and the related arguments are without merit.

[10] Defendants baselessly imply that the deferred revenue in the PRC tax filings do not include

### 3.    Defendants Misrepresented iQIYI's Stake in Xin'ai Sports

The SACs adequately plead that Defendants misled investors about iQIYI's investment in Xin'ai Sports. Specifically, Defendants stated that iQIYI acquired a 32% interest in Xin'ai Sports by investing RMB32,250,000 in cash and RMB763,750,000 in non-cash considerations. As the SACs' new allegations demonstrate, Defendants invented the non-cash considerations—which Defendants improperly reported as deferred revenue—out of thin air. Specifically, Xin'ai Sports' financial statement filed with the Shanghai Stock Exchange on August 7, 2018, demonstrates that an RMB1 million investment in Xin'ai Sports equated to a 1% equity stake in the venture for all four investors in the project. iQIYI SAC ¶¶98-99; Baidu SAC ¶¶122-123. Accordingly, iQIYI obtained its 32% with its RMB32,250,000 cash contribution.[11] Faced with indisputable facts drawn from multiple entities' regulatory filings, Defendants ask the Court to infer that iQIYI paid nearly 25 times as much than other investors did for its stake in Xin'ai Sports. Supp. MTD at 9. Defendants' theory is both implausible and entirely unsupported.

### C.    Plaintiffs Have Established Loss Causation

Plaintiffs have established loss causation for the three alleged disclosure dates (May 16, 2019, April 7, 2020, and August 13, 2020) because they have set forth what the alleged loss and causal connection to the fraud "might be." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346-47 (2005); *see* iQIYI Opp. at 7-10 (discussing the April 7 and August 13, 2020 disclosures); Baidu Opp. at 15-19 (same). As for the May 16, 2019 disclosure, Plaintiffs now allege that, after-hours, iQIYI and Baidu issued press releases that reported declining deferred revenue. iQIYI SAC ¶¶102-

---

customer advances. Supp. MTD at 8. But the tax filings, as cited in the credit reports that Plaintiffs' counsel reviewed, disclose customer advances and deferred revenue under a single line item—just like iQIYI's SEC filings.

[11] Defendants ask the Court to infer that iQIYI paid roughly RMB25 million for each percent of its stake (RMB796,000,000 for a 32% stake), while the other investors each paid RMB1 million for each percent of their own stakes.

103; Baidu SAC ¶¶126-127. This disclosure began exposing inconsistencies in the companies' financial reporting that the Wolfpack Report later revealed—*i.e.*, if there was continued subscriber growth as reported, deferred revenues should have been *increasing*, not decreasing. Plaintiffs allege that, as a result, iQIYI common stock and Baidu ADS fell the following day (6.58% and 16.52%, respectively). iQIYI SAC ¶104; Baidu SAC ¶128. Nothing more is required.

Defendants attempt to cast doubt on the May 16, 2019 disclosure. Supp. MTD at 10. Defendants *first* mischaracterize arguments made by the iQIYI Plaintiffs against an October 30, 2018 disclosure, not alleged here, as though they related to the May 16, 2019 disclosure. But, the October 30, 2018 disclosure was the only one argued against in *iQIYI*. *See, e.g.*, *In re iQIYI Inc. Sec. Litig.*, No. 1:20-cv-01830 (E.D.N.Y.), ECF Nos. 48 at 3-6, 50 at 5-9, 54 at 3. *Second*, in *Baidu*, where the May 16, 2019 disclosure was previously alleged, Teamsters argued, **at the lead plaintiff stage**, that the "Complaint does not articulate how the May 16, 2019 partial disclosure revealed any details concerning defendants' allegedly fraudulent misconduct." *In re Baidu, Inc. Sec. Litig.*, No. 1:20-cv-03794 (E.D.N.Y.), ECF No. 31 at 6. Since then, Plaintiffs have continued their investigations and amended their complaints multiple times, allowing them to articulate just how the May 16, 2019 partial disclosure revealed facts regarding Defendants' fraudulent misconduct. Thus, Plaintiffs' arguments, made on an incomplete record, before the benefit of a thorough investigation, should not influence this Court's decision. Nor can they. "[J]udicial admissions . . . do not include an attorney's legal theories, arguments, or conclusions." *Belabbas v. Inova Software Inc.*, 2019 WL 13258046, at *3 (S.D.N.Y. Oct. 1, 2019). Finally, striking the May 16, 2019 disclosure would not affect the other well pled disclosures.

## II.   CONCLUSION

Accordingly, the Court should deny the motions to dismiss in their entirety.

DATED:  April 8, 2024

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

<u>                    */s/ Laurence M. Rosen*                    </u>
Laurence M. Rosen
Phillip Kim
Jing Chen
Daniel Tyre-Karp
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email:  lrosen@rosenlegal.com
   pkim@rosenlegal.com
   jchen@rosenlegal.com
   dtyrekarp@rosenlegal.com

**LABATON KELLER SUCHAROW LLP**
Michael P. Canty
Michael H. Rogers
David J. Schwartz
James T. Christie
Philip J. Leggio
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
Email:  mcanty@labaton.com
   mrogers@labaton.com
   dschwartz@labaton.com
   jchristie@labaton.com
   pleggio@labaton.com

*Co-Lead Counsel for iQIYI Lead Plaintiffs and the Class*

**ROBBINS GELLER RUDMAN& DOWD LLP**
Robert M. Rothman
William J. Geddish
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  (631) 367-7100
Fax:  (631) 367-1173
Email:  rrothman@rgrdlaw.com
   wgeddish@rgrdlaw.com

- 11 -

**THE ROSEN LAW FIRM, P.A.**
Laurence M. Rosen
Phillip Kim
Jonathan Stern
275 Madison Ave., 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fax: (212) 202-3827
Email:  lrosen@rosenlegal.com
          pkim@rosenlegal.com
          jstern@rosenlegal.com

*Co-Lead Counsel for Baidu Lead Plaintiffs and the Class*