UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                           :

IN RE iQIYI, INC. SECURITIES LITIGATION   :  20-cv-01830 (DG) (TAM)
                           :

                           :  **ECF CASE**
                           :

                           :  **Oral Argument Requested**
                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                           :

IN RE BAIDU, INC. SECURITIES LITIGATION  :  20-cv-3794 (DG) (TAM)
                           :

                           :  **ECF CASE**
                           :

                           :  **Oral Argument Requested**
                           :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTIONS TO DISMISS THE *iQIYI* AND *BAIDU* ACTIONS

O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
(212) 326-2000

*Attorneys for Defendants Goldman Sachs (Asia) LLC, Credit Suisse Securities (USA) LLC, Merrill Lynch, Pierce, Fenner & Smith, Incorporated, China Renaissance Securities (Hong Kong) Limited, Citigroup Global Markets Inc., and UBS Securities LLC (the "Underwriter Defendants")*

SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
(212) 735-3000

*Attorneys for Defendants iQIYI, Inc., Baidu, Inc., Yu Gong, Xiaodong Wang, Robin Yanhong Li, Qi Lu, Herman Yu, Victor Zhixiang Liang, Giselle Manon, Chuan Wang, and Xuyang Ren*

Served on: April 22, 2024

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES...................................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................................1

ARGUMENT.................................................................................................................................2

I.      DEFENDANTS HAVE NOT ABANDONED ANY ARGUMENTS..............................2

II.     PLAINTIFFS CANNOT ALLEGE SCIENTER .............................................................2

        A.      Plaintiffs' Recklessness Arguments Fail.................................................................2

        B.      Plaintiffs' Motive Argument Fails..........................................................................5

        C.      Plaintiffs' Failure To Plead Scienter Defeats All Their Claims ............................6

III.    PLAINTIFFS CANNOT ALLEGE FALSITY .................................................................7

        A.      Plaintiffs' DAU Claim Fails...................................................................................7

        B.      Plaintiffs' Customer Advances and Deferred Revenue Claim Fails.......................8

        C.      Plaintiffs' Remaining Claims Fail ..........................................................................9

IV.     PLAINTIFFS CANNOT ALLEGE LOSS CAUSATION ............................................10

CONCLUSION............................................................................................................................10

**TABLE OF AUTHORITIES**

**Page(s)**

*In re Barclays PLC Securities Litigation*,
    No. 22 Civ. 8172 (KPF), 2024 WL 757385 (S.D.N.Y. Feb. 23, 2024)..............................4

*City of Roseville Employees' Retirement System v. EnergySolutions, Inc.*,
    814 F. Supp. 2d 395 (S.D.N.Y. 2011) ................................................................6

*In re Gentiva Securities Litigation*,
    932 F. Supp. 2d 352 (E.D.N.Y. 2013) ................................................................6

*In re Longwei Petroleum Investment Holding Ltd. Securities Litigation*,
    No. 13 CV 214(HB), 2014 WL 285103 (S.D.N.Y. Jan. 27, 2014) ...................................8

*Meyer v. Organogenesis Holdings Inc.*,
    No. 21-CV-06845 (DG) (MMH), 2024 WL 1346432 (E.D.N.Y. Mar. 29, 2024) .............3

*In re MINISO Group Holding Ltd. Securities Litigation*,
    No. 22-cv-9864 (ER), 2024 WL 759246 (S.D.N.Y. Feb. 23, 2024) ..............................6, 8

*In re New Oriental Education & Technology Group Securities Litigation*,
    988 F. Supp. 2d 406 (S.D.N.Y. 2013) ................................................................4

*In re NIO, Inc. Securities Litigation*,
    No. 19-CV-1424 (NGG) (JRC), 2021 WL 3566300 (E.D.N.Y. Aug. 12, 2021)................6

*One Communications Corp. v. JP Morgan SBIC LLC*,
    381 F. App'x 75 (2d Cir. 2010)....................................................................3

*In re Scholastic Corp. Securities Litigation*,
    252 F.3d 63 (2d Cir. 2001)........................................................................3

*SEC v. Nutra Pharma Corp.*,
    450 F. Supp. 3d 278 (E.D.N.Y. 2020) ..............................................................4

*Shaev v. Baker*,
    16-cv-05541-JST, 2017 WL 1735573 (N.D. Cal. May 4, 2017) .....................................7

*Steiner v. Sprint*,
    957 F. Supp. 65 (S.D.N.Y. 1997) ..................................................................2

*United Industrial Workers Pension Plan v. Waste Management, Inc.*,
    No. 22 Civ. 4838 (LGS), 2024 WL 1312593 (S.D.N.Y. Mar. 27, 2024)..........................4

*Valvo v. City of New York*,
    No. 13-cv-6562 (NG), 2016 WL 11472250 (E.D.N.Y. June 7, 2016) ..............................9

## PRELIMINARY STATEMENT

As Defendants' Supplemental Brief ("Supp. Br.") demonstrated, the SACs' handful of new allegations did nothing to fix the defects in Plaintiffs' claims.  Plaintiffs' Supplemental Opposition Brief ("Supp. Opp.") largely fails to grapple with Defendants' arguments and simply rehashes the SACs' new allegations without addressing their continued deficiencies.

Scienter is a prime example.  Plaintiffs insist their new allegations demonstrate "that Defendants saw documents containing DAU and revenue figures during the Class Period—the exact subject matter of the misrepresentations." (Supp. Opp. at 3.)  But Plaintiffs have not alleged that those documents contained ***different*** DAU and revenue figures than what iQIYI and Baidu publicly reported, so the new allegations do not even suggest that any Defendants were reckless.  Plaintiffs also assert a new motive theory that iQIYI's management devised the Xin'ai Sports joint venture to mask iQIYI's allegedly inflated deferred revenue.  (Supp. Opp. at 2 n.3.) But that theory makes no sense given that this 2018 joint venture was formed long ***after*** iQIYI allegedly inflated deferred revenues in 2015-2017.

Regarding falsity, Plaintiffs do not even try to reconcile how QuestMobile's and Aurora's DAU estimates could differ from each other by tens of millions if they used the same methodology.  The only plausible explanation is that they relied on vastly different (and almost certainly incomplete) underlying user data.  This confirms that their conflicting estimates do not even plausibly show that the actual user data iQIYI reported was false.  As for deferred revenue, Plaintiffs now contend for the first time that the alleged PRC credit reports supposedly "disclose customer advances and deferred revenue under a single line item—just like iQIYI's SEC filings." (Supp. Opp. at 8-9 n.10.)  Setting aside that Plaintiffs cannot amend their pleading in an opposition brief, they offer no basis for this assertion, fail to explain why they never alleged it before, and tellingly still do not submit the credit reports—the sole basis for their claim.

Plaintiffs also try to walk back their prior disavowal of their new alleged corrective disclosure, arguing it was based on an "incomplete record," and they have since "continued their investigations." (Supp. Opp. at 10.) But they identify no new learning about the disclosure, and no investigation could change that the disclosure had nothing to do with the alleged fraud.

Plaintiffs have had every opportunity to state a claim and have consistently failed to do so. Both Actions should be dismissed in their entirety with prejudice.

## ARGUMENT

## I.  DEFENDANTS HAVE NOT ABANDONED ANY ARGUMENTS

As an initial matter, Plaintiffs falsely accuse Defendants of "abandon[ing] their Section 11 standing/damages arguments" because they were not addressed in Defendants' Supplemental Brief. (Supp. Opp. at 6 n.7.) As the Court instructed, Defendants limited their Supplemental Brief to issues raised by the new allegations in the SACs. Defendants' standing and damages arguments still fully apply and independently warrant dismissal of the Securities Act claims. (*See iQIYI* MTD at 11-12; *iQIYI* Reply at 12-13.)

## II.  PLAINTIFFS CANNOT ALLEGE SCIENTER

### A.  Plaintiffs' Recklessness Arguments Fail

Plaintiffs have no answer for the continued deficiencies in their scienter allegations. Plaintiffs still do not dispute that they have no direct evidence that any Defendant intended to defraud investors or recklessly disregarded any information contrary to iQIYI's or Baidu's public disclosures. (*See* Supp. Opp. at 2.) Instead, Plaintiffs argue they only need circumstantial evidence to plead scienter. (*Id.*) But they do not allege that either. There is a difference between circumstantial evidence and rank speculation. *Steiner v. Sprint*, 957 F. Supp. 65, 66 (S.D.N.Y. 1997) ("The broad welcome that federal law accords circumstantial evidence does not open the

2

door to groundless speculation.").[1]  Plaintiffs offer only the latter.  They insist their "allegations demonstrate, *inter alia*, that Defendants saw documents containing DAU and revenue figures during the Class Period" (Supp. Opp. at 3), but the SACs fail to allege any facts showing that those documents contained ***different*** DAU and revenue figures than what iQIYI and Baidu publicly reported.  *See Meyer v. Organogenesis Holdings Inc.*, No. 21-CV-06845 (DG) (MMH), 2024 WL 1346432, at *17 (E.D.N.Y. Mar. 29, 2024) (Gujarati., J.) (no inference of scienter where plaintiffs "fail[ed] to identify any specific reports or statements ***that were contradictory to*** the Individual Defendants' statements or any specific instances in which the Individual Defendants received information ***that was contrary to*** their public statements" (emphasis added)).  This includes the alleged QuestMobile reports.  Tellingly, Plaintiffs do not dispute that Defendants never referenced the specific QuestMobile reports that Plaintiffs now contend contradict iQIYI's reported DAUs.  Nor do they dispute that the QuestMobile market data that certain Defendants did reference did ***not*** contradict iQIYI's reported DAUs.

Contrary to Plaintiffs' assertion, their allegations are nothing like those that "were sufficient for the Second Circuit to find scienter in *Scholastic*."  (Supp. Opp. at 4.)  There, plaintiffs made "detailed allegations as to what defendants knew on a daily, weekly and monthly basis about the retail trade of [the product at issue], while at the same time making public statements that painted a different picture."  *In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001).  Accordingly, the Second Circuit held that "[d]efendants publicly represented that [product] returns were not increasing and failed to adjust revenues despite their knowledge of

---

[1]  *See also One Commc'ns Corp. v. JP Morgan SBIC LLC*, 381 F. App'x 75, 81 (2d Cir. 2010) (summary order) (affirming dismissal of securities fraud claims for lack of scienter where plaintiff "offered nothing more than speculation and vague allegations as to the knowledge and involvement of defendants").

3

rapidly rising returns; these actions, if proven, are consistent with recklessness." *Id.* at 76-77. Moreover, the plaintiffs there also alleged particularized motive and opportunity. *Id.* at 74-76.[2]

Defendants also demonstrated that the new allegation that "iQIYI's management periodically met with the Audit Committee to review and discuss the Company's financial statements" undermines, not supports, an inference of scienter. (Supp. Br. at 5.) Plaintiffs respond that "it is not the Audit Committee's responsibility to plan or conduct audits or to determine that the Company's financial statements and disclosure are complete and accurate." (Supp. Opp. at 3 n.5.) Regardless of whether the Audit Committee had a "responsibility" to review iQIYI's financial statements, the fact that it did so shows that iQIYI's management acted reasonably, not recklessly. Plaintiffs do not contend any Defendant misled the Audit Committee or provided it with inaccurate information. Nor do Plaintiffs allege any reason the Audit Committee would have approved the financial statements if it believed they were inaccurate.[3]

---

[2]  Plaintiffs' other cases are similarly inapposite. *See United Indus. Workers Pension Plan v. Waste Management, Inc.*, No. 22 Civ. 4838 (LGS), 2024 WL 1312593, *7 (S.D.N.Y. Mar. 27, 2024) (defendants "had access to information contradicting [their] public statements"—namely, that CEO knew the company's merger was not going to receive antitrust approval, yet told analysts that he anticipated the merger closing on schedule and was "not worried"); *SEC v. Nutra Pharma Corp.*, 450 F. Supp. 3d 278, 289 (E.D.N.Y. 2020) (defendants issued press releases "imply[ing] that things [we]re happening—new orders, increased demand, increased production—that collectively ma[d]e Nutra Pharma's stock more desirable," yet defendants allegedly "knew that these events were not actually occurring"); *In re Barclays PLC Sec. Litig.*, No. 22 Civ. 8172 (KPF), 2024 WL 757385 (S.D.N.Y. Feb. 23, 2024) (defendants allegedly knew but failed to disclose certain undisputed information).

[3]  Even a case Plaintiffs cite recognizes that, while an auditor's involvement "is not a complete defense to scienter," a company's "reliance on third party auditors and its decision not to restate its financials provide some evidence of non-fraudulent intent." *In re New Oriental Educ. & Tech. Grp. Sec. Litig.*, 988 F. Supp. 2d 406, 426-27 (S.D.N.Y. 2013). That case is otherwise inapposite as it involved allegations that defendants improperly consolidated another entity's financials to artificially inflate revenue, despite such "critical[] and obvious[] deficien[cies] that the defendants must have been aware of the alleged fact that the agreements did not support . . . consolidation[.]" *Id.* at 426.

Finally, Plaintiffs' allegation that Defendant Gong (iQIYI's CEO) served as the legal representative for three of iQIYI's five VIEs (*iQIYI* SAC ¶ 200; *Baidu* SAC ¶ 237) does not support scienter.  Even if he reviewed financial data for this subset of the VIEs, that still would not indicate anything about whether iQIYI's consolidated financials for all its VIEs were accurate.  (Supp. Br. at 5.)  Plaintiffs argue this is "meritless" because "the 2015 Edition of Enterprise Income Tax Pre-Payment Tax Return published by the Shanghai Municipal Tax Service" allegedly required Gong to sign off on the tax returns "applicable to the implementation of audit levy and verification collection enterprises."  (Supp. Opp. at 4-5.)  Without citing any authority to explain what this quoted language means, Plaintiffs now argue that it required Gong to sign off on "***all*** of the company's VIE's tax returns."  (*Id.* at 5 (emphasis original).)  But that legal conclusion is contradicted by the SACs' allegation that it "mean[s] Defendant Gong must have signed off on ***the Shanghai VIEs'*** tax returns."  (*iQIYI* SAC ¶ 200; *Baidu* SAC ¶ 237 (emphasis added).)  Plaintiffs' shifting, contradictory contentions do not support a strong inference of scienter.

### B.  Plaintiffs' Motive Argument Fails

The SACs deleted the allegations regarding Defendants Li and Baidu's purported financial motive, which Plaintiffs abandoned in their original Opposition briefs.  (*See iQIYI* Redline (ECF No. 175-1) at 70; *Baidu* Redline (ECF No. 75-1) at 75.)  Plaintiffs now argue that "Defendants were motivated to create deferred revenue out of thin air [via the accounting for the Xin'ai Sports joint venture] to cover up the overstated revenue figures."  (Supp. Opp. at 2-3 n.3.)  But while Plaintiffs claim iQIYI overstated deferred revenue for 2015-2017 (*iQIYI* SAC ¶¶ 149-56; *Baidu* SAC ¶¶ 176-84), iQIYI did not even enter into the Xin'ai Sports joint venture until 2018.  (*iQIYI* SAC ¶ 157; *Baidu* SAC ¶ 185.)  Thus, it could not have been designed "to mask

5

the [alleged] disparity between iQIYI's real and overstated deferred revenue figures" years earlier.  (Supp. Opp. at 2-3 n.3.)

## C.    Plaintiffs' Failure To Plead Scienter Defeats All Their Claims

Plaintiffs' failure to plead scienter requires dismissal of all claims in both Actions because they all are based on the same allegations sounding in fraud.  Plaintiffs argue the Securities Act claims do not sound in fraud because they "disclaim any allegation of fraud," "separate[] [the Section 11 claim] from the Section 10(b) claim," do not "us[e] classic fraud language," and allege "alternative grounds for liability—negligence."  (Supp. Opp. at 5-6.)  But these superficial tactics cannot obscure that the Securities Act and Exchange Act claims are based on the same core theory that iQIYI artificially inflated DAUs and deferred revenue.  "In cases involving nearly identical Securities Act and Exchange Act claims, such as the claims here, courts . . . apply the heightened pleading standard."  *In re MINISO Grp. Holding Ltd. Sec. Litig.*, No. 22-cv-9864 (ER), 2024 WL 759246, at *10 (S.D.N.Y. Feb. 23, 2024) (collecting cases); *see also In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 393 (E.D.N.Y. 2013) (Securities Act claims sound in fraud, "even though the Plaintiff does separate out the factual allegations supporting the fraud claims and negligence claims" and "the complaint contains a blanket disclaimer that the plaintiffs do not allege fraud for the purposes of the Securities Act claims," because "the allegations largely parrot the fraud allegations[] and the complaint does not show any basis for the claims that is non-fraudulent").[4]  That has been the law around the country for more than a decade.  (*See iQIYI* MTD at 8 n.4 (collecting cases from the Second, Fourth, and Ninth Circuits).)

---

[4]   In contrast, Plaintiffs' cases went "beyond the mere inclusion of a *pro forma* repudiation of a fraud theory."  *City of Roseville Emps.' Ret. Sys. v. EnergySolutions, Inc.*, 814 F. Supp. 2d 395, 424 (S.D.N.Y. 2011); *see also In re NIO, Inc. Sec. Litig.*, No. 19-CV-1424 (NGG) (JRC), 2021 WL 3566300, at *5 (E.D.N.Y. Aug. 12, 2021) (defendants allegedly failed to investigate whether company's new factory was actually under construction yet).

6

### III.    PLAINTIFFS CANNOT ALLEGE FALSITY

#### A.    Plaintiffs' DAU Claim Fails

Plaintiffs' new allegation that QuestMobile and Aurora used the same methodology to reach their vastly different DAU estimates creates more problems than it solves. (Supp. Br. at 6-7.) Most significantly, it means that QuestMobile and Aurora must have used different (and likely incomplete) underlying user information, which further confirms that their estimates do not plausibly plead that iQIYI's actual reported user data was false. This is not, as Plaintiffs argue, an "improper attempt[] to use 'hypothetical explanations' to undermine" Plaintiffs' allegations. (Supp. Opp. at 7-8.) To the contrary, different underlying data is the *only* possible explanation for why QuestMobile's and Aurora's estimates differ by tens of millions if they used the same methodology, as Plaintiffs claim.[5]

In pointing out the only logical inference from Plaintiffs' new allegations, Defendants have not "reverse[d] course" or "contradict[ed] their previous position." (Supp. Opp. at 7.) Defendants never suggested that alleging a common methodology is sufficient to establish an apples-to-apples comparison, only that it is necessary for one. It is also necessary to allege facts showing that QuestMobile and Aurora relied on the same underlying data, which Plaintiffs still fail to do. Notably, Plaintiffs do not deny that QuestMobile and Aurora relied on different underlying data, and they have never offered any other possible explanation for why QuestMobile's and Aurora's DAU estimates differ by tens of millions.

Contrary to Plaintiffs' characterization, the issue is not QuestMobile's and Aurora's "reliability." (*Id.*) As Plaintiffs note, iQIYI and Baidu have sometimes relied on QuestMobile

---

[5]    This distinguishes Plaintiffs' case, which dealt with competing inferences and explanations. *Shaev v. Baker*, No. 16-cv-05541-JST, 2017 WL 1735573, at *14 (N.D. Cal. May 4, 2017).

for certain comparative market data and rankings, but that does not mean its DAU estimates are more accurate than iQIYI's actual user data.  Ultimately, all Plaintiffs allege is that QuestMobile, Aurora, and iQIYI each came up with different numbers.  They allege nothing to establish whose numbers were correct or, more to the point, that iQIYI's reported DAUs were false.[6]

Finally, Plaintiffs still do not adequately explain the basis for their allegation that QuestMobile and Aurora used the same methodology.  Plaintiffs vaguely claim that "[a] spokesperson for QuestMobile described their methodology directly to Lead Counsel in response to an inquiry[.]"  (Supp. Opp. at 7 n.8.)  But Plaintiffs fail to explain when this conversation occurred, what Lead Counsel's "inquiry" was, what exactly the "spokesperson" said in response, or the basis for the person's alleged knowledge.  Separately, Plaintiffs continue to claim that "Aurora's methodology is detailed in their own contemporaneous reports."  (*Id.*) Yet, Plaintiffs still do not attach these reports, quote the language they are referencing, or even provide a pincite.

### B.     Plaintiffs' Customer Advances and Deferred Revenue Claim Fails

Plaintiffs similarly fail to allege facts showing that the "deferred revenues" metric allegedly reflected in PRC "credit reports" for iQIYI's VIEs is calculated the same way as the consolidated "customer advances and deferred revenue" reported in iQIYI's U.S. Registration Statement.  (Supp. Br. at 7-8.)  Plaintiffs now claim, for the first time, that "the tax filings, as cited in the credit reports that Plaintiffs' counsel reviewed, disclose customer advances and deferred revenue under a single line item—just like iQIYI's SEC filings."  (Supp. Opp. at 8-9

---

6     Because Defendants' DAU argument is not about reliability, Plaintiffs' citation to *In re Longwei Petroleum Investment Holding Ltd. Securities Litigation*, No. 13 CV 214(HB), 2014 WL 285103 (S.D.N.Y. Jan. 27, 2014), misses the point.  In any event, contrary to that case's suggestion, courts routinely dismiss falsity allegations based on short seller reports that are unreliable on their face. *See, e.g.*, *MINISO*, 2024 WL 759246, at *11-17.

n.10.)  For starters, "[a] party 'cannot amend its pleading through its opposition brief.'"  *Valvo v. City of New York*, No. 13-cv-6562 (NG), 2016 WL 11472250, at *5 (E.D.N.Y. June 7, 2016) (citation omitted).  Regardless, even now, Plaintiffs do not explain how they can tell that customer advances and deferred revenue are supposedly reported under a single line item, nor do they submit these purported credit reports so the Court can see for itself.  Plaintiffs' conclusory allegation that "the accounting standards in China and the U.S. are the same with respect to the recording of deferred revenue" does not close this gap.  (*iQIYI* SAC ¶ 116; *Baidu* SAC ¶ 143.)[7]

### C.        Plaintiffs' Remaining Claims Fail

Plaintiffs' remaining Exchange Act claims regarding iQIYI's membership services revenues and its accounting for the Xin'ai Sports joint venture also still fail as a matter of law.  Plaintiffs do not dispute that they allege no new facts about membership services revenues.  That claim remains inadequate for the reasons demonstrated in Defendants' prior briefing.

As to Xin'ai Sports, Plaintiffs argue that "the SACs' new allegations demonstrate[] Defendants invented the non-cash considerations—which Defendants improperly reported as deferred revenue—out of thin air."  (Supp. Opp. at 9.)  But as Defendants already explained, the allegations about Xin'ai Sports' capital structure are not new (Plaintiffs made the same argument in their original Opposition brief) and the absence of iQIYI's non-cash contribution from the

---

[7]   Plaintiffs complain that at oral argument Defendants used an organizational chart from iQIYI's 2018 Form 20-F, rather than from the time of the IPO.  (Supp. Opp. at 8 n.9)  Defendants simply used the chart that Plaintiffs alleged in the Amended Complaint.  (*iQIYI* AC ¶ 25.)  Plaintiffs did not cite the year or source of the chart, but alleged it was evidence that "*[p]rior to and during the Class Period* it was extremely difficult for investors to understand iQIYI's corporate structure and accounting methods."  (*Id.* (emphasis added).)  Defendants interpreted this to mean the chart showed iQIYI's structure "prior to and during the Class Period," including as of the IPO at the start of the Class Period.  Regardless, the chart is not relevant to Defendants' arguments regarding Plaintiffs' new allegations in the SACs.

9

capital structure does not suggest it was invented.  (Supp. Br. at 9.)  Plaintiffs still offer nothing to establish that the non-cash contribution ***should be*** reflected in the capital structure.

## IV.    PLAINTIFFS CANNOT ALLEGE LOSS CAUSATION

Lastly, Plaintiffs' new alleged corrective disclosures (iQIYI's and Baidu's first quarter 2019 earnings releases, 11 months before the Wolfpack Report) had nothing to do with the alleged fraud here.  Plaintiffs cannot point to any allegations even remotely suggesting that anyone viewed the decline in deferred revenues that quarter as "beg[inning] [to] expos[e] inconsistencies in the companies' financial reporting that the Wolfpack Report later revealed." (Supp. Opp. at 10.)  That is why Plaintiffs previously disavowed this as a corrective disclosure.

Plaintiffs now try to disavow their prior disavowal.  For example, the Teamsters (the *Baidu* Lead Plaintiffs) argue that their prior position was based "on an incomplete record" and they have since "continued their investigations and amended their complaints multiple times, allowing them to articulate just how the May 16, 2019 partial disclosure revealed facts regarding Defendants' fraudulent misconduct." (Supp. Opp. at 10.)  But they cite nothing new that they have supposedly learned about the earnings releases.  And they still do not articulate any way in which the releases revealed facts regarding Defendants' alleged fraudulent misconduct—nor could they, because on their face the earnings releases revealed no such facts.  At bottom, *iQIYI* Lead Plaintiffs Hershberger and Gereige's argument that a similar alleged "eleventh-hour, token partial disclosure" was "contradictory to the entire theory of the case and was added simply to manufacture a loss where there was none" (ECF No. 54 at 3) applies equally to the first quarter 2019 earnings releases that they now try to insert here.

**CONCLUSION**

For these reasons and those established in Defendants' prior briefing, the *iQIYI* Action and the *Baidu* Action should be dismissed in their entirety with prejudice.

10

Dated:  New York, New York
         April 22, 2024

Respectfully submitted,

/s/ William J. Sushon

Jonathan Rosenberg
William J. Sushon
O'MELVENY & MYERS LLP
7 Times Square
New York, New York 10036
Telephone: (212) 326-2000
jrosenberg@omm.com
wsushon@omm.com

*Attorneys for Defendants Goldman Sachs (Asia) LLC; Credit Suisse Securities (USA) LLC; Merrill Lynch, Pierce, Fenner & Smith Incorporated; China Renaissance Securities (Hong Kong) Limited; Citigroup Global Markets Inc.; and UBS Securities LLC*

/s/ Robert A. Fumerton

Scott D. Musoff
Robert A. Fumerton
Michael C. Griffin
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
scott.musoff@skadden.com
robert.fumerton@skadden.com
michael.griffin@skadden.com

*Attorneys for Defendants iQIYI, Inc., Baidu, Inc., Yu Gong, Xiaodong Wang, Robin Yanhong Li, Qi Lu, Herman Yu, Victor Zhixiang Liang, Giselle Manon, Chuan Wang, and Xuyang Ren*